**ALAN G. LANCE**
**ATTORNEY GENERAL**
**STATE OF IDAHO**

**DAVID G. HIGH, Chief**
**Civil Litigation Division**

**BRETT T. DeLANGE**
**Deputy Attorney General**
**Consumer Protection Unit**
**Office of the Attorney General**
**Len B. Jordan Building, Lower Level**
**700 West Jefferson Street, Room 210**
**P. O. Box 83720**
**Boise, Idaho  83720-0010**
**Telephone:  (208) 334-2424**

**ATTORNEYS FOR THE STATE OF IDAHO**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **SNAKE RIVER VALLEY** ) | **Case No. 96-308-E-BLW** |
| **ELECTRIC ASSOCIATION** ) | |
| ) | **NOVEMBER 19, 2001** |
| **Plaintiff,** ) | **AFFIDAVIT OF** |
| ) | **BRETT T.DELANGE** |
| **vs.** ) | |
| ) | |
| **PACIFICORP (including UTAH POWER,** ) | |
| **& LIGHT COMPANY, a division),** ) | |
| ) | |
| **Defendant,** ) | |
| ) | |
| **STATE OF IDAHO, by and through** ) | |
| **ALAN G. LANCE, Attorney General** ) | |
| ) | |
| **Defendant - Intervenor.** ) | |
| ) | |

| | |
|---|---|
| STATE OF IDAHO ) | |
| ) ss. | |
| County of Ada ) | |

The undersigned, Brett T. DeLange, duly sworn upon oath, does hereby testify as follows:

1.    Attached as Exhibit A is a true and correct copy of HB 1, reflecting the amendments it made to the Idaho Electric Supplier Stabilization Act (ESSA).

**NOVEMBER 19, 2001 AFFIDAVIT OF BRETT T. DELANGE - 1**

bdelange/antitrus/Snake River/Nov19btdaff.doc

2.      Attached as Exhibit B is a true and correct copy of HB 142, reflecting the amendments it made to ESSA

3.      Attached as Exhibit C is a true and correct copy of Order No. 28681 in In the Matter of the Application of Avista Corporation, Case No. AVU-E-01-2 (Id.Pub.Utils.Com 3/21/01).

4.      Attached as Exhibit D is a true and correct copy of Order No. 28677 in In the Matter of the Application of Avista Corporation, Case No. AVU-E-01-3 (Id.Pub.Utils.Com 3/22/01).

5.      Attached as Exhibit E is a true and correct copy of Order No. 28888 in In the Matter of the Petition by PacifiCorp for an Order Determining that PacifiCorp is not Required to Provide Wheeling Service to Snake River Valley Electric Association, Case No. PAC-E-01-6 (Id.Pub.Utils.Com 10/31/01).


DATED this 19th day of November, 2001.


_____
BRETT T. DELANGE

SUBSCRIBED AND SWORN to before me this 19th day of November, 2001.

_____
Notary Public for Idaho
Residing at: Boise
My Commission Expires: 2/9/2004

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of November 2001, I caused to be served a true and correct copy of the foregoing by the method indicated below, and addressed to the following:

Charles F. Wheatley, Jr.
Timothy P. Ingram
Wheatley & Ranquist
34 Defense Street
Annapolis, MD  21401

HAND DELIVER
X U.S. Mail
Overnight Mail
Telecopy (Fax)
Certified Mail

Robert C. Huntley
Christopher F. Huntley
Huntley, Park, Thomas, Burkett,
    Olsen & Williams, LLP
250 So. 5th Street, Suite 660
P.O. Box 2188
Boise, ID  83702

HAND DELIVER
X U.S. Mail
Overnight Mail
Telecopy (Fax)
Certified Mail

David J. Jordan
John M. Eriksson
Stoel Rives
201 South Main Street #1100
Salt Lake City, UT 84111

HAND DELIVER
X U.S. Mail
Overnight Mail
Telecopy (Fax)
Certified Mail

Robert C. Brown
Stoel Rives
101 S. Capitol Blvd., Suite 1900
Boise, ID  83702-5958

HAND DELIVER
X U.S. Mail
Overnight Mail
Telecopy (Fax)
Certified Mail

Brett T. DeLange
Deputy Attorney General

**NOVEMBER 19, 2001 AFFIDAVIT OF BRETT T. DELANGE - 3**

**Exhibit A**

# Electric Supplier Stabilization Act

View Daily Data Tracking History
View Bill Text
View Statement of Purpose / Fiscal Impact

Text to be added within a bill has been marked with Bold and Underline. Text to be removed has
been marked with Strikethrough and Italic. How these codes are actually displayed will vary based on
the browser software you are using.
**This sentence is marked with bold and underline to show added text.**
*This sentence is marked with strikethrough and italic, indicating text to be removed.*

# Daily Data Tracking History

```
ELECTRIC SUPPLIER STABILIZATION ACT.......................by MR. SPEAKER
                Requested by:  Ways and Means Committee
ELECTRIC SUPPLIER STABILIZATION ACT - Amends, repeals and adds to existing
law to modify the Electric Supplier Stabilization Act to bring it into
conformity with principles articulated by the Ninth Circut Court of Appeals
in the 2000 decision of Snake River Valley Electric Association v. PacifiCorp
and State of Idaho.

12/08    House intro - 1st rdg - to printing
  Rpt prt - to 2nd rdg
  Rls susp - PASSED - 70-0-0
  NAYS -- None
  Absent and excused -- None
  Senate intro - rls susp - PASSED - 30-2-3
  NAYS -- Burtenshaw, Hawkins
  Absent and excused -- Branch, Deide, Riggs
  Title apvd - to House
  To enrol - rpt enrol - Sp signed - Pres signed
  To Governor
```

# Bill Text

```
 ||||            LEGISLATURE OF THE STATE OF IDAHO           ||||
Fifty-sixth Legislature          First Extraordinary Session - 2000


                      IN THE HOUSE OF REPRESENTATIVES

                           HOUSE BILL NO. 1

                        BY WAYS AND MEANS COMMITTEE

                              AN ACT
1    RELATING TO THE ELECTRIC SUPPLIER STABILIZATION ACT; TO PROVIDE A STATEMENT
2        INTENT; AMENDING SECTION 61-332, IDAHO CODE, TO CLARIFY  THE  PURPOSES
3    THE ELECTRIC SUPPLIER STABILIZATION ACT AND TO MAKE TECHNICAL CORRECTION
4    AMENDING  SECTION  61-332A, IDAHO CODE, TO REVISE DEFINITIONS, TO DELETE
5    REFERENCE TO OBSOLETE MATERIAL AND TO MAKE TECHNICAL CORRECTIONS; AMENDI
6    SECTION 61-332B, IDAHO CODE, TO REQUIRE APPROVAL OF THE  PUBLIC  UTILITI
7
```

8   COMMISSION FOR TRANSFERRING CONSUMERS; AMENDING SECTION 61-332C, IDA
9   CODE, TO PROVIDE PROVISIONS FOR SELECTING AN ELECTRIC SUPPLIER FOR N
10  ELECTRIC SERVICE ENTRANCES AND TO MAKE TECHNICAL CORRECTIONS; AMENDI
11  CHAPTER 3, TITLE 61, IDAHO CODE, BY THE ADDITION OF A NEW SECTION 61-332
12  IDAHO CODE, TO SUPERVISE WHEELING SERVICES;   AMENDING SECTION 61-33
13  IDAHO CODE,   TO REQUIRE ELECTRIC SERVICE TERRITORY CONTRACTS TO BE FIL
14  WITH AND APPROVED BY THE PUBLIC UTILITIES COMMISSION, TO PROVIDE F
15  NOTICE AND HEARING REGARDING CONTRACT APPROVAL AND TO MAKE TECHNICAL CO
16  RECTIONS; AMENDING SECTION 61-334, IDAHO CODE, TO PROVIDE THAT THE  PUBL
17  UTILITIES COMMISSION HAS CERTAIN AUTHORITY OVER ELECTRIC SUPPLIERS,
18  PROVIDE FOR APPLICATION OF PUBLIC UTILITIES LAW AND TO MAKE TECHNICAL CO
19  RECTIONS; REPEALING SECTION 61-334A, IDAHO CODE; AMENDING SECTION 61-334
20  IDAHO CODE, TO REDESIGNATE THE SECTION, TO PROVIDE FOR FILING A  COMPLAI
21  WITH THE PUBLIC UTILITIES COMMISSION, TO PROVIDE FOR NOTICE AND HEARING
22  TO PROVIDE REMEDIES AND TO MAKE TECHNICAL CORRECTIONS; AMENDING CHAPTER
23  TITLE 61, IDAHO CODE, BY THE ADDITION OF A NEW SECTION 61-334B,  IDA
24  CODE, TO PROVIDE COMMISSION SUPERVISION AND AUTHORITY; AMENDING CHAPTER
25  TITLE 61,  IDAHO CODE,  BY THE ADDITION OF A NEW SECTION 61-334C, IDA
26  CODE, TO PROVIDE ELECTRIC SUPPLIER IMMUNITY; REPEALING SECTIONS 61-33
27  61-332A, 61-332B, 61-332C, 61-332D, 61-333, 61-334, 61-334A, 61-334B A
28  61-334C, IDAHO CODE; AMENDING CHAPTER 3, TITLE 61, IDAHO CODE, BY T
29  ADDITION OF A NEW SECTION 61-332, IDAHO CODE, TO PROVIDE THE PURPOSE
30  THE ELECTRIC SUPPLIER STABILIZATION ACT; AMENDING CHAPTER 3, TITLE 6
31  IDAHO CODE, BY THE ADDITION OF A NEW SECTION 61-332A, IDAHO CODE, TO PR
32  VIDE DEFINITIONS FOR THE ELECTRIC SUPPLIER STABILIZATION ACT; AMENDI
33  CHAPTER 3, TITLE 61, IDAHO CODE, BY THE ADDITION OF A NEW SECTION 61-332
34  IDAHO CODE, TO PROVIDE THAT AN ELECTRIC SUPPLIER SHALL BE PROHIBITED FR
35  SERVING CONSUMERS OR FORMER CONSUMERS OF ANOTHER SUPPLIER; AMENDING  CHA
36  TER 3, TITLE 61, IDAHO CODE, BY THE ADDITION OF A NEW SECTION 61-332
37  IDAHO CODE, TO PROVIDE RULES FOR SELECTING ELECTRIC SUPPLIERS FOR N
38  ELECTRIC SERVICE ENTRANCES; AMENDING CHAPTER 3, TITLE 61, IDAHO CODE,
39  THE ADDITION OF A NEW SECTION 61-333, IDAHO CODE, TO AUTHORIZE CONTRAC
40  AMONG ELECTRIC SUPPLIERS TO RESOLVE TERRITORIES, CONSUMERS AND TO TRANSF
41  FACILITIES; AMENDING CHAPTER 3, TITLE 61, IDAHO CODE, BY THE ADDITION OF
42  NEW SECTION 61-334, IDAHO CODE, TO PROVIDE SPECIAL RULES OF INTERPRET
43  TION; AMENDING CHAPTER 3, TITLE 61, IDAHO CODE, BY THE ADDITION OF A N
44  SECTION 61-334A, IDAHO CODE, TO PROVIDE LEGAL RELIEF FOR AGGRIEVED ELE
45  TRIC CONSUMERS; AMENDING CHAPTER 3, TITLE 61, IDAHO CODE, BY THE ADDITI
46  OF A NEW SECTION 61-334B, IDAHO CODE, TO PROVIDE LEGAL REMEDIES FOR VIOL

2

1   TION OF THE ELECTRIC SUPPLIER STABILIZATION ACT; DECLARING AN EMERGEN
2   FOR VARIOUS SECTIONS, PROVIDING A SUNSET CLAUSE FOR ONE SECTION AND  PR
3   VIDING AN EFFECTIVE DATE FOR OTHER SECTIONS OF THIS ACT.

