

David J. Jordan (Utah Bar #1751)
John M. Eriksson (Utah Bar #4827)
Marc T. Rasich (Utah Bar #9279)
STOEL RIVES LLP
201 South Main Street, #1100
Salt Lake City, Utah  84111-4904
Telephone: (801) 328-3131
Facsimile: (801) 578-6999

Mary S. Hobson
Erik F. Stidham
STOEL RIVES LLP
101 S. Capitol Blvd., Suite 1900
Boise, Idaho 83702-5958
Telephone: (208) 389-9000
Facsimile: (208) 389-9040

Attorneys for Defendant PacifiCorp

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SNAKE RIVER VALLEY ELECTRIC ASSOCIATION,<br><br>Plaintiff,<br><br>vs.<br><br>PACIFICORP,<br><br>Defendant,<br><br>STATE OF IDAHO, by and through ALAN G. LANCE, Attorney General,<br><br>Defendant-Intervenor. | Case No. CV 96-0308-E-BLW<br><br>**PACIFICORP'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

## I.   INTRODUCTION

Working with the Snake River Valley Electric Association ("Snake River") has been like trying to hit a moving target. Initially, Snake River wanted PacifiCorp to sell to Snake River part of PacifiCorp's distribution facilities. Then Snake River wanted PacifiCorp to sell Snake River wholesale power and its facilities. Then Snake River wanted PacifiCorp to wheel power, purchased from another source, right down to the ultimate points of consumption for Snake River's members. Now, apparently, Snake River wants PacifiCorp to wheel power to Snake River's purported distribution system and Snake River will wheel the power to its members from there. Regardless of which Snake River request is at issue, Snake River cannot establish a violation of antitrust law.

First, PacifiCorp is entitled to judgment as a matter of law on all claims for damages or injunctive relief for actions taken on or after December 8, 2000 — the date Idaho's Electric Supplier Stabilization Act ("ESSA") Amendments took effect. The State of Idaho through ESSA has a clearly articulated and affirmatively expressed policy limiting competition among electric utilities. That policy, since at least December 8, 2000, has been actively supervised by the Idaho Public Utilities Commission. Thus, PacifiCorp, acting as a tool for implementing state policy, is entitled to state action immunity.

Second, Snake River has not presented a single, unambiguous request for wheeling services to PacifiCorp. Rather, the request for such services, or at least Snake River's interpretation of it, has continually changed. PacifiCorp, as a matter of law, cannot be held

liable for refusing to deal, when Snake River has never furnished a specific, unambiguous request that PacifiCorp could refuse.

Third, antitrust laws do not require businesses to sell their assets to competitors, nor do those laws impose liability where the accused does not possess monopoly power in the relevant geographic or product market. PacifiCorp does not possess monopoly power in the wholesale power market. Further, PacifiCorp did not refuse to sell wholesale power to Snake River. Thus, as a matter of law, PacifiCorp cannot be required to sell its assets nor can it be found liable for refusing to provide Snake River with wholesale power.

Fourth and finally, PacifiCorp cannot be held liable under antitrust laws for refusing to wheel power to Snake River where the refusal was based, not on a desire to drive out competition, but on a desire to protect the public interest.

Accordingly, PacifiCorp is entitled to summary judgment on all of Snake River's claims.

## II.    STATEMENT OF FACTS

### A.    Undisputed Facts

PacifiCorp is an electric power company, providing retail electric service to customers in Southeast Idaho and wholesale power to others in the wholesale power supply market. As such, PacifiCorp is a public utility subject to the jurisdiction of both the Idaho Public Utilities Commission (the "Commission"), and the Federal Energy Regulatory Commission ("FERC"). *See* Affidavit of John Mooney, previously submitted in support of PacifiCorp's Motion to Stay or Dismiss ("Mooney Affidavit"), a copy of which is attached hereto.

Snake River Valley Electric Association ("Snake River") is a non-profit corporation organized under the laws of the state of Idaho that describes itself as a cooperative organized to acquire electric power at wholesale and to resell that electric power to its members and others in areas of Idaho presently served by PacifiCorp. *See* Complaint, ¶ 3.

In December 1995, Snake River sent PacifiCorp a letter in which it, among other things, requested delivery of electric power to "the existing delivery points on Utah Power's system to each of the members of [Snake River]." *See* letter dated December 18, 1995, from Del Ray Holm, President, Snake River Valley Elec. Assoc., to John Mooney, Executive Vice President, Utah Power & Light, attached to Mooney Affidavit as Exhibit 1. On February 16, 1996, PacifiCorp responded to Snake River's request by referring Snake River to two tariffs that PacifiCorp had on file with FERC, a network tariff and a point-to-point tariff. PacifiCorp encouraged Snake River to review the tariffs and to submit an application to the appropriate corporate employee. *See* letter from John Mooney to Del Ray Holm dated February 16, 1996, attached to Mooney Affidavit as Exhibit 2.

## B.    Procedural History

Unsatisfied with PacifiCorp's response to its wheeling request, among other things, Snake River filed a complaint in the United States District Court for the District of Idaho, in which it alleged that PacifiCorp violated sections 1 and 2 of the Sherman Act (15 U.S.C. §§ 1, 2) and Section 3 of the Clayton Act (15 U.S.C. § 14) by (1) refusing to sell to Snake River PacifiCorp's electrical facilities; (2) by refusing to sell to Snake River wholesale power, and (3) by refusing to wheel electric power.

Relying upon the Idaho Electric Supplier Stabilization Act ("ESSA") (currently codified at Idaho Code §§ 332-334C), PacifiCorp moved to dismiss Snake River's complaint pursuant

to the state action doctrine.  On April 25, 1997, this Court denied PacifiCorp's motion, holding that, while the State of Idaho had a clearly articulated and affirmatively expressed state policy of restraining competition for existing utility customers, the implementation of that policy was not supervised actively by the State.

After intervening, the State of Idaho moved for partial summary judgment on the same grounds, contending that the State of Idaho did actively supervise the policies underlying ESSA.  After reviewing the additional evidence and argument proffered by the State and PacifiCorp, this Court granted the State and PacifiCorp partial summary judgment.  *See* Memorandum Decision and Order dated April 20, 1998.  This Court subsequently resolved several remaining issues between PacifiCorp and Snake River, entered judgment for the defendants, and dismissed Snake River's complaint.

