Charles F. Wheatley, Jr.
Wheatley & Ranquist
34 Defense Street
Annapolis, MD 21401
Telephone: (410) 266-7524
Fax: (301) 261-8699

U.S. COURTS

01 DEC 21  PH 3: 42

RECD ____ FILED____
CAMERON S. BURKE
CLERK           IDAHO

Robert C. Huntley, ISB No. 894
Christopher F. Huntley ISB No. 6056
Huntley, Park, Thomas Burkett,
 Olsen & Williams, L.L.P.
250 So. 5th Street, Suite 660
P.O. Box 2188
Boise, ID  83702
Telephone: (208) 388-1230
Fax : (208) 388-0234

**ORIGINAL**

Attorneys for Snake River Valley Electric Association

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| SNAKE RIVER VALLEY ELECTRIC ASSOCIATION, | ) ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 96-308-E-BLW ) |
| PACIFICORP (Including UTAH POWER & LIGHT COMPANY, a division) | ) ) **SNAKE RIVER VALLEY** |
| Defendant, | ) **ELECTRIC ASSOCIATION'S** ) **MEMORANDUM IN** ) **OPPOSITION TO STATE OF** |
| STATE OF IDAHO by and through Allen G. Lance, Attorney General | ) **IDAHO'S SECOND MOTION** ) **FOR PARTIAL SUMMARY** ) **JUDGMENT** |
| Defendant-Intervenor. | ) ) |

Snake River Valley Electric Association ("Snake River" or "SRVEA") submits this

Memorandum in Opposition to the Motion and Memorandum for Partial Summary Judgment filed by Defendant-Intervenor, State of Idaho ("State"). The State seeks partial summary judgment against any injunctive relief under the federal antitrust laws against PacifiCorp subsequent to December 8, 2000, the date an amendment to ESSA first took effect, and requests a ruling that permanent injunctive relief after that date should not be granted.   Motion at 1-2.  By this, the State concedes that PacifiCorp has had no immunity from the federal antitrust laws attributable to the time period prior to that date.

Snake River submits that the State's motion for partial summary judgment against any permanent injunctive relief after December 8, 2000 should be denied on any one of the following grounds:

(1)     Summary judgment is precluded because of the existence of disputed issues of fact which are subject to jury trial in this Court scheduled for April 22, 2002.

(2)     It conflicts with the Ninth Circuit's controlling decision in *Snake River Valley Electric Ass'n v. PacifiCorp*, 238 F.3d 1189 (9th Cir. 2001) because the State has not "exercised sufficient independent judgment and control" over the details of the issues involving Snake River's requests to PacifiCorp, involved in the present case, so "that the active supervision requirement from *Midcal* is not met" at the present time.

(3)     It is premature and will likely become moot under PacifiCorp's stipulation to the Court in opposition to Plaintiff's motion for a preliminary injunction that it would provide wholesale power to Snake River over its transmission system for resale by Snake River to its members on the same terms and conditions as contained in Snake

River's then-existing Power Contract with Enron Power Marketing, Inc., based on any decision of liability under the antitrust laws.

(4)   PacifiCorp's claim under §61-332D of the ESSA that Snake River is seeking to undertake a "sham wholesale transaction", is barred by the Ninth Circuit's decision and long-established Federal law that wholesale-for-resale transactions are within exclusive Federal jurisdiction, not subject to regulation by the State.

(5)   The Amended ESSA, to the extent it bars any damages or injunctive relief to Snake River after December 8, 2000, under its Power Contract with Enron, as confirmed by PacifiCorp's Stipulation in this Court (to provide power to Snake River under the same terms and conditions) contravenes the Contract Clause of the U.S. Constitution.

## I.   SUMMARY JUDGMENT IS PRECLUDED BECAUSE OF THE EXISTENCE OF DISPUTED ISSUES OF FACT WHICH ARE SUBJECT TO JURY TRIAL IN THIS COURT SCHEDULED FOR APRIL 22, 2002

The State, in its motion, asserts that there are no genuine issues of material fact and that the decision as to whether there is antitrust immunity is solely a question of law.  While the ultimate decision on immunity from the Federal Antitrust Laws is a question of law for the Court, facts, as ruled by the Ninth Circuit in *Snake River Valley Elec. Ass'n v. PacifiCorp*, underlie the applicability of the immunity doctrine:

> . . .The State-action doctrine will shelter only the particular anticompetitive acts of private parties that, in the judgment of the State, actually further State regulatory policies." *Patrick v. Burget*, 486 U.S. 94, 101 . . . (1988).  In the absence of such review, "there is no realistic assurance that a private party's anticompetitive conduct promotes State policy, rather than merely the party's individual interest."

