ALAN G. LANCE
ATTORNEY GENERAL
STATE OF IDAHO

DAVID G. HIGH, Chief
Civil Litigation Division

BRETT T. DeLANGE
Deputy Attorney General
Consumer Protection Unit
Office of the Attorney General
Len B. Jordan Building, Lower Level
700 West Jefferson Street, Room 210
P. O. Box 83720
Boise, Idaho 83720-0010
Telephone: (208) 334-2424

ATTORNEYS FOR THE STATE OF IDAHO

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SNAKE RIVER VALLEY ELECTRIC ASSOCIATION | Case No. 96-308-E-BLW |
| Plaintiff, | |
| vs. | |
| PACIFICORP (including UTAH POWER, & LIGHT COMPANY, a division), | |
| Defendant, | |
| STATE OF IDAHO, by and through ALAN G. LANCE, Attorney General | |
| Defendant - Intervenor. | |

**THE STATE OF IDAHO'S REPLY MEMORANDUM IN SUPPORT OF ITS SECOND
MOTION FOR PARTIAL SUMMARY JUDGMENT**

This memorandum is respectfully submitted in response to Snake River's memorandum in opposition to the State of Idaho's (State) Second Motion for Partial Summary Judgment.

## I.

### THE STATE'S MOTION IS NOT "PREMATURE"; STATE ACTION IMMUNITY IS A LEGAL ISSUE THAT CAN BE DECIDED ON SUMMARY JUDGMENT

Snake River argues that the State's request for partial summary judgment is "premature," and should not be ruled upon "before there has been any trial." SRVEA's Memorandum in Opposition to State of Idaho's Second Motion for Partial Summary Judgment, p. 5, n. 2 (SRVEA's Memorandum). This begs the question. The law is that summary judgment is appropriately granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. And the Ninth Circuit has made clear that state action immunity is a question of law. Columbia Steel Casting Co. v. Portland General Electric, 111 F.3d 1427, 1442 (9th Cir. 1997), *cert. denied* 523 U.S. 1112 (1998). The State asserts that with respect to the issues raised by its present motion there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. That the issues raised by the State's motion can conceptually also be heard at trial does not defeat the State's motion and does not preclude the Court from hearing and granting it.

## II.

### SNAKE RIVER ERRS IN ARGUING THAT, WITH ESSA'S AMENDMENTS, THE STATE DOES NOT ACTIVELY SUPERVISE THE ANTICOMPETITIVE CONDUCT OF WHICH SNAKE RIVER COMPLAINS IN THIS CASE

In its memorandum, Snake River does not dispute that, as a matter of law, the State has satisfied the first part of the two-part Midcal[1] test for determining state action immunity—that the State clearly articulate and affirmatively express as state policy the anticompetitive conduct of which Snake River complains in this case. What Snake River does dispute is that the State, even after significantly amending ESSA (at the invitation of the Ninth Circuit Court of Appeals

---

[1] California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc., 445 U.S. 97, 100 S.Ct. 937 (1980).

**REPLY MEMORANDUM IN SUPPORT OF THE STATE OF IDAHO'S SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT - 1**
hdelange/antitrust/Snake River/Second Reply Memo4psj.doc

in Snake River Valley Electric Association v. PacifiCorp, 238 F.3d 1189, 1195 (9th Cir. 2001)), actively supervise ESSA's provisions. SRVEA Memorandum, p. 5. Snake River errs.

The Ninth Circuit has stated that state supervision is active if (1) state officials have the power to review particular anticompetitive acts, and (2) the state actually exercises the role granted to it under the relevant state law. Nugget Hydroelectric v. Pacific Gas & Elec., 981 F.2d 429, 435 (9th Cir. 1992) *cert. denied* 508 U.S. 908 (1993); *accord* DFW Metro Line Services v. Southwestern Bell Tel., Corp., 988 F.2d 601, 606 (5th Cir. 1993), *cert. denied* 510 U.S. 864 (finding that the Texas Public Utilities Commission actively supervised the conduct at issue in that case).[2]

