David J. Jordan (Utah Bar #1751)
John M. Eriksson (Utah Bar #4827)
Marc T. Rasich (Utah Bar #9279)
STOEL RIVES LLP
201 South Main Street, #1100
Salt Lake City, Utah  84111-4904
Telephone: (801) 328-3131
Facsimile: (801) 578-6999

Mary S. Hobson
Erik F. Stidham
STOEL RIVES LLP
101 S. Capitol Blvd., Suite 1900
Boise, Idaho 83702-5958
Telephone: (208) 389-9000
Facsimile: (208) 389-9040

Attorneys for Defendant PacifiCorp

02 JAN 11  PM 5: 05

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SNAKE RIVER VALLEY ELECTRIC ASSOCIATION,<br><br>Plaintiff,<br><br>vs.<br><br>PACIFICORP,<br><br>Defendant,<br><br>STATE OF IDAHO, by and through ALAN G. LANCE, Attorney General,<br><br>Defendant-Intervenor. | Case No. CV 96-0308-E-BLW<br><br>**AFFIDAVIT OF MARC T. RASICH IN SUPPORT OF PACIFICORP'S  MOTION FOR SUMMARY JUDGMENT** |

STATE OF UTAH                    )
                                 ) ss.
COUNTY OF SALT LAKE              )

Marc T. Rasich, being duly sworn, deposes and states as follows:

1.      I am an attorney with the law firm Stoel Rives, LLP, and am employed in its office in Salt Lake City, Utah. I am counsel in this action for PacifiCorp, dba Utah Power & Light Company.

2.      A true copy of Snake River Valley Electric Association's ("Snake River") Answer to PacifiCorp's Third Set of Interrogatories is attached hereto as Exhibit 1.

3.      A true copy of Snake River's Answer to PacifiCorp's First Set of Request for Admissions and Amendment thereto is attached hereto as Exhibit 2.

4.      A true copy of a December 19, 2001 letter from Weldon B. Stutzman, Deputy Attorney General, State of Idaho, to counsel for PacifiCorp and Snake River is attached hereto as Exhibit 3.

5.      A true copy of relevant portions of the transcript of the December 8, 1997 hearing on Snake River's Motion for Preliminary Injunction in this case is attached hereto as Exhibit 4.

6.      A true copy of relevant portions of the transcript of the November 25, 1996 hearing on PacifiCorp's Motion to Dismiss or Stay in this case is attached hereto as Exhibit 5.

7.      A true copy of a letter dated May 16, 1996 to Carl Palmer from David C. Churchman at Idaho Power Company, which was filed with this Court as Exhibit G to Mr. Carl

Palmer's Affidavit submitted with Snake River's February 16, 1998 Memorandum in Opposition

to Defendant, PacifiCorp's Motion for Partial Summary Judgment, is attached hereto as

Exhibit 6.

Dated this 10th day of January, 2002.

Marc T. Rasich

Subscribed and sworn to before me this 10th day of January, 2002.

Notary Public

NOTARY PUBLIC
**Carolyn L. Hopkins**
201 South Main St. #1100
Salt Lake City, Utah  84111
My Commission Expires
December 16, 2003
**STATE OF UTAH**

## CERTIFICATE OF SERVICE

I hereby certify that on the _____ day of January, 2002, I caused a true and correct copy of

the foregoing **AFFIDAVIT OF MARC T. RASICH IN SUPPORT OF PACIFICORP'S**

**MOTION FOR SUMMARY JUDGMENT** to be sent to the following via first class mail:

> Robert C. Huntley
> Christopher F. Huntley
> Huntley, Park, Thomas, Birkett,
>  Olsen & Williams, L.L.P.
> 250 So. 5th Street, Suite 660
> P.O. Box 2188
> Boise, Idaho  83702
>
> Charles F. Wheatley, Jr.
> Wheatley & Ranquist
> 34 Defense Street
> Annapolis, MD  21401
>
> Brett DeLange
> Deputy Attorney General
> Consumer Protection Unit
> Office of the Attorney General
> 700 W. Jefferson St., Rm. 210
> P.O. Box 83720
> Boise, ID 83720-0010

_____

Robert C. Huntley, ISB No. 894
Christopher F. Huntley ISB No. 6056
Huntley, Park, Thomas Burkett,
 Olsen & Williams, L.L.P.
250 So. 5th Street, Suite 660
P.O. Box 2188
Boise, ID   83702
Telephone: (208) 388-1230
Fax : (208) 388-0234

Charles F. Wheatley, Jr.
Wheatley & Ranquist
34 Defense Street
Annapolis, MD 21401
Telephone: (410) 266-7524
Fax:  (301) 261-8699

Attorneys for Snake River Valley Electric Association

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SNAKE RIVER VALLEY ELECTRIC ASSOCIATION,<br><br>　　　　Plaintiff,<br><br>v.<br><br>PACIFICORP, (Including UTAH POWER & LIGHT, a division),<br><br>　　　　Defendant. | Case No. CIV 96-0308-E-BLW<br><br>**ANSWERS TO PACIFICORP'S THIRD SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS** |

COMES NOW, Plaintiff, Snake River Valley Electric Association ("Snake River")

pursuant to Rules 33 and 34 of the Federal Rules of Civil Procedure, and answers



Defendant PacifiCorp's Third Set of Interrogatories and Third Request for Production of Documents as follows:

## GENERAL OBJECTIONS

1.    Snake River generally objects to all definitions, instructions, Interrogatories and Requests for Production to the extent that they attempt to purport to impose obligations on Snake River beyond those imposed or authorized by the Federal Rules of Civil Procedure.

2.    Snake River also generally objects to all Definitions, Instructions, Interrogatories and Requests for Production, on the grounds and to the extent that they seek the production of documents which are subject to the attorney/client privilege, the attorney work-product doctrine, or any other applicable privilege.

3.    Snake River objects to those Interrogatories or Requests for Production in that they attempt to purport to require production of "all" documents that relate to the information sought in the particular Request, or which employ similar language, to the extent that a response to such Interrogatory or Request for Production should result in the production of cumulative documents, privileged documents, or documents as equally available to Defendant as to Snake River, on the grounds that such Interrogatories or Requests for Production seek to impose an undue burden on Snake River. Snake River also objects to the extent that such a definition seeks to obtain documents protected by the attorney/client privilege and/or the work–product doctrine.

SRVEA'S Answers to PacifiCorp's Third Set of Interrogatories
and Request for Production of Documents  - 2

4.      Snake River objects to the extent the Interrogatory or Request for Production seeks information which is confidential and proprietary in nature. Snake River will provide such documents only upon the entry of a Protective Order which adequately preserves the confidential and proprietary nature of the requested information.

5.      Snake River responds to each and every individual Request subject to these General Objections, and Snake River will only produce documents as stated in these General Objections. These General Objections are incorporated by this reference into each and every response. In responding to the individual Interrogatories and Requests for Production below, Snake River may restate, for emphasis one or more of these General Objections, but Snake River's failure to do so cannot be interpreted as waiver of any of these General Objections, each of which is incorporated into each individual response below. Snake River further responds to each individual Interrogatory and Request for Production as follows:

## RESPONSES TO INTERROGATORIES

### INTERROGATORY NO. 1:

IDENTIFY the PERSON(S) answering these interrogatories, supplying information for, or in any way assisting with, the preparation of the answers to these interrogatories.