4   Be It Enacted by the Legislature of the State of Idaho:

5       SECTION 1.  LEGISLATIVE INTENT. The provision of a safe and reliable su
6   ply of electricity in a manner that prohibits the "pirating" of consumers  a
7   discourages duplication of facilities is essential to the well-being
8   Idaho's citizens and its economy. It was for these and other reasons that  t
9   legislature passed the Electric Supplier Stabilization Act in 1970. The legi
10  lature has been advised of federal antitrust litigation alleging that confo
11  mance with the provisions of this act does not confer federal antitrust imm
12  nity upon parties in compliance with the act. The legislature finds that
13  negative judicial ruling would have the effect of repealing applicable prov
14  sions of the act, undercutting the purposes for which this act was enacted.
15      It is and has been the intention of the legislature to confer antitru
16  immunity upon parties acting in compliance with the act under what is known
17  the state action doctrine. While the legislature believes that compliance wi
18  the existing provisions of this act confers such immunity, it has determin
19  to amend the act to more fully address this issue. The legislature therefo
20  finds that it is in the public interest to enact the following amendments.

21     SECTION 2.   That Section 61-332, Idaho Code, be, and the  same  is  here
22  amended to read as follows:

23     61-332.  PURPOSE  OF  ELECTRIC  SUPPLIER STABILIZATION ACT. A. (1) This a
24  includes sections 61-332~, ~61-332A, 61-332B, 61-332C, 61-333, 61-334, 61 334~
25  ~and~ through  61-334B̲C̲,  Idaho Code, ~as herein enacted, section 61-333A, Ida~
26  ~Code, as herein amended, and sections 61-333B  and  61-333C,  Idaho  Code,~
27  ~already  enacted,~ and  shall  be  referred to herein as "this act" and may
28  cited and referred to as the "~e~E̲lectric ~s~S̲upplier ~s~S̲tabilization ~a~A̲ct."
29     B̲. (2)  This act ~is~ a̲n̲d̲ i̲t̲s̲ a̲m̲e̲n̲d̲m̲e̲n̲t̲s̲ a̲r̲e̲ designed to promote harmo
30  among  and  between electric suppliers furnishing electricity within the sta
31  of Idaho, prohibit the "pirating" of ~customers~ c̲o̲n̲s̲u̲m̲e̲r̲s̲ of another e̲l̲e̲c̲t̲r
32  supplier,  discourage  duplication of electric facilities, a̲c̲t̲i̲v̲e̲l̲y̲ s̲u̲p̲e̲r̲v̲i̲
33  c̲e̲r̲t̲a̲i̲n̲ c̲o̲n̲d̲u̲c̲t̲ o̲f̲ e̲l̲e̲c̲t̲r̲i̲c̲ s̲u̲p̲p̲l̲i̲e̲r̲s̲ a̲s̲ i̲t̲ r̲e̲l̲a̲t̲e̲s̲ t̲o̲ t̲h̲i̲s̲ a̲c̲t̲, and stabili
34  the territories and ~customers~ c̲o̲n̲s̲u̲m̲e̲r̲s̲ served with electricity by such  e̲l̲e̲
35  t̲r̲i̲c̲ suppliers.

36     SECTION 3.   That Section 61-332A, Idaho Code, be, and the same is here
37  amended to read as follows:

38     61-332A.  DEFINITIONS FOR ELECTRIC SUPPLIER STABILIZATION ACT. As used
39  this act, unless the context requires otherwise:
40     (1~.~)  "Public  utility"  means  an electric utility regulated by the Ida
41  public utilities commission.
42     (2~.~)  "Cooperative" means a cooperative  corporation  furnishing  electr
43  service  in the state of Idaho to its consumer-members who own and operate t
44  cooperative.
45     (3~.~)  "Municipality" means any municipal  corporation  or  quasi-municip
46  corporation  furnishing  electric service to ~its citizens~ t̲h̲e̲ c̲o̲n̲s̲u̲m̲e̲r̲s̲ o̲f̲ t̲
47  m̲u̲n̲i̲c̲i̲p̲a̲l̲i̲t̲y̲ in the state of Idaho.
48     (4~.~)  "Electric s̲̲S̲upplier"  means  any  public  utility,  cooperative,
49  municipality supplying or intending to supply electric service to a consumer

3

1     (5~.~)  "Electric  service"  means electricity furnished to an ultimate co
2  sumer by an e̲l̲e̲c̲t̲r̲i̲c̲ supplier.
3     (6~.~)  "Consumer" is any person, firm, corporation, or other entity recei
4  ing or intending to receive  electric service at a specific service entrance
5     (7~.~)  "Service entrance" means  the  ~entrance of electric service fr~
6  ~facilities  of the supplier to the  service equipment or utilization equipme~
7  ~of the consumer. In determining "service entrance" reference shall be made~
8  ~the  definition of "entrance of the service to the service equipment or util~
9  ~zation equipment" as defined in the national electrical code of 1965~ locati
10  on  the  consumer's p̲r̲o̲p̲e̲r̲t̲y̲ w̲h̲e̲r̲e̲ the c̲o̲n̲s̲u̲m̲e̲r̲'̲s̲ m̲a̲i̲n̲ d̲i̲s̲c̲o̲n̲n̲e̲c̲t̲ s̲w̲i̲t̲c̲h̲,̲ f̲u̲s̲
11  o̲r̲ o̲t̲h̲e̲r̲ d̲i̲s̲c̲o̲n̲n̲e̲c̲t̲ e̲q̲u̲i̲p̲m̲e̲n̲t̲ e̲x̲i̲s̲t̲s̲,̲ a̲n̲d̲ w̲h̲i̲c̲h̲ a̲r̲e̲ i̲n̲t̲e̲n̲d̲e̲d̲  t̲o̲  p̲r̲o̲v̲i̲d̲e̲  t̲
12  m̲e̲a̲n̲s̲ o̲f̲ c̲u̲t̲o̲f̲f̲ o̲f̲ t̲h̲e̲ s̲u̲p̲p̲l̲y̲.
13     (8~.~)  "New  service  entrance"  means  a  service  entrance not previous
14  served with electricity. A change, improvement, replacement,  enlargement,
15  change  in  location  of a service entrance shall not be deemed a "new servi
16  entrance" if utilized to serve any service or utilization equipment previous
17  served with electricity from the former service entrance, but  for  the  r̲u̲l̲
18  p̲r̲o̲v̲i̲s̲i̲o̲n̲s̲ of this act shall be deemed the former "service entrance." A chan
19  in consumer shall not be construed to make an existing service entrance a "n
20  service  entrance." A change, enlargement, or other modification of service
21  utilization equipment served from an existing service entrance  shall  not
22  construed to make it a "new service entrance."
23     (9~.~)  "Transmission  line,"  f̲o̲r̲ t̲h̲e̲ p̲u̲r̲p̲o̲s̲e̲s̲ o̲f̲ t̲h̲i̲s̲ a̲c̲t̲, means any ele
24  tric line of a̲n̲ e̲l̲e̲c̲t̲r̲i̲c̲ supplier ~for~ carrying a voltage of sixty-nine (69)
25  or more.
26     (10~.~) "Service line,̲"̲ f̲o̲r̲ t̲h̲e̲ p̲u̲r̲p̲o̲s̲e̲s̲ o̲f̲ t̲h̲i̲s̲ a̲c̲t̲, means  any  s̲i̲n̲g̲l̲e̲

27   **multi-phase** electric line of an **electric** supplier **used** for carrying less th
28   sixty-nine (69) KV and used or capable of use to provide electric service  f
29   a consumer.
30       (11~) "Existing service line" means any electric service line in existen
31   at the time of the event in question and constructed to supply a consumer th
32   could be lawfully served by that **electric** supplier under this act. It sha
33   not mean any service line constructed to obtain an advantage under this  ac
34   or to evade its purpose or terms.
35       (12) "Commission" means the Idaho public utilities commission.

36       SECTION 4.  That Section 61-332B, Idaho Code, be, and the same is here
37   amended to read as follows:

38       61-332B.  ELECTRIC SUPPLIER PROHIBITED FROM SERVING  CONSUMERS  OR  FORM
39   CONSUMERS OF ANOTHER **ELECTRIC** SUPPLIER. No electric supplier shall ~~constru~~
40   ~~or extend facilities, nor make any electric connections, nor permit  any  co~~
41   ~~nections  to  be  made  to  any of its facilities for the purpose of supplyi~~
42   ~~electric service nor shall it~~ supply or furnish electric service to any  ele
43   tric service entrance that is then or had at any time previously been **lawful**
44   connected  for  electric  service  to facilities of another electric supplie
45   ~~without the written consent of such other electric supplier; provided, ~~ ~~ho~~
46   ~~ever,  (a)  such  other  electric supplier is then, or was previously the la~~
47   ~~supplier, lawfully connected to said electric service entrance, and  (b)  su~~
48   ~~other  electric supplier is willing and able to provide adequate electric se~~
49   ~~vice~~ **except as provided in this** act.

50       SECTION 5.  That Section 61-332C, Idaho Code, be, and the same  is  here
51   amended to read as follows:

                                          4

1       61-332C.  ~~RULES~~ **PROVISIONS**  FOR SELECTING ELECTRIC SUPPLIER FOR NEW ELE
2   TRIC SERVICE ENTRANCES. **(1)** ~~In the event more than one  electric  supplier~~
3   ~~willing and able to provide adequate electric service to a consumer at any e~~
4   ~~electric  service  entrance, the following rules shall~~ determining **which** ele
5   tric **supplier will provide electric service for a new** service **entrance,** t
6   **following provisions will** govern:
7       ~~1.~~**(a)**  If  no  electric  supplier  has an existing service line within c
8   thousand three hundred ~~and~~ twenty **(1,320)** feet ~~(1,320 ft.)~~ of  ~~the~~ a  n
9   service  entrance  the consumer shall have the right of choice of **electr**
10   supplier.
11       ~~2.~~**(b)**  If only one (1) electric supplier has an  existing  service  li
12   within  one  thousand three hundred ~~and~~ twenty **(1,320)** feet ~~(1,320 ft.)~~
13   the new service entrance that **electric** supplier shall have  the  right
14   serve the consumer at the new service entrance.
15       ~~3.~~**(c)**  If more than one **(1)** electric supplier has an existing service li
16   within  one  thousand three hundred ~~and~~ twenty **(1,320)** feet ~~(1,320 ft.)~~
17   the new service entrance the **electric** supplier whose existing service li
18   is nearest the new service entrance shall have the right to serve the co
19   sumer at the new service entrance.
20       ~~4.~~**(d)**  If more than one **(1)** electric supplier has an existing service li
21   within one thousand three hundred ~~and~~ twenty **(1,320)** feet ~~(1,320 ft.)~~
22   the  new  service  entrance ~~and the existing service lines are equidist~~
23   ~~from the service entrance, or~~ **and** it cannot be determined by proof  whi
24   service  line is nearest the new service entrance, then the consumer ~~sha~~
25   ~~have the right of choice of supplier~~ or **an electric supplier**  shall  **pet**
26   **tion  the  commission  for an order determining which electric supplier**
27   **nearest the new service entrance.**
28       **(e)  For purposes of this act** distances **shall mean the exact distance me**
29   **sured using standard land surveying practices as established by the  boa**
30   **of professional engineers and land surveyors of the state of Idaho.**
31       **(2)**  No  electric  supplier shall construct or extend facilities, nor ma

32   any electric connections, nor permit any connection to be made from any of i
33   facilities to any new service entrance nor shall it supply electric service
34   any new service entrance in violation of the ~~rules herein, without the writ~~
35   ~~consent of any electric supplier with a prior right under the rules to se~~
36   ~~the consumer at the new service locations~~ provisions of this section, exce
37   as ordered by the commission pursuant to this act.

38       SECTION 6.  That Chapter 3, Title 61, Idaho Code, be, and the same
39   hereby amended by the addition thereto of a **NEW SECTION**, to be known and de
40   ignated as Section 61-332D, Idaho Code, and to read as follows:

41       61-332D.  WHEELING SERVICES.  (1) An electric supplier shall not
42   required to provide wheeling service over its system if such service resul
43   in retail wheeling and/or a sham wholesale transaction.
44       (2) An electric supplier declining to furnish wheeling service pursua
45   to this section shall petition the commission for review of the electr
46   supplier's action in respect to a request for such service. The commissi
47   shall, upon notice and opportunity for hearing, review the electric supplier
48   action for consistency with the purposes and provisions of this act, and iss
49   an order in accordance with its finding, ordering either that the wheeli
50   service shall, or shall not, be required.