On appeal by Snake River, the Ninth Circuit reversed this Court's state action immunity ruling.  *See* Snake River Valley Electric Association v. PacifiCorp, 238 F3d 1189 (9th Cir. 2001).  In doing so, the Ninth Circuit confirmed that the State of Idaho, pursuant to ESSA, has clearly articulated and affirmatively expressed a state policy of restraining competition for existing utility customers, but held that the State of Idaho did not actively supervise the policies underlying ESSA.  *Id.* at 1195.  The Ninth Circuit noted, however, that "[i]t should be clear that Idaho's situation . . . could be addressed by legislative action providing for supervision." *Id.*

Responding to the Ninth Circuit's invitation, the Idaho Legislature enacted first HB 1 and then HB 142.  *See* 2000 1st ES Laws, Chapter 1; 2001 Idaho Sess. Laws, Chapter 29.  In those bills, the Legislature expressly indicated that ESSA, from its inception, was designed to

prohibit pirating and other acts that detrimentally impact the citizens of Idaho or the state's

economy and to confer state action immunity on utilities that comply with its provisions:

> The provision of a safe and reliable supply of electricity in a manner that prohibits the "pirating" of consumers and discourages duplication of facilities is essential to the well-being of Idaho's citizens and its economy. It was for these and other reasons that the legislature passed the Electric Supplier Stabilization Act in 1970. The legislature has been advised of federal antitrust litigation alleging that conformance with the provisions of this act does not confer federal antitrust immunity upon parties in compliance with the act. The legislature finds that a negative judicial ruling would have the effect of repealing applicable provisions of the act, undercutting the purposes for which this act was enacted.

> It is and has been the intention of the legislature to confer antitrust immunity upon parties acting in compliance with the act under what is known as the state action doctrine. While the legislature believes that compliance with the existing provisions of this act confers such immunity, it has determined to amend the act to more fully address this issue.

2001 Idaho Sess. Laws, Chapter 29, Section 2.

The Legislature went on to enact numerous amendments to ESSA, designed to

ensure that the State actively supervised all agreements or transactions that fell within

ESSA's purview. For example:

- Section 61-332B of ESSA prohibits "electric suppliers" from providing

  "electric service" to consumers that are then or have at any time

  previously been connected for electric services to facilities of another

  electric supplier, except as provided by ESSA;

- Section 61-332D prohibits retail wheeling and/or a sham wholesale

  transaction but <u>requires</u> an electric supplier declining to furnish wheeling

  service pursuant to its provisions to petition the Commission for review of

  the electric supplier's action with respect to a request for such service.

The Commission is then <u>required</u> to review the electric supplier's action for consistency with the purposes and provisions of ESSA, and to issue an order in accordance with its finding, ordering either that the wheeling service shall, or shall not, be required;

• Section 61-333(1) permits any electric supplier to contract with any other electric supplier for the purpose of allocating territories, consumers, and future consumers, but <u>requires</u> that all such contracts be filed with the Commission, and that the Commission approve or reject the contracts. The Commission may only approve the contracts upon finding that the allocation of territories or consumers is in conformance with the provisions and purposes of ESSA;

• Section 61-334B provides that upon a petition of any consumer or electric supplier for an exception to Idaho Code Section 61-332B, the Commission may grant the relief, but only if doing so is consistent with the purposes of ESSA, as set forth in Section 61-332.

Although these amendments have been in place for little more than 6 months, the Commission already has reviewed and issued orders relating to private agreements that implicate ESSA's provisions. *See* In the Matter of the Application of Avista Corporation, Case No. AVU-E-01-2, Order No. 28681 (Id. Pub. Utils. Com. 3/21/01); In the Matter of the Application of Avista Corporation, Case No. AVU-E-01-3, Order No. 28677 (Id. Pub. Utils. Com. 3/22/01), attached to the Affidavit of Brett DeLange filed in support of Intervenor State of Idaho's Motion for Partial Summary Judgment. In addition, the Commission is in the process of reviewing PacifiCorp's petition for an order approving

PacifiCorp's action regarding Snake River's request for certain wheeling services. *See* PacifiCorp's Petition in In the Matter of the Petition of PacifiCorp, Case No. PAC-E-01-6, attached as Exhibit A to the Affidavit of David B. Cory filed concurrently in support of PacifiCorp's Motion for Summary Judgment ("Cory Affidavit"). Indeed, the Commission recently denied Snake River's Motion to Dismiss and PacifiCorp's Motion for Summary Judgment in that action. *See* Notice of Prehearing Conference and Order No. 28888, attached to the Cory Affidavit as Exhibit C.

The Commission denied PacifiCorp's Motion for Summary Judgment on the grounds that there was a factual dispute regarding the type of wheeling service Snake River had requested. *Id.* at p. 14. Snake River's President, Del Ray Holm, created the dispute with a sworn affidavit in which he asserted that Snake River seeks transmission of power to "facilities it would own at delivery points and there resell it over facilities owned by its members or to be constructed by [Snake River] to its members." Affidavit of Del Ray Holm dated September 14, 2001, ¶ 12 (Emphasis added.), attached to Cory Affidavit as Exhibit B. He also swore that the wheeling services Snake River sought were "indistinguishable from PacifiCorp's furnishing such wholesale wheeling for resale to a number of cooperatives and municipal systems in its service territory." *Id.*

## III.   SUMMARY JUDGMENT STANDARD

A party moving for summary judgment has the burden of proving the absence of any genuine issue of material fact that would allow judgment as a matter of law. *See* Anderson v. Liberty Lobby, 477 U.S. 242, 256, 106 S.Ct. 2505 (1986). To withstand a motion for summary judgment, an opposing party must set forth specific facts showing there is a genuine issue of material fact in dispute. Fed. R. Civ. Proc. 56(e). The

opposing party must come forward with "sufficient evidence favoring [that party] for a jury to return a verdict for that party." Anderson, 477 U.S. 249. If the opposing party cannot marshal such evidence, then "[t]he moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986).