238 F.3d at 1193-94.

PacifiCorp, unlike the State, seeks to provide evidentiary materials, which it believes will support its claim that Snake River is engaged in a "sham wholesale transaction" under §61-332D, the sole section which it has brought to the attention of the IPUC. PacifiCorp relies on a number of claimed "undisputed facts", which are directly disputed by Snake River. The existence of disputed material issues of fact bars any summary judgment for PacifiCorp, as well as for the State.

Snake River enumerates, and with affidavits supports, the numerous genuine issues of disputed material facts with respect to PacifiCorp's contentions that it has immunity under the express terms of §61-332D in its Memorandum in opposition to PacifiCorp's motion for summary judgment, which affidavits we adopt by reference in opposition to the State's motion herein..

The Supreme Court has set the standard for the rule for summary judgment in antitrust cases, *Poller v. Columbia Broadcasting System*, 368 U.S. 464, 473 (1962), as follows:

> . . . We believe that summary procedures should be used sparingly in complex antitrust litigation where motive and intent play leading roles, the proof is largely in the hands of the alleged conspirators, and hostile witnesses thicken the plot. . . It is only when the witnesses are present and subject to cross-examination that their credibility and the weight to be given their testimony can be appraised. Trial by affidavit is no substitute for trial by jury which so long has been the hallmark of "even-handed justice." [1]

The issues of material fact are contained in the Snake River's brief opposing PacifiCorp's motion. Since there are genuine issues of material fact relating to the applicability of §61-332D, as

---

[1]     *See also, T.W. Elec. Service v. Pacific Elec. Contractors*, 809 F.2d 626, 630 (9th Cir. 1987) ("Thus, at this stage of the litigation, the judge does not weigh conflicting evidence with respect to a disputed material fact. *Anderson*, 106 S. Ct. at 2513. Nor does the judge make credibility determinations with respect to statements made in affidavits, answers to interrogatories, admissions or depositions. *See id.* These determinations are within the province of the factfinder at trial. Therefore, at summary judgment, the judge must view the evidence in the light most favorable to the non-moving party; if direct evidence produced by the moving party conflicts with direct evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. . .").

well as PacifiCorp's summary judgment motion on the merits of antitrust issues, the motions must

be denied. [2]

## II.    THE STATE'S MOTION MUST BE DENIED BECAUSE NO ACTUAL STATE SUPERVISION PRESENTLY EXISTS TO MEET THE *MIDCAL* STANDARD UNDER THE NINTH CIRCUIT'S DECISION

The Ninth Circuit Court of Appeals in *Snake River Valley Electric Association v. PacifiCorp*,

238 F.3d 1189 (9th Cir. 2001), has held that PacifiCorp under the original ESSA has no immunity

from the Federal antitrust laws because the ESSA was not self-policing to satisfy the second prong

of *Midcal*. The Ninth Circuit held that the second prong of the *Midcal* test:

> . . . requires that the State "exercise ultimate control over the challenged [private] anticompetitive conduct." *FTC v. Ticor Title Ins. Co.*, 504 U.S. 621, 634 . . .

238 F.3d at 1193; emphasis added. The Court ruled that:

> . . . This prong insures that "the State-action doctrine will shelter only the particular anticompetitive acts of private parties that in the judgment of the State, actually further State regulatory policies." *Patrick v. Burget*, 486 U.S. 94, 104 (1968) . . . (1989).

*Id.*; emphasis added

The Ninth Circuit rejected both PacifiCorp's and the State's arguments that the ESSA, as

originally enacted, was "self-policing." 238 F.3d at 1194. In support, the Ninth Circuit cited the

*Ticor* case as follows:

---

[2]      The State's contention that it is entitled to summary judgment relating to a permanent injunction, even before there has been a trial on the merits before the Court defies logic and reason since the "standards for a permanent injunction are the same as a preliminary injunction, except the moving party must show actual success on the merits, instead of probable success on the merits" as quoted by the State in *Amoco Production Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987). It is certainly not appropriate for the Court now, before there has been any trial, to rule on what sort of injunctive relief should be ordered based on the evidence presented. That State's motion is premature.