When the Ninth Circuit's standard is applied here, it cannot be gainsaid but that the State, as a matter of law, actively supervises the conduct at issue. Under the amended ESSA, the Idaho Public Utilities Commission (Commission) is authorized to review every single anticompetitive act identified by Snake River or the Ninth Circuit in this case. For example, amended Idaho Code § 61-332B of ESSA prohibits "electric suppliers" from providing "electric service" to consumers that are then or have at any time previously been connected for electric services to facilities of another electric supplier, except as provided by ESSA.[3] Private parties no longer have the discretion to opt out of the restraint on competition without the State's reviewing and approving any such arrangement pursuant to the stated goals of ESSA. Compare the scope of this amended section with Snake River's claim that PacifiCorp's actions have precluded Snake River from providing electric power to PacifiCorp's existing customers,[4] and the Ninth Circuit's concern that because Section 61-332B, as it existed prior to amendment, granted private parties

---

[2] Snake River's articulation of active state supervision is much more narrow and constrained than that set forth in Nugget Hydroelectric. It is telling that Snake River does not cite one case to support its contention that there can never be active state supervision "in the absence of any actual state action by the IPUC on the merits of a particular matter." SRVEA Memorandum, p. 8. The standard, as set forth above, is broader and more encompassing than that.

[3] Idaho Code § 61-334B provides that upon a petition of any consumer or electric supplier for an exception to Idaho Code § 61-332B, the Commission may grant the relief, but only if doing so is consistent with the purposes of ESSA, as set forth in Idaho Code § 61-332.

[4] Snake River has waived, without condition, its claims on behalf of Idaho customers who are not presently served by PacifiCorp. Snake River, 238 F.3d at 1191 n.5. Thus, the State will focus on Snake River's antitrust claims as they relate to existing customers of PacifiCorp.

**REPLY MEMORANDUM IN SUPPORT OF THE STATE OF IDAHO'S SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT - 2**
bdelange/antitrust/Snake River/Second Reply Memo4psj.doc

the right to consent for another utility to serve their customers, *see* old Idaho Code § 61-332B, the private party could avoid competition simply by declining to consent, and do so without review by any state agency. Snake River, 238 F.3d at 1194. Now, that has changed. Indeed, it is clear, as a matter of law, that Snake River's claim and the Ninth Circuit's concerns are now fully covered and addressed by the amendments to Section 61-332B, and are actively supervised by the State.

Idaho Code § 61-332D prohibits retail wheeling and/or sham wholesale transactions, but requires an electric supplier declining to furnish wheeling service pursuant to its provisions to petition the Commission for review of the electric supplier's action with respect to a request for such service. The Commission is then required to review the electric supplier's action for consistency with the purposes and provisions of ESSA, and to issue an order in accordance with its finding, ordering either that the wheeling service shall, or shall not, be required. Compare this section with Snake River's claim that PacifiCorp will not wheel electric power to Snake River customers. Thus, as a matter of law, that Snake River's claim is fully covered and addressed by Section 61-332D, and is actively supervised by the State.

Idaho Code § 61-333(1) permits any electric supplier to contract with any other electric supplier for the purpose of allocating territories, consumers, and future consumers, but requires that all such contracts be filed with the Commission, and that the Commission approve or reject the contracts. The Commission may only approve the contracts upon finding that the allocation of territories or consumers is in conformance with the provisions and purposes of ESSA. Compare this section with the Ninth Circuit's concern that ESSA (as it existed prior to amendment), did not grant the State the "authority to strike down private divisions of customers." Snake River, 238 F.3d at 1195. That has also changed. Once again, it is readily apparent, as a matter of law, that the Ninth Circuit's stated concern is fully covered and addressed by Section 61-333(1), and is actively supervised by the State.

In short, as described above, under ESSA, no electric supplier can, on its own, opt out of ESSA's coverage. Only the Commission can approve contracts relating to the allocation of

**REPLY MEMORANDUM IN SUPPORT OF THE STATE OF IDAHO'S SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT - 3**
bdclange/antitrus/Snake River/Second Reply Memo4psj.doc

territories, consumers, and future consumers. Only the Commission can determine when competition is to be allowed. Private party discretion has been eliminated; full authority to review conduct under ESSA has been granted to the Commission.