### RESPONSE TO INTERROGATORY NO. 1:

The answers to these Interrogatories are based upon documents prepared by many persons which have already been made available to Defendant in response to its previous

**SRVEA'S Answers to PacifiCorp's Third Set of Interrogatories
and Request for Production of Documents - 3**

request for Production of Documents.  Carl Palmer has assisted in this response.

INTERROGATORY NO. 2:

DESCRIBE separately and with particularity the specific product(s) and/or services YOU seek or have sought from PacifiCorp.  A description of the specific wheeling services YOU have sought or are seeking should include, without limitation, the points of receipt and the specific delivery points for the wheeled power.

RESPONSE TO INTERROGATORY NO. 2:

The specific product(s) and/or services Snake River seeks or has sought from PacifiCorp are described in the testimony of Dr. John W. Wilson filed with the Court dated September 12, 1997.  Snake River in 1994 requested that PacifiCorp sell its electric facilities in the area to Snake River not owned by Snake River's members.  At that point, a number of Snake River's members had paid for the full capital cost of their distribution facilities to serve them to PacifiCorp and these facilities would then be transferred to Snake River for its ownership, control and operation, as well as to acquire any other facilities, either by construction by Snake River or purchase from PacifiCorp.  Snake River, at that time, requested that PacifiCorp sell interstate wholesale power to Snake River for it to resell to its members.  The members are listed and their requirements detailed in the Engineering Report by EGY Resource Development presented in 1993 to Snake River, a copy of which has been previously provided to PacifiCorp.

**SRVEA'S Answers to PacifiCorp's Third Set of Interrogatories**
 **and Request for Production of Documents  - 4**

When PacifiCorp refused to deal or to sell wholesale power to Snake River, Snake River then obtained a contract proposal for the purchase of interstate wholesale power from Idaho Power Company, through its engineering company, in a letter dated November 22, 1995. That contract proposal designates the receipt points where Idaho Power would deliver the wholesale power sold to Snake River into PacifiCorp's transmission system. The delivery points where the wholesale power owned by Snake River would be delivered to Snake River for its resale to its members are described in the 1993 engineering report, a copy of which has been previously provided to PacifiCorp.

A description of the request for transmission service by PacifiCorp of the interstate power services is contained in a request for wheeling service by Del Ray Holm, President of Snake River Valley Electric Association to PacifiCorp dated December 18, 1995, based on a firm proposal from Idaho Power Company to sell wholesale power to Snake River in its letter of November 22, 1995. Subsequently, Snake River requested wheeling by PacifiCorp of interstate wholesale-for-resale power to Snake River pursuant to its contract with Enron which has been previously provided. *See also*, Plaintiff's Response to Defendants' First Set of Interrogatories, Interrogatory No. 4 of August 11, 1997.

INTERROGATORY NO. 3:

For each product or service identified in Interrogatory No. 2, IDENTIFY the relevant product or service market and STATE EACH AND EVERY BASIS that purportedly supports your definition of the relevant product or service market.

SRVEA'S Answers to PacifiCorp's Third Set of Interrogatories
and Request for Production of Documents  - 5

RESPONSE TO INTERROGATORY NO. 3:

Plaintiff refers to the Affidavit of Dr. John W. Wilson of September 12, 1997, previously filed in this proceeding.

INTERROGATORY NO. 4:

For each product or service identified in Interrogatory No. 2, IDENTIFY the relevant geographic market and STATE EACH AND EVERY BASIS that purportedly supports YOUR definition of the relevant geographic market.

RESPONSE TO INTERROGATORY NO. 4:

*See* Affidavit of Dr. John W. Wilson dated September 12, 1997 filed in this proceeding and the Affidavit of R. Lynn Marsing, President of EGY Resource Development Corporation, dated September 6, 1996.

INTERROGATORY NO. 5:

DESCRIBE with particularity the effects on interstate commerce resulting from PacifiCorp's conduct as alleged in the COMPLAINT.

RESPONSE TO INTERROGATORY NO 5:

The effects on interstate commerce resulting from PacifiCorp's conduct are described in the Affidavit of Dr. John W. Wilson of September 12, 1997, previously filed in this case, as well as an Affidavit of Dr. John W. Wilson, dated September 21, 2001, previously provided to PacifiCorp.

**SRVEA'S Answers to PacifiCorp's Third Set of Interrogatories**
 **and Request for Production of Documents - 6**

INTERROGATORY NO. 6:

DESCRIBE with particularity the antitrust injury suffered as a result of PacifiCorp's conduct as alleged in the COMPLAINT.

RESPONSE TO INTERROGATORY NO. 6:

*See* Answer to Interrogatory No. 5.

INTERROGATORY NO. 7:

DESCRIBE with particularity, including their location, all power transmission, distribution and metering facilities, including without limitation, distribution lines, transmission lines, transformers or meters, that YOU currently own or operate.

RESPONSE TO INTERROGATORY NO. 7:

Snake River, in 1994, requested that PacifiCorp sell its electric facilities in the area to Snake River not owned by Snake River's members. At that point, a number of Snake River's members had paid for the full capital cost of their distribution facilities to serve them to PacifiCorp and these facilities would be transferred to Snake River for its ownership, control and operation, as well as to acquire any other facilities, either by construction by Snake River or purchase from PacifiCorp. Snake River would also acquire and provide the wholesale power that would be resold by it through these new facilities and, at that time, requested that PacifiCorp sell wholesale power to Snake River for Snake River to resell to its members. These facilities are described in the 1993 Engineering Report by EGY to Snake River. The distribution facilities which Snake River's members

SRVEA'S Answers to PacifiCorp's Third Set of Interrogatories
and Request for Production of Documents  - 7

have paid the full capital cost to PacifiCorp are available in business records of PacifiCorp, as well as in the records of Snake River's members.  Snake River has previously provided to PacifiCorp the names and addresses of these members.

Snake River members constructed distribution lines and interconnection facilities from PacifiCorp points-of-delivery to members' service entrances over one quarter mile away.  PacifiCorp's price quotes for interconnection equipment and wheeling services made it economically impossible for members to proceed with electric service.  Except for a small 15 Kw irrigation pivot PacifiCorp contested or rejected all distance requirements for Snake River members to receive wheeling service from PacifiCorp through their newly constructed distribution lines.

INTERROGATORY NO. 8:

DESCRIBE with particularity, including their location, all power generation, transmission, distribution and metering facilities, including without limitation, distribution lines, transmission lines, transformers or meters, currently under construction by YOU or anyone acting on YOUR behalf or at YOUR direction.

RESPONSE TO INTERROGATORY NO. 8:

*See* Answer to Interrogatory No. 7.  In addition, Snake River states that all of the other facilities that it proposed to construct beyond those already paid for by its members has been thwarted by PacifiCorp's refusal to sell or wheel the wholesale power required by Snake River for its electric cooperative for resale to its members, which has prevented

SRVEA'S Answers to PacifiCorp's Third Set of Interrogatories
and Request for Production of Documents - 8

Snake River from building or acquiring any additional facilities, until its rights to such access under the federal antitrust laws have been adjudicated in this proceeding.