51       SECTION 7.  That Section 61-333, Idaho Code, be, and the same is here
52   amended to read as follows:

                                     5

1        61-333.  AUTHORIZING CONTRACTS AMONG ELECTRIC SUPPLIERS TO RESOLVE  TERR
2    TORIES, CONSUMERS AND TO TRANSFER FACILITIES. ~~A.~~ **(1)** Any electric supplier m
3    contract  in writing with any other electric supplier for the purpose of all
4    cating territories, consumers, and future consumers between the **electric** su
5    pliers and designating which territories and consumers are to be served
6    which contracting **electric** supplier. The territories and consumers so all
7    cated and designated may include all or any portion of the territories a
8    consumers which are being served by any or all of the contracting **electr**
9    suppliers at the time the contract is entered into, or which could be econom
10   cally served by the then existing facilities of any contracting **electric** su
11   plier, or by reasonable and economic extensions thereto. All **such contrac**
12   **shall be filed with the commission. The commission shall**, after **notice a**
13   **opportunity for hearing, review and approve or reject contracts between coo**
14   **eratives, between cooperatives and public utilities and between public util**
15   **ties. The commission shall, after notice and opportunity for hearing, revi**
16   **and approve or reject contracts between municipalities and cooperatives,**
17   **well as between municipalities and public utilities, provided however, t**
18   **commission shall have jurisdiction only over cooperatives and public utiliti**
19   **in such approvals. The commission shall approve such contracts** only up
20   **finding that the allocation of territories or consumers is in conformance wi**
21   **the provisions and purposes of this act.**
22       ~~B.~~ **(2)** Any electric supplier may also contract in writing with any oth
23   electric supplier for the sale, exchange, transfer, or lease of equipment
24   facilities located within territory which is the subject of any allocati
25   contracted for under subsection ~~A hereof. C.  Any~~ **(1) of this section and a**
26   contract validly entered ~~pursuant to this section~~ into **and approved by** t
27   **commission after notice and opportunity for hearing** shall be binding and sha
28   be legally enforceable pursuant to this act, or by any other remedy provic
29   by law.

30       SECTION 8.  That Section 61-334, Idaho Code, be, and the same is here
31   amended to read as follows:

32       61-334.  SPECIAL RULES OF INTERPRETATION. Nothing contained in this a
33   shall be construed to:
34       **(1~~.~~)** Grant ~~Idaho public utilities~~ the commission jurisdiction over coo

35  eratives or municipalities **except as** **authorized in** this **act**.
36      (2~) Apply to controversies between two (2) or more public utilities.
37      (3~) Preclude any electric supplier from extending electric service
38  its own property or facilities or to another electric supplier for resal
39  provided any line extension made under this clause shall not be considered
40  determining the right of **electric** suppliers to serve new service entranc
41  under section 61-332C, Idaho Code.
42      **(4)** **Abrogate** **or** **limit** **the** **authority** **of** **any** **municipality** **under** **any** **oth**
43  **statute** **or** **law** **with** **respect** **to** **the** **municipality** **providing** **electricity** **to** **t**
44  **municipality** **or** **the** **consumers** **of** **the** **municipality** **within** **the** **boundaries** **of** **t**
45  **municipality**.

46      SECTION 9. That Section 61-334A, Idaho Code, be, and the same is here
47  repealed.

48      SECTION 10. That Section 61-334B, Idaho Code, be, and the same is here
49  amended to read as follows:

50      61-334~B~A. ~LEGAL~ REMEDIES FOR VIOLATION OF THIS ACT. ~A.~**(1)** Any electri

6

1  supplier **or** **consumer** whose rights under this act shall be violated or threa
2  ened with violation~, shall be entitled to injunctive relief against e~
3  ~violation upon proper~ **may** **file** **a** complaint ~and proof in accordance with~ ~Id~
4  ~rules of civil procedure in district court, against the other~ with **the** **commi**
5  **sion** **against** **an** electric supplier and any other person responsible for t
6  violation.
7      ~B.~**(2)** ~In any suit for injunctive relief~ **After** **notice** **and** **opportunity** **f**
8  **hearing**, **the** **commission** **shall** **make** findings **of** **fact** and conclusions ~by t~
9  ~court that any rules under~ **of** **law** **determining** **whether** this act **or** **any** orde
10  **issued** **under** **this** **act** have been violated or threatened to be violated **a**
11  shall ~require findings and conclusions by the court of~ **determine** **whether** the
12  is actual or threatened irreparable injury as to the electric supplier **or** **co**
13  sumer whose rights are violated or threatened with violation as a basis f
14  ~equitable relief hereunder~ **granting** relief.
15      ~C.~**(3)** The ~injunctive~ relief to be granted under this section for viol
16  tion of this act shall ~be negative in form, enjoining~ **forbid** further acts
17  violation of such ~rules~ **orders**, shall ~be affirmative in form in requir~
18  **order** **the** removal of any electric connections, facilities or equipment th
19  constitute the violation, ~and shall be~ **or** a combination thereof necessary
20  enforce compliance with this act.
21      ~D. Any aggrieved party may also pursue any other remedy provided by law~

22      SECTION 11. That Chapter 3, Title 61, Idaho Code, be, and the same
23  hereby amended by the addition thereto of a **NEW** **SECTION**, to be known and de
24  ignated as Section 61-334B, Idaho Code, and to read as follows:

25      61-334B. COMMISSION SUPERVISION AND AUTHORITY. (1) Upon a petition by
26  electric supplier or consumer for an exception to the provisions of secti
27  61-332B or 61-332C(1)(a), (b) or (c), Idaho Code, the commission shall iss
28  an order granting such request only upon finding that granting the request
29  consistent with the purposes of this act as set forth in section 61-332, Ida
30  Code.
31      (2) The commission shall have power to issue authorizations and orde
32  requested under this act, or to refuse to issue the same, and may attach
33  any authorization and order as a condition of approval such terms and cond
34  tions as it determines are consistent with the purposes and provisions of th
35  act.
36      (3) In all matters arising under this act, which are submitted to t
37  commission for decision, order or review, the procedure shall be governed
38  chapters 6 and 7, title 61, Idaho Code, and the commission's rules of proc
39  dure. Reconsideration of, appeal from, enforcement of, and stay of orde


40   issued  pursuant  to  this act shall be governed by law as for other orders
41   the commission in other matters.

42        SECTION 12.  That Chapter 3, Title 61, Idaho Code, be,  and  the  same
43   hereby  amended by the addition thereto of a **NEW SECTION**, to be known and de
44   ignated as Section 61-334C, Idaho Code, and to read as follows:

45        61-334C.  ELECTRIC SUPPLIER IMMUNITY. No action under the  Idaho  compet
46   tion act, chapter 1, title 48, Idaho Code, or any other provision or doctri
47   of law of the state of Idaho shall lie against an electric supplier for acti
48   or inaction that is in compliance with the provisions of this act or any  co
49   mission order issued pursuant to this act.

50        SECTION  13.  That  Sections  61-332,  61-332A, 61-332B, 61-332C, 61-332

7

1    61-333, 61-334, 61-334A, 61-334B and 61-334C, Idaho Code, be, and the same a
2    hereby repealed.

3         SECTION 14.  That Chapter 3, Title 61, Idaho Code, be,  and  the  same
4    hereby  amended by the addition thereto of a **NEW SECTION**, to be known and de
5    ignated as Section 61-332, Idaho Code, and to read as follows:

6         61-332.  PURPOSE OF ELECTRIC SUPPLIER STABILIZATION ACT.  (1)  This  a
7    includes  sections  61-332, 61-332A, 61-332B, 61-332C, 61-333, 61-334, 61-33
8    and 61-334B, Idaho Code, as herein enacted, and sections 61-333A, 61-333B  a
9    61-333C, Idaho Code, as already enacted, and shall be referred to herein
10   "this act" and may be cited and referred to as the "Electric Supplier Stabil
11   zation Act."
12        (2)  This act is designed to promote harmony among  and  between  electr
13   suppliers  furnishing  electricity  within  the  state  of Idaho, prohibit t
14   "pirating" of customers of another supplier, discourage duplication  of  ele
15   tric facilities, and stabilize the territories and customers served with ele
16   tricity by such suppliers.

17        SECTION 15.  That  Chapter  3,  Title 61, Idaho Code, be, and the same
18   hereby amended by the addition thereto of a **NEW SECTION**, to be known and  de
19   ignated as Section 61-332A, Idaho Code, and to read as follows:

20        61-332A.  DEFINITIONS  FOR ELECTRIC SUPPLIER STABILIZATION ACT. As used
21   this act, unless the context requires otherwise:
22        (1)  "Consumer" is any person, firm, corporation, or other entity  recei
23   ing or intending to receive electric service at a specific service entrance.
24        (2)  "Cooperative"  means  a  cooperative corporation furnishing electr
25   service in the state of Idaho to its consumer-members who own and operate  t
26   cooperative.
27        (3)  "Electric  service"  means  electricity furnished to an ultimate co
28   sumer by a supplier.
29        (4)  "Existing service line" means any electric service line in  existen
30   at the time of the event in question and constructed to supply a consumer th
31   could  be  lawfully  served by that supplier under this act. It shall not mo
32   any service line constructed to obtain an advantage  under  this  act,  or
33   evade its purpose or terms.
34        (5)  "Municipality"  means  any  municipal  corporation or quasi-municip
35   corporation furnishing electric service to its citizens in the state of Idah
36        (6)  "New service entrance" means a service entrance not previously serv
37   with electricity. A change, improvement, replacement, enlargement or change
38   location of a service entrance shall not be deemed a "new service entrance"
39   utilized to serve any service or utilization equipment previously served  wi
40   electricity  from  the  former service entrance, but for the rules of this a
41   shall be deemed the former "service entrance." A change in consumer shall  n
42   be  construed to make an existing service entrance a "new service entrance."
43   change, enlargement, or other modification of service or utilization equipme

44    served from an existing service entrance shall not be construed to make it
45    "new service entrance."
46        (7) "Public utility" means an electric utility regulated by the Ida
47    public utilities commission.
48        (8) "Service entrance" means the entrance of electric service from faci
49    ities of the supplier to the service equipment or utilization equipment
50    the consumer. In determining "service entrance" reference shall be made to t
51    definition of "entrance of the service to the service equipment or utilizati

8

1    equipment" as defined in the national electrical code of 1965.
2        (9) "Service line" means any electric line of a supplier for carryi
3    less than sixty-nine (69) KV and used or capable of use to provide electr
4    service for a consumer.
5        (10) "Supplier" means any public utility, cooperative, or municipali
6    supplying or intending to supply electric service to a consumer.
7        (11) "Transmission line" means any electric line of a supplier for carr
8    ing a voltage of sixty-nine (69) KV or more.

9        SECTION 16. That Chapter 3, Title 61, Idaho Code, be, and the same
10    hereby amended by the addition thereto of a **NEW SECTION**, to be known and de
11    ignated as Section 61-332B, Idaho Code, and to read as follows:

12        61-332B. ELECTRIC SUPPLIER PROHIBITED FROM SERVING CONSUMERS OR FORM
13    CONSUMERS OF ANOTHER SUPPLIER. No electric supplier shall construct or exte
14    facilities, nor make any electric connections, nor permit any connections
15    be made to any of its facilities for the purpose of supplying electric servi
16    nor shall it supply or furnish electric service to any electric service
17    entrance that is then or had at any time previously been connected for ele
18    tric service to facilities of another electric supplier, without the writt
19    consent of such other electric supplier; provided however: (1) such oth
20    electric supplier is then, or was previously the last supplier, lawfully co
21    nected to said electric service entrance; and (2) such other electric suppli
22    is willing and able to provide adequate electric service.