As shown below, there is no genuine issue of fact and PacifiCorp is entitled to judgment on all of Snake River's claims as a matter of law.

## IV. ARGUMENT

### A. PacifiCorp Is Immunized from Antitrust Liability for Conduct After December 8, 2000 Under the State Action Doctrine.[1]

As this Court is aware, a private party who acts under the direction of the state is immune from antitrust liability if two factors are met: (1) The challenged restraint is clearly articulated and affirmatively expressed as state policy; and (2) the policy is actively supervised by the State itself. California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc., 445 U.S. 97, 105, 100 S.Ct. 937 (1980). Here, PacifiCorp is immune from antitrust liability under the state action doctrine because (1) the State of Idaho has clearly articulated a state policy restraining competition among electric suppliers, and (2) ESSA, as amended, satisfies the requirement that the State of Idaho actively supervise its state policy. Thus, PacifiCorp requests the entry of summary judgment against Snake River on all claims for damages or injunctive relief from December 8, 2000 forward.

---

[1]     Although this Court has ruled on the application of the state action immunity on two prior occasions, an intervening change in the law makes this successive motion for summary judgment appropriate. See Whitford v. Bogliano, 63 F.3d 527, 530 (7th Cir. 1995).

1.    **The Ninth Circuit and This Court Already Have Held That Idaho Has Clearly Articulated and Affirmatively Expressed a State Policy Limiting Competition Among Electric Suppliers.**

ESSA was passed by the Idaho State Legislature in 1970 to "prohibit the 'pirating' of customers of another supplier." Idaho Code § 61-332(B). To accomplish this purpose, ESSA expressly forbids one supplier from supplying or furnishing "electric service to any electric service entrance that is then or had at any time previously been connected for electric service to facilities of another electric supplier." *Id.* § 61-332B. As this Court and the Ninth Circuit Court of Appeals have recognized, ESSA, even before the recent amendments, clearly articulated a state policy to limit competition among electric suppliers for existing customers. *See* Snake River Valley Electric Ass'n v. PacifiCorp, 238 F.3d 1189, 1192-93 (9th Cir. 2001) ("There is no question that Idaho Code § 61-332B contemplates the suppression of competition at issue. The code section forbids 'furnishing electric service' to the 'electric service entrance' of another electric supplier's customer without 'the written consent of such other electric supplier.' Idaho Code § 61-332B (1999). The legislature would not grant such power to an electric supplier without foreseeing that such supplier would normally refuse consent. The restraint of trade at issue — PacifiCorp's refusal to allow SRVEA to supply PacifiCorp customers with electricity — is clearly a foreseeable result of the Idaho Code"); Memorandum Decision and Order, April 25, 1997, at pp. 9–10. The amendments to ESSA contained in HB 1 and HB 142 make even more clear the State's policy limiting competition among electric suppliers. Therefore, the "clear articulation" requirement of the state action immunity test is satisfied.

2.   **The Recent ESSA Amendments Clearly Establish that the State of Idaho Actively Supervises the Implementation of the State Policy Limiting Competition Among Electric Suppliers**.

In addition to demonstrating a clearly articulated state policy restraining competition, a private party seeking state action immunity must show that the state actively supervises the state's policy.  A policy is actively supervised where "state officials have and exercise power to review particular anticompetitive acts of private parties and disapprove those that fail to accord with state policy."  Patrick v. Burget, 486 U.S. 94, 101, 108 S.Ct. 1658, 100 L.Ed.2d 83 (1988); *see also* Federal Trade Comm'n v. Ticor Title Ins. Co., 504 U.S. 621, 112 S.Ct. 2169, 119 L.Ed.2d 410 (1992).

As amended, ESSA's anti-piracy provision provides that:  "No electric supplier shall supply or furnish electric service to any electric service entrance that is then or had at any time previously been lawfully connected for electric service to another electric supplier except as provided in this act."  Idaho Code § 61-332B (2000).  The only exception to this provision is if the Commission, upon a petition for an exception, enters an order finding that the requested exception is consistent with the overall policies of ESSA.  Idaho Code § 61-334B.  Thus, the Idaho Legislature removed the consent provision that previously had given the Ninth Circuit pause.

Moreover, other provisions of the newly-amended ESSA ensure that the state of Idaho supervises the implementation of it policy limiting competition among electric suppliers.  Indeed, the amendments require such supervision.  For instance, section 61-332D prohibits retail wheeling and/or sham wholesale transactions, but requires an electric supplier declining to furnish such wheeling service to petition the Commission for

review of the electric supplier's action. The Commission is then required to review the electric supplier's action for consistency with the purposes and provisions of ESSA, and to issue an order in accordance with its finding, either that the wheeling service shall, or shall not, be required. Similarly, section 61-333(1) permits any electric supplier to contract with any other electric supplier for the purpose of allocating territories, consumers, and future consumers, but requires that all such contracts be filed with the Commission, and that the Commission approve or reject the contracts.

Not only is the Commission compelled to oversee the implementation of ESSA's provisions, it is actively exercising the authority it has been given. The Commission already has heard and granted two petitions that it found consistent with ESSA's provisions. *See* In the Matter of the Application of Avista Corporation, Case No. AVU-E-01-2, Order No. 28681 (Id. Pub. Utils. Com. 3/21/01); In the Matter of the Application of Avista Corporation, Case No. AVU-E-01-3, Order No. 28677 (Id. Pub. Utils. Com. 3/22/01), attached to the DeLange Aff. filed in support of Intervenor State of Idaho's Motion for Partial Summary Judgment. Further, it is currently considering PacifiCorp's petition for an order approving PacifiCorp's action in regards to Snake River's request for certain types of wheeling service. *See* In the Matter of the Petition of PacifiCorp, Case No. PAC-E-01-6, attached as Exhibit A to the Cory Aff.

In short, no electric supplier can pirate another's customers, contract with any other supplier for purposes of allocating territories, consumers or future consumers or refuse to provide retail or sham transaction wheeling in Idaho without Commission

approval. And the Commission is exercising its authority actively. Thus, it is the Commission, not the private party, that determines whether a particular purported anti-competitve behavior is, or is not, consistent with the State of Idaho's public policy limiting competition among suppliers. Accordingly, the active supervision prong of the Midcal test is met.