. . . *See Ticor*, 504 U.S. at 634-35. . . (holding the purpose of the State action immunity doctrine "is to determine whether the State has exercised sufficient independent judgment and control so that the details of the rates or prices have been established as a product of deliberate State intervention, not simply by agreement among private parties.") 238 F.3d at 1194.

The Court similarly rejected PacifiCorp's reliance on *Municipal Utilities Bd. v. Alabama Power Co.*, 934 F.2d 1493 (11th Cir. 1991) on the ground that the actual details of a series of private agreements dividing service territories had been remanded by Eleventh Circuit to the District Court for determination of compliance with the active supervision requirement. On remand, the Eleventh Circuit agreed with the District Court that "the private agreements at issue in the case were actually approved by the Alabama legislature and, further, under the provisions of the Act in question, the Alabama legislature had to give explicit approval to any territorial exchanges private utilities agreed to." 238 F.3d at 1194-1195.

The Ninth Circuit also denied the claim by PacifiCorp and Idaho that the four Idaho cases applying and enforcing the ESSA amount to active supervision under the Ninth Circuit's decision in *Nugget Hydro Electric, L.P. v. Pacific Gas and Electric Co.*, 981 F.2d 429 (9th Cir. 1992), ruling as follows:

> . . . While *Nugget* does hold that an equivalent number of cases act as active supervision . . . those cases all involve reviews of the specific conduct at issue in *Nugget* . . . The mere presence of cases reviewing general violations of the ESSA does not amount to active supervision in this case when Idaho courts lack all power to review the specific conduct at issue.

238 F.3d at 1195.

Of the changes enacted by the amended ESSA initially in the temporary legislation of December 8, 2000 authorizing the Idaho Public Utilities Commission ("IPUC") to adjudicate certain

issues, PacifiCorp has filed only for an adjudication under new §61-332D, claiming Snake River is seeking a "sham wholesale transaction." The IPUC, in an order issued October 30, 2001, denied PacifiCorp's motion for summary judgment and has scheduled discovery, testimony, and a hearing on the issue. *See* Order 2888 at 12-15, attached to State's Affidavit of Brett T. DeLange. Until the Commission adjudicates that Snake River is engaged in a "sham wholesale transaction," there can be no possible claim of state-action immunity for PacifiCorp under the amended ESSA because, under the controlling Ninth Circuit decision, the State has not satisfied the *Midcal* active supervision requirement because it would not have "exercised sufficient independent judgment and control so that the details of [the final result] have been established as a product of deliberate state intervention", *citing Ticor*. 238 F.3d at 1194.

The contention by the State and PacifiCorp in their motions to this Court that PacifiCorp's antitrust immunity commenced on December 8, 2000, long prior to any decision on the merits of the designated issue posed by the legislature to be adjudicated by the IPUC, directly conflicts with the Ninth Circuit's decision.[3]

This conclusion also directly applies to each of the other provisions of the Amended ESSA

---

[3]     Such a conclusion also conflicts with the plain intent of the amended ESSA itself. Section 61-332D(2) provides that:

> [a]n electric supplier declining to furnish wheeling service pursuant to this section shall petition the Commission for review of the electric supplier's action in respect to a request for such service. The Commission shall, upon notice and opportunity for a hearing, review the electric supplier action for consistency with the purposes and provisions of this Act, and issue an order in accordance with its finding, ordering either that the wheeling service shall, or shall not, be required.

Emphasis added.

cited by the State and PacifiCorp, other than §61-332D, [4] which alone is the subject of a filing at the

IPUC. No state action immunity from the Federal Antitrust Laws can exist in the absence of any

actual state action by the IPUC on the merits of a particular matter. PacifiCorp, having sought no

action by the IPUC under any of these sections, can claim no immunity under the second prong of

*Midcal*, based on any of these provisions.