Thus, as was the case in Nugget Hydroelectric, the State, pursuant to its amended ESSA, has the power to review the various types of anticompetitive conduct at issue here. This is true as a matter of law. The question then turns on whether the State is in fact exercising that authority. The answer to that question is also, as a matter of law, yes.

Snake River does not dispute, as set forth in the State's opening brief, pp. 6-7, that since ESSA's amendments became effective the Commission has already received and approved petitions from electric suppliers relating to service territory agreements, and is presently reviewing a petition filed by PacifiCorp, pursuant to Idaho Code § 61-332D, for an order that it does not need to provide wheeling services to Snake River if such service results in retail wheeling or sham wholesale transactions.[5] This collective activity is "sufficient to prove that the State actively supervises" Nugget Hydroelectric, 981 F.2d at 435, the conduct at issue and is exercising the role granted to it by ESSA.

### III.

### SNAKE RIVER HAS NOT IDENTIFIED ANY GENUINE ISSUES OF MATERIAL FACT WHICH PRECLUDE GRANTING THE STATE'S MOTION

Snake River contends that there are genuine issues of material fact which defeat the State's motion. It states that these genuine issues of material fact are contained in its memorandum opposing PacifiCorp's motion for summary judgment. Reviewing that memorandum, pages 14-15, this is what Snake River says are the genuine issues of material fact in this case relative to the State's motion:

> The facts as stated in the affidavits of Del Ray Holm, App. A and B hereto and as stated in the statement of facts, *supra*, Nos. 1-14 at pp. 4-10; and in the Affidavit of

---

[5] For active state supervision purposes, the fact that the Commission has not yet rendered a final decision is not significant. What is significant is the fact that the State is reviewing the petition and analyzing it under ESSA's amended provisions and stated policies, because this is uncontroverted evidence of the State's active supervision over very claims Snake River makes in this case.

REPLY MEMORANDUM IN SUPPORT OF THE STATE OF IDAHO'S SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT - 4
bdelange/antitrus/Snake River/Second Reply Memo4psj.doc

Dr. John W. Wilson, *supra*, App. E, pp. 3-10 hereto, and in the pleadings and discovery undertaken in this case, as set forth in Appendix F at 7-27, described at ¶ 17 of the "Statement of Facts", *supra*, preclude any summary judgment on either PacifiCorp's or the State's motions for partial summary judgment seeking immunity from antitrust liability for conduct after December 8, 2000 under the state action doctrine.

Apparently, Snake River's approach is not to point out what genuine issues of fact exist, but to simply cite to various items in the record and hope that something sticks. This is not a valid basis for opposing the State's motion. In any event, wading through Snake River's citations, the following are true:

- ◊ Snake River does not dispute that ESSA was amended;
- ◊ Snake River does not dispute the applicability of ESSA's amendments;
- ◊ Snake River does not dispute that the Commission has been granted new and broad authority under ESSA; and
- ◊ Snake River does not dispute the various activities undertaken by the Commission pursuant to the new authority granted to it by ESSA.

In short, Snake River disputes neither that Idaho now has the power to review the relevant, particular anticompetitive acts surrounding this case, nor that the State is actually exercising the role granted to it under ESSA. Thus, as a matter of law, the State of Idaho actively supervises the allegedly anticompetitive conduct of this case and state action immunity should attach. Nugget Hydroelectric, 981 F.2d at 435.[6]

## IV.

### AMENDED ESSA DOES NOT, AS APPLIED TO THE FACTS OF THIS CASE, VIOLATE THE CONTRACT CLAUSE OF THE UNITED STATES CONSTITUTION

Snake River argues that ESSA, as amended, contravenes the Contract Clause of the United States Constitution. U.S. Const. Art. I, § 10. Snake River errs.

---

[6] The State of Idaho disputes Snake River's arguments that PacifiCorp's commitment to stand in the shoes of Enron moots the State's motion, SRVEA Memorandum, pp. 8-10, and that PacifiCorp's claim before the Commission (that Snake River is engaged in a sham wholesale transaction) is subject to exclusive federal jurisdiction. *Id.* pp. 11-17. The State adopts and incorporates by reference PacifiCorp's arguments on these issues, which it is making in its own reply brief.