INTERROGATORY NO. 9:

IDENTIFY each and every component of the $10 million in damages YOU seek and, with respect to each component of damages sought, (a) IDENTIFY the dollar figure of damages associated with each component, and (b) STATE EACH AND EVERY BASIS purportedly supporting YOUR calculation of damages associated with each component of the total amount of damages sought and the total itself.

RESPONSE TO INTERROGATORY NO. 9:

The damages sought by Snake River in this case are based on the following premises: First, the alternate power supplies that Snake River had the right to acquire at wholesale for resale to its members, but for PacifiCorp's anticompetitive conduct, would have resulted in substantially lower power costs to Snake River for its resale to its members. Second, the Engineering Study completed for Snake River by EGY Resource Development Corporation in 1993 calculated the total savings to Snake River based on a proposed acquisition of facilities from PacifiCorp, a proposal first rejected by PacifiCorp in 1994. The savings, as calculated by the engineering report for the alternative relating to PacifiCorp's irrigation Rate 10A, which provides firm power service equal to the firm power service that Snake River would obtain under its proposal are detailed in Appendix 6 of the Study.

Third, another study of damages is now being undertaken by Snake River based on PacifiCorp's denial of wheeling service to Snake River commencing in May of 1996, based on the Idaho Power Company offer of firm power service to Snake River at rates designated in its proposal of November 22, 1995 has been awaiting the production of documents requested by Snake River of PacifiCorp specifying the loads and PacifiCorp's rates applicable to Snake River's members.

Fourth, a similar analysis will be made with respect to the firm five-year contract between Snake River and Enron Power Marketing Inc. dated February 27, 1997 with deliveries of power to commence on May 1, 1997 for a fixed term of five years, which "shall continue for successive one-year terms after the contract termination date, unless either Party provides a written one-year notice of termination." Snake River will provide a copy of its study when it is completed, based on the data previously requested from PacifiCorp, but not yet provided.

INTERROGATORY NO. 10:

IDENTIFY each of the tariff(s) or other wheeling rate(s) YOU contend are applicable to each of the wheeling services YOU seek or have sought from PacifiCorp.

RESPONSE TO INTERROGATORY NO. 10:

The transmission tariffs applicable consist of PacifiCorp's tariff for wheeling wholesale power for resale power to its transmission system pursuant to Order No. 888 at the FERC, and the tariffs which PacifiCorp has on file at the FERC relating to wheeling

wholesale-for-resale power at voltages below 46 kV to other cooperatives and municipals obtaining service off its transmission (including subtransmission) system.

INTERROGATORY NO. 11:

Do YOU contend that the tariff(s) or other wheeling rate(s) YOU identified in Interrogatory No. 10 above, cover all of the costs associated with each of the wheeling services YOU seek or have sought from PacifiCorp? If so, STATE EACH AND EVERY BASIS for that contention. If not, DESCRIBE each cost component for each type of wheeling service that you seek or have sought that YOU contend is not covered in the tariff(s) or other wheeling rate(s) YOU identified.

RESPONSE TO INTERROGATORY NO. 11:

Snake River believes the tariffs identified in response to Interrogatory No. 10 cover all of the costs associated with the wheeling services that it seeks from PacifiCorp related to proposals other than the damage study identified in answer to Interrogatory No. 9 contained in the engineering study prepared by Resource Development Corp., which was based on the acquisition by Snake River of facilities from PacifiCorp which would fully compensate PacifiCorp.

INTERROGATORY NO. 12:

IDENTIFY every business, cooperative, municipality, joint venture, partnership, organization or association of any kind that YOU contend receives wheeling services down to the retail end-users' point of consumption from PacifiCorp.

RESPONSE TO INTERROGATORY NO. 12:

PacifiCorp's annual Form 1 Report to the FERC, filed June 29, 2001 at 310-311, lists 263 separate "wholesales for resale" sales by PacifiCorp to cooperatives, municipalities and other public authorities which produced wholesale revenues of $1,736,151,126 in 2000. Snake River understands that a large number of these sales involved wheeling transactions by PacifiCorp over its facilities below 46 kV (all wheeling over facilities 46 kV and above is embraced within PacifiCorp's Order 888 open access tariff), and that the wheeling requested by Snake River in the present case is indistinguishable from such entities. Since PacifiCorp has filed tariffs providing for wholesale-for-resale transmission service to such entities over its subtransmission facilities (below 46 kV) down to voltages below that which is required for Snake River to supply its wholesale power at resale to its members. Since most of Snake River's members had paid for the distribution facilities from substations up to the point of consumption, and Snake River plans to construct facilities and other such distribution facilities where necessary, Snake River believes that the wholesale-for-resale sales listed by PacifiCorp in its Form 1 Report are indistinguishable.

INTERROGATORY NO. 13:

Do YOU contend that there are other businesses, cooperatives, municipalities, joint ventures, partnerships, organizations or associations of any kind located outside of PacifiCorp's service area that currently receive wheeling services down to the retail end-users' point of consumption? If so, IDENTIFY each of such business, cooperative,

municipality, joint venture, partnership, organization or association of which YOU are aware and all of the tariff(s) or wheeling rate(s) they pay for those services.

RESPONSE TO INTERROGATORY NO. 13:

Yes. 'The distinction claimed by PacifiCorp is legally irrelevant. Where the transaction consists of a wholesale sale for resale of power to a wholesale entity such as Snake River which subsequently resells the power after metering and billing individually, it remains a wholesale transaction. In *Federal Power Commission v. Southern California Edison Company*, 376 U.S. 205 (1964), the Supreme Court held that Section 201(b) of the Federal Power Act precluded any jurisdiction where there is either the "transmission of electric energy in interstate commerce" or the "sale of electric energy at wholesale in interstate commerce." The Court held that power sold to any entity which has subsequently metered it in selling it to local customers is within exclusive federal jurisdiction. Since Snake River is transporting its wholesale power in interstate commerce for resale, which Snake River takes at the point of delivery and is responsible for and thereafter meters and bills its resale members for the power, the federal jurisdiction is plenary. 376 U.S. at 215-216. Earlier, in *United States v. Public Utilities Commission*, 345 U.S. 295, 298, 304 (1953), the court held that where power is sold to a federal agency in interstate commerce, and that agency subsequently metered and billed a part of that power individually, it was, as a matter of law, a wholesale transaction for resale, not subject to state PUC jurisdiction. In *City of Oakland v. FERC*, 754 F.2d 1378, 1379-80 (9th Cir. 1985), the Ninth Circuit held that "there is no dispute that the electricity sold to

the port authority flows interstate and the plain meaning of a 'resale' seems to encompass at least a transaction with individually metered tenants . . ." In *Arkansas Power & Light Co. v. Federal Power Commission*, 368 F.2d 376, 383-84 (8th Cir. 1996), it was held that sales-for-resale by a cooperative of wholesale power purchased from an interstate power company like PacifiCorp to the cooperative at low voltages at 108 separate delivery points at or near where the cooperative was supplying that wholesale power to its members were subject to federal jurisdiction under the Supreme Court's *Attleboro* case, 273 U.S. 83 (1927) (which held that state regulation of such sales constituted a direct burden on interstate commerce), and was precluded by Section 201 of the Federal Power Act. In no case, has the distinction between the federal and state jurisdiction over electric power in interstate commerce inherent in Interrogatory No. 13 has been upheld. Furthermore, a long line of Federal cases hold that electric power in interstate commerce, as exists in the present case involving Snake River's purchase of interstate wholesale power for resale to its members, continues in interstate commerce down to the point of delivery. *See* Affidavit of Dr. John W. Wilson of September 20, 2001.