23        SECTION 17. That Chapter 3, Title 61, Idaho Code, be, and the same
24    hereby amended by the addition thereto of a **NEW SECTION**, to be known and de
25    ignated as Section 61-332C, Idaho Code, and to read as follows:

26        61-332C. RULES FOR SELECTING ELECTRIC SUPPLIER FOR NEW ELECTRIC SERVI
27    ENTRANCES. In the event more than one (1) electric supplier is willing a
28    able to provide adequate electric service to a consumer at any new electr
29    service entrance, the following rules shall govern:
30        (1) If no electric supplier has an existing service line within one tho
31    sand three hundred twenty (1,320) feet of the new service entrance the co
32    sumer shall have the right of choice of supplier.
33        (2) If only one (1) electric supplier has an existing service line with
34    one thousand three hundred twenty (1,320) feet of the new service entran
35    that supplier shall have the right to serve the consumer at the new servi
36    entrance.
37        (3) If more than one (1) electric supplier has an existing service li
38    within one thousand three hundred twenty (1,320) feet of the new servi
39    entrance the supplier whose existing service line is nearest the new servi
40    entrance shall have the right to serve the consumer at the new servi
41    entrance.
42        (4) If more than one (1) electric supplier has an existing service li
43    within one thousand three hundred twenty (1,320) feet of the new servi
44    entrance and the existing service lines are equidistant from the servi
45    entrance, or it cannot be determined by proof which service line is neare
46    the new service entrance, then the consumer shall have the right of choice
47    supplier.
48    No electric supplier shall construct or extend facilities, nor make any ele
49    tric connections, nor permit any connection to be made from any of its facil

—

50    ties to any new service entrance nor shall it supply electric service to a
51    new service entrance in violation of the rules herein, without the writt

9

1    consent of any electric supplier with a prior right under the rules to ser
2    the consumer at the new service locations.

3    SECTION 18. That Chapter 3, Title 61, Idaho Code, be, and the same
4    hereby amended by the addition thereto of a **NEW SECTION**, to be known and de
5    ignated as Section 61-333, Idaho Code, and to read as follows:

6    61-333. AUTHORIZING CONTRACTS AMONG ELECTRIC SUPPLIERS TO RESOLVE TERR
7    TORIES, CONSUMERS AND TO TRANSFER FACILITIES. (1) Any electric supplier m
8    contract in writing with any other electric supplier for the purpose of all
9    cating territories, consumers, and future consumers between the suppliers a
10   designating which territories and consumers are to be served by which co
11   tracting supplier. The territories and consumers so allocated and designat
12   may include all or any portion of the territories and consumers which a
13   being served by any or all of the contracting suppliers at the time the co
14   tract is entered into, or which could be economically served by the th
15   existing facilities of any contracting supplier, or by reasonable and econom
16   extensions thereto.
17   (2) Any electric supplier may also contract in writing with any oth
18   electric supplier for the sale, exchange, transfer or lease of equipment
19   facilities located within territory which is the subject of any allocati
20   contracted for under subsection (1) of this section.
21   (3) Any contract validly entered pursuant to this section shall be bin
22   ing and shall be legally enforceable pursuant to this act, or by any oth
23   remedy provided by law.

24   SECTION 19. That Chapter 3, Title 61, Idaho Code, be, and the same
25   hereby amended by the addition thereto of a **NEW SECTION**, to be known and de
26   ignated as Section 61-334, Idaho Code, and to read as follows:

27   61-334. SPECIAL RULES OF INTERPRETATION. Nothing contained in this a
28   shall be construed to:
29   (1) Grant Idaho public utilities commission jurisdiction over cooper
30   tives or municipalities.
31   (2) Apply to controversies between two (2) or more public utilities.
32   (3) Preclude any electric supplier from extending electric service to i
33   own property or facilities or to another electric supplier for resale, pr
34   vided any line extension made under this clause shall not be considered
35   determining the right of suppliers to serve new service entrances under se
36   tion 61-332C, Idaho Code.

37   SECTION 20. That Chapter 3, Title 61, Idaho Code, be, and the same
38   hereby amended by the addition thereto of a **NEW SECTION**, to be known and de
39   ignated as Section 61-334A, Idaho Code, and to read as follows:

40   61-334A. LEGAL RELIEF FOR AGGRIEVED ELECTRIC CONSUMER. (1) Any consum
41   of electricity who feels aggrieved with his present electric service may app
42   to the district court of the county of his residence for an order to sh
43   cause why he should not be permitted to change supplier, and if the cou
44   finds and concludes that the electric service is inadequate and will n
45   likely be made adequate or that the rates are unreasonable and will not like
46   be made reasonable, the court may authorize the change to the new supplier.
47   (2) The present and prospective electric supplier shall both be made
48   party to any suit under this section.
49   (3) This section and any order hereunder shall not be construed to gra

10

1    any franchise or right to a public utility or cooperative to commence electr



2  service within a municipality where it does not already have such franchise
3  right.

4      SECTION 21.  That Chapter 3, Title 61, Idaho Code, be, and the same
5  hereby amended by the addition thereto of a **NEW SECTION**, to be known and de
6  ignated as Section 61-334B, Idaho Code, and to read as follows:

7      61-334B.  LEGAL  REMEDIES FOR VIOLATION OF THIS ACT. (1) Any electric su
8  plier whose rights under this act shall be violated or threatened with  viol
9  tion,  shall  be  entitled to  injunctive  relief against said violation up
10 proper complaint and proof in accordance with Idaho rules of  civil  procedu
11 in  district  court,  against the other electric supplier and any other pers
12 responsible for the violation.
13     (2)  In any suit for injunctive relief findings  and  conclusions  by  t
14 court  that  any  rules  under this act have been violated or threatened to
15 violated shall require findings and conclusions by  the  court  of  actual
16 threatened  irreparable  injury  as  to the electric supplier whose rights a
17 violated or threatened with violation as a basis for equitable relief  hereu
18 der.
19     (3)  The  injunctive relief to be granted under this section for violati
20 of this act shall be negative in form, enjoining further acts in violation
21 such  rules, shall be affirmative in form in requiring removal of any electr
22 connections, facilities or equipment that constitute the violation  and  sha
23 be a combination thereof necessary to enforce compliance with this act.
24     (4)  Any aggrieved party may also pursue any other remedy provided by la

25     SECTION 22.  An emergency existing therefor, which emergency is here
26 declared to exist, Sections 1 through 12 of this act shall be  in  full  for
27 and  effect on and after its passage and approval; Section 1 of this act sha
28 be null,  void and of no force and effect on and after March 1, 2001; and Se
29 tions 13 through 21 of this act shall be in full force and effect on and aft
30 March 1, 2001.

# Statement of Purpose / Fiscal Impact

STATEMENT OF PURPOSE
RS 10574C3

This Legislation will clarify that the purpose of the Electric
Supplier Stabilization Act is to confer certain immunities,
including antitrust immunity, upon electric suppliers who are in
compliance with the Act.  The Legislation will provide the Idaho
Public Utilities Commission with active supervisory authority over
certain electric supplier contracts, including contracts for
wheeling services.  The provisions of this Legislation shall be
effective upon passage and approval, and shall be null and void on
and after March 1, 2001, at which time the original provisions of
the Act will again be effective unless further amended or repealed
by legislative enactment.

FISCAL NOTE
There should be no impact on the General Fund or other state
government funds.

CONTACT:
Representative Bruce Newcomb
Senator Robert Geddes

332-1000

STATEMENT OF PURPOSE/FISCAL NOTE                    H1

**Exhibit B**

# HOUSE BILL NO. 142

View Daily Data Tracking History

View Bill Text

View Statement of Purpose / Fiscal Impact

Text to be added within a bill has been marked with Bold and Underline. Text to be removed has been marked with Strikethrough and Italic. How these codes are actually displayed will vary based on the browser software you are using.

**This sentence is marked with bold and underline to show added text.**

*This sentence is marked with strikethrough and italic, indicating text to be removed.*

# Daily Data Tracking History

H0142........................................................by STATE AFFAIRS
ELECTRIC SUPPLIER STABILIZATION ACT - Amends, repeals and adds to existing
law to modify the Electric Supplier Stabilization Act to bring it into
conformity with principles articulated by the Ninth Circuit Court of
Appeals in the 2000 decision of Snake River Valley Electric Association v.
PacifiCorp and State of Idaho; to provide that any member of a cooperative
association that provides electric service may apply to the district court
of the county where the member's service entrance is located for a
determination that the cooperative association's charges for electric
service to that member are fair, just, reasonable and are not
discriminatory or preferential; to provide circumstances when the court
will remand the matter to the cooperative association; to provide that any
consumer of a municipal electric system may apply to the district court of
the county where the consumer's service entrance is located for a
determination that the municipality's charges for electric service to that
consumer are fair, just and reasonable and not discriminatory or
preferential; and to provide circumstances when the court will remand the
matter to the municipality.

```
02/02    House intro - 1st rdg - to printing
02/05    Rpt prt - to St Aff
02/09    Rpt out - rec d/p - to 2nd rdg
02/12    2nd rdg - to 3rd rdg
02/15    3rd rdg - PASSED - 69-0-1
         AYES -- Barraclough, Barrett, Bedke, Bell, Bieter, Black, Boe, Bolz,
         Bradford, Bruneel, Callister, Campbell, Chase, Clark, Collins, Crow,
         Cuddy, Deal, Denney, Ellis, Ellsworth, Eskridge, Field(13),
         Field(20), Gagner, Gould, Hadley, Hammond, Harwood, Henbest, Higgins,
         Hornbeck, Jaquet, Jones, Kellogg, Kendell, Kunz, Lake, Langford,
         Loertscher, Mader, Marley, McKague, Montgomery, Mortensen, Moss,
         Moyle, Pearce, Pischner, Pomeroy, Raybould, Ridinger, Roberts,
         Robison, Sali, Schaefer, Sellman, Shepherd, Smith, Smylie, Stevenson,
         Stone, Swan, Tilman, Trail, Wheeler, Wood, Young, Mr. Speaker
         NAYS -- None
         Absent and excused -- Meyer
      Floor Sponsor -- Stevenson
      Title apvd - to Senate
02/16    Senate intro - 1st rdg - to St Aff
02/22    Rpt out - rec d/p - to 2nd rdg
02/23    2nd rdg - to 3rd rdg
02/26    3rd rdg - PASSED - 34-0-1
         AYES -- Andreason, Boatright, Branch(Bartlett), Brandt, Bunderson,
         Burtenshaw, Cameron, Danielson, Darrington, Deide, Dunklin, Frasure,
```

      Geddes, Goedde, Hawkins, Ingram, Ipsen, Keough, King-Barrutia, Lee,
      Lodge, Noh, Richardson, Risch, Sandy, Schroeder, Sims, Sorensen,
      Stegner, Stennett, Thorne, Wheeler, Whitworth, Williams,
      NAYS -- None
      Absent and excused -- Davis
    Floor Sponsors -- Lee & Noh
    Title apvd - to House
02/27    To enrol
02/28    Rpt enrol - Sp signed - Pres signed - to Governor
02/28    Governor signed
         Session Law Chapter 29
         Effective: 02/28/01

# Bill Text

| | | |       LEGISLATURE OF THE STATE OF IDAHO       | | | |
Fifty-sixth Legislature                  First Regular Session - 2001