Here, Snake River wishes to provide power to current customers of PacifiCorp. Under ESSA, as amended, there are only three possible methods for it to obtain the authority to do so. First, Snake River could petition the Commission for relief from the "anti-pirating" provisions of Section 332B. *See* Idaho Code § 61-334B. Second, it could request that PacifiCorp wheel power to its members. If PacifiCorp intended to reject that request, PacifiCorp would be required to petition the Commission for approval of that decision. *See* Idaho Code § 61-332D. Third, Snake River could seek to enter a consumer or territorial allocation agreement with Pacificorp. Assuming the parties reached such an agreement, the Commission would be required to review it to ensure the agreement's consistency with the provisions of ESSA. *See* Idaho Code § 61-333(1). Regardless of which of the three procedures is chosen, however, the State of Idaho must actively supervise either Snake River's request or PacifiCorp's response to it. Thus, PacifiCorp is entitled to state action immunity on all of Snake River's claims for damages or injunctive relief after the effective date of ESSA's amendments, December 8, 2000.

**B.** **PacifiCorp Has Not "Refused to Deal" with Snake River Because Snake River Has Never Requested that PacifiCorp Provide the Wheeling Services it Seeks.**

Though Snake River has not been direct nor clear about the specific wheeling services it is requesting, PacifiCorp has believed that, consistent with the statements in Snake River's December 18, 1995 letter, Snake River wanted PacifiCorp to wheel power over PacifiCorp's distribution system down to the ultimate point of consumption for Snake River's members. Cory Aff., ¶ 3. Prior to September 2001, Snake River never indicated otherwise nor made any other request for wheeling services.[2]

On or about September 17, 2001, however, PacifiCorp learned for the first time that its understanding of the wheeling services sought by Snake River was apparently incorrect, that Snake River now claims that it has <u>always</u> sought some other type of undefined wheeling services.[3] In his sworn affidavit filed with the Idaho Public Utilities Commission in opposition to PacifiCorp's Motion for Summary Judgment, Snake River's President, Del Ray Holm, asserted that Snake River seeks transmission of power to "<u>facilities it would own</u> at delivery points and there resell it over <u>facilities owned by its members or to be constructed by [Snake River]</u> to its members." Affidavit of Del Ray

---

[2]    This Court has already granted summary judgment to PacifiCorp regarding Snake River's claim that PacifiCorp refused to provide wheeling for Snake River to service "new" customers. *See* Memorandum Decision and Order dated January 21, 1999.

[3]    In fact, at the hearing on PacifiCorp's Motion for Summary Judgment before the Commission, Snake River's attorney, Charles F. Wheatley, expressly denied that Snake River sought wheeling down to its member's ultimate points of consumption. *See* transcript of September 28, 2001 hearing before the Commission, p. 65:5-10, attached as Exhibit D, to the Cory Aff.

Holm dated September 14, 2001, ¶ 12 (emphasis added), attached to the Cory Aff. as Exhibit B. He also swore that the wheeling services Snake River sought were "indistinguishable from PacifiCorp's furnishing such wholesale wheeling for resale to a number of cooperatives and municipal systems in its service territory." *Id.*

Snake River, however, has never presented a request for wheeling services like those described by Del Ray Holm. Cory Aff., ¶ 3. Moreover, PacifiCorp does not wheel power over its transmission and distribution system down to the existing points at which the customers of the cooperatives or municipal systems that obtain power from PacifiCorp receive service. *Id.* at ¶ 4. All of the cooperatives and municipalities serviced by PacifiCorp have their own distribution systems. *Id.* at ¶ 4. PacifiCorp delivers power to those distribution systems and the cooperatives and municipalities deliver electric service to their customers. *Id.* It is the owner of those systems, not PacifiCorp, that distributes the power to the ultimate end user. *Id.*

PacifiCorp is unaware of any distribution system owned by Snake River over which Snake River could distribute power to its members the way the cooperatives and municipalities to which PacifiCorp currently wheels power do. *Id.* at ¶ 5. Snake River has never identified such facilities to PacifiCorp nor requested that PacifiCorp wheel power to those facilities. *Id.*

In short, Snake River has never presented PacifiCorp with a proposal encompassing the wheeling services it now seeks. PacifiCorp cannot have refused to deal

with the Snake River on a non-existent request. Thus, PacifiCorp is entitled to summary

judgment on all claims related to a purported refusal to wheel based on such a request.

## C. PacifiCorp's Alleged Refusal to Sell Wholesale Power or its Electrical Facilities to Snake River Does Not, as a Matter of Law, Constitute an Antitrust Violation

PacifiCorp initially filed a motion for partial summary judgment on Snake River's

claim that PacifiCorp violated Sections 1 and 2 of the Sherman Act (15 U.S.C. §§ 1, 2)

and Section 3 of the Clayton Act (15 U.S.C. § 14) by allegedly refusing to sell to Snake

River (1) wholesale power and (2) electrical system facilities, together with a supporting

memorandum and the affidavits of Richard D. Westerberg and James D. Tucker on or

about January 23, 1998. Snake River filed a Memorandum in Opposition to the Motion

on or about February 16, 1998, and PacifiCorp filed a Reply Memorandum on or about

March 3, 1998. The Court heard oral argument on that Motion (and other motions) on

March 30, 1998. On April 20, 1998, the Court issued a Memorandum Decision and

Order granting Intervenor State of Idaho's motion for summary judgment based on state

action immunity. In light of that decision, the Court found Defendant's Motion for

Partial Summary Judgment moot. On appeal, the Ninth Circuit reversed and remanded

the case to this Court. Accordingly, PacifiCorp's motion for partial summary judgment

is no longer moot. PacifiCorp renews that motion and submits that the Court should

render a decision on the motion based on all memoranda, affidavits, oral argument

previously submitted to the Court regarding the motion and such further oral argument as the Court deems necessary.[4]

**D.     PacifiCorp Cannot Be Held Liable for Violating Antitrust Laws Because it Acted in Good Faith Reliance on Idaho's Regulatory Policy Against Retail Wheeling.**

Even a monopolist will not face antitrust liability for simply refusing to deal if there are valid justifications for its actions. *See, e.g.*, Southern Pacific Communications Co. v. AT&T, 740 F.2d 980 (D.C. Cir. 1984); *cert. denied,* 470 U.S. 1005, 105 S.Ct. 1359, 84 L.Ed.2d 380 (1985); Mid-Texas Communications Systems, Inc. v. AT&T, 615 F.2d 1372 (5th Cir. 1980) *cert. denied,* 499 U.S. 912, 101 S.Ct. 286 (1980).