**III.  THE STATE'S MOTION SHOULD BE DENIED BECAUSE
IT IS PREMATURE AND WILL LIKELY BECOME
MOOT UNDER PACIFICORP'S STIPULATION TO
THE COURT IN OPPOSITION TO PLAINTIFF'S MOTION
FOR A PRELIMINARY INJUNCTION THAT IF IT IS
LIABLE UNDER THE ANTITRUST LAWS, IT WOULD
PROVIDE WHOLESALE POWER TO SNAKE RIVER OVER
ITS TRANSMISSION SYSTEM FOR RESALE BY SNAKE
RIVER TO ITS MEMBERS ON THE SAME TERMS AND
CONDITIONS AS CONTAINED IN SNAKE RIVER'S THEN-
EXISTING POWER CONTRACT WITH ENRON POWER
MARKETING, INC.**

On September 16, 1997, Snake River filed a motion for a preliminary injunction in this case, with

supporting affidavits, against PacifiCorp to enjoin PacifiCorp from refusing to wheel wholesale

power to it under its contract with Enron Power Marketing, Inc., alleging that the Company's refusal

to wheel constituted a violation of the Federal Antitrust Laws. Snake River would suffer irreparable

injury if the requested injunction were not granted, because its power purchase contract with Enron

Power Marketing, Inc. gave Enron an option to terminate the contract if Snake River had not

satisfied a condition precedent requiring it to obtain transmission service to enable Snake River to

resell the purchased wholesale from Enron to Snake River's members.

---

[4]      This involves §§61-332B, 61-333(1) and 61-334B. *See also*, III, *infra*, for other objections
to these provisions.

At the hearing on the motion for a preliminary injunction before the Court on December 8,

1997, counsel for PacifiCorp, David J. Jordan, made the following stipulation on the record:

> . . . Your Honor, from the podium and on the record today . . . I am committing
> PacifiCorp to provide wholesale power at the same rates and on the same terms to
> Snake River as the Enron contract, the same length of time, same price. Now if that
> doesn't dispose of even a whimsy of irreparable harm in this case, I don't know what
> could, but I am committing the Company on the record today, same price, same
> terms, same deal.

The Court, in its Memorandum, Decision and Order of December 9, 1997, ruled as follows:

> Moreover, at oral argument, PacifiCorp's counsel committed PacifiCorp to
> match the terms of the Enron contract, should SRVEA prevail at trial and should
> Enron decide in the interim to disavow the contract. In light of this commitment,
> SRVEA cannot possibly demonstrate irreparable harm based upon the possible loss
> of the Enron contract. PacifiCorp is bound to fulfill Enron's obligations, should the
> circumstances noted above arise. [5]

---

[5]     The Court considered conditioning its denial of the motion for a preliminary
injunction upon execution by PacifiCorp of a formal document binding itself to
SRVEA in accordance with counsel's representations at oral argument. However,
the Court ultimately decided that doing so was unnecessary in light of the repeated
and clear representations at oral argument. The Court considers PacifiCorp to be
bound to step into the shoes of Enron in the event that SRVEA prevails on the merits
at trial and Enron disavows the contract sometime between now and then, and will
enforce PacifiCorp's obligations in this regard by Court order, if necessary.

The Ninth Circuit confirmed PacifiCorp's commitment:

> . . . Although Enron has the right to cancel its contract with SRVEA, PacifiCorp
> stipulated to the district court that it would provide wholesale electricity to SRVEA
> if Enron cancelled its contract and PacifiCorp is found to violate the antitrust statutes
> in the present case. . . .

238 F.3d at 1190, n.4.

PacifiCorp's stipulation, made to avoid a preliminary injunction requiring it to then wheel

wholesale power purchased by Snake River from Enron over PacifiCorp's power grid for delivery

to Snake River for resale by it to its members, moots the present motions by PacifiCorp and the State for summary judgment based on the amended ESSA. If Snake River prevails on the merits at trial as to antitrust violations for the period prior to December 8, 2000, PacifiCorp is required to provide wholesale power to Snake River at the same rates and terms of the Enron contract, commencing May 1, 1997 and continuing for the full five-year term of the contract. Since PacifiCorp is committed under this Stipulation to transport power identical to the Enron power to Snake River for its cooperative based on the status of the antitrust laws at that time, this moots any contention that a change in the State law as of December 8, 2000 could affect the rights of Snake River to continue operation as an electric cooperative. Nothing in the amended ESSA purports to apply to cooperatives legally operating prior to the statute.

### IV. PACIFICORP'S CLAIM UNDER §61-332D OF THE ESSA THAT SNAKE RIVER IS SEEKING TO UNDERTAKE A "SHAM WHOLESALE TRANSACTION", IS BARRED BY THE NINTH CIRCUIT'S DECISION AND LONG-ESTABLISHED FEDERAL LAW THAT WHOLESALE-FOR-RESALE TRANSACTIONS ARE WITHIN EXCLUSIVE FEDERAL JURISDICTION, NOT SUBJECT TO REGULATION BY THE STATE

If the Court denies the State's and PacifiCorp's motions for summary judgment on any of Snake River's grounds for denial, I-III, it will not be necessary to consider ground IV at this time.