**REPLY MEMORANDUM IN SUPPORT OF THE STATE OF IDAHO'S SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT - 5**
bdelange/antitrus/Snake River/Second Reply Memo4psj.doc

"It is well settled that the prohibition against impairing the obligation of contracts is not to be read literally." Keystone Bituminous Coal Association v. DeBenedictis, 480 U.S. 470, 502 (1987). Indeed, as the United States Supreme Court has noted, "[t]he context in which the Contract Clause is found, the historical setting in which it was adopted, and our cases construing the Clause, indicate that its primary focus was upon legislation that was designed to repudiate or adjust pre-existing debtor-creditor relationships that obligors were unable to satisfy." Id., 480 U.S. at 502-03.

As the Supreme Court has further explained in Allied Structured Steel Co. v. Spannaus, 438 U.S. 234, 242-43 (1978):

> [I]t is to be accepted as a commonplace that the Contract Clause does not operate to obliterate the police power of the States. 'It is the settled law of this court that the interdiction of statutes impairing the obligation of contracts does not prevent the State from exercising such powers as are vested in it for the promotion of the common weal, or are necessary for the general good of the public, though contracts previously entered into between individuals may thereby be affected. This power, which in its various ramifications is known as the police power, is an exercise of the sovereign right of the Government to protect the lives, health, morals, comfort and general welfare of the people, and is paramount to any rights under contracts between individuals.' Manigault v. Springs, 199 U.S. 473, 480 (1905).

Contract Clause analysis begins by analyzing whether "the state law has, in fact, operated as a substantial impairment of a contractual relationship." Energy Reserves Group, Inc. v. Kansas Power and Light Company, 459 U.S. 400, 411 (1983) (internal quotes omitted). "This inquiry has three components: whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial." General Motors Corporation v. Romein, 503 U.S. 181, 186 (1992).

Even if a state law creates a substantial impairment it "does not transgress the Contract Clause as long as it is appropriate for, and necessary to, the accomplishment of a legitimate public purpose." Houlton Citizens' Coalition v. Town of Coulton, 175 F.3d 178, 191 (1st Cir. 1999) (*citing* Energy Reserves, 459 U.S. at 412). If there is a legitimate public purpose, then the next step is to ascertain the reasonableness and necessity of the legislation. Energy Reserves, 459 U.S. at 412. If the State is not a contracting party, then "[a]s is customary in reviewing

**REPLY MEMORANDUM IN SUPPORT OF THE STATE OF IDAHO'S SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT - 6**
bdelange/antitrus/Snake River/Second Reply Memo4psj.doc

economic and social regulation, . . . courts properly defer to legislative judgment as to the necessity and reasonableness of a particular measure." *Id.* at 412-13 (*quoting* United States Trust Co. v. New Jersey, 431 U.S. 1, 22-23 (1977)).

In determining the extent of impairment, a court is "to consider whether the industry the complaining party has entered has been regulated in the past." Energy Reserves, 459 U.S. at 411. The reason for this is, as the Court put it in Hudson Water Co. v. McCarter, 209 U.S. 349, 357 (1908): "One whose rights, such as they are, are subject to state restriction, cannot remove them from the power of the State by making a contract about them. The contract will carry with it the infirmity of the subject matter." (Emphasis added); Town of Coulton, 175 F.3d at 190.

Applying these principles here, it is clear that Snake River's Contract Clause claim is invalid. First, there is nothing in ESSA, as amended, that terminates or causes the termination of Snake River's contract with Enron. Enron's contract, such as it is,[7] was to sell wholesale power to Snake River. ESSA's amendments also do not disrupt or alter PacifiCorp's commitment to step into the shoes of the Enron contract, should Snake River ultimately prevail on the merits of its claim for injunctive relief. While the amended ESSA cloaks electric suppliers complying with ESSA's terms with state action immunity, this immunity does not mean the Enron contract has been abrogated or incapable of performance. Assuming Enron can still perform despite its bankruptcy filing, there is nothing in ESSA that precludes Snake River from buying Enron power at the price the two parties negotiated. In short, the Enron contract stands and ESSA has not affected its terms.