### INTERROGATORY NO. 14:

Is YOUR response to any of the requests in PacifiCorp's First Set of Requests for Admission other than an unequivocal and unqualified admission? If so, STATE EACH AND EVERY BASIS for each such response.

RESPONSE TO INTERROGATORY NO. 14:

The response by Snake River to PacifiCorp's First Set of Interrogatories have been supplemented by subsequent Interrogatories and should be deemed supplemented by the answers to Interrogatories given herein. All of these answers to Interrogatories amplify and elucidate Snake River's response to PacifiCorp's First Set of Requests for Admission recently submitted.

INTERROGATORY NO. 15:

Supplement YOUR responses to PacifiCorp's First and Second Sets of Interrogatories and Requests for Production.

RESPONSE TO INTERROGATORY NO. 15:

The answers by Snake River to PacifiCorp's First and Second Set of Interrogatories and Requests for Production will be supplemented as the need arises.

## RESPONSE TO PACIFICORP'S THIRD REQUEST
## FOR PRODUCTION OF DOCUMENTS

Plaintiff hereby agrees to provide all available documents in response to Defendant's Third Set of Requests for Production No. 1 through No. 5 at SRVEA's offices at Idaho Falls, or at the offices of counsel, Robert C. Huntley, 250 South 5th Street, Boise, Idaho, at a mutually agreeable time.

DATED this 15th day of November, 2001.

Carl L. Palmer

I, CARL L. PALMER, certify that the foregoing was prepared by me or under my supervision and that the answers contained herein are true and correct to the best of my knowledge and belief.

NOTARY PUBLIC
RYAN LEWIS
40 East St George Blvd
Saint George, Utah 84770
My Commission Expires
October 15, 2005
STATE OF UTAH

Carl L. Palmer

STATE OF ~~IDAHO~~ UTAH

COUNTY OF Washington

: SS

Subscribed and sworn to before me this ___16___ day of November, 2001.

Charles F. Wheatley, Jr.
Wheatley & Ranquist P.A.
34 Defense Street
Annapolis, MD 21401
(410) 266-7525
(301) 261-8693 (Fax)

Robert C. Huntley
Christopher F. Huntley
Huntley, Park, Thomas, Burkett,
Olson and Williams, L.L.P.
250 so. 5th Street
Suite 660
Boise, ID 81701
(208) 388-1230
(208) 388-0234 (Fax)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 16th day of November, 2001, a true and correct copy of the foregoing document was served on the below listed individuals by the method indicated below:

Mary S. Hobson, ISB#2142          ____ Hand Delivered
STOEL RIVES                        X   U.S. Mail
101 South Capitol Blvd., Suite 1900   ____ Overnight Mail
Boise, ID 83702                    ____ Facsimile
**Fax: 389-9040**

John M. Eriksson, Esq.             ____ Hand Delivered
STOEL RIVES                        X   U.S. Mail
One Utah Center                    ____ Overnight Mail
201 S. Main St. Suite 1100         ____ Facsimile
Salt Lake City, UT 84111
**Fax: 801-578-6999**

Brett T. DeLange                   ____ Hand Delivered
Deputy Attorney General            X   U.S. Mail
Consumer Protection Unit           ____ Overnight Mail
Office of the Attorney General     ____ Facsimile
Len B. Jordan Building, Lower Level
700 West Jefferson Street, Room 210
P. O. Box 83720
Boise, ID  83720-0010
**Fax: 334-2830**

Charles F. Wheatley, Jr.

**SRVEA'S Answers to PacifiCorp's Third Set of Interrogatories
and Request for Production of Documents - 17**

Robert C. Huntley, ISB No. 894
Christopher F. Huntley ISB No. 6056
Huntley, Park, Thomas Burkett,
 Olsen & Williams, L.L.P.
250 So. 5ᵗʰ Street, Suite 660
P.O. Box 2188
Boise, ID   83702
Telephone: (208) 388-1230
Fax : (208) 388-0234

Charles F. Wheatley, Jr.
Wheatley & Ranquist
34 Defense Street
Annapolis, MD 21401
Telephone: (410) 266-7524
Fax:  (301) 261-8699

Attorneys for Snake River Valley Electric Association

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SNAKE RIVER VALLEY ELECTRIC ASSOCIATION, | Case No. CIV 96-0308-E-BLW |
| Plaintiff, | **ANSWER TO PACIFICORP'S FIRST SET OF REQUESTS FOR ADMISSIONS** |
| v. | |
| PACIFICORP, (Including UTAH POWER & LIGHT, a division), | |
| Defendant. | |

### DEFINITIONS

Plaintiff, Snake River Valley Electric Association objects to the definition that "SNAKE

SRVEA'S Answer to PacifiCorp's First Set of Requests for Admission-1

RIVER" shall mean "Snake River Valley Electric Association, its affiliates, subsidiaries, successors, predecessors, and related entities as well as its and their current and former officers, directors, members, employees, agents, and attorneys." This definition requires Snake River Valley Electric Association to confer with all such persons about each question to determine if they agree with the answer submitted herein. Plaintiff objects on the ground that (I) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought, or (iii) the discovery is unduly burdensome or expensive.

In addition, Snake River objects to the request for admissions on the ground that they are irrelevant to the issues before the District Court relating to the applicability of the federal antitrust laws, and are designed solely to obtain information relating to PacifiCorp's complaint before the IPUC, to which the IPUC has ordered a hearing in which discovery relating to the issues in that case can be pursued under the IPUC procedures.

### SNAKE RIVER'S ANSWERS TO
### PACIFICORP'S FIRST SET OF REQUESTS FOR ADMISSION

The Request for Admission by PacifiCorp in this docket will be first set forth, followed by the answer of Plaintiff, Snake River Valley Electric Association.

#### REQUEST FOR ADMISSION NO. 1:

Admit that the wheeling service you seek from PacifiCorp includes wheeling service from the points of receipt identified in YOUR December 18, 1995 letter to PacifiCorp down to YOUR members' "existing delivery points."

SRVEA'S Answer to PacifiCorp's First Set of Requests for Admission-2

RESPONSE TO ADMISSION NO. 1:

Snake River Valley Electric Association ("Snake River") denies that its claim in this case is limited as set forth in PacifiCorp's request. On May 3, 1995, the Board of Directors of Snake River wrote to the President and CEO of PacifiCorp and requested that it consider selling to Snake River all or part of PacifiCorp's non-economic rural electric properties in southeastern Idaho, and also sought to acquire wholesale power from PacifiCorp. By letter dated June 30, 1995, Mr. Verl R. Topham, Sr. Vice President and General Counsel of PacifiCorp, refused to meet with Snake River or to consider its proposal.