IN THE HOUSE OF REPRESENTATIVES

HOUSE BILL NO. 142

BY STATE AFFAIRS COMMITTEE

```
 1                              AN ACT
 2   RELATING TO THE ELECTRIC SUPPLIER STABILIZATION ACT; REPEALING CHAPTER 1, LA
 3     OF THE FIRST EXTRAORDINARY SESSION OF 2000;  TO  PROVIDE  A  STATEMENT
 4     INTENT;  AMENDING  SECTION  61-332, IDAHO CODE, TO CLARIFY THE PURPOSES
 5     THE ELECTRIC SUPPLIER STABILIZATION ACT AND TO MAKE TECHNICAL CORRECTION
 6     AMENDING SECTION 61-332A, IDAHO CODE, TO REVISE DEFINITIONS, TO  DELETE
 7     REFERENCE TO OBSOLETE MATERIAL AND TO MAKE TECHNICAL CORRECTIONS; AMENDI
 8     SECTION  61-332B, IDAHO CODE, TO REQUIRE APPROVAL OF THE PUBLIC UTILITI
 9     COMMISSION FOR TRANSFERRING CONSUMERS;  AMENDING  SECTION  61-332C,  IDA
10     CODE,  TO  PROVIDE  PROVISIONS  FOR SELECTING AN ELECTRIC SUPPLIER FOR N
11     ELECTRIC SERVICE ENTRANCES AND TO  MAKE  TECHNICAL  CORRECTIONS;  AMENDI
12     CHAPTER 3, TITLE 61, IDAHO CODE, BY THE ADDITION OF A NEW SECTION 61-332
13     IDAHO  CODE,  TO  SUPERVISE  WHEELING  SERVICES;  AMENDING SECTION 61-33
14     IDAHO CODE, TO REQUIRE ELECTRIC SERVICE TERRITORY CONTRACTS  TO  BE  FIT
15     WITH  AND  APPROVED  BY  THE  PUBLIC  UTILITIES COMMISSION, TO PROVIDE F
16     NOTICE AND HEARING REGARDING CONTRACT APPROVAL AND TO MAKE TECHNICAL  CC
17     RECTIONS;  AMENDING SECTION 61-334, IDAHO CODE, TO PROVIDE THAT THE PUBI
18     UTILITIES COMMISSION HAS CERTAIN AUTHORITY  OVER  ELECTRIC  SUPPLIERS,
19     PROVIDE FOR APPLICATION OF PUBLIC UTILITIES LAW AND TO MAKE TECHNICAL CC
20     RECTIONS; REPEALING SECTION 61-334A, IDAHO CODE; AMENDING SECTION 61-334
21     IDAHO  CODE, TO REDESIGNATE THE SECTION, TO PROVIDE FOR FILING A COMPLAI
22     WITH THE PUBLIC UTILITIES COMMISSION, TO PROVIDE FOR NOTICE AND  HEARINC
23     TO PROVIDE REMEDIES AND TO MAKE TECHNICAL CORRECTIONS; AMENDING CHAPTER
24     TITLE  61,  IDAHO  CODE,  BY  THE ADDITION OF A NEW SECTION 61-334B, IDA
25     CODE, TO PROVIDE COMMISSION SUPERVISION AND AUTHORITY; AMENDING CHAPTER
26     TITLE 61, IDAHO CODE, BY THE ADDITION OF  A  NEW  SECTION  61-334C,  IDA
27     CODE,  TO  PROVIDE  ELECTRIC  SUPPLIER IMMUNITY; AMENDING SECTION 30-3-1
28     IDAHO CODE, TO PROVIDE THAT ANY MEMBER OF A COOPERATIVE  ASSOCIATION  TH
29     PROVIDES  ELECTRIC  SERVICE  MAY APPLY TO THE DISTRICT COURT OF THE COUN
30     WHERE THE MEMBER'S SERVICE ENTRANCE IS LOCATED FOR  A  DETERMINATION  TH
31     THE  COOPERATIVE  ASSOCIATION'S  CHARGES FOR ELECTRIC SERVICE TO THAT MEMB
32     ARE FAIR, JUST AND REASONABLE AND ARE NOT DISCRIMINATORY  OR  PREFERENTI
33     AND  TO  PROVIDE CIRCUMSTANCES WHEN THE COURT WILL REMAND THE MATTER TO 1
34     COOPERATIVE ASSOCIATION; AMENDING SECTION 50-325, IDAHO CODE,  TO  PROVI
35     THAT ANY CONSUMER OF A MUNICIPAL ELECTRIC SYSTEM MAY APPLY TO THE DISTRI
36     COURT OF THE COUNTY WHERE THE CONSUMER'S SERVICE ENTRANCE IS LOCATED FOF
```

```
37        DETERMINATION THAT THE MUNICIPALITY'S CHARGES FOR ELECTRIC SERVICE TO TH
38        CONSUMER ARE FAIR, JUST AND REASONABLE AND NOT DISCRIMINATORY OR PREFERE
39        TIAL, TO PROVIDE CIRCUMSTANCES WHEN THE COURT WILL REMAND THE MATTER
40        THE MUNICIPALITY AND TO MAKE A TECHNICAL CORRECTION; AND DECLARING
41        EMERGENCY.

42    Be It Enacted by the Legislature of the State of Idaho:

43        SECTION 1.  That Chapter 1, Laws of the First Extraordinary Session
44    2000, be, and the same is hereby repealed.
```

                                            2

```
1
2         SECTION 2.  LEGISLATIVE INTENT. The provision of a safe and reliable su
3     ply of electricity in a manner that prohibits the "pirating" of consumers  a
4     discourages duplication of facilities is essential to the well-being
5     Idaho's citizens and its economy. It was for these and other reasons that  t
6     legislature passed the Electric Supplier Stabilization Act in 1970. The legi
7     lature has been advised of federal antitrust litigation alleging that confo
8     mance with the provisions of this act does not confer federal antitrust  imm
9     nity upon parties in compliance with the act. The legislature finds that
10    negative judicial ruling would have the effect of repealing applicable  prov
11    sions of the act, undercutting the purposes for which this act was enacted.
12        It is and has been the intention of the legislature to confer antitru
13    immunity upon parties acting in compliance with the act under what is known
14    the state action doctrine. While the legislature believes that compliance wi
15    the existing provisions of this act confers such immunity, it has determin
16    to amend the act to more fully address this issue. The legislature therefo
17    finds that it is in the public interest to enact the following amendments.
18        It is the intent of the legislature in enacting Sections 14 and 15 of th
19    act that relevant court precedent in existence on the effective date of  th
20    act be applicable in the interpretation of Sections 30-3-14 and 50-325, Ida
21    Code. Such court precedent shall include, but not be limited to, Kiefer
22    City of Idaho Falls, 49 Idaho 458 (1930).

23        SECTION 3.  That Section 61-332, Idaho Code, be, and the same is here
24    amended to read as follows:

25        61-332.  PURPOSE OF ELECTRIC SUPPLIER STABILIZATION ACT. A. (1) This  a
26    includes sections 61-332, 61-332A, 61-332B, 61-332C, 61-333, 61-334, 61-334
27    and through 61-334BC, Idaho Code, as herein enacted, section 61-333A, Ida
28    Code, as herein amended, and sections 61-333B and 61-333C, Idaho Code,
29    already enacted, and shall be referred to herein as "this act" and may
30    cited and referred to as the "eElectric sSupplier sStabilization aAct."
31        B. (2) This act is and its amendments are designed to promote harmo
32    among and between electric suppliers furnishing electricity within the  sta
33    of Idaho, prohibit the "pirating" of customers consumers of another electr
34    supplier, discourage duplication of electric facilities, actively supervi
35    certain conduct of electric suppliers as it relates to this act, and stabili
36    the territories and customers consumers served with electricity by such ele
37    tric suppliers.

38        SECTION 4.  That Section 61-332A, Idaho Code, be, and the same is here
39    amended to read as follows:

40        61-332A.  DEFINITIONS FOR ELECTRIC SUPPLIER STABILIZATION ACT. As used
41    this act, unless the context requires otherwise:
42        (1.) "Public utility" means an electric utility regulated by the  Ida
43    public utilities commission.
44        (2.) "Cooperative" means a cooperative corporation furnishing electr
45    service in the state of Idaho to its consumer-members who own and operate  t
46    cooperative.
```

47    (3~) "Municipality" means any municipal corporation or quasi-municip
48  corporation furnishing electric service to ~the~~citizens~ the consumers of t
49  municipality in the state of Idaho.
50    (4~) "Electric supplier" means any public  utility, cooperative,
51  municipality supplying or intending to supply electric service to a consumer

3

1    (5~) "Electric service" means electricity furnished to an  ultimate  co
2  sumer by an electric supplier.
3    (6~) "Consumer" is any person, firm, corporation, or other entity recei
4  ing or intending to receive  electric service at a specific service entrance
5    (7~) "Service entrance" means the ~entrance~of~electric~service~f~
6  ~facilities~of~the~supplier~to~the~service~equipment~or~utilization~equipme~
7  ~of~the~consumer.~In~determining~"service~entrance"~reference~shall~be~made~
8  ~the~definition~of~"entrance~of~the~service~to~the~service~equipment~or~util~
9  ~sation~equipment"~as~defined~in~the~national~electrical~code~of~1965~ locati
10  on the consumer's property where the consumer's main disconnect  switch, fus
11  or other disconnect equipment exists, and which are intended to  provide  t
12  means of cutoff of the supply.
13    (8~) "New service entrance" means a service entrance not previous
14  served with electricity. A change, improvement, replacement,  enlargement,
15  change  in  location  of a service entrance shall not be deemed a "new servi
16  entrance" if utilized to serve any service or utilization equipment previous
17  served with electricity from the former service entrance, but  for  the  ~~new~~
18  provisions of this act shall be deemed the former "service entrance." A char
19  in consumer shall not be construed to make an existing service entrance a "r
20  service  entrance." A change, enlargement, or other modification of service
21  utilization equipment served from an existing service entrance  shall  not
22  construed to make it a "new service entrance."
23    (9~) "Transmission line," for the purposes of this act, means any ele
24  tric line of an electric supplier ~for~ carrying a voltage of sixty-nine (69)
25  or more.
26    (10~) "Service line," for the purposes of  this act, means any single
27  multi-phase  electric line of an electric supplier used for carrying less th
28  sixty-nine (69) KV and used or capable of use to provide electric service  f
29  a consumer.
30    (11~) "Existing service line" means any electric service line in existen
31  at the time of the event in question and constructed to supply a consumer th
32  could  be  lawfully  served by that electric supplier under this act. It sha
33  not mean any service line constructed to obtain an advantage under  this  ac
34  or to evade its purpose or terms.
35    (12) "Commission" means the Idaho public utilities commission.

36    SECTION  5.  That  Section 61-332B, Idaho Code, be, and the same is here
37  amended to read as follows:

38    61-332B.  ELECTRIC SUPPLIER PROHIBITED FROM SERVING CONSUMERS  OR  FORM
39  CONSUMERS OF ANOTHER ELECTRIC SUPPLIER. No electric supplier shall ~construe~
40  ~or~extend~facilities,~nor~make~any~electric~connections,~nor~permit~any~co~
41  ~nections~to~be~made~to~any~of~its~facilities~for~the~purpose~of~supplyi~
42  ~electric~service~nor~shall~it~ supply or furnish electric service to any  ele
43  tric service entrance that is then or had at any time previously been lawful
44  connected  for  electric  service  to facilities of another electric supplic
45  ~without~the~written~consent~of~such~other~electric~supplier;~provided,~he~
46  ~every,~(a)~such~other~electric~supplier~is~then,~or~was~previously~the~la~
47  ~supplier,~lawfully~connected~to~said~electric~service~entrance,~and~(b)~su~
48  ~other~electric~supplier~is~willing~and~able~to~provide~adequate~electric~se~
49  ~vice~ except as provided in this act.

50    SECTION 6.  That Section 61-332C, Idaho Code, be, and the same  is  here
51  amended to read as follows:

4

1   61-332C. ~~RULES~~ PROVISIONS FOR SELECTING ELECTRIC SUPPLIER FOR NEW ELE
2   TRIC SERVICE ENTRANCES. (1) In ~~the event more than one electric supplier~~
3   ~~willing and able to provide adequate electric service to a consumer at any~~
4   ~~electric service entrance, the following rules shall~~ determining which ele
5   tric supplier will provide electric service for a new service entrance, t
6   following provisions will govern:
7       ~~1.~~ (a) If no electric supplier has an existing service line within o
8   thousand three hundred ~~and~~ twenty (1,320) feet ~~(1,320 ft.)~~ of ~~the~~ a n
9   service entrance the consumer shall have the right of choice of electr
10  supplier.
11      ~~2.~~ (b) If only one (1) electric supplier has an existing service li
12  within one thousand three hundred ~~and~~ twenty (1,320) feet ~~(1,320 ft.)~~
13  the new service entrance that electric supplier shall have the right
14  serve the consumer at the new service entrance.
15      ~~3.~~ (c) If more than one (1) electric supplier has an existing service li
16  within one thousand three hundred ~~and~~ twenty (1,320) feet ~~(1,320 ft.)~~
17  the new service entrance the electric supplier whose existing service li
18  is nearest the new service entrance shall have the right to serve the co
19  sumer at the new service entrance.
20      ~~4.~~ (d) If more than one (1) electric supplier has an existing service li
21  within one thousand three hundred ~~and~~ twenty (1,320) feet ~~(1,320 ft.)~~
22  the new service entrance ~~and the existing service lines are equidista~~
23  ~~from the service entrance, or~~ and it cannot be determined by proof  whi
24  service line is nearest the new service entrance, then the consumer ~~who~~
25  ~~have the right of choice of supplier~~ or an electric supplier shall pet
26  tion the commission for an order determining which electric supplier
27  nearest the new service entrance.
28      (e) For purposes of this act distances shall mean the exact distance me
29  sured using standard land surveying practices as established by the boa
30  of professional engineers and land surveyors of the state of Idaho.
31      (2) No electric supplier shall construct or extend facilities, nor ma
32  any electric connections, nor permit any connection to be made from any of i
33  facilities to any new service entrance nor shall it supply electric service
34  any new service entrance in violation of the ~~rules herein, without the writt~~
35  ~~consent of any electric supplier with a prior right under the rules to se~~
36  ~~the consumer at the new service locations~~ provisions of this section, exce
37  as ordered by the commission pursuant to this act.