For example, in Mid-Texas, Mid-Texas filed antitrust claims against AT&T when AT&T refused to interconnect Mid-Texas' phone lines with its own. 615 F.2d at 1389. AT&T argued that it could not be held liable because it had refused interconnection because such action would be contrary to the public's interest. *Id.* The trial court refused to instruct the jury that it could "consider the effect of regulation in ascertaining whether Bell willfully misused its monopoly power" and AT&T appealed. *Id.*

On appeal, the Fifth Circuit reversed. *Id.* Relying on an FCC regulation

---

[4]      In addition to the arguments set forth in PacifiCorp's moving and reply papers, the Court should be aware that the Commission, in its order denying Snake River's Motion to Dismiss and Denying PacifiCorp's Motion for Summary Judgment, expressly found that, under Idaho law, an electric utility customer does not obtain ownership of a distribution line when it pays for a portion of a line extension under a line extension tariff. *See* Notice of Prehearing Conference and Order No. 28888, p. 14, attached to the Cory Aff. as Exhibit C. Thus, any suggestion to the contrary by Snake River in its opposition to PacifiCorp's Motion for Summary Judgment on these issues should be disregarded.

requiring that interconnection be made when it is in the "public interest", the Fifth

Circuit concluded that good faith attempted compliance with regulatory concerns is a

valid business justification:

> In the present case, we do not know if the interconnection was, in fact, in the public interest since the opportunity for FCC determination of that question was foreclosed by the withdrawal of AC's complaint. Nevertheless, it is the antitrust court's responsibility to judge the reasonableness of Bell's refusal in light of the relevant factual context of the decision which necessarily includes consideration of the effect of regulation. Bell's position is that the refusal was not arbitrary or motivated by anticompetitive intent, but instead was proper because Bell believed the AC's request was contrary to the public interest. If Bell was correct in its assessment, and if its purpose in refusing interconnection was to vindicate the public interest, then its refusal, despite its obvious anticompetitive effect, would have been proper and entitled to protection from antitrust scrutiny.

*Id.* at 1389-90.

The D.C. Circuit elaborated on <u>Mid-Texas</u>'s holding in <u>Southern Pacific</u>, 740 F.2d at

1009-10. There, AT&T again was sued for refusing to interconnect a competitor's lines with

its own. <u>Southern Pacific</u>, 740 F.2d at 1009-10. In upholding a district court's ruling that

AT&T had not acted in an anticompetitive manner when it refused interconnection, the

appellate court discussed the regulatory justification defense asserted in <u>Mid-Texas</u> and stated:

> In our view, and in the view of other circuits that have considered the issue, this regulatory justification defense is only applicable if AT&T's asserted "public interest" basis for its interconnection decision is reasonable and if AT&T actually made its decision at the time in good faith on that basis rather than solely on the basis of competitive considerations. The "reasonableness" component of this test requires that AT&T have a reasonable basis in terms of concerns for the public interest that are concrete, articuable, and recognized as legitimate by the appropriate regulatory agencies.

*Id.*

Here, PacifiCorp had concrete, articuable, and recognized concerns for the public interest when it referred Snake River to its tariffs for wholesale wheeling rather than negotiating for wheeling service down to the ultimate point of consumption for Snake River's members. PacifiCorp reasonably believed it was not in the public interest as expressed in ESSA to provide the retail wheeling service requested. That position was confirmed by the Commission shortly after PacifiCorp initially responded to Snake River's December 18, 1995 request.

Beginning in January 1996, PacifiCorp began work as a member of a group formed by the Commission to study the impact of deregulation in the electric industry. Among other things, the study group investigated the impact of competition among electric suppliers on the general public of Idaho. *See* In the Matter of the Commission's Investigation Into Changes Occurring in the Electric Industry, Case No. GNR-E-96-1, Order No. 26555 (Aug. 16, 1996), p. 1, attached as Exhibit E to the Cory Aff. After a six-month study, on August 16, 1996, the Commission found that:

> Although terms such as 'competition' and 'retail wheeling' are generally used to describe the evolution taking place in the industry, it is not always clear what they mean. For the purpose of our analysis, we presume that the deregulation or opening up of Idaho's distribution system is not feasible or desirable at this time. When we use the term 'competition' or any of its mutations, therefore, we are referring to the possibility that customers of Idaho's regulated electric utilities may, in some form or another, have the option of selecting an energy supplier other than their current utility, but not a new supplier of distribution lines.

*Id.* at 2-3.

The Commission went on to conclude that "deregulation of Idaho's electric utilities, <u>without</u> <u>some form of Commission oversight</u>, is not in the best interests of the general body of Idaho's electric utility ratepayers." *Id.* at **4**.

Thus, because PacifiCorp's decision was motivated by a desire to serve the public interest, consistent with the purposes and provisions of ESSA and consistent with the conclusions of the Commission, it should not subject the PacifiCorp to antitrust liability.

## IV. CONCLUSION

For all the foregoing reasons, and for the reasons articulated in the State of Idaho's Memorandum in Support of its Motion for Partial Summary Judgment, PacifiCorp respectfully requests that the Court grant its Motion for Summary Judgment and conclude that:

- State action immunity attaches in this case, thus barring Snake River from obtaining damages or injunctive relief from and after December 8, 2000;

- PacifiCorp is not liable for refusing to wheel power to Snake River's members because Snake River has never submitted a request clearly articulating the type of wheeling it seeks;

- Antitrust law does not impose on PacifiCorp, an electric power producer and supplier, the obligation to sell a portion of its electrical system to a competitor such as Snake River;

- PacifiCorp did not refuse to sell wholesale power to Snake River, and even if it had, it cannot be liable under federal antitrust laws for such refusal; and

- PacifiCorp cannot be held liable under federal antitrust laws for refusing to wheel power to Snake River where PacifiCorp reasonably believed that its refusal was in the public's interest.