Snake River asserts that the Court should deny both the State's and PacifiCorp's motions, based on the rulings by this Court and the Ninth Circuit that are now the law of the case that Snake River is involved in a wholesale-for-resale transaction, and on the long-standing precedents by the Supreme Court and Federal Courts, that such transactions are under exclusive federal jurisdiction

not subject to regulation by the State.

This Court in its Memorandum, Decision and Order of June 29, 2001 granted PacifiCorp's motion to remand PacifiCorp's proceeding filed at the IPUC and ruled that this "will moot [SRVEA's] motion to dismiss." [5]  In its order, the Court did not address the merits of Snake River's motion to dismiss but held that:

> The IPUC's decision will not be the last word on the issue. This Court will need to resolve, in *Snake River v. PacifiCorp*, Civil No. 96-308-E-BLW, whether the new amendments to the ESSA clothed PacifiCorp with state action immunity....

### A.  The Ninth Circuit Has Ruled That Snake River Is A Cooperative Which Is Proposing To Acquire Electric Power At Wholesale And To Resell Such Power to its Members

PacifiCorp admitted in the District Court proceedings in its answer to Paragraph 3 of the Complaint that "Plaintiff is a cooperative, organized and existing under the laws of the State of Idaho to acquire electric power at wholesale and resell such electric power to its members and other users desiring service." This Court in its initial Memorandum and Decision of April 25, 1997 found facts as follows:

> Plaintiff Snake River Valley Electric Association is a non-profit cooperative organized to buy electric power at wholesale rates for resale to its members.

Memorandum and Decision of April 25, 1997 at 2. Subsequently, the Ninth Circuit ruled that "SRVEA is a nonprofit cooperative organized to buy electric power at wholesale rates for its

---

[5]     The IPUC denied Snake River's motion to dismiss PacifiCorp's complaint filed at the IPUC but, at the same time, the IPUC denied PacifiCorp's motion for summary judgment on its complaint, and has scheduled the matter for hearing. Since the IPUC could rule at the hearing against PacifiCorp, there is no final applicable order from the IPUC at this time.

 

members." *Snake River Valley Elec. Ass'n v. PacifiCorp*, 238 F.3d at 1191. These findings of fact are binding on PacifiCorp. *Montana v. United States*, 44 U.S. 179, 162 (1979) ("Regardless of a change in law, a fact, question or right adjudicated in the original action cannot be disputed in a subsequent action, even though the determination was reached upon an erroneous view or by an erroneous application of the law.")

PacifiCorp has further admitted that in the Federal Court proceedings leading to the Ninth Circuit decision, "PacifiCorp has consistently taken the position that SRVEA's intended scheme constitutes retail wheeling and/or a sham wholesale transaction." [6] *See* App. A hereto. The Restatement of the Law bars PacifiCorp from raising this matter now.

> (2)    In an action upon the judgment, the defendant cannot avail himself of defenses he might have interposed, or did interpose, in the first action.

Restatement of the Law Second Judgments, 2d. Section 18.

The issue is indistinguishable from an issue which the State did raise in its petition for rehearing before the Ninth Circuit involving Idaho Code §61-328. The Ninth Circuit expressly rejected the attempt by the State to raise this issue in its petition for rehearing:

> In its petition for rehearing, Idaho argues that the Idaho Code §61-328 limits a utility's authority to sell a service area absent approval from the Idaho Public Utilities Commission. As Idaho did not raise the statute upon appeal, this argument is waived . . . .

238 F.3d at 1193, n.10.[7]

---

[6]    PacifiCorp also admits that it knew of the FERC decision in *City of Palm Springs*, 76 FERC ¶61,127 (July 31, 1996) [wherein FERC exercised exclusive Federal jurisdiction to adjudicate issues of "sham wholesale transactions."].

[7]    Furthermore, neither PacifiCorp nor the State brought to the attention of the Ninth Circuit the provisions of H.B. 1 enacted almost two months prior to the Court's final decision of January 29, 2001, and also never sought to raise the matter in a petition for review at the United States Supreme Court by

In addition, the Ninth Circuit's holding that the jurisdiction of the Idaho Public Utilities Commission over a decision to sell an exclusive territory, "does not reach the present situation, where a utility has refused to sell an exclusive service territory", 238 F.3d at 1193, n.10, equally applies to the amended ESSA, §61-332D, which precludes any summary judgment for the State or PacifiCorp.