The second reason that Snake River's Contract Clause claim is invalid has to do with Snake River's status as an electric supplier in Idaho. The fact is that Snake River is part of a highly regulated industry and is operating under provisions that have been on the books for a long time. Indeed, the provision of ESSA that prohibits an electric supplier from serving the customer of another electric supplier—Idaho Code § 61-332B—has essentially been the law of

---

[7] As the Court is no doubt aware, Enron has filed for Chapter 11 bankruptcy. Enron filed on December 2, 2001 in the southern district of New York.

**REPLY MEMORANDUM IN SUPPORT OF THE STATE OF IDAHO'S SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT - 7**
bdelange/antitrust/Snake River/Second Reply Memo4psj.doc

the state for 30 years. The only thing that ESSA's amendments have changed is the significantly increased level of state supervision of that provision. Thus, considering "the industry complaining party has entered has been regulated in the past," Energy Reserves, 459 U.S. at 411, it is no small moment to conclude that when Snake River entered into "an enterprise already regulated in the particular to which [it] now objects, [it did so] subject to further legislation upon the same topic." Veix v. Sixth Ward Bldg. & Loan Ass'n, 310 U.S. 32, 38 (1940). In short, Snake River cannot be found, reasonably, to contend that the highly regulated electrical industry, of which it is a member, will not see further or different regulation as the Legislature, in its collective judgment, deems necessary.

The third reason Snake River's Contract Clause claim is deficient is that even if the Court were to accept that ESSA's amendments impair Snake River's contract with Enron, the impairment is not substantial. While Idaho Code § 61-332B does not allow private parties to opt out of its provisions, Idaho Code § 61-334B(1) does allow private parties to petition the Commission for an exception to Section 61-332B. Thus, while Section 61-332B, as amended, insulates PacifiCorp from federal antitrust liability for complying with its terms, the statutory scheme provides a way for Snake River to still obtain State approval for providing electric services to its members who are or were customers of PacifiCorp.[8] This statutory mechanism, providing a process for electric providers like Snake River to serve customers of another electric supplier, negates any argument that Snake River's contract with Enron has been substantially impaired. While there is a new statutory process with which Snake River must comply to serve PacifiCorp's customers, such a process cannot be deemed to be a substantial impairment to Snake River's contract with Enron. Legal Asset Funding, LLC v. Travelers Casualty & Surety Company, 155 F.Supp.2d 90, 99 (D.New Jersey 2001) (new statutory requirement that there be judicial review and approval of an assignment of a structured settlement agreement before the

---

[8] To be sure, exceptions to Idaho Code § 61-332B are to be granted only when they are consistent with the purposes of ESSA, but that is within the Legislature's prerogative in establishing the rules for ESSA compliance.
As a sidenote, the fact that it takes Commission approval before an exception to Section 61-332B will be allowed is one more proof that the State is actively supervising the policies and goals of ESSA.

**REPLY MEMORANDUM IN SUPPORT OF THE STATE OF IDAHO'S SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT - 8**
bdelange/antitrus/Snake River/Second Reply Memo4psj.doc

assignment is permitted, while it might be viewed as an impediment, "cannot possibly rise to the level of a *substantial* impairment") (emphasis in original).

The fourth and final reason Snake River's Contract Clause claim is ineffective is that even if the Court were to accept that ESSA's amendments impair Snake River's contract with Enron, and that the impairment is substantial, this is still not enough in this case to make out a Contract Clause claim. As noted above, the United States Supreme Court has made clear that a recently enacted statutory amendment does not violate the Contract Clause as long as it is appropriate for, and necessary to, the accomplishment of a legitimate public purpose, Energy Reserves, 459 U.S. at 412, and the legislation is reasonable and necessary. *Id.* Both of those conditions attach here.

It cannot be gainsaid but that the goals and purposes of ESSA, as spelled out in Idaho Code § 61-332,[9] are legitimate and valid public purposes. Furthermore, the need to actively supervise these policies and goals is also a legitimate and valid public purpose.[10] Providing for a stable electric supply to its citizens and supervising the rules deemed necessary to accomplish this goal easily falls within the ambit of a valid and legitimate public purpose.