Subsequently, on November 22, 1995, Snake River, through its Engineering Company, received a firm offer from the Idaho Power Company to sell it wholesale power below PacifiCorp's rates for a five-year contract from May 1, 1996 through April 1, 2001. On December 18, 1995 the President of Snake River Valley Electric Association, wrote to PacifiCorp requesting that it provide transmission service for Snake River's supply of wholesale power from Idaho Power Company for deliveries of that power. The wholesale power would be delivered to Snake River by Idaho Power at receipt points on PacifiCorp's transmission system to be wheeled by PacifiCorp to Snake River at facilities that it would own at the delivery points and there resell it over facilities owned by its members or to be constructed or controlled by Snake River. PacifiCorp was well aware at that time that the distribution facilities from those points of delivery have been paid for by Snake River's members which Snake River would then control for resale of the wholesale power acquired to its members.

SRVEA'S Answer to PacifiCorp's First Set of Requests for Admission-3

## REQUEST FOR ADMISSION NO. 2:

Admit that the wheeling service YOU have sought from PacifiCorp includes wheeling service from the points of receipt identified in YOUR December 18, 1995 letter to PacifiCorp down to YOUR members' "existing delivery points."

### RESPONSE TO ADMISSION NO. 2:

Snake River Valley Electric Association denies this request for admission. The letter by Del Ray Holm, President, of December 18, 1995 to Mr. John Mooney, Executive Vice President of Utah Power & Light Company, a division of PacifiCorp, expressly requested PacifiCorp to "provide firm transmission service over its electric system to the cooperative for up to 150 MW from May 1 to September 15 and up to 21 MW from September 16 to April 30 each year, to supply the electric requirements of the Cooperative's members for the period May, 1996 to April, 2001." The letter also specifically stated that the "points of wholesale power receipt by Snake River include Mid-Point Substation, Drummond Substation, Bora Substation, Jefferson Substation, Kinport Substation, Goshen Substation and AMPS Substation", all owned by PacifiCorp, where the wholesale power purchased by Snake River from Idaho Power Company would be delivered into PacifiCorp's interstate transmission system. Accordingly, under this letter, Snake River would purchase the interstate wholesale power and take delivery of it at the designated receipt points on PacifiCorp's transmission system, where it would be delivered to the owner, namely, Snake River Valley Electric Association, where Snake River would subsequently resell and deliver the power to each of its members.

The language in the December 18, 1995 letter, in referring to delivery points, is referring to the delivery of Snake River's wholesale power which it purchased and owned and took receipt

SRVEA'S Answer to PacifiCorp's First Set of Requests for Admission-4

of, to Snake River at those delivery points.

### REQUEST FOR ADMISSION NO. 3:

Admit that YOU have not sought approval from FERC or the IPUC for any of the wheeling services YOU seek from PacifiCorp.

### RESPONSE TO ADMISSION NO. 3:

Snake River Valley Electric Association objects to this request on legal grounds. Under the facts of this case, where PacifiCorp has refused to sell facilities or sell wholesale power and has also refused to wheel wholesale power to Snake River for resale to its members and Snake River has sought relief under the federal antitrust laws, the FERC has no jurisdiction to adjudicate the federal antitrust laws. *Otter Tail Power Co. v. United States*, 410 U.S. 366 (1973). In addition, the District Court, in its decision of April 25, 1997 in this case, has rejected PacifiCorp's claims that the FERC or the IPUC have primary jurisdiction over the antitrust issues contained in Snake River's complaint.

The FERC has tariffs on file for the transmission of wholesale power for resale on PacifiCorp's system, which would apply if PacifiCorp is ordered under the federal antitrust laws to transmit Snake River Valley Electric Association's wholesale power purchased by it for resale to its members. The IPUC has no jurisdiction over the wholesale wheeling services sought by Snake River Valley Electric Association in this case.

### REQUEST FOR ADMISSION NO. 4:

Admit that YOU do not own any power transmission or distribution facilities, including without limitation, distribution or transmission lines for transformers.

**SRVEA'S Answer to PacifiCorp's First Set of Requests for Admission-5**

**RESPONSE TO ADMISSION NO. 4:**

Snake River Valley Electric Association, prior to the filing of the present lawsuit, sought to acquire such facilities from PacifiCorp, but PacifiCorp refused to deal or sell any such facility to Snake River Valley Association. Subsequently, Snake River has sought to have PacfiCorp wheel wholesale power purchased by Snake River from other power suppliers to Snake River at delivery points where Snake River will own or control the existing distribution facilities previously paid for by its members.

**REQUEST FOR ADMISSION NO. 5:**

Admit that the engineering studies YOU commissioned prior to YOUR formation in 1993 concluded that it was economically feasible for YOU to construct an electric power distribution system that would include distribution lines to serve YOUR members.

**RESPONSE TO ADMISSION NO. 5:**

Objection. Copies of the engineering study have been provided to PacifiCorp and the study speaks for itself. In addition, Snake River submits that the study concluded that it would not be economically feasible for Snake River to build its own transmission system for the delivery of wholesale power to it. The study then evaluated an "acquisition" program for purchase of certain facilities from PacifiCorp and the construction of new facilities by Snake River, whereby Snake River could serve its members. Several different acquisition scenarios were discussed and evaluated to be economically feasible. However, the undertaking of any arrangement was conditioned upon agreement by PacifiCorp to the acquisition, or to sell or wheel power which PacifiCorp never agreed or consented to.

SRVEA'S Answer to PacifiCorp's First Set of Requests for Admission-6

**REQUEST FOR ADMISSION NO. 6:**

Admit that the engineering studies YOU commissioned prior to YOUR formation in 1993 concluded that it was economically feasible for YOU to construct an electric power distribution system that would include substations and transmission facilities to serve YOUR members.

**RESPONSE TO ADMISSION NO. 6:**

*See* objection and answer to Request No. 5.

**REQUEST FOR ADMISSION NO. 7:**

Admit that in 1994 YOU met with one or more finance companies, including the Cooperative Finance Corporation, and that YOU were told that funding was available for constructing a distribution system to serve YOUR members.

**RESPONSE TO ADMISSION NO. 7:**

Snake River Valley Electric Association admits that in 1994, it met with one or more finance companies, including Cooperative Finance Corporation, and was told that funding was available for detailed projects set forth in the engineering studies submitted in 1993. As stated in Response to Admission No. 5, that study involved Snake River's acquisition of facilities from PacifiCorp, as well as the construction of certain facilities therein to serve its members. PacifiCorp's refusal to sell any facilities, or to sell wholesale power or to wheel such wholesale power to Snake River for resale to its members, precluded any undertaking by Snake River of the construction part of the project.

**REQUEST FOR ADMISSION NO. 8:**

Admit that YOU have not constructed any electric power transmission facilities to serve

SRVEA'S Answer to PacifiCorp's First Set of Requests for Admission-7

YOUR members.

### RESPONSE TO REQUEST FOR ADMISSION 9:

*See* Response to Request for Admission Nos. 5 and 7.