38      SECTION 7. That Chapter 3, Title 61, Idaho Code, be, and the same
39  hereby amended by the addition thereto of a NEW SECTION, to be known and de
40  ignated as Section 61-332D, Idaho Code, and to read as follows:

41      61-332D. WHEELING SERVICES. (1) An electric supplier shall not
42  required to provide wheeling service over its system if such service  resul
43  in retail wheeling and/or a sham wholesale transaction.
44      (2) An electric supplier declining to furnish wheeling service pursua
45  to this section shall petition the commission for review of the electr
46  supplier's action in respect to a request for such service. The commissi
47  shall, upon notice and opportunity for hearing, review the electric supplier
48  action for consistency with the purposes and provisions of this act, and iss
49  an order in accordance with its finding, ordering either that the wheeli
50  service shall, or shall not, be required.

51      SECTION 8. That Section 61-333, Idaho Code, be, and the same is here
52  amended to read as follows:

5

1       61-333. AUTHORIZING CONTRACTS AMONG ELECTRIC SUPPLIERS TO RESOLVE  TERR



2   TORIES, CONSUMERS AND TO TRANSFER FACILITIES. A. (1) Any electric supplier m
3   contract in writing with any other electric supplier for the purpose of all
4   cating territories, consumers, and future consumers between the **electric** su
5   pliers and designating which territories and consumers are to be served
6   which contracting **electric** supplier. The territories and consumers so all
7   cated and designated may include all or any portion of the territories a
8   consumers which are being served by any or all of the contracting **electr**
9   suppliers at the time the contract is entered into, or which could be econom
10  cally served by the then existing facilities of any contracting **electric** su
11  plier, or by reasonable and economic extensions thereto. All _such contrac_
12  shall _be filed with_ the _commission. The commission shall, after notice_ a
13  _opportunity for hearing, review and approve or reject contracts between coc_
14  _eratives, between cooperatives and public utilities and between public util_
15  _ties. The commission shall, after notice and opportunity for_ hearing, revi
16  and _approve or reject contracts between municipalities and cooperatives,_
17  _well as between municipalities and public utilities, provided however, t_
18  _commission shall have jurisdiction only over cooperatives and public utiliti_
19  _in such approvals. The commission shall approve such contracts only upon fin_
20  _ing that the allocation of territories or consumers is in conformance with t_
21  _provisions and purposes of this act._
22  B. (2) Any electric supplier may also contract in writing with any oth
23  electric supplier for the sale, exchange, transfer, or lease of equipment
24  facilities located within territory which is the subject of any allocati
25  contracted for under subsection ~~A hereof. C. Any~~ (1) of _this section and_ a
26  contract validly entered ~~pursuant to this section~~ _into_ and _approved by t_
27  _commission after notice and opportunity for hearing_ shall be binding and sha
28  be legally enforceable pursuant to this act, or by any other remedy provid
29  by law.

30  SECTION 9. That Section 61-334, Idaho Code, be, and the same is here
31  amended to read as follows:

32  61-334. SPECIAL RULES OF INTERPRETATION. Nothing contained in this a
33  shall be construed to:
34  _(1.)_ Grant ~~Idaho public utilities~~ the commission jurisdiction over coc
35  eratives or municipalities _except as authorized in this_ act.
36  _(2.)_ Apply to controversies between two (2) or more public utilities.
37  _(3.)_ Preclude any electric supplier from extending electric service
38  its own property or facilities or to another electric supplier for resal
39  provided any line extension made under this clause shall not be considered
40  determining the right of **electric** suppliers to serve new service entranc
41  under section 61-332C, Idaho Code.
42  _(4) Abrogate or limit the authority of any municipality under any oth_
43  _statute or law with respect to the municipality providing electricity to t_
44  _municipality or the consumers of the municipality within the boundaries of t_
45  _municipality._

46  SECTION 10. That Section 61-334A, Idaho Code, be, and the same is here
47  repealed.

48  SECTION 11. That Section 61-334B, Idaho Code, be, and the same is here
49  amended to read as follows:

50  61-334B. ~~LEGAL~~ REMEDIES FOR VIOLATION OF THIS ACT. A. (1) Any electr

6

1  supplier _or consumer_ whose rights under this act shall be violated or threa
2  ened with violation~~, shall be entitled to injunctive relief against s~~
3  ~~violation upon proper~~ may _file a_ complaint ~~and proof in accordance with Id~~
4  ~~rules of civil procedure in district court, against the other~~ _with_ the co
5  _mission against an_ electric supplier and any other person responsible for t

6   violation.

7   ~~B.(2)~~ ~~In any suit for injunctive relief~~ **After** notice **and opportunity f**
8   **hearing, the commission shall make** findings **of** fact and conclusions ~~by t~~
9   ~~court that any rules under~~ **of** law **determining whether** this act **or any orde**
10   **issued under this act** have been violated or threatened to be violated a
11   shall ~~require findings and conclusions by the court of~~ **determine whether the**
12   **is** actual or threatened irreparable injury as to the electric supplier **or co**
13   **sumer** whose rights are violated or threatened with violation as a basis **f**
14   ~~equitable relief hereunder~~ **granting relief.**

15   ~~C.(3)~~ The ~~injunctive~~ relief to be granted under this section for viol
16   tion of this act shall ~~be negative in form, enjoining~~ **forbid** further acts
17   violation of such ~~rules~~ **orders**, shall ~~be affirmative in form in requiri~~
18   order **the** removal of any electric connections, facilities or equipment th
19   constitute the violation, ~~and shall be~~ **or** a combination thereof necessary
20   enforce compliance with this act.

21   ~~D. Any aggrieved party may also pursue any other remedy provided by law~~

22   SECTION 12. That Chapter 3, Title 61, Idaho Code, be, and the same
23   hereby amended by the addition thereto of a **NEW SECTION**, to be known and de
24   ignated as Section 61-334B, Idaho Code, and to read as follows:

25   61-334B. COMMISSION SUPERVISION AND AUTHORITY. (1) Upon a petition by
26   electric supplier or consumer for an exception to the provisions of secti
27   61-332B or 61-332C(1)(a), (b) or (c), Idaho Code, the commission shall iss
28   an order granting such request only upon finding that granting the request
29   consistent with the purposes of this act as set forth in section 61-332, Ida
30   Code.
31   (2) The commission shall have power to issue authorizations and ordc
32   requested under this act, or to refuse to issue the same, and may attach
33   any authorization and order as a condition of approval such terms and cond
34   tions as it determines are consistent with the purposes and provisions of th
35   act.
36   (3) In all matters arising under this act, which are submitted to t
37   commission for decision, order or review, the procedure shall be governed
38   chapters 6 and 7, title 61, Idaho Code, and the commission's rules of proc
39   dure. Reconsideration of, appeal from, enforcement of, and stay of ordc
40   issued pursuant to this act shall be governed by law as for other orders
41   the commission in other matters.

42   SECTION 13. That Chapter 3, Title 61, Idaho Code, be, and the same
43   hereby amended by the addition thereto of a **NEW SECTION**, to be known and dc
44   ignated as Section 61-334C, Idaho Code, and to read as follows:

45   61-334C. ELECTRIC SUPPLIER IMMUNITY. No action under the Idaho compet
46   tion act, chapter 1, title 48, Idaho Code, or any other provision or doctri
47   of law of the state of Idaho shall lie against an electric supplier for acti
48   or inaction that is in compliance with the provisions of this act or any co
49   mission order issued pursuant to this act.

50   SECTION 14. That Section 30-3-14, Idaho Code, be, and the same is here

7

1   amended to read as follows:

2   30-3-14. JUDICIAL RELIEF. (1) If for any reason it is impractical
3   impossible for any corporation to call or conduct a meeting of its member
4   delegates or directors, or otherwise obtain their consent, in the manner pr
5   scribed by its articles, bylaws or this act, then upon petition of a directc
6   officer, delegate, or member, the district court may order that such a meeti
7   be called or that a written ballot or other form of obtaining the vote of mc
8   bers, delegates or directors be authorized, in such a manner as the cou
9   finds fair and equitable under the circumstances.

10  (2)  The court shall, in an order issued pursuant to this section, provi
11  for a method of notice reasonably designed to give actual notice to  all  pe
12  sons  who  would be entitled to notice of a meeting held pursuant to the art
13  cles, bylaws and this act, whether or not the method results in actual  noti
14  to  all  such persons or conforms to the notice requirements that would othe
15  wise apply. In a proceeding under this section the court may determine who t
16  members or directors are.
17  (3)  The order issued pursuant to  this  section  may  dispense  with  a
18  requirements  relating  to  the  holding of or voting at meetings or obtaini
19  votes, including any requirement as to quorums or as to the number or percer
20  age of votes needed for approval, that would otherwise be imposed by the art
21  cles, bylaws or this act.
22  (4)  Whenever practical, any order issued pursuant to this  section  sha
23  limit  the  subject matter of meetings or other forms of consent authorized
24  items, including amendments to the articles or bylaws, the resolution of whi
25  will or may enable the corporation to continue managing  its  affairs  witho
26  further  resort  to  this  section; provided however, that an order under th
27  section may also authorize the obtaining of whatever votes and  approvals  a
28  necessary for the dissolution, merger or sale of assets.
29  (5)  Any  meeting or other method of obtaining the vote of members, del
30  gates or directors conducted pursuant to an order issued under  this  sectic
31  and that complies with all the provisions of such order, is for all purposes
32  valid  meeting  or vote, as the case may be, and shall have the same force a
33  effect as if it complied with  every  requirement  imposed  by  the  article
34  bylaws and this act.
35  **(6)  Any  member  of a cooperative association that provides electric se**
36  **vice may apply to the district court of the county where the member's  servi**
37  **entrance  is  located  for  a determination that the cooperative association**
38  **charges for electric service to that member are fair, just and reasonable  a**
39  **are not discriminatory or preferential. In the event that the court determin**
40  **that the rate is not fair, just and reasonable or is discriminatory or prefe**
41  **ential,  the  court  shall remand the matter to the cooperative association**
42  **alter or amend the rate in conformance with the standards set forth herein.**

43  SECTION 15.  That Section 50-325, Idaho Code, be, and the same  is  here
44  amended to read as follows:

45  50-325.  POWER PLANTS -- POWER DISTRIBUTION. **(1)** Cities shall have authc
46  ity:  to  acquire,  own,  maintain and operate electric power plants, purcha
47  electric power, and provide for distribution to the residents of the city, a
48  to sell excess power subject to the provisions of section 50-327, **Idaho Code**
49  **(2)  Any consumer of a municipal electric system may apply to the distri**
50  **court of the county where the consumer's service entrance  is  located  for**
51  **determination  that  the  municipality's  charges for electric service to th**
52  **consumer are fair, just and reasonable and are not discriminatory or prefere**

8

1  **tial. In the event that the court determines that the rate is not  fair,  ju**
2  **and  reasonable  or  is discriminatory or preferential, the court shall rema**
3  **the matter to the municipality to alter or amend such rate in conformance wi**
4  **the determination of the court.**

5  SECTION 16.  An emergency existing therefor,  which  emergency  is  here
6  declared to exist, this act shall be in full force and effect on and after i
7  passage and approval.

# Statement of Purpose / Fiscal Impact

STATEMENT OF PURPOSE
RS10858C3

This Legislation repeals House Bill No. 1 of the Extradordinary
Session of 2000 and will clarify that the purpose of the
Electric Supplier Stabilization Act is to confer certain
immunities, including antitrust immunity, upon electric
suppliers who are in compliance with the Act. The Legislation
will provide the Idaho Public Utilities Commission with active
supervisory authority over certain electric supplier contracts,
including contracts for wheeling services. The legislation also
permits members of cooperative associations or consumers of
municipal electric systems to apply to state district court for
a determination that cooperative's or municipality's charges for
electric service are fair, just and reasonable and are not
discriminatory or preferential. The provisions of this
Legislation shall be effective upon passage and approval.