DATED: November 26, 2001.                    STOEL RIVES LLP


David J. Jordan
John M. Eriksson
Marc T. Rasich

Attorneys for Defendant PacifiCorp

## CERTIFICATE OF SERVICE

I hereby certify that on the _22nd_ day of November, 2001, I caused a true and correct

copy of the foregoing **PACIFICORP'S MEMORANDUM IN SUPPORT OF MOTION**

**FOR SUMMARY JUDGMENT** to be hand-delivered on 11/27/01 to the following:

> Robert C. Huntley
> Christopher F. Huntley
> Huntley, Park, Thomas, Birkett,
>  Olsen & Williams, L.L.P.
> 250 So. 5th Street, Suite 660
> P.O. Box 2188
> Boise, Idaho  83702
>
> Brett DeLange
> Deputy Attorney General
> Consumer Protection Unit
> Office of the Attorney General
> 700 W. Jefferson St., Rm. 210
> P.O. Box 83720
> Boise, ID 83720-0010

and mailed, postage prepaid to:

> Charles F. Wheatley, Jr.
> Wheatley & Ranquist
> 34 Defense Street
> Annapolis, MD  21401

SaltLake-158666.1  0019436-00149

**CERTIFICATE OF SERVICE RE:**
**PACIFICORP'S MEMORANDUM IN SUPPORT**
**OF MOTION FOR SUMMARY JUDGMENT - 21**

David J. Jordan (Utah Bar #1751)
John M. Eriksson (Utah Bar #4827)
STOEL RIVES LLP
201 South Main Street, #1100
Salt Lake City, Utah  84111
Telephone:  (801) 328-3131
Facsimile: (801) 578-6999

Robert C. Brown
STOEL RIVES LLP
One Capital Center, Suite 1015
999 Main Street
Boise, Idaho 83702-9011
Telephone: (208) 389-9000
Facsimile: (208) 389-9040

U.S. COURTS

96 AUG -8  AM 10: 31

RECD_____FILED_____
CAMERON S. BURKE
CLERK                IDAHO

Attorneys for Defendant PacifiCorp

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| SNAKE RIVER VALLEY ELECTRIC ASSOCIATION | : | |
| | : | |
| | : | AFFIDAVIT OF JOHN E. MOONEY |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| PACIFICORP ( including UTAH POWER & LIGHT COMPANY, a division), | : | Civil No. 96-308-E-BLW |
| | : | |
| Defendant. | : | |

AFFIDAVIT OF JOHN E. MOONEY

STATE OF UTAH            )
                         : ss.
COUNTY OF SALT LAKE      )

John E. Mooney, being first duly sworn, deposes and states as
follows:

1)      I am a Senior Vice President of PacifiCorp, with responsibility over PacifiCorp's
retail electric service operations, including its service in the state of Idaho. I have personal
knowledge of the facts stated herein.

2)      PacifiCorp operates as a public utility in the state of Idaho and other states and is
subject to the jurisdiction of the Idaho Public Utilities Commission and the Federal Energy
Regulatory Commission. At all times relevant to this matter, PacifiCorp has had on file with the
Federal Energy Regulatory Commission tariffs providing terms and conditions for the wholesale
wheeling of electric power and energy.

3)      Attached to this Affidavit as Exhibit 1 is a true and correct copy of Snake River
Valley Association's request to PacifiCorp for wheeling service. Attached to this Affidavit as
Exhibit 2 is a true and correct copy of PacifiCorp's response to that request, exclusive of
enclosures.

4)      PacifiCorp has not given consent to Snake River Valley Electric Association to
supply or furnish electric service to any electric service customer that is now or has at any time
previously been connected for electric service to facilities of PacifiCorp.

5)      PacifiCorp is presently connected and providing electric service to customers in all
or portions of the following Idaho counties pursuant to certificates of convenience and necessity

granted by the Idaho Public Utilities Commission: Bannock, Bear Lake, Bingham, Bonneville,

Butte, Caribou, Clark, Franklin, Fremont, Jefferson, Lemhi, Madison, Oneida and Teton.

6)      PacifiCorp is providing, and remains willing and able to provide, adequate electric

service to consumers in the areas in which it is authorized to provide service.

7)      Attached to this Affidavit as Exhibit 3 is a true and correct copy of the Articles of

Incorporation of Snake River Valley Electric Association obtained on behalf of PacifiCorp from

the office of the Idaho Secretary of State.

DATED this _7th_ day of August, 1996.

John E. Mooney

SUBSCRIBED AND SWORN to before me this _7th_ day of August, 1996.

NOTARY PUBLIC

AFFIDAVIT OF JOHN E. MOONEY          3

## CERTIFICATE OF SERVICE

I hereby certify that on August 7th, 1996, I caused a true and correct copy of the foregoing Affidavit of John E. Mooney to be mailed, postage prepaid, to the following:

Charles F. Wheatley, Jr.
Timothy P. Ingram
WHEATLEY & RANQUIST
34 Defense Street
Annapolis, MD 21401

Peter J. Richardson
DAVIS WRIGHT TREMAINE
999 Main Street
Boise, ID 83702-9010

Exh 1

# Snake River Valley Electric Association
## "Our Own Power System Serving Us"

December 18, 1995

Mr. John Mooney, Executive Vice President
Utah Power and Light Company
201 South Main OUC 2300
Salt Lake City, Utah 84140

Dear Mr. Mooney:

The Snake River Valley Electric Cooperative ("SRVEA" or "Cooperative"), a non-profit corporation chartered under the laws of Idaho as an electric cooperative, hereby requests that Utah Power and Light Company provide firm transmission service over its electric system to the Cooperative for up to 150 MW from May 1 to September and up to 21 MW from September 16 to April 30 each year, to supply the electric requirements of the Cooperative's members for the period May 1996 to April 2001.

The points of wholesale power receipt by SRVEA include Midpoint Substation, Drummond Substation, Borah Substation, Jefferson Substation, Kinport Substation, Goshen Substation and Amps Substation.