**B.    Exclusive Federal Jurisdiction Exists Over
        Determination Of Wholesale Sales And Over
        What Constitutes A Sham Wholesale Transaction**

Based on long-established law, the State has no authority over wholesale-for-resale transactions, including what constitutes a "sham wholesale transaction" which preempts consideration of this question by the State Commission.    The Federal Energy Regulatory Commission has ruled that the issue presented by IC §61-332D of a "sham wholesale transaction" is subject to the determination under the exclusive jurisdiction of the FERC.  Order 888-A, ¶31,048 at 30,404.  FERC's decision has been affirmed by the Court of Appeals for the D.C. Circuit which held that Order 888-A:

> ... adequately distinguishes between recovery of stranded costs from retail customers and recovery from retail-turned wholesale customers.  In the former situation customers remained retail customers subject to State jurisdiction; in the latter situation, customers become wholesale customers subject to FERC's exclusive

---

April 29, 2001, long after the enactment of IC 62-332D upon which the State and PacifiCorp based their motions for summary judgment in the present case.

Also, PacifiCorp and the State knew, during the pendency of the Federal proceedings before this Court, of the existence of the Energy Policy Act of 1992, but neither raised this legal issue, involving identical language contained in the amended ESSA provision in §61-332B.  If the Federal statute barred Federal jurisdiction to determine what is a "sham wholesale transaction", that argument was required to have been made by the State and PacifiCorp in support of their defense of State action immunity in the appeal proceedings before the Ninth Circuit.

jurisdiction. This very different result justifies FERC's different treatment of the two situations.

*Transmission Access Policy Study Group v. FERC*, 225 F.3d 667, 724 (D.C. Cir. 2000), *cert granted on other issues*; emphasis added.

The Supreme Court has held that the States lack authority under the Commerce Clause of the U.S. Constitution to regulate wholesale sales of power in interstate commerce. *Public Utilities Com. v. Attleboro Steam & E. Co.*, 273 U.S. 83, 89-90 (1927) ("The [wholesale] rate is therefore not subject to regulation by either of the two States in the guise of protection to their respective local interests; but if such regulation is required, it can only be obtained by the exercise of the power vested in Congress.").

Congress, in 1935, subsequently enacted §201(b) of the Federal Power Act, 16 U.S.C. §824(b), which provides that:

> The provisions of this subchapter shall apply to the transmission of electric energy in interstate commerce and to the sale of electric energy at wholesale in interstate commerce.

The U.S. Supreme in *Federal Power Commission v. Southern Cal. Edison Co.*, 376 U.S. 205, 215-216 (1964) held that §201(b) of the Federal Power Act precluded the Public Utilities Commission of California from exercising any jurisdiction over Southern California Edison's transmission and sale of power at wholesale to a California city (City of Colton) for resale by the city to its inhabitants:

> . . . In short, our decisions have squarely rejected the view of the Court of Appeals that the scope of FPC jurisdiction over interstate sales of gas or electricity at wholesale is to be determined by a case-by-case analysis of the impact of state regulation upon the national interest. Rather, Congress meant to draw a bright line, easily ascertained, between state and federal jurisdiction, making unnecessary such case-by-case analysis. This was done by making FPC jurisdiction plenary and extending it to all wholesale sales of interstate commerce. . . .

The Supreme Court expressly rejected a claim by the California PUC and Edison that the facilities used by Edison were for "local distribution", holding that that is a question "to be decided by the FPC as an original matter." 376 at 210, n.6; emphasis added.. This holding has been reaffirmed in a number of cases. *Mississippi Power v. Moore*, 487 U.S. 354, 369-370 (1988); accord, *Nantahala Power and Light Co. v. Thornburg*, 476 U.S. 953 (1986); *United States v. Public Utilities Com.*, 345 U.S. 295, 298, 304 (1953) (where subsequently metered and billed individually in a wholesale-for-resale transaction not subject to State jurisdiction).[8]

PacifiCorp's claim that the State has jurisdiction to adjudicate a utility's "sham wholesale transaction" based on the FERC's decision in *City of Palm Springs California*, 76 FERC ¶61,127 (1996) and the Energy Policy Act of 1992, is in error. First, these issues were known to PacifiCorp and the State, but were never raised in the appeal to the Ninth Circuit and are now waived. 238 F.3d at 1193, n.10. Second, FERC held in *City of Palm Springs* that what is "retail wheeling and/or a sham wholesale transaction", under §212(h) of the Energy Policy Act of 1992, is, as to alleged wholesale transactions, only subject to determination in the Federal arena:

> ... Congress undoubtedly intended this Commission [FERC] to look at the substance of each transaction, not just the form, to detect subterfuges.