Determining that actively supervising the various policies and goals of ESSA is a legitimate public purpose, the next question to answer is whether the State accomplished this purpose with its amendments to ESSA in a reasonable and necessary manner. Given that the State is not a contracting party to the Snake River/Enron contract, this question is easy to answer, because the Court can properly defer to the Idaho Legislature's judgment as to the necessity and reasonableness of ESSA's amendments, pursuant to its enactment of those provisions. Energy

---

[9] Section 61-332 states:

> [T]o promote harmony among and between electric suppliers furnishing electricity within the state of Idaho, prohibit the "pirating" of consumers of another electric supplier, discourage duplication of electric facilities, actively supervise certain conduct of electric suppliers as it relates to this act, and stabilize the territories and consumers served with electricity by such electric suppliers.

[10] As noted by the State in its opening brief, pp. 3-4, the Legislature spelled out these purposes in detail:

**REPLY MEMORANDUM IN SUPPORT OF THE STATE OF IDAHO'S SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT - 9**
bdelange/antitrus/Snake River/Second Reply Memo4psj.doc

Reserves, 459 U.S. at 412-13. Thus, even if the Court were to find that ESSA's amendments have substantially impaired the Enron contract, Snake River's Contract Clause claim fails because ESSA's amendments are appropriate for, and necessary to, the accomplishment of a valid state purpose, and the State accomplished this purpose in a reasonable and necessary manner.

## CONCLUSION

Snake River has not raised a genuine issue of material fact that defeats the State of Idaho's Second Motion for Partial Summary Judgment. Snake River's Contract Clause claim is deficient and should be rejected. Accordingly, the Court should grant the State of Idaho's motion.

**RESPECTFULLY SUBMITTED this 11th day of January, 2002.**

ALAN G. LANCE
ATTORNEY GENERAL
STATE OF IDAHO

_____
BRETT T. DeLANGE
Deputy Attorney General
Consumer Protection Unit

**REPLY MEMORANDUM IN SUPPORT OF THE STATE OF IDAHO'S SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT - 10**
bdelange/antitrus/Snake River/Second Reply Memo4psj.doc

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of January, 2002, I caused to be served a true and correct copy of the foregoing by the method indicated below, and addressed to the following:

| | | |
|---|---|---|
| Charles F. Wheatley, Jr.<br>Timothy P. Ingram<br>Wheatley & Ranquist<br>34 Defense Street<br>Annapolis, MD  21401 | \_\_\_\_\_<br>  X  <br>\_\_\_\_\_<br>\_\_\_\_\_<br>\_\_\_\_\_ | HAND DELIVER<br>U.S. Mail<br>Overnight Mail<br>Telecopy (Fax)<br>Certified Mail |
| Robert C. Huntley<br>Christopher F. Huntley<br>Huntley, Park, Thomas, Burkett,<br>   Olsen & Williams, LLP<br>250 So. 5th Street, Suite 660<br>P.O. Box 2188<br>Boise, ID  83702 | \_\_\_\_\_<br>  X  <br>\_\_\_\_\_<br>\_\_\_\_\_<br>\_\_\_\_\_ | HAND DELIVER<br>U.S. Mail<br>Overnight Mail<br>Telecopy (Fax)<br>Certified Mail |
| David J. Jordan<br>John M. Eriksson<br>Stoel Rives<br>201 South Main Street #1100<br>Salt Lake City, UT 84111 | \_\_\_\_\_<br>  X  <br>\_\_\_\_\_<br>\_\_\_\_\_<br>\_\_\_\_\_ | HAND DELIVER<br>U.S. Mail<br>Overnight Mail<br>Telecopy (Fax)<br>Certified Mail |
| Robert C. Brown<br>Stoel Rives<br>101 S. Capitol Blvd., Suite 1900<br>Boise, ID  83702-5958 | \_\_\_\_\_<br>  X  <br>\_\_\_\_\_<br>\_\_\_\_\_<br>\_\_\_\_\_ | HAND DELIVER<br>U.S. Mail<br>Overnight Mail<br>Telecopy (Fax)<br>Certified Mail |

_____
Brett T. DeLange
Deputy Attorney General