### REQUEST FOR ADMISSION NO. 9:

Admit that YOU have not constructed any distribution facilities to serve YOUR members.

### RESPONSE TO ADMISSION NO. 9:

Because of PacifiCorp's refusal to wheel wholesale power acquired by Snake River from suppliers other than PacifiCorp across its transmission system for delivery to Snake River to its members, Snake River has not sought to undertake construction of any necessary distribution facilities to its members at this time, but plans to do so when PacifiCorp is ordered by the court to transmit such power to Snake River over its system.


### REQUEST FOR ADMISSION NO. 10:

Admit that YOU have not constructed any metering facilities to serve YOUR members:

### RESPONSE TO ADMISSION NO. 10:

*See* Response to Admission No. 9.


### REQUEST FOR ADMISSION NO. 11:

Admit that PacifiCorp has not refused to provide SNAKE RIVER wholesale power for distribution to SNAKE RIVER's members.


SRVEA'S Answer to PacifiCorp's First Set of Requests for Admission-8

### RESPONSE TO ADMISSION NO. 11:

Denied. PacifiCorp has consistently refused to provide Snake River wholesale power for resale by Snake River to its members, which was a reason for the present lawsuit being filed.

### REQUEST FOR ADMISSION NO. 12:

Admit that prior to February 1997 YOU did not have a contract for the provision of wholesale power that would have enabled YOU to serve YOUR members.

### RESPONSE TO ADMISSION NO. 12:

Denied. Snake River had a firm offer for the purchase of wholesale power from the Idaho Power Company, through its engineering company, EGY Resource Development Corporation for a five-year contract, May 1, 1996 through April 1, 2001. The contract was conditioned on Snake River's ability to obtain wheeling of the wholesale power supply. Because of PacifiCorp's refusal to wheel, Snake River lost the contract. Snake River could have acquired wholesale power from BPA in 1994 for its electric cooperative system had PacifiCorp agreed to deal or wheel power to it.

### REQUEST FOR ADMISSION NO. 13:

Admit that Enron has not terminated its obligations under its February, 1997 contract with YOU.

### RESPONSE TO ADMISSION NO. 13:

Denied. Because of PacifiCorp's refusal to deal or wheel power to Snake River, Enron cancelled the contract.

### REQUEST FOR ADMISSION NO. 14:

Admit that YOU have terminated YOUR February, 1997 contract with Enron.

SRVEA'S Answer to PacifiCorp's First Set of Requests for Admission-9

Case 4:96-cv-00308-BLW   Document 160   Filed 01/11/02   Page 31 of 48

## RESPONSE TO ADMISSION NO. 14:

Denied.

## REQUEST FOR ADMISSION NO. 15:

Admit that YOU cannot provide power to YOUR members at a kilowatt/hour cost that is lower than the cost charged by PacifiCorp.

## RESPONSE TO ADMISSION NO. 15:

Denied.

## REQUEST FOR ADMISSION NO. 16:

Admit that YOU and those served by YOU are not entitled to a BPA exchange credit.

## RESPONSE TO ADMISSION NO. 16:

Snake River Valley Electric Association believes that BPA power will be available to it if PacifiCorp agreed to provide wholesale-for-resale wheeling services to Snake River for it to resell to its members under its proposed system.

DATED this 14th day of November, 2001.

Charles F. Wheatley, Jr.
Wheatley & Ranquist P.A.
34 Defense Street
Annapolis, MD 21401
(410) 266-7525
(301) 261-8699 (Fax)


Robert C. Huntley
Christopher F. Huntley
Huntley, Park, Thomas, Burkett,
Olson and Williams, L.L.P.
250 so. 5th Street
Suite 660
Boise, ID   83701
(208) 388-1230
(208) 388-0234 (Fax)


SRVEA'S Answer to PacifiCorp's First Set of Requests for Admission-10

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 14th day of November, 2001, a true and correct copy of the foregoing document was served on the below listed individuals by the method indicated below:

Mary S. Hobson, ISB#2142
STOEL RIVES
101 South Capitol Blvd., Suite 1900
Boise, ID 83702
Fax: 389-9040

_____ Hand Delivered
_____ U.S. Mail
_____ Overnight Mail
__X__ Facsimile

John M. Eriksson, Esq.
STOEL RIVES
One Utah Center
201 S. Main St. Suite 1100
Salt Lake City, UT 84111
Fax: 801-578-6999

_____ Hand Delivered
_____ U.S. Mail
_____ Overnight Mail
__X__ Facsimile

Brett T. DeLange
Deputy Attorney General
Consumer Protection Unit
Office of the Attorney General
Len B. Jordan Building, Lower Level
700 West Jefferson Street, Room 210
P. O. Box 83720
Boise, ID   83720-0010
Fax: 334-2830

_____ Hand Delivered
_____ U.S. Mail
_____ Overnight Mail
__X__ Facsimile

Charles F. Wheatley, Jr.

**SRVEA'S Answer to PacifiCorp's First Set of Requests for Admission-11**

Robert C. Huntley, ISB No. 894
Christopher F. Huntley ISB No. 6056
Huntley, Park, Thomas Burkett,
 Olsen & Williams, L.L.P.
250 So. 5ᵗʰ Street, Suite 660
P.O. Box 2188
Boise, ID   83702
Telephone: (208) 388-1230
Fax : (208) 388-0234

Charles F. Wheatley, Jr.
Wheatley & Ranquist
34 Defense Street
Annapolis, MD 21401
Telephone: (410) 266-7524
Fax: (301) 261-8699

Attorneys for Snake River Valley Electric Association

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SNAKE RIVER VALLEY ELECTRIC ASSOCIATION,<br><br>     Plaintiff,<br><br>v.<br><br>PACIFICORP, (Including UTAH POWER & LIGHT, a division),<br><br>     Defendant. | Case No. CIV 96-0308-E-BLW<br><br>**AMENDMENT TO ANSWER TO PACIFICORP'S FIRST SET OF REQUESTS FOR ADMISSIONS** |

Plaintiff, Snake River Valley Electric Association hereby amends its response to

Admission Nos. 9 and 10 as follows:

SRVEA'S Amendment to Answer to PacifiCorp's First Set of Requests for Admission-1

**REQUEST FOR ADMISSION NO. 9:**

Admit that YOU have not constructed any distribution facilities to serve YOUR members.

**RESPONSE TO ADMISSION NO. 9:**

Snake River members constructed distribution lines and interconnection facilities from PacifiCorp points-of-delivery to members' service entrances over one quarter mile away. PacifiCorp's price quotas for interconnection equipment and wheeling services made it economically impossible for members to proceed with electric service. Except for a small 15 Kw irrigation pivot PacifiCorp contested or rejected all distance requirements for Snake River members to receive wheeling service from PacifiCorp through their newly constructed distribution lines.

Because of PacifiCorp's refusal to wheel wholesale power acquired by Snake River from suppliers other than PacifiCorp across its transmission system for delivery to Snake River to its members, Snake River has not sought to undertake construction of any necessary distribution facilities to its members at this time, but plans to do so when PacifiCorp is ordered by the court to transmit such power to Snake River over its system.