FISCAL IMPACT

There should be no impact on the General Fund or other state
government funds.
Contact
    Name:   Rep. Bert Stevenson
    Phone:332 1240
    Name:   Senator Robert Lee
    Phone:332 1369

STATEMENT OF PURPOSE/FISCAL NOTE      H 142

**Exhibit C**

Office of the Secretary
Service Date
March 21, 2001

# BEFORE THE IDAHO PUBLIC UTILITIES COMMISSION

IN THE MATTER OF THE APPLICATION OF )
AVISTA CORPORATION, DBA AVISTA )   **CASE NO. AVU-E-01-2**
UTILITIES, FOR AN ORDER APPROVING A )
SERVICE TERRITORY AGREEMENT )
BETWEEN AVISTA UTILITIES AND )
KOOTENAI ELECTRIC COOPERATIVE, INC. )   **ORDER NO. 28681**
)

On January 30, 2001, Avista Corporation (dba Avista Utilities) filed an Application for approval of a Service Territory Agreement between itself and Kootenai Electric Cooperative, Inc. The Service Territory Agreement adopts a methodology to determine which of the two electric suppliers will provide service to residential development containing six or more parcels. On February 6, 2001, Avista supplemented its Application by a submitting an "Addendum" to Service Territory Agreement.

On February 16, 2001, the Commission issued a Notice of Application and a Notice of Modified Procedure in this matter. The Commission requested that interested persons submit written comments no later than March 9, 2001. The Commission Staff submitted the only written comments and recommended that the Commission approve the Agreement. Based upon our review of the Service Territory Agreement, its Addendum and the lack of any opposition, we find that it is appropriate to approve the Agreement.

## BACKGROUND

In its Application, Avista requested that the Commission review and approve the Service Territory Agreement and its Addendum pursuant to the Idaho Electric Supplier Stabilization Act (ESSA), *Idaho Code* § 61-333(1) (2001). In December 2000 and again last month, the Idaho Legislature amended portions of the ESSA. In particular, *Idaho Code* § 61-333 was amended to provide that all service agreements which allocate territory or customers between electric suppliers (such as Avista and Kootenai Electric) be filed with the Commission. *Idaho Code* § 61-333(1) now provides in pertinent part that

> the commission shall after notice and opportunity for hearing, review and approve or reject [such] contracts...between cooperatives and public utilities....the commission shall approve such contracts only upon

subdivisions." Staff Comments at 6. Staff also concluded that the Agreement is in compliance with the intent of the ESSA.

## DISCUSSION

After reviewing the Application, the Service Territory Agreement and its Addendum, and the pertinent provisions of the ESSA, we find that the Service Territory Agreement should be approved. We note that there were no opposing comments and the only comment submitted supported approval of the Agreement. Avista and the Staff assert that the Agreement reduces the possibility of disputes arising between Avista and Kootenai Electric concerning the provision of electrical service to residential subdivisions. We agree and find that the Service Territory Agreement promotes "harmony among and between electrical supplier furnishing electricity within the state of Idaho." *Idaho Code* § 61-332(2) (2001). We also find that the Agreement discourages duplication of electrical facilities by allocation of residential customers. *Id.* at 1. Consequently, we conclude that the Service Territory Agreement is in conformance with the purposes of the ESSA.

## ORDER

IT IS THEREFORE ORDERED that Avista Corporation's Application for approval of a Service Territory Agreement between Avista Utilities and Kootenai Electric Cooperative, is approved. More specifically, the Commission approves the Service Territory Agreement dated February 15, 1991 and its Addendum executed on or about August 7, 1991.

IT IS FURTHER ORDERED that pursuant to the terms of the Service Territory Agreement, the Agreement shall continue in force until February 15, 2011.

THIS IS A FINAL ORDER. Any person interested in this Order (or in issues finally decided by this Order) or in interlocutory Orders previously issued in this Case No. AVU-E-01-2 may petition for reconsideration within twenty-one (21) days of the service date of this Order with regard to any matter decided in this order or in interlocutory Orders previously issued in this Case No. AVU-E-01-2. Within seven (7) days after any person has petitioned for reconsideration, any other person may cross-petition for reconsideration. See *Idaho Code* § 61-626.

**Exhibit D**



Office of the Secretary
Service Date
March 22, 2001

# BEFORE THE IDAHO PUBLIC UTILITIES COMMISSION

IN THE MATTER OF THE APPLICATION TO )
APPROVE THE SERVICE TERRITORY )    **CASE NO. AVU-E-01-3**
AGREEMENT BETWEEN AVISTA AND )
CLEARWATER POWER COMPANY )
                                             )
                                             )    **ORDER NO. 28677**

On February 1, 2001, Avista filed an Application for approval of a Service Territory Agreement between itself and Clearwater Power Company. Submission of the Application was prompted by amendments to the Electric Supplier Stabilization Act (ESSA) enacted in December 2000.[1] In an Order dated February 16, 2001, the Commission issued a Notice of Application and a Notice of Modified Procedure. Only the Commission Staff submitted comments, which supported adoption of the Service Territory Agreement. In this Order the Commission approves the Service Territory Agreement as set out in greater detail below.

## THE SETTLEMENT AGREEMENT

The Service Territory Agreement submitted for the Commission's review was a settlement agreement executed on July 12, 1993. This agreement was reached after Clearwater filed a complaint against Washington Water Power Company (now known as Avista) in the Second Judicial District and later in the United States District Court in 1992. Clearwater alleged that Washington Water Power had violated the Electric Suppliers Stabilization Act by providing electrical service to an area commonly known as the Vista Addition and Vista Addition Subdivision ("Vista") in the city of Moscow. After Washington Water Power filed a

---

[1] Following submission of the Application, the Idaho Legislature approved and the governor signed into law HB 142. HB 142 removed the sunset provision from the ESSA legislation enacted in December 2000. In particular, *Idaho Code* § 61-333 was amended to read in pertinent part:

> The commission shall after Notice and opportunity for hearing, review and approve or reject [such] contracts...between cooperatives and utilities.... The commission shall approve such contracts upon finding that the allocation of territories or customers is in conformance with the provisions and purposes of this Act.

*Idaho Code* § 61-333(1)(amended 2001).



## DISCUSSION

After reviewing the Application, the Service Territory Agreement and the pertinent provisions of the ESSA, we find that the Service Territory Agreement should be approved. We note that there were no opposing comments and the only comments submitted supported approval of the Agreement. Avista and Staff agree that the Agreement reduces the possibility of disputes arising between Avista and Clearwater Power concerning the provision of electrical service to residential subdivisions. We agree and find that the Service Territory Agreement promotes "harmony among and between electrical suppliers furnishing electricity within the state of Idaho." *Idaho Code* § 61-332(2) (2001). We also find that the Agreement discourages "duplication of electrical facilities" by allocating residential customers. *Id.* Consequently, we conclude that the Service Territory Agreement is in conformance with the purposes of the ESSA.

## ORDER

IT IS HEREBY ORDERED that Avista Corporation's Application for approval of a Service Territory Agreement formed on July 12, 1993, between Avista Utility and Clearwater Power Company is approved.

THIS IS A FINAL ORDER. Any person interested in this Order (or in issues finally decided by this Order) or in interlocutory Orders previously issued in this Case No. AVU-E-01-3 may petition for reconsideration within twenty-one (21) days of the service date of this Order with regard to any matter decided in this order or in interlocutory Orders previously issued in this Case No. AVU-E01-3. For purposes of filing a petition for reconsideration, this order shall become effective as of the service date. *Idaho Code* § 61-626. Within seven (7) days after any person has petitioned for reconsideration, any other person may cross-petition for reconsideration. See *Idaho Code* § 61-626.

**Exhibit E**

Office of the Secretary
Service Date
October 30, 2001

# BEFORE THE IDAHO PUBLIC UTILITIES COMMISSION

RECEIVED

| | |
|---|---|
| IN THE MATTER OF THE PETITION BY PACIFICORP FOR AN ORDER DETER-MINING THAT PACIFICORP IS NOT REQUIRED TO PROVIDE WHEELING SERVICE TO SNAKE RIVER VALLEY ELECTRIC ASSOCIATION. | ) ) ) ) ) ) ) ) |

OCT 31 2001

OFFICE OF THE
ATTORNEY GENERAL

**CASE NO. PAC-E-01-6**

**NOTICE OF
PREHEARING CONFERENCE**

**ORDER NO. 28888**

This case was initiated when PacifiCorp filed a petition pursuant to *Idaho Code* § 61-332D seeking review of PacifiCorp's refusal to provide electric wheeling service to Snake River Valley Electric Association (Snake River). Snake River filed a Motion to Dismiss PacifiCorp's petition, and PacifiCorp subsequently filed a Motion for Summary Judgment on its petition. The Idaho Attorney General filed a Petition to Intervene, but "only in the limited context of opposing Snake River's present motion [to dismiss]." Petition to Intervene, p. 2. The Commission issued Order No. 28807 granting the Attorney General's Petition to Intervene for the limited purpose stated in his petition.

The Commission heard oral argument on both the Motion to Dismiss and the Motion for Summary Judgment on September 28, 2001. By this Order the Commission denies Snake River's Motion to Dismiss and also denies PacifiCorp's Motion for Summary Judgment. The Motion to Dismiss must be denied because there is no legal basis for the Commission to disregard its statutory duty to review PacifiCorp's action "for consistency with the purposes and provisions of [the Electric Supplier Stabilization Act]." *Idaho Code* § 61-332D(2). The Motion for Summary Judgment is denied because the record does not demonstrate all material facts are undisputed. The Commission will convene a prehearing conference on November 20, 2001, to assist the parties in formulating the issues, obtain stipulations as to undisputed facts, schedule a hearing, and for any other purpose set forth in Commission Rule of Procedure 211, IDAPA 31.01.01.211.

## HISTORY

### A. The Antitrust Action

The genesis of this case predates by several years the petition PacifiCorp filed with the Commission. Snake River in 1997 initiated an action in U.S. District Court after PacifiCorp



Court stated it is irrelevant that the ESSA did not *expressly* prohibit retail wheeling. *Snake River Valley Elec. Ass'n*, 238 F.3d at 1193.

The appellate court reversed the District Court, however, finding that the second prong of the *MidCal* test was not met, i.e., that the state did not "exercise ultimate control over the challenged anti-competitive conduct." *Snake River Valley Elec. Ass'n*, 238 F.3d at 1193. The Court concluded that "PacifiCorp can, consistent with ESSA, avoid competition for its customers simply by declining to consent [to wheel electricity]—an act undertaken without review by any state agency." *Snake River Valley Elec. Ass'n*, 238 F.3d at 1194. The Court found that such a decision is "wholly within the utility's control and without state supervision the state has, in effect, given the utility partial control over the no-competition policy." *Id.* The Court also stated "it should be clear that Idaho's situation, . . . could be addressed by legislative action providing for supervision." *Snake River Valley Elec. Ass'n*, 238 F.3d at 1195.

### B. Legislative Response

In response to the Circuit Court's decision, the Idaho Legislature amended the ESSA to address the deficiency identified by the Court. First, a section was added clearly stating that an electric supplier is not required to provide retail wheeling. Section 61-332D(1) now states that "an electric supplier shall not be required to provide wheeling service over a system if such service results in retail wheeling and/or a sham wholesale transaction." Second, the legislature provided for oversight by the Commission when a regulated utility denies a request for wheeling service. Paragraph 2 of Section 61-332D requires the Commission to, "upon notice and opportunity for hearing, review the electric supplier's action for consistency with the purposes and provisions of this act, and issue an order in accordance with its finding, ordering either that the wheeling service shall, or shall not, be required."