Delivery points for this request are the existing delivery points on Utah Power's system to each of the members of the SRVEA.

SRVEA requests that the Utah Power and Light Company provide it with a service agreement for the wheeling service requested herein within thirty (30) days.

For the Board of Directors,

Del Ray Holm, President
SNAKE RIVER VALLEY ELECTRIC ASSOCIATION

cc: Frederick W. Buckman

**13586 North 45th East    *    Idaho Falls, Idaho 83401**

Exh 2

825 N.E. Multnomah
Portland. Oregon 97232
(503) 464-5000



February 16, 1996

Del Ray Holm, President
Snake River Valley Electric Association
13586 North 45th East
Idaho Falls, Idaho 83401

Dear Mr. Holm:

Reference is made to your letter dated December 18, 1995 to
PacifiCorp's Mr. John Mooney requesting transmission service to
the Snake River Valley Electric Association ("SRVEA"). PacifiCorp
provides non-discriminatory, open access transmission service
under two tariffs that have been accepted for filing by the
Federal Energy Regulatory Commission ("FERC"). FERC Electric
Tariff, Volume No. 9, provides for network service within
PacifiCorp's system ("Network Tariff"). FERC Electric Tariff,
Volume No. 10, provides transmission service between discrete
Points of Receipt and Delivery ("Point-To-Point Tariff").

Enclosed please find a copy of each tariff. Each tariff provides
instructions for making an application for service, including the
minimal information required to evaluate and process the
application. If SRVEA determines, upon its review of the tariffs,
that SRVEA wishes to receive service under either tariff, SRVEA
should prepare the appropriate application. The application
should be sent to :

                Principal Dispatcher
                System Power Control Center
                PacifiCorp
                9951 S.E. Ankeny
                Portland, Oregon  97216
                Telephone Number (503) 251-5164
                Telefax Number (503) 251-5203

If you have any questions, please call me at (503) 464-5629.

                        Sincerely,

                        Colin Persichetti, Manager
                        Customer Contract Administration

JB/dp

Enclosures

Exh 3

# State of Idaho

## Department of State

CERTIFICATE OF INCORPORATION

OF

### SNAKE RIVER VALLEY ELECTRIC ASSOCIATION, INC.

I, PETE T. CENARRUSA, Secretary of State of the State of Idaho, hereby certify that duplicate originals of Articles of Incorporation for the incorporation of SNAKE RIVER VALLEY ELECTRIC ASSOCIATION, INC. duly signed pursuant to the provisions of the Idaho Nonprofit Corporation Act, have been received in this office and are found to conform to law.

ACCORDINGLY and by virtue of the authority vested in me by law, I issue this Certificate of Incorporation and attach hereto a duplicate original of the Articles of Incorporation.

Dated:  December 27, 1993



*SECRETARY OF STATE*

By

# ARTICLES OF INCORPORATION
## OF
## SNAKE RIVER VALLEY ELECTRIC ASSOCIATION, INC.

RECEIVED
SEC. OF STATE

The undersigned person(s) or entity(ies), acting as incorporator(s) of a corporation under the Idaho Nonprofit Corporation Act, adopt(s) the following Articles of Incorporation:

### ARTICLE I

The name of the corporation is SNAKE RIVER VALLEY ELECTRIC ASSOCIATION, INC.

### ARTICLE II

The purpose for which the corporation is organized is the transaction without any purpose of pecuniary profit to itself, of any lawful activity including, but not limited to, the following:

(a) To generate, manufacture, purchase, acquire and accumulate electric energy for its members only and to transmit, distribute, furnish, sell and dispose of such electric energy to its members only, and to construct, erect, purchase, lease as lessee and in any manner acquire, own, hold, maintain, operate, sell, dispose of, lease as lessor, exchange and mortgage plants, buildings, works, machinery, supplies, apparatus, equipment and electrical transmission and distribution lines or systems necessary, convenient or useful for carrying out and accomplishing any or all of the foregoing purposes;

(b) To acquire, own, hold, use, exercise and, to the extent permitted by law, to sell, mortgage, pledge, hypothecate and in any manner dispose of franchises, rights, privileges, licenses, rights of way and easements necessary, useful or appropriate to accomplish any or all of the purposes of the corporation;



Articles of Incorporation - Page 1

(c)     To purchase, receive, lease as lessee, or in any other manner acquire, own, hold, maintain, use, convey, sell, lease as lessor, exchange, mortgage, pledge, or otherwise dispose of any and all real and personal property or any interest therein necessary, useful or appropriate to enable to corporation to accomplish any or all of its purposes;

(d)     To assist its members to wire their premises and install therein electrical and plumbing appliances, fixtures, machinery, supplies, apparatus and equipment of any and all kinds and character (including, without limiting the generality of the foregoing, such as are applicable to water supply and sewage disposal) and, in connection therewith and for such purposes, to purchase, acquire, lease, sell, distribute, install and repair electrical and plumbing appliances, fixtures, machinery, supplies, apparatus and equipment of any and all kinds and character (including without limiting the generality of the foregoing, such as are applicable to water supply and sewage disposal) and to receive, acquire, endorse, pledge, guarantee, hypothecate, transfer or otherwise dispose of notes and other evidences of indebtedness and all security therefor;

(e)     To borrow money, to make and issue bonds, notes and other evidences of indebtedness, secured or unsecured, for moneys borrowed or in payment for property acquired, or for any of the other objects or purposes of the corporation; to secure the payment of such bonds, notes or other evidences of indebtedness by mortgage or mortgages, or deed or deeds of trust upon, or by the pledge of or other lien upon, any or all of the property, rights, privileges or permits of the corporation, wheresoever situated, acquired or to be acquired;

(f)     To do and perform, either for itself or its members, any and all acts and things, and to have and exercise any and all powers, as

Articles of Incorporation - Page 2
06-6-3000

may be necessary or convenient to accomplish any or all of the foregoing purposes or as may be permitted by the Act under which the corporation is formed. The corporation shall render no service to or for the public.