---

[8]    *See also, City of Oakland v. FERC*, 754 F.2d 1378, 1379-80 (9th Cir. 1985); *Arkansas Power & Light Co. v. Federal Power Commission*, 368 F.2d 376, 383-84 (8th Cir. 1966) ("sales-for-resale by Arkansas Power & Light Company to cooperative in Arkansas at low voltages at 108 separate

(Footnote 8 continued on page 16)

(Footnote 8 continued from page 15)

delivery points not subject to state PUC jurisdiction but were preempted by the Supreme Court's *Attleboro* case); *PP&L, Inc.*, 95 FERC ¶61,160 (2001) (FERC rejected rates for wheeling service adjudicated by the Pennsylvania Public Utility Commission for wheeling service to wholesale customers over the utility's "distribution" or "primary" voltage level facilities (12 kV through 23 kV)).

76 FERC at 61,702.[9]

The Ninth Circuit ruled that this is not governed by the ESSA:

. . . Further as §61-328 provides the public utility commission jurisdiction over a decision to sell an exclusive territory, it does not reach the present situation, where a utility has refused to sell an exclusive service territory.

238 F.3d at 1193, n.18.

## V.   THE AMENDED ESSA, TO THE EXTENT IT BARS ANY DAMAGES OR INJUNCTIVE RELIEF TO SNAKE RIVER AFTER DECEMBER 8, 2000, UNDER ITS POWER CONTRACT WITH ENRON, AS CONFIRMED BY PACIFICORP'S STIPULATION IN THIS COURT (TO PROVIDE POWER TO SNAKE RIVER UNDER THE SAME TERMS AND CONDITIONS), CONTRAVENES THE CONTRACT CLAUSE OF THE U.S. CONSTITUTION

The Contract Clause of the U.S. Constitution provides that "No State shall . . . pass any law

---

[9]      *City of Palm Springs, California* is also distinguishable from the present case because, in the present case, Snake River has proposed from the outset that it purchase all of the local facilities of PacifiCorp in the area for a reasonable price, which PacifiCorp has refused to sell. A similar distinction exists with respect to §61-332D of the Idaho Code as not controlling this Court's jurisdiction under the Federal antitrust laws.

Also, the FERC, in a number of cases, has distinguished its *City of Palm Springs* decision so that it no longer has any applicability to the facts of Snake River's case. *Laguna Irrigation District* 95 FERC ¶61,305 (2001) (approval of *Laguna* proposed 16 interconnections with PG&E to allow it to serve 19 retail customers previously served by PG&E, including some proposed construction of some local distribution facilities within the district boundaries). *See* 88 FERC ¶61,164 at 61,552-52); *People's Electric Cooperative*, 93 FERC ¶61,218 at 61,732 (an entity similar to Snake River took title to electric energy before that energy flows to the authority's customers and pays the utility to transform that electricity into household voltage or leases all of the electrical facilities past the primary metering point for a nominal payment (only $1 per customer per year), not considered a "sham wholesale transaction."); *see also, Pacific Gas & Electric Co.*, 88 FERC ¶61,231 at 61,769 (FERC

(Footnote 9 continued on page 17)
(Footnote 9 continued from page 16)

rejects argument that the Fresno Irrigation District is engaging in a prohibited sham wholesale transaction under §212(h) of the Federal Power Act); and *Cleveland Electric Illuminating Company* 82 FERC ¶61,254, 612,018 (FERC refused to declare a wholesale transaction, where there are some facilities used for distribution of the power, to be a "sham" under §212(h) of the Federal Power Act.).

impairing the Obligation of Contracts." U.S. Const. Art. I, §10, cl 1. The U.S. Supreme Court has confirmed the application of the Clause when the State legislation unnecessarily or unreasonably impairs a substantial contractual relationship. *Allied Structural Steel Co. v. Spannous*, 438 U.S. 234 (1978).