**REQUEST FOR ADMISSION NO. 10:**

Admit that YOU have not constructed any metering facilities to serve YOUR members:

SRVEA'S Amendment to Answer to PacifiCorp's First Set of Requests for Admission-2

## RESPONSE TO ADMISSION NO. 10:

Snake River constructed metering and interconnection facilities to serve its members. *See* Response to Admission No. 9.

DATED this 16th day of November, 2001.

Charles F. Wheatley, Jr.
Wheatley & Ranquist P.A.
34 Defense Street
Annapolis, MD 21401
(410) 266-7525
(301) 261-8699 (Fax)

Robert C. Huntley
Christopher F. Huntley
Huntley, Park, Thomas, Burkett,
Olson and Williams, L.L.P.
250 so. 5th Street
Suite 660
Boise, ID 83701
(208) 388-1230
(208) 388-0234 (Fax)

SRVEA'S Amendment to Answer to PacifiCorp's First Set of Requests for Admission-3

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 146th   day of November, 2001, a true and correct copy of the foregoing document was served on the below listed individuals by the method indicated below:

Mary S. Hobson, ISB#2142          ____ Hand Delivered
STOEL RIVES                       ____ U.S. Mail
101 South Capitol Blvd., Suite 1900   ____ Overnight Mail
Boise, ID 83702                    _X_ Facsimile
**Fax: 389-9040**

John M. Eriksson, Esq.            ____ Hand Delivered
STOEL RIVES                       ____ U.S. Mail
One Utah Center                   ____ Overnight Mail
201 S. Main St. Suite 1100        _X_ Facsimile
Salt Lake City, UT 84111
Fax: 801-578-6999

Brett T. DeLange                  ____ Hand Delivered
Deputy Attorney General           ____ U.S. Mail
Consumer Protection Unit          ____ Overnight Mail
Office of the Attorney General    _X_ Facsimile
Len B. Jordan Building, Lower Level
700 West Jefferson Street, Room 210
P. O. Box 83720
Boise, ID  83720-0010
**Fax: 334-2830**

Charles F. Wheatley, Jr.

**SRVEA'S Amendment to Answer to PacifiCorp's First Set of Requests for Admission-4**



CC: DJJ
HTR

**STATE OF IDAHO**
OFFICE OF THE ATTORNEY GENERAL
ALAN G. LANCE

**STOEL RIVES S.L.C.**

DEC 26 2001

**RECEIVED**

December 19, 2001

John Eriksson
David J. Jordan
Stoel Rives LLP
201 S. Main, Suite 1100
Salt Lake City, UT 84111

Mary S. Hobson
Stoel Rives LLP
101 S. Capitol Blvd., Suite 1900
Boise, ID 83702

Robert Huntley
Christopher Huntley
Huntley Park Thomas et al
PO Box 2188
Boise, ID 83701

Charles F. Wheatley, Jr.
Wheatley & Ranquist
34 Defense St.
Anapolis, MD 21401

**RE:   Case No. PAC-E-01-6**

Dear Counsel:

As requested by the parties, this letter is to summarize the discussion during our conference call on Tuesday, December 18, 2001. The call was convened to discuss possible undisputed facts that might be subject to stipulation, but became more a discussion of the specific issue presented to the Commission by the petition filed by Pacificorp to initiate the case.

PacifiCorp filed its petition with the Commission on April 13, 2001, asking for a ruling on whether it is required to provide a specific wheeling service to Snake River under currently existing Idaho statutes. As I stated in a letter delivered prior to the conference call, I understood Snake River's wheeling request was the one set forth in a letter it sent to PacifiCorp dated December 18, 1995. I assumed the December 18, 1995 letter accurately states the wheeling service requested by Snake River as of the date of PacifiCorp's petition, even though the period for service identified in the letter ended in April, 2001.

The question for the Commission is whether under existing Idaho laws PacifiCorp must provide a specific wheeling service requested by Snake River. I understand from our discussion yesterday that the parties are not in agreement on the specifics of the wheeling service presently before Pacificorp. Snake River apparently intends to request transmission service from Pacificorp under different scenarios that remain unsettled, and thus Pacificorp does not have

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

COPY

SNAKE RIVER VALLEY ELECTRIC
ASSOCIATION,

            Plaintiff,

vs.

PACIFICORP (including Utah
Power & Light Company, a
Division),

            Defendant.

STATE OF IDAHO, by and through
ALAN G. LANCE, Attorney General,

            Intervenor.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil No. 96-0308-E-BLW

MOTION FOR A PRELIMINARY INJUNCTION

HELD BEFORE THE HONORABLE B. LYNN WINMILL

AT POCATELLO, IDAHO

DECEMBER 8, 1997

Court Reporter:      JOSEPH P. RODEN, C.S.R.
                    Boise, Idaho

A P P E A R A N C E S:


For the Plaintiff:      Wheatley & Ranquist
                        BY:  CHARLES F. WHEATLEY, JR.,
                        34 Defense Street
                        Annapolis, Maryland  21401

     - and -
                        Davis, Wright, Tremaine, L.L.P.
                        BY:  PETER J. RICHARDSON, ESQ.
                        877 West Main Street, Suite 604
                        Boise, Idaho  83702

For the Defendant:      Stoel Rives LLP
                        BY:  DAVID J. JORDAN, ESQ. and
                             JOHN M. ERIKSSON, ESQ.
                        One Utah Center
                        201 South Main Street, Suite 1100
                        Salt Lake City, Utah   84111

For the Intervenor:     Office of the Attorney General
                        BY:  BRETT T. DeLANGE, ESQ.
                        Post Office Box 83720
                        Boise, Idaho   83720-0010

1   with that, Your Honor, and that is another reason why it's

2   subject to FERC, so that any questions of retail wheeling,

3   which Mr. Jordon argued about, are really not germane to

4   the issues before Your Honor, because this is a wholesale

5   sale for resale, which is subject to FERC's exclusive

6   jurisdiction.  So, whatever the state decides for retail

7   wheeling in the context of retail customers per se, not a

8   wholesale transaction to this, would not be governed by the

9   principles that are set forth in this case.

10            THE COURT:  All right.  Anything else?

11            Mr. Jordon, could you briefly clarify.  Let me

12   just -- my understanding is that your proposal and what you

13   are willing to bind your client to, would be, in essence,

14   to step into Enron's shoes and fulfill their contract if in

15   fact this Court ultimately determines that your client is

16   in fact obligated to wheel the services, or wheel the

17   power.  That, in essence, you would make the determination

18   of wherever the transmission point was which Enron was to

19   provide the power, and the wheeling issues from there to

20   the point of distribution within the SRVEA's distribution

21   system would still be subject to regulatory overview by

22   FERC in the process that you have described in establishing

23   a fair and just rate.

24            MR. JORDON:  I think you have described it well,

25   Your Honor.  And that I guess the point is this, next year

1  you're going to have a trial in this case, and you will

2  make not a preliminary but a final decision about whether

3  or not we are required to wheel to ESSA customers.  If you

4  were to make the determination that we were required to

5  wheel to ESSA customers, and in the interim they had lost

6  this Enron contract, we would pick it up at the Enron rate

7  to the very same points as you described that Enron would

8  have delivered it at, and on top of that which is the

9  wholesale power rate, there would be a wheeling tariff

10 which would be set by FERC.