### C. The Removal Action

On April 13, 2001, PacifiCorp filed a Petition pursuant to Section 61-332D(2), asking the Commission to review PacifiCorp's action in denying Snake River's request for wheeling service, and an order determining that PacifiCorp is not required to provide the wheeling service. Rather than file an answer to PacifiCorp's Petition, Snake River on May 7, 2001 filed a Notice of Removal of State (IPUC) Case No. PAC-E-01-6 in the United States District Court, District of Idaho, which removed the case to the federal court. PacifiCorp filed a Motion to Remand the case back to the Commission, and following oral arguments on June 27, 2001, the U.S. District

Act enacted in 1992. Section 212(h) of the Federal Power Act, codified at 16 U.S.C. § 824K(h) prohibits the Federal Energy Regulatory Commission (FERC) from ordering retail wheeling or sham wholesale transactions. The provision provides that FERC cannot issue an order for wheeling which shall "be conditioned upon or require the transmission of electric energy: (1) directly to an ultimate consumer or (2) to, or for the benefit of, an entity if such an electric energy would be sold by such entity directly to an ultimate consumer, unless: . . ." certain conditions apply, none of which are applicable here.

PacifiCorp also cites a FERC decision to support its assertion that Snake River's transmission request amounts to retail wheeling or a sham wholesale transaction. According to PacifiCorp, FERC "has concluded that redundant meters do not constitute distribution facilities, and that wheeling to such a 'system' would constitute a sham wholesale transaction." PacifiCorp Petition, p. 6 citing *City of Palm Springs*, 76 FERC ¶ 61, 127 (July 31, 1996). Finally, PacifiCorp contends that "wheeling to meters installed or acquired by [Snake River] for the purpose of 'receiving' and then 'reselling' power wheeled by PacifiCorp to those customer locations would constitute retail wheeling and/or a sham wholesale transaction under *Idaho Code* § 61-332D." PacifiCorp Petition, p. 6.

Snake River filed a Motion to Dismiss PacifiCorp's petition on July 9, 2001.

## SNAKE RIVER'S MOTION TO DISMISS

As stated by its counsel during oral argument, Snake River filed its Motion to Dismiss on two separate grounds: "first, the question of the jurisdiction of the state Commission over wholesale transactions, and secondly, the issue that the actual matters that PacifiCorp is raising are *res judicata* based on the findings of fact made by the federal courts in the federal proceedings." Tr. p. 7. Snake River argues PacifiCorp's petition should be dismissed "because it raises federal issues as to the applicability of the federal antitrust laws to PacifiCorp, and seeks an improper end-run around long standing litigation between [Snake River] and PacifiCorp in the U.S. District Court for Idaho, and in the U.S. Court of Appeals for the Ninth Circuit on appeal therefrom, involving the application of the Federal Antitrust laws to PacifiCorp. . . ." Snake River also contends PacifiCorp's petition "improperly requests the Commission to consider wholesale wheeling issues over which it lacks jurisdiction under the commerce clause of the U.S. Constitution and the Federal Power Act." Snake River Motion and Brief, p. 2. Snake River characterizes PacifiCorp's petition as a "transparent attempt to have the State Commission

that would result in retail wheeling or sham wholesale transactions, 16 U.S.C. § 824k(h), PacifiCorp contends "it is disingenuous for [Snake River] to argue that FERC has exclusive jurisdiction over the question of whether that wheeling should be required." PacifiCorp Answer to Motion to Dismiss, p. 16.

The Office of the Idaho Attorney General also responded to Snake River's Motion to Dismiss. The Attorney General noted that *Idaho Code* § 61-332D was enacted in response to the decision of the Ninth Circuit Court, where the court "concluded that the State of Idaho did not adequately supervise the allegedly anti-competitive conduct prescribed by ESSA's provisions." Attorney General's Answer to Motion to Dismiss, p. 2. Quoting the court where it said "Idaho's situation . . . could be addressed by legislative action providing for supervision," the Attorney General contends the "Idaho Legislature promptly responded to the Ninth Circuit's invitation, enacting HB 142," amending the ESSA. Attorney General's Answer to Motion to Dismiss, p. 2. According to the Attorney General, "[t]his Section establishes one new way in which the State of Idaho, through the Commission, intends to adequately supervise the policies underlying ESSA." Attorney General's Answer to Motion to Dismiss, p. 3. If Snake River were to prevail on its Motion to Dismiss, argues the Attorney General, the Commission would avoid its responsibility to apply *Idaho Code* § 61-332D and analyze and apply the provisions of the ESSA. "Such a result would be to stymie the State of Idaho's interest in properly supervising the policies underlying ESSA. This consequence runs counter to the Legislature's goals and intent in amending ESSA. . . ." Attorney General's Answer to Motion to Dismiss, pp. 3-4.

## COMMISSION DECISION ON MOTION TO DISMISS

There can be little doubt regarding the authority of the Commission to hear a petition filed pursuant to Section 61-332D. That section *requires* an electric supplier that denies a wheeling request to file a petition with the Commission, and also *requires* the Commission to "review the electric supplier's actions for consistency with the purposes and provisions of this act." A grant of authority to the Commission by the legislature could hardly be more direct.

Snake River's first ground for dismissal purportedly raises "the question of the jurisdiction of the state commission over wholesale transactions." Tr. p. 7. Although the Federal Power Act enacted in 1992 authorizes FERC to regulate the terms for access to wholesale transmission services, the Act did not affect "any authority of any State or local government under State law concerning the transmission of electric energy directly to an ultimate consumer."

is prohibited from requiring retail wheeling; that is, the transmission of electric energy directly to an ultimate consumer. The Commission is also prohibited from requiring what can be called sham wholesale wheeling; that is, transmission of electric energy to an entity for resale to an ultimate consumer in instances in which the substance of the transaction amounts to retail wheeling because wholesale sales to the entity is in fact a subterfuge intended to circumvent the ban on retail wheeling.

*City of Palm Springs*, 76 FERC ¶ 61, 127 at p. 14.

When asked to review proposed transmission requests, FERC stated it "must ensure that, in a particular fact pattern in an individual case, it does not allow or approve transactions that clearly are nothing more than an indirect sale to an ultimate consumer formulated for the purposes of circumventing the statutory prohibition." FERC accordingly said it "should be sensitive to proposed transactions which in form meet the technical requirements of a sale for resale but which are, in economic substance, a retail sale to an end-user." It is in this context that FERC stated "Congress undoubtedly intended [FERC] to look at the substance of each transaction, not just the form, to detect subterfuges." Thus FERC was making clear its own responsibility to analyze proposed transactions brought to it to detect subterfuge. That is not the same as concluding as a matter of law that FERC exclusively has jurisdiction to analyze the character of proposed transmission transactions in each state.

In fact, the principal issue in Palm Springs is identical to the one presented by PacifiCorp's petition in this case: is the requested transmission service retail wheeling and thus one not permitted by law? Like FERC, this Commission is directed by applicable law to review the nature of the proposed service to make a determination. *Idaho* Code § 61-332D(2). The Commission's role cannot be defeated by a mere allegation that the service is a wholesale service and thus is outside the jurisdiction of the Commission. Instead, the Commission will look at the substance of each transaction, and will not accept without question one party's characterization of it, to determine whether it is consistent with the purposes and provisions of the ESSA.

The second ground for Snake River's Motion is related to the first. Snake River asserts "that the actual matters that PacifiCorp is raising . . . here are *res judicata* based on the findings of fact made by the federal court in the federal proceedings earlier." Tr. p. 7. Snake River claims PacifiCorp admitted, and the federal courts found, that Snake River is a wholesale supplier of electricity and therefore its request for wheeling service must be for wholesale

## PACIFICORP'S MOTION FOR SUMMARY JUDGMENT

The issues framed by the initial pleadings (PacifiCorp's Petition and Snake River's Answer and Motion to Dismiss) and the parties' arguments appear again in PacifiCorp's Motion for Summary Judgment and Snake River's answer. By its motion, PacifiCorp asks "for summary judgment in favor of PacifiCorp and an order declaring that PacifiCorp's actions in respect to a request by Snake River . . . for certain wheeling service is consistent with the purposes and provisions of ESSA and that PacifiCorp shall not be required to provide a wheeling service that [Snake River] seeks." PacifiCorp Motion, p. 1. PacifiCorp contends it is undisputed that wheeling power "to meters installed or acquired by Snake River for the purpose of 'receiving' and then 'reselling' power wheeled by PacifiCorp to those customer locations would constitute retail wheeling and/or a sham wholesale transaction." PacifiCorp contends it is entitled to judgment as a matter of law pursuant to *Idaho Code* § 61-332D.

PacifiCorp asserts there is no factual dispute regarding the nature of the wheeling service requested by Snake River. Included as attachments to PacifiCorp's Motion are representations by Snake River regarding the receipt and delivery points for the power PacifiCorp was asked to wheel. According to the provided attachments, Snake River represented the "outside source of power would be delivered at so-called receipt points where Utah Power and PacifiCorp are interconnected with other outside systems." Delivery points of the wheeled power for customers would be "the existing delivery points on [PacifiCorp's] system to each of the members of [Snake River]." If those facts are undisputed, and if such an arrangement constitutes retail wheeling or a sham wholesale transaction, PacifiCorp would be entitled to judgment as a matter of law under Section 61-332D.

In its response to Pacificorp's Motion, however, Snake River contends the material facts regarding the wheeling service it requests are in dispute. In an affidavit filed with its response, the president of Snake River avers that he "wrote to PacifiCorp requesting that it provide transmission service for our supply of wholesale power for [Snake River] from Idaho Power which would deliver that power at receipt points on Pacificorp's transmission system to be wheeled to [Snake River] at facilities it would own at the delivery points and there resell it over the facilities owned by its members or to be constructed by [Snake River] to its members." The affidavit also states that Snake River has "consistently sought to obtain wheeling by [PacifiCorp] to delivery points where [Snake River] would be able to acquire the power and

by PacifiCorp to Snake River's members would amount to such a transaction, PacifiCorp, according to Section 61-332D, "shall not be required to provide" it.

Although the ESSA does not define "retail wheeling" or "sham wholesale transaction," the parties and the Commission accept the definition provided by the Federal Power Act and FERC. Retail wheeling is "the transmission of electric energy directly to an ultimate consumer," and a sham wholesale transaction is the "transmission of electric energy to an entity for resale to an ultimate consumer in instances in which the substance of the transaction amounts to retail wheeling because wholesale sales to the entity is in fact a subterfuge intended to circumvent the ban on retail wheeling."      16 U.S.C. § 824k(h); *City of Palm Springs*, 76 FERC ¶ 61, 127 at p. 14.

Construing all disputed facts in the record liberally in favor of Snake River, and drawing all reasonable inferences therefrom in favor of Snake River, the Commission must deny the Motion for Summary Judgment. According to the affidavit provided by Snake River's president, Snake River seeks transmission of power to "facilities it would own at the delivery points and there resell it over the facilities owned by its members or to be constructed by [Snake River] to its members." Snake River's president also states in his sworn affidavit that its wheeling request "is indistinguishable from PacifiCorp's furnishing such wholesale wheeling for resale service to a number of other cooperatives and municipal systems in its service territory." Thus the factual record regarding the distribution facilities owned by Snake River, interpreted in favor of Snake River, is disputed. Because ownership by Snake River of distribution facilities involves a material fact for resolution by the Commission, and the record as currently constituted does not permit an undisputed finding that Snake River owns no facilities, Snake River is entitled to a hearing on PacifiCorp's petition. If Snake River owns distribution facilities with a point of delivery to which PacifiCorp can wheel power, then the wheeling service it requests may not constitute retail wheeling.

To guide the parties' preparation for hearing and to avoid delay, the Commission provides its understanding of the issues presented by ESSA and PacifiCorp's petition. First, to avoid the ban on retail wheeling, Snake River must own distribution facilities to which PacifiCorp can deliver power and over which Snake River can distribute power to the ultimate consumer. The Commission agrees with FERC's conclusion in *City of Palm Springs* that "[t]he interposition of unnecessary, duplicate meters does not . . . constitute ownership or control of

NOTICE OF PREHEARING CONFERENCE
ORDER NO. 28888                                13

IDAHO PUBLIC UTILITIES COMMISSION
PO BOX 83720
BOISE, IDAHO 83720-0074
(208) 334-0338 (TELEPHONE)
(208) 334-3762 (FAX)

DONE by Order of the Idaho Public Utilities Commission at Boise, Idaho, this 30 th

day of October 2001.

PAUL KJELLANDER, PRESIDENT

MARSHA H. SMITH, COMMISSIONER

DENNIS S. HANSEN, COMMISSIONER

ATTEST:

Jean D. Jewell
Commission Secretary

Vld/O:PACE016_ws4

NOTICE OF PREHEARING CONFERENCE
ORDER NO. 28888                    15