## ARTICLE III

The number of directors constituting the initial board of directors is seven (7). The names and addresses of the individuals who are to serve as the initial directors until the first annual meeting of the members or until their successors are elected and shall qualify are:

| Name | Address |
|------|---------|
| Doyle Beck | P.O. Box 1768<br>Idaho Falls, ID  83403 |
| Clyde Cook | P.O. Box 566<br>Ririe, ID  83443 |
| Del Ray Holm | P.O. Box 297<br>Roberts, Id  83444 |
| LaVerl Womack | 577 N. 4200 E.<br>Rigby, ID  83442 |
| Brent Stolworthy | 3679 S. Holmes<br>Idaho Falls, ID  83400 |
| Mark Tucker | 13586 N. 45th E.<br>Idaho Falls, ID  83401 |
| Kevin Ward | 9310 N. 35th W.<br>Idaho Falls, ID  83402 |

## ARTICLE IV

The street address of the corporation's initial registered office shall be 13586 North 45th East, Idaho Falls, ID  83401. The name of the corporation's initial registered agent at that address shall be Mark Tucker.

Articles of Incorporation - Page 3
94-8-9094

## ARTICLE V

The name and address of the incorporator of the corporation is:

**Name**

Carl Palmer

**Address**

345 E. 4500 S., Suite B
Salt Lake City, UT  84107

## ARTICLE VI

The corporation shall have members.  The qualifications of members of this corporation, the property, voting and other rights and privileges of the membership, and the liability of each to dues and assessments, and the methods of collection thereof to the extent not provided herein shall be provided in the by-laws of the corporation.

Any person or entity may become a member in the corporation.

No shares of stock shall be issued by the corporation, however, membership may be evidenced by a Certificate of Membership as may be provided by the bylaws.

The board of directors of the corporation may, by the affirmative vote of not less than two-thirds (2/3) of the members thereof, expel any member who shall have violated or refused to comply with any of the provisions of the Articles of Incorporation of the Corporation or by the by-laws or any rules and regulations adopted from time to time by the board of directors.  Any member so expelled  may be reinstated as a member by a vote of the members at any annual or special meeting of the members.  The action of the members with respect to any such reinstatement shall be final.

Any member may withdraw from membership upon payment in full of all debts and liabilities of such member to the corporation and upon compliance with such terms and conditions as the board of directors may prescribe.

Membership in the corporation and a certificate representing the same shall not be transferrable, except as hereinafter otherwise provided, and  upon the death, cessation of existence, expulsion or withdrawal of a member, the membership of such member shall thereupon terminate, and the certificate of membership of such member  shall  be  surrendered  forthwith  to  the  corporation.    Termination  of

membership in any manner shall operate as a release of all right, title and interest of a member in the property and assets of the corporation; provided, however, that such termination of membership shall not release the member from the debts or liabilities of such member to the corporation.

A membership may be transferred by a member to himself or herself and his or her spouse, as the case may be, jointly upon the written request of such member. Such transfer shall be made and recorded on the books of the corporation and such joint membership noted on the original certificate representing the membership so transferred.

When a membership is held jointly by a husband and wife, upon the death of either such membership shall be deemed to be held solely by the survivor with the same effect as though such membership had been originally issued closely to him or her, as the case may be, and the joint membership certificate may be surrendered by the survivor and upon the recording of such death upon the books of the corporation the certificate may be reissued to and in the name of the survivor; provided, however, that the estate of the deceased shall not be released from any membership debts or liabilities to the corporation.

Each member shall be entitled to (1) vote and no more upon each matter submitted to a vote at a meeting of the members. At all meetings of the members at which a quorum is present all questions shall be decided by a vote of a majority of the members voting thereon in person or by proxy, except as otherwise provided by law, the certificate of incorporation of this corporation, or the by-laws. If a husband and wife hold a joint membership they shall jointly be entitled to one (1) vote and no more upon each matter submitted to a vote at a meeting of the members.

## ARTICLE VII

The private property of the members of the corporation shall be exempt from execution for the debts of the corporation and no member shall be individually liable or responsible for any debts or liabilities of the corporation.

## ARTICLE VIII

The term of existence of the corporation shall be perpetual.

**Articles of Incorporation - Page 5**
10-9-2096

## ARTICLE IX

In the event of dissolution or liquidation of the corporation, after:

(a)    All of the outstanding indebtedness of the corporation shall have been paid, and

(b)    All outstanding capital credits be retired without priority on a pro rata basis, the remaining property and assets of the corporation shall be distributed among the members and former members in the proportion which the aggregate patronage of each bears to the total patronage of all members during the ten years next preceding the date of the filing of the certificate of dissolution, or, if the corporation shall not have been in existence for such period, during the period of its existence.

## ARTICLE X

The corporation may alter, amend, change or repeal any provision contained in these Articles Incorporation as follows:

a.    If one or more of the following amendments are made, by a two thirds vote of the directors:

1.    To delete the names and address of the initial directors;

2.    To delete the name and address of the initial registered agent or registered office, if a statement of change is on file with the secretary of state; and

3.    To change the corporate name by substituting the word "corporation," "incorporated," "company," "limited," or the abbreviation "corp.," "inc.," "co.," or "ltd.," for a similar word or abbreviation in the name, or by adding, deleting or changing a geographical attribution to the name.

b.    For approval of all other amendments, by the members by at least two-thirds of the votes cast or at least a majority of the voting power, whichever is less.

## ARTICLE XI

The By-laws of the corporation shall be adopted and promulgated by the Board of Directors named in the Articles of Incorporation and may thereafter be

Articles of Incorporation - Page 6
11-5-2008

amended or repealed by any means provided in the bylaws, and as allowed by the laws of Idaho.

DATED this _17th_ day of _December_, 1993.

_Carl F. Palmer_
Carl Palmer


STATE OF IDAHO      )
                    ) ss
County of Bannock   )

I, _Linda M. Larsen_, a notary public, do hereby certify that on this _17th_ day of _December_, 1993, personally appeared **CARL PALMER**, who being by me first duly sworn, declared that he is the person who signed the foregoing document as incorporator, and that the statements therein contained are true.

_Linda M. Larsen_
NOTARY FOR THE STATE OF IDAHO
(SEAL)                     Residing at _Pocatello_
                           Commission expires _12-1-97_