The first inquiry "must be whether the state law has, in fact, operated as a substantial impairment of a contractual relationship." 438 U.S. at 244. In *Spannous*, the Court held that a state law requiring a modification of prior contract rights relating to the term of a pension plan and the funding of the plan meet this criteria. The proposed termination by the Amended ESSA, as construed by the State and PacifiCorp, of Snake River's five-year contract rights as of December 8, 2000, would deprive Snake River of approximately one-third of the total benefits thereunder, a similar severe result:

> The severity of an impairment of contractual obligations can be measured by the factors that reflect the high value the Framers placed on the protection of private contracts. Contracts enable individuals to order their personal and particular needs and interests. Once arranged, these rights and obligations are binding under the law and the parties are entitled to rely on them.

438 U.S. at 245.

The Court also rejected any claim that "the severe disruption of contractual expectations was necessary to meet an important social problem." 438 U.S. at 427. A similar situation exists in the present case. The contract in question was essential to enable Snake River to establish its new electric cooperative to provide reasonable power service to a rural area of the State, wherein a number of such cooperatives were operating, to meet special, large irrigation needs. At the time the contract was entered, the Ninth Circuit has confirmed that there were no state legal barriers to Snake River's reliance on the long-established federal laws enabling such competition. 238 F.3d 1189 at

1193-95. Any contention by the State and PacifiCorp that the Amended ESSA had to be applicable to Snake River, *i.e.*, impair its existing contract, to effectuate a state policy against electric deregulation is unsupportable. If so, why doesn't the ESSA apply to terminate the existing power contracts of all of the existing 11 electric cooperatives and 11 municipals in the State? The impairment of Snake River's contract was neither necessary nor reasonable. *Univ. of Hawaii Professional Assembly v. Corptono* 183 F.3d 1096 (9th Cir. 1999); *cf. Re: Fidelity State Bank*, 35 Idaho 797; 297 P. 449 (1922) (citing U.S. Const., Art. I, 10, cl. 1 and Idaho Const., sec. 16, Art. 1, ("No . . . law impairing the obligations of contracts shall ever be passed."). [10]

## CONCLUSION

For any of the foregoing reasons, the Court should deny the State's motion for partial summary judgment.

Robert C. Huntley
Huntley, Park, Thomas, Burkett,
Olsen & Williams, L.L.P.
250 So. 5th Street, Suite 660
Boise, ID  83701
Telephone: (208) 388-1230
Facsimile:  (208) 388-0234

Respectfully submitted,

Charles F. Wheatley, Jr.
Wheatley & Ranquist
34 Defense Street
Annapolis, MD 21401
Telephone: (410) 266-7524
Facsimile: (301) 261-8699

Counsel for SRVEA

December 21, 2001

---

[10]     The Stipulation on the record by PacifiCorp committing PacifiCorp, to provide wholesale power at the same rates and on the same terms to Snake River as the Enron contract, confirmed by both this Court and the Ninth Circuit, *see, supra*, pp. 9-10 is part of Snake River's contract rights. In such cases, the stipulation becomes a part of the obligation of contract and any subsequent statute which affects the remedy impairs the obligation and is unconstitutional. *See* 16A Am. Jur.2d §709.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 21st day of December, 2001, a true and correct copy of the foregoing document was served on the below listed individuals by the method indicated below:

Mary S. Hobson, ISB#2142
STOEL RIVES
101 South Capitol Blvd., Suite 1900
Boise, ID 83702
**Fax: 389-9040**

___ Hand Delivered
___ U.S. Mail
___ Overnight Mail
_X_ Facsimile

John M. Eriksson, Esq.
STOEL RIVES
One Utah Center
201 S. Main St. Suite 1100
Salt Lake City, UT 84111
**Fax: 801-578-6999**

___ Hand Delivered
___ U.S. Mail
___ Overnight Mail
_X_ Facsimile

Brett T. DeLange
Deputy Attorney General
Consumer Protection Unit
Office of the Attorney General
Len B. Jordan Building, Lower Level
700 West Jefferson Street, Room 210
P. O. Box 83720
Boise, ID   83720-0010
**Fax: 334-2830**

___ Hand Delivered
___ U.S. Mail
___ Overnight Mail
_X_ Facsimile

Robert C. Huntley

* Without attachments since
Fed Ex prevented from arriving
due to weather.
R C. Huntley