11        THE COURT:  If you can't reach an agreement.

12        MR. JORDON:  If the parties can't agree on the

13 service agreement, then FERC holds a hearing, otherwise

14 FERC accepts it.

15        THE COURT:  Okay, anything else?

16        MR. JORDON:  No sir, that's all I have.

17        THE COURT:  All right.  Well, Counsel, I am going

18 to look at first the contract if you want to supply that.

19 I would like to have that this evening so we can issue a

20 decision tomorrow, also the one case to which I previously

21 referred, but I would have to indicate that, based on what

22 I have heard, I'm having a hard time finding any

23 irreparable injury in view of PacifiCorp's offer to

24 essentially step into Enron's shoes if in fact Enron

25 withdraws its commitment, and of course that's all

1          REPORTER'S CERTIFICATE

2

3          I, JOSEPH RODEN, certify that the foregoing is a

4     correct transcript from the record of proceedings in the

5     above-entitled matter.

6

7

8

9     _____        _____

10         Joseph Roden                          Date

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

U.S. DISTRICT COURT
DISTRICT OF IDAHO
FILED AT_____M

MAR 1 5 1999

By_____Deputy

SNAKE RIVER VALLEY ELECTRIC )
ASSOCIATION, )
 )
           Plaintiff, )
 )
vs. )   Civil No. 96-0308-E-BLW
 )
PACIFICORP (including Utah )
Power & Light Company, a )
Division), )
 )
           Defendant. )
_____)
STATE OF IDAHO, by and through )
ALAN G. LANCE, Attorney General, )
 )
           Intervenor. )
_____)

MOTION TO DISMISS

HELD BEFORE THE HONORABLE B. LYNN WINMILL

AT POCATELLO, IDAHO

NOVEMBER 25, 1996

Court Reporter:      JOSEPH P. RODEN, C.S.R.
                     Boise, Idaho

A P P E A R A N C E S:

For the Plaintiff:    Wheatley & Ranquist
                      BY:  CHARLES F. WHEATLEY, JR.,
                      34 Defense Street
                      Annapolis, Maryland  21401

    - and -

                      Davis, Wright, Tremaine, L.L.P.
                      BY:  PETER J. RICHARDSON, ESQ.
                      877 West Main Street, Suite 604
                      Boise, Idaho   83702

For the Defendant:    Stoel Rives LLP
                      BY:  DAVID J. JORDAN, ESQ. and
                           JOHN M. ERIKSSON, ESQ. and
                      One Utah Center
                      201 South Main Street, Suite 1100
                      Salt Lake City, Utah   84111

    - and -

                      Stoel Rives LLP
                      BY:  ERIK F. STIDHAM, ESQ.
                      101 South Capitol Boulevard, Suite 1900
                      Boise, Idaho   83702

1   across the transmission system if we can get the consent of
2   PacifiCorp, bring it across their transmission system and
3   we won't eliminate any of their facilities, we' and let
4   them use any facilities.  If they want to sell us the
5   facilities, well and good, but that's not part of this
6   lawsuit, it was part of the antitrust question on damages
7   that if they refused to deal, there might be damages for
8   that, but as far as the remedies we are seeking now, since
9   they have refused to deal and have refused to sell any
10  facilities, the entity is established, it's in operation,
11  it's of legal validity and it wants to buy the power itself
12  and to then sell it to its members.

13          THE COURT:  Now, I'm not sure you have told me
14  anything different than what I tried to summarize and that
15  is where I am having some trouble.  Let me just back up.
16  And Mr. Jordan, I'm going to -- in fact, due to the Court's
17  curiosity, could advise the attorneys waiting, I'm going to
18  hold them to 15 minutes or so until I at least understand
19  this.  Hopefully it won't take that long.

20          Let's take a member now of your cooperative.

21          MR. WHEATLEY:  Yes.

22          THE COURT:  I'm assuming they own a farm and
23  let's use, I'm not sure of the geographical limits, but
24  let's say outside of St. Anthony, currently being supplied
25  by PacifiCorp with power at a given rate.  As a member of

1  the cooperative, what he or she wants to do is collectively

2  with a number of other farmers purchase power on a

3  wholesale rate, have it wheeled or distributed across

4  PacifiCorp's/Utah Power & Light's distribution system to

5  the same point of consumption, that is, to the farm, to the

6  pumps that are pumping water for irrigation systems.  But

7  rather than to pay Utah Power & Light at retail rates based

8  upon a PUC established, PUC approved rate, rather that they

9  would pay the cooperative for the wholesale costs plus the

10  transmission costs which would have to be paid to Utah

11  Power & Light.

12          MR. WHEATLEY:  And the cooperative would pay

13  that.

14          THE COURT:  Right.

15          MR. WHEATLEY:  The cooperative would pay whatever

16  the proper transmission costs.

17          THE COURT:  So, do I have it right?  Is that, in

18  essence, what it is --

19          MR. WHEATLEY:  Yes.  But the substance and heart

20  of it though is similar to what goes on municipal and

21  cooperative systems all across the United States.

22          THE COURT:  No, I'm not saying it is wrong.

23          MR. WHEATLEY:  No.  I'm saying and what's unique

24  here, I think, to a certain extent is the fact that we

25  don't -- we had arrangements made to buy all the local

1          REPORTER'S CERTIFICATE

2

3          I, JOSEPH RODEN, certify that the foregoing is a

4  correct transcript from the record of proceedings in the

5  above-entitled matter.

6

7

8

9                                              5-5-99

10    Joseph Roden                        Date

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**Exhibit G**



IDAHO POWER COMPANY
P.O. BOX 70
BOISE, IDAHO 83707

David C. Churchman
Ph. (208) 388-2931
Fax (208) 388-6915

May 16, 1996

Carl Palmer
President
Public Power Consultants
P.O. Box 455
Santa Clara, UT 84765

Dear Carl:

In response to our recent conversation, I have provided an update regarding the issues concerning supplying power to the Snake River Valley Electrical Association. As you are aware, there are two primary concerns regarding SRVEA's ability to accept power supply from a third party such as Idaho Power. The first concern is the statutory restriction described in Idaho's Electric Supplier Stabilization Act which restricts third parties from supplying existing customers of another electrical supplier. The second concern is the ability of SRVEA to obtain transmission down to the distribution voltage level from PacifiCorp East.

As a wholesale supplier of electricity we welcome the opportunity to supply bulk power requirements to any eligible wholesale customer. We appreciate your consideration of Idaho Power Company as a supplier of your power supply requirements. At this time it appears that there are still roadblocks in front of SRVEA, however, changes at the state and national level are resulting in increased customer choice throughout the country. Your efforts combined with these changes will ultimately result in increased choice for SRVEA as well. In the future as the roadblocks to competition are removed and customer choice is enhanced we look forward to being the supplier of choice for SRVEA.

Thank you for your consideration of Idaho Power and we look forward to doing business in the future.

Sincerely,

David C. Churchman
Wholesale Coordinator