David J. Jordan (Utah Bar #1751)
John M. Eriksson (Utah Bar #4827)
Marc T. Rasich (Utah Bar #9279)
STOEL RIVES LLP
201 Main Street, Suite 1100
Salt Lake City, UT 84111-4904
Telephone: (801) 328-3131
Facsimile: (801) 578-6999

Mary S. Hobson (ISB #2142)
STOEL RIVES LLP
101 S Capitol Boulevard, Suite 1900
Boise, ID 83702-5958
Telephone: (208) 389-9000
Facsimile: (208) 389-9040

Attorneys for Defendant PacifiCorp

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SNAKE RIVER VALLEY ELECTRIC ASSOCIATION,<br><br>Plaintiff,<br><br>v.<br><br>PACIFICORP,<br><br>Defendant.<br><br>STATE OF IDAHO, by and through ALAN G. LANCE, Attorney General,<br><br>Defendant-Intervenor. | Case No. CV 96-0308-E-BLW<br><br>**PACIFICORP'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

## I.    INTRODUCTION

To paraphrase Shakespeare, Snake River Valley Electric Association's ("Snake River") opposition to PacifiCorp's Motion for Summary Judgment is full of sound and fury, but it signifies nothing. Simply put, Snake River has not raised a triable issue as to any material fact supporting PacifiCorp's motion.

First, Snake River does not and cannot dispute that PacifiCorp does not have monopoly power in the power generation market or that Snake River was able to obtain a power supply contract at what its own expert claims is very competitive rates. Second, Snake River fails to cite a single case that supports its conclusion that the "essential-facilities" doctrine requires PacifiCorp to sell its facilities to Snake River. To the contrary, every case cited by Snake River and the sworn testimony of its own expert limits the essential-facilities doctrine to the use, not the sale, of such facilities. Third, Snake River does not and cannot dispute that it has never presented a request for the wheeling services it claims to be seeking. Because PacifiCorp never received such a request, it cannot be liable for refusing to deal with Snake River. Fourth, PacifiCorp acted reasonably in response to Snake River's requests in light of the regulatory framework in existence at the time. Although Snake River claims to dispute this fact, it presents no admissible evidence to contradict it. Fifth, the December 8, 2000 amendments to ESSA require the Idaho Public Utilities Commission ("IPUC") to review any private agreement or request for services that implicates ESSA's provisions—which includes Snake River's purported wheeling request. Further, the IPUC is actively exercising that

authority. Snake River's creative, though incorrect, arguments regarding jurisdiction and the Contract Clause of the U.S. Constitution do not alter these facts.

What is now clear, even through the fog Snake River has sought to create, is this: Snake River does not own the distribution facilities required to deliver power to its members. This explains the calculated ambiguity in Snake River's ever-shifting description of the wheeling services it purportedly wants. On the one hand, Snake River knows that if it seeks true, non-retail wheeling and loses its claim to buy PacifiCorp's distribution facilities, it is out of luck — it cannot get the power to its members. On the other hand, it knows that if it seeks retail wheeling to the ultimate customer, it will run headlong into the IPUC. Caught between the horns of this dilemma, Snake River has opted for ambiguity. But that failure to say what it really wants is fatal to Snake River's claims of refusal to deal.

Accordingly, PacifiCorp is entitled to summary judgment on all of Snake River's claims.

## II.   UNDISPUTED MATERIAL FACTS

Despite the pages of references to immaterial facts and conclusory allegations contained in Snake River's opposition, the following facts remain undisputed:

- PacifiCorp does not have monopoly market power at the electric power generation/wholesale supply level. (Affidavit of Adam Jaffe filed in support of PacifiCorp's Motion for Partial Summary Judgment dated Feb. 27, 1998 ("Jaffe Aff.") ¶¶ 21-22.)

- Despite PacifiCorp's alleged refusal to sell wholesale power to Snake River, Snake River claims to have obtained a firm offer for wholesale power from Idaho Power and entered a contract for the delivery of wholesale power with Enron Power Marketing Company ("Enron") at "very favorable, competitive rates." (Affidavit of Dr. John W. Wilson dated Sept. 12, 1997 ("Wilson Aff."), attached as Appendix D to Snake River's Memorandum in Opposition to PacifiCorp's Motion for Summary Judgment ("PacifiCorp Opp."), ¶¶ 10-15; Affidavit of Del Ray Holm dated Sept. 14, 2001 ("Holm Aff."), attached as Appendix A to PacifiCorp Opp., ¶¶ 9, 11.)

- Snake River has not submitted a wheeling request to PacifiCorp that identified facilities Snake River would own at the delivery points and there resell the power over facilities owned by its members or to be constructed by Snake River to its members. (Affidavit of David B. Cory ("Cory Aff.") ¶ 3.)

- Snake River does not own, nor is it in the process of constructing, a distribution system to serve its members that are currently being served by PacifiCorp. (See Snake River's Response to Interrogatory Nos. 7 and 8, attached as Exhibit 1 to Affidavit of Marc T. Rasich ("Rasich Aff.").)

- Snake River has concluded that it is economically feasible to construct its own distribution system, including distribution lines, substations and transmission facilities, and was assured it could obtain financing for the project. (Holm Aff., ¶¶ 4-5.)

- PacifiCorp's open-access tariffs for wheeling wholesale power for resale, on file with FERC pursuant to FERC Order No. 888, apply to the transmission-level wheeling

purportedly requested by Snake River.  (See Snake River's Response to Interrogatory No. 10, attached as Exhibit 1 to Rasich Aff.)

- Despite PacifiCorp's specific request that it do so, Snake River never filed an application under PacifiCorp's open-access tariffs.  (Supplemental Affidavit of David B. Cory ("Supp. Cory Aff.") ¶ 4.)

- The IPUC is currently actively supervising PacifiCorp's response to Snake River's purported wheeling request.

## III.    SUMMARY JUDGMENT AND ANTITRUST ACTIONS

Snake River suggests that summary judgment should be used only sparingly in antitrust litigation.  (PacifiCorp Opp. at 10.)  Nevertheless, the usual rules governing summary judgment still apply.  See City of Chanute v. Williams Natural Gas Co., 955 F.2d 641, 646-47 (10th Cir.), cert. denied, 506 U.S. 831 (1992), overruled in part on other grounds, System Care, Inc. v. Wang Lab. Corp., 117 F.3d 1137 (10th Cir. 1997).  Thus, even in an antitrust action, if a nonmoving party does not make a sufficient showing of a material fact, all other facts are rendered immaterial and summary judgment is appropriate.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  Here, as shown below, Snake River has not carried its burden of showing a dispute as to any material fact, and summary judgment should be granted.

## IV.    ARGUMENT

Snake River's alleged antitrust claims involve (1) power generation; (2) high-voltage, transmission-level wheeling; and (3) low-voltage distribution systems, each of which constitutes a separate, distinct market in the electrical power industry.  (Wilson Aff. ¶¶ 10-11,

14-15.)  Snake River contends that PacifiCorp has violated federal antitrust laws in each of the three markets, but has failed to create an issue of material fact regarding those claims.

**A.   PacifiCorp Cannot Be Liable Under Antitrust Laws for Refusing To Sell Wholesale Power to Snake River**

In connection with its motion for partial summary judgment filed January 23, 1997, PacifiCorp argued, among other things, that it could not be held liable under antitrust laws for refusing to sell wholesale power to Snake River because (1) PacifiCorp does not have monopoly power in the power generation/wholesale supply market; (2) PacifiCorp did not refuse to sell power to Snake River, but simply refused to negotiate a package deal pursuant to which Snake River wished to purchase PacifiCorp's facilities and "buy back" wholesale power; and (3) neither competition generally, nor Snake River specifically, was harmed by PacifiCorp's refusal to negotiate such a package deal, as evidenced by Snake River's purported "firm offer" from Idaho Power and its contract with Enron, which, according to Snake River's expert, provided Snake River a source for wholesale power at competitive rates.  (Wilson Aff., ¶ 31; Holm Aff. ¶ 11.)

Snake River does not dispute any of these facts.  Rather, it argues at length that PacifiCorp's transmission facilities are "essential facilities," then jumps to the conclusion that PacifiCorp was therefore required to sell to Snake River both PacifiCorp's facilities and the electricity.  (PacifiCorp Opp. at 12-15.)  Snake River's conclusion, however, does not follow from its premise.  Indeed, as discussed below, the essential-facilities doctrine does not even require PacifiCorp to sell the "essential facilities" themselves, let alone require it to sell electric power, a product from an entirely separate market.  Thus PacifiCorp is entitled to

summary judgment on Snake River's claim that PacifiCorp violated antitrust laws by purportedly refusing to sell wholesale power.

**B.     The Essential-Facilities Doctrine Does Not Compel PacifiCorp To Sell Its Transmission, or Distribution Facilities to Snake River**

In the Ninth Circuit, the essential-facilities doctrine requires the owner of an essential facility to make that facility available for *use* by, not for sale to, its competitors:

> The "essential facilities" doctrine imposes on the owner of a facility that cannot reasonably be duplicated and which is essential to competition in a given market a duty to make that facility <u>available</u> to its competitors on a non-discriminatory basis.

Ferguson v. Greater Pocatello Chamber of Commerce, 848 F.2d 976, 983 (9th Cir. 1988). (Emphasis added.)  Although Snake River argues at length that the essential-facilities doctrine requires that PacifiCorp sell to Snake River power and electric facilities, it fails to cite a single case from any jurisdiction that supports that proposition.  Indeed, every case Snake River cites, and the testimony of its expert support the proposition that the essential-facilities doctrine requires <u>only</u> that the facilities be made available for a competitor's use on reasonable terms and conditions.  (See PacifiCorp Opp. at 20-21; Wilson Aff. ¶¶ 19-20.)  Thus, although the essential-facilities doctrine might in some circumstances require that PacifiCorp give others access to certain facilities, it does not require PacifiCorp to sell those facilities.  Accordingly, PacifiCorp is entitled to summary judgment on Snake River's antitrust claims based on PacifiCorp's refusal to sell Snake River its transmission or distribution facilities.

**C.**   **The Undisputed Facts Establish that PacifiCorp Cannot be Held Liable Under Antitrust Laws for "Refusing to Deal" with Snake River Regarding Its Wheeling Request**

**1.**   **Snake River Has Not Presented PacifiCorp with a Complete, Unambiguous Request for Wheeling Services**

Snake River currently claims to seek transmission of power "to delivery points where [Snake River] would be able to acquire the power and [Snake River] would, thereafter own and construct any necessary distribution facilities that PacifiCorp might refuse to sell." (Holm Aff. ¶ 12.) But Snake River does not dispute that it has never submitted a request to PacifiCorp for this type of service with respect to customers already served by PacifiCorp. (Cory Aff. ¶ 3.) Snake River likewise does not dispute that it never identified any so-called "delivery points" to which PacifiCorp could deliver power. (See, e.g., Dec. 19, 2001 letter from Deputy Attorney General Weldon Stutzman to John Eriksson and Robert Huntley et al. ("Snake River apparently intends to request transmission service from PacifiCorp under different scenarios that remain unsettled, and thus PacifiCorp does not have before it a specific wheeling request, complete with identification of specific delivery points for the electric power to be delivered to Snake River."), attached as Ex. 3 to Rasich Aff.) Indeed, Snake River admits that it has not undertaken to construct a distribution system to serve its members that are currently being served by PacifiCorp, despite the facts that (1) it was economically feasible to do so and (2) Snake River was assured that it could obtain funding for such a project.[1] (See Holm Aff.,

---

[1]  These admissions preclude any antitrust liability based on PacifiCorp's purported refusal to wheel at the distribution level, since, given these facts, such distribution facilities would not be "essential" under the standards established in the Ninth Circuit and espoused by Snake River. See Ferguson, 848 F.2d at 983; (see also PacifiCorp Opp. At 20-22).

¶¶ 4-5; Snake River's Response to Request for Admission No.9 ("Snake River has not sought to undertake construction of any necessary distribution facilities to its members at this time, but plans to do so when PacifiCorp is ordered to transmit power over its system"), attached as Ex. 2 to Rasich Aff.)

Snake River weakly attempts to manufacture disputed facts to support its contention that PacifiCorp's motion with respect to wheeling "presents a contested issue of disputed fact." (PacifiCorp Opp. at 16-17.) But none of Snake River's so-called disputed facts are material to PacifiCorp's motion for summary judgment regarding wheeling.

First, Snake River claims that in December 1995 it made a wheeling request to PacifiCorp that was ignored. (PacifiCorp Opp. at 17.) In that request, Snake River requested "wheeling" from various points on Utah Power's system to "each of the members of [Snake River.]" (Mooney Aff. Ex. 1.) Far from ignoring the request, however, PacifiCorp responded on January 2, 1996 by indicating that Snake River should contact Dennis Steinberg, PacifiCorp's senior vice president for Transmission Services and Wholesale Sales, to discuss the requested service. (Supp. Cory Aff. ¶ 3, Ex. 1.) That letter was later forwarded to a number of PacifiCorp employees, including Rich Bayless, who was instructed to verify that PacifiCorp had the transmission capacity to satisfy Snake River's request, and to Jim Beezley, who was instructed to prepare a service agreement. (Id.) PacifiCorp wrote to Snake River again on February 16, 1996, referring Snake River to PacifiCorp's two FERC tariffs and encouraging Snake River to file an application with the appropriate PacifiCorp employee. (Mooney Aff., Ex. 2.)

Further, Snake River admits that PacifiCorp's tariffs, filed pursuant to FERC Order No. 888, to which Snake River was referred apply to at least a portion of the wheeling services it purportedly now seeks from PacifiCorp,[2] yet Snake River never filed an application under either of PacifiCorp's two FERC tariffs nor contacted Mr. Steinberg regarding its request. (Supp. Cory Aff. ¶ 4.)[3]

Second, Snake River attempts to rely on the accusations in its complaint to create a disputed issue of fact. But unsupported allegations in a complaint are insufficient to avoid summary judgment. Fed. R. Civ. P. 56(e).

Third, Snake River argues that the Court's recitation of facts in its April 25, 1997 Memorandum Decision and Order on PacifiCorp's Motion to Dismiss or Stay, based on the state-action-immunity doctrine and FERC jurisdiction, creates a factual dispute in the context of PacifiCorp's current motion. (PacifiCorp Opp. at 18.) Of course, the question of whether Snake River had submitted a complete, unambiguous wheeling request was not at issue in that motion. So any "finding" related to such a request could not preclude PacifiCorp from later arguing, or the Court from later reaching, a different conclusion. Further, the factual record is

_____

[2] In its sworn responses to Interrogatory No. 10 of PacifiCorp's Third Set of Interrogatories, Snake River stated in part: "The transmission tariffs applicable consist of PacifiCorp's tariff for wheeling wholesale power for resale power to its transmission system pursuant to Order No. 888 at FERC . . . ." (Rasich Aff., Ex. 1.)

[3] Snake River also contends "it requested that PacifiCorp sell its electric facilities in the area to Snake River." (PacifiCorp Opp. at 17.) But, as discussed above, the antitrust laws do not impose on PacifiCorp an obligation to sell its facilities. Further, the fact that Snake River made a request to purchase PacifiCorp's facilities does not create a disputed issue of
(continued...)

much clearer now that the parties have engaged in discovery and months of litigation in this Court and before the IPUC. Thus there is nothing inconsistent or improper in granting summary judgment on independent grounds based on a finding of fact that conflicts with an earlier, preliminary finding that was not essential to the earlier ruling. See City of Chanute v. Williams Natural Gas Co., 743 F. Supp. 1437, 1442 (D. Kan. 1990) (stating that the court could grant summary judgment that conflicted with earlier ruling on motion for preliminary injunction).

Fourth and finally, Snake River argues that the transactions identified in PacifiCorp's FERC Form 1 and other filings are "indistinguishable" from the services Snake River seeks. (PacifiCorp Opp. at 18.) However, neither Snake River's opposition nor any of the affidavits submitted with it contain an analysis of the facts underlying Snake River's conclusion. Such conclusory, self-serving statements, whether in briefs or affidavits, are insufficient to create genuine issues of material fact. See Hansen v. United States, 7 F.3d 137, 138 (9th Cir. 1993); Mitchell v. Gen. Elec. Co., 689 F.2d 877, 878-79 (9th Cir. 1982). Moreover, even if Snake River's assertion was true (and it is not), it would not change the undisputed material fact that Snake River has not submitted a complete, unambiguous request for that desired service.

In short, the undisputed material facts establish that, with respect to any purported wheeling request, the ball is now, and always has been, in Snake River's court. Snake River

---

(...continued)
material fact regarding whether or not Snake River ever submitted an unambiguous, complete wheeling request.

simply has not followed through.  Thus PacifiCorp cannot be liable for refusing to deal with Snake River's purported wheeling request.

### D. The Undisputed Facts Establish that PacifiCorp Acted Reasonably, Given the Turmoil in the Area of Wheeling Regulation and Therefore Cannot Be Liable Under Antitrust Laws

As stated in PacifiCorp's moving papers, even a monopolist will not face antitrust liability for simply refusing to deal if there are valid justifications for its actions.  See, e.g., Southern Pac. Communications Co. v. AT&T, 740 F.2d 980 (D.C. Cir. 1984), cert. denied, 470 U.S. 1005 (1985); Mid-Texas Communications Sys., Inc. v. AT&T, 615 F.2d 1372 (5th Cir.), cert. denied, 499 U.S. 912 (1980).  Because PacifiCorp's actions in this case have been consistent with the public policy purposes and provisions of ESSA and consistent with the conclusions of the IPUC, PacifiCorp should not be subjected to antitrust liability.

Snake River makes a number of arguments in an attempt to create a disputed issue of fact on this point, but each argument fails.  First, Snake River claims that there was no "regulatory policy against retail wheeling" before December 8, 2000.  (PacifiCorp Opp. at 23.)  Not true.  If, as is apparent here, the requested wheeling would have resulted in the "pirating" of customers from one utility to another, it was expressly prohibited even before the recent ESSA amendments.  Moreover, ESSA, in its 1995-96 form, was enacted in 1970 to ensure a safe, reliable source of electric power and to protect the consumers and citizens of Idaho from the ravages of competition between utilities for existing customers.  See 2001 Idaho Sess. Laws, ch. 29, Section 2.  And it was that public policy, not the recent amendments that served to clarify and assist in enforcing it, upon which PacifiCorp relied.  Thus, the fact that Section 61-332D did not exist in February 1996 is irrelevant to PacifiCorp's motion.

Second, Snake River claims that PacifiCorp's regulatory-justification argument must fail because it is barred under controlling law of the case. (PacifiCorp Opp. at 23.) Not so. The Ninth Circuit's previous decision was based on state-action immunity. The Ninth Circuit did not have before it a regulatory-justification claim. Thus, any law of the case created by the Ninth Circuit in its decision on state-action immunity has no bearing on PacifiCorp's independent, regulatory-justification claim.

Third, Snake River argues that there is a disputed issue of fact because PacifiCorp knew, as a result of the court's April 25, 1997 decision, that "reliance on ESSA was improper." (PacifiCorp Opp. at 24.) Again, Snake River fails to appreciate the difference between a decision on state action immunity and a defense based on regulatory justification. Moreover, this Court subsequently reversed its initial decision on the issue.[4]

---

[4] Finally, Snake River complains that, because they involve a different industry and were not summary judgment rulings, the cases cited by PacifiCorp on its moving papers do not support summary judgment here. Of course, both the telephone and electricity industries are (or were) highly regulated, so the cases cited in PacifiCorp's motion apply by analogy. Further, courts have granted summary judgment on similar grounds in a case involving the natural-gas industry. See City of Chanute, 743 F. Supp at 1462 (granting defendant summary judgment on numerous antitrust claims when defendant established a legitimate justification for its decision and plaintiff's opposition, supported by conclusory, self-serving affidavits, failed to raise triable issue of fact). Just like the defendant in City of Chanute, PacifiCorp has established a reasonable, non-anticompetitive basis for its decision regarding Snake River's purported wheeling request. Snake River has presented nothing but conclusory, self-serving arguments and affidavits in its attempt to raise a triable issue of fact. As in City of Chanute, Snake River's efforts are not enough to avoid summary judgment.

**E.    PacifiCorp Is Entitled to Summary Judgment Based on State-Action Immunity**

    **1.    Snake River Has Not Established the Existence of Disputed Issues of Material Fact Regarding PacifiCorp's State-Action-Immunity Defense**

Snake River argues that summary judgment on the basis of state-action immunity is precluded because of the existence of disputed issues of fact. Yet Snake River fails to identify any disputed issues of <u>material</u> fact, for the simple reason that there are none. In its moving papers, PacifiCorp relied on only two facts supported by affidavits: (1) the IPUC has reviewed and granted two petitions regarding territorial allocations based on the revised provisions of ESSA; and (2) the IPUC is currently considering PacifiCorp's petition under Section 61-332D regarding retail and/or sham transaction wheeling. Snake River does not dispute those facts. Rather, Snake River refers the Court to various affidavits, pleadings, and other discovery material without identifying any particular fact relevant to the state-action-immunity argument. Snake River cannot establish a factual dispute simply by alleging that one exists. <u>See</u> <u>FTC v. Publisher's Clearing House, Inc.</u>, 104 F.3d 1168, 1171 (9th Cir. 1997) (conclusory, self-serving statements in briefs and affidavits cannot create genuine issue of material fact).

    **2.    Idaho Is Actively Supervising Utility Conduct Under ESSA**

Snake River argues that partial summary judgment based on state-action immunity must be denied because "there has been no state action where the state has 'exercised sufficient, independent judgment and control so that the details of the [final result] have been established as a product of deliberate state intervention.'" (PacifiCorp Opp. at 13.) Snake River is mistaken. The "final result," <u>i.e.</u>, that PacifiCorp will or will not be required to provide retail

and/or sham transaction wheeling, will necessarily be "established as a product of deliberate state intervention," since that is the very purpose of the proceeding currently before the IPUC.[5]

Snake River's claim that Section 61-332D does not meet the active-state-supervision requirement because an electric supplier could agree to furnish retail and/or sham transaction wheeling without IPUC review is also fatally flawed. Antitrust laws and the state-action-immunity doctrine address anticompetitive conduct, not conduct that promotes competition. Regardless, an agreement by an electric supplier to wheel to the supplier's existing customers, as in this case, would necessarily involve an allocation of consumers (i.e., it would "take" customers belonging to one utility and "give" them to another). All such agreements must be reviewed and either approved or rejected by the IPUC. Idaho Code §61-333.[6] Thus even a private agreement permitting competition is subject to IPUC review.

------

[5] Snake River's argument is also contrary to the Ninth Circuit's decision in Nugget Hydroelectric v. Pacific Gas & Electric, 981 F.2d 429 (9th Cir. 1992). There, the court found state-action immunity for the utility's handling of a force majeure claim when the utility demonstrated active state supervision by reference to four California Public Utility Commission decisions that reviewed other similar force majeure claims. The Court found those decisions and state implementing regulations were "sufficient to prove that the state actively supervises PG&E's handling of force majeure claims," notwithstanding the lack of a showing of utility-commission review of the utility's actions in that particular instance. Id. at 435. Snake River's claim that "no state action immunity . . . can exist in the absence of any actual state action by the IPUC on the merits of a particular matter" (Snake River's Memorandum in Opposition to the State of Idaho's Motion for Partial Summary Judgement ("Idaho Opp."), is also contrary to Nugget.

[6] Snake River also makes the unsupported argument that the IPUC's purported lack of authority to adjudicate whether PacifiCorp is acting in an unduly discriminatory fashion puts a limitation on the regulatory power that precludes a conclusion that Section 61-332D meets the active-state-supervision requirement. (PacifiCorp Opp. at 13.) Snake River fails to explain how alleged discrimination fits within the active-state-supervision requirement and also fails to
(continued...)

In summary, Snake River cannot lawfully provide power to current customers of PacifiCorp under ESSA unless the state of Idaho, through the IPUC, determines otherwise. That is the essence of state action, and it precludes antitrust liabilities against PacifiCorp after December 8, 2000.

### 3. PacifiCorp's Stipulation Regarding the Enron Contract Has No Impact on State Action Immunity

Snake River also argues that PacifiCorp's motion is moot because PacifiCorp is committed to step into the shoes of Enron. (Idaho Opp. at 10.) PacifiCorp's stipulation was to sell wholesale electricity to Snake River under the "same price, same terms, same deal" as the Enron contract. (See Transcript, Motion for Prelim. Injunction, Dec. 8, 1997 ("Dec. 8, 1997 Tr."), at 43-44, attached as Exhibit 4 to the Rasich Aff.) As Snake River recognizes (PacifiCorp Opp. at 7), the Enron contract provided for sale of power to be delivered by Enron at designated points of receipt, from which transmission service was to be arranged for ultimate delivery to Snake River members. Thus PacifiCorp could step into Enron's shoes in compliance with its representation to the Court, but would still be unable to deliver power to Snake River. This is undisputable because Snake River does not now own and has never owned a distribution system to which Enron, PacifiCorp or anyone else could deliver power and from which distribution could be made to Snake River's members.

---

(...continued)
explain why the IPUC would be precluded from considering allegations of discrimination in the context of a petition by an electric supplier under Section 61-332D. Snake River likewise fails to support its presumption that the IPUC would not apply the same policies embodied within ESSA in resolving a controversy between two investor-owned utilities as it would in resolving

(continued...)

Further, PacifiCorp's commitment was expressly conditioned on Snake River ultimately

prevailing on the merits on its claim for injunctive relief:

> MR. JORDAN: . . . If you were to make the determination that
> we were required to wheel to ESSA customers, and in the interim
> they had lost this Enron contract, we would pick it up at the
> Enron rate to the very same points as you described that Enron
> would have delivered it at, and on top of that which is the
> wholesale power rate, there would be a wheeling tariff which
> would be set by FERC.

(Dec. 8, 1997 Tr. at 43-44, Rasich Aff., Ex. 4.)

Thus PacifiCorp's stipulation will <u>not</u> require it to step into the shoes of Enron if Snake

River does not obtain injunctive relief, whether Snake River's failure results from the

application of the state-action-immunity doctrine or otherwise.

### 4.    Termination of the Enron Contract Does Not Offend the Contract Clause of the U.S. Constitution

In an attempt to avoid the effect of ESSA, Snake River argues that ESSA violates the

Contract Clause, Article I, section 10, clause I of the U.S. Constitution by substantially

impairing its contractual relationship with PacifiCorp, as PacifiCorp stands in the shoes of

Enron under the terminated Enron contract. Snake River is apparently arguing that ESSA

violates the Contract Clause by preventing Snake River from receiving wheeling service from

PacifiCorp, thereby depriving Snake River of its benefits under the Enron contract. Snake

River's argument ignores the law and the facts.

---

(...continued)

a controversy between one investor-owned utility and a nonprofit corporation. Snake River's
assumptions and presumptions are not enough to preclude summary judgment.

The U.S. Supreme Court has made clear that the Contract Clause "must be accommodated to the inherent police power of the State 'to safeguard the vital interests of its people.'" Energy Reserves Group, Inc. v. Kansas Power & Light Co., 459 U.S. 400, 410 (1983) (quoting Home Bldg. & Loan Ass'n v. Blaisdell, 290 U.S. 398, 434 (1934)). To support a claim under the Contract Clause, Snake River must prove that (1) ESSA substantially impairs Snake River's contractual relationship and (2) legitimate government interests do not justify the impairment. Northwestern Nat'l Life Ins. Co. v. Tahoe Reg'l Planning Agency, 632 F.2d 104, 106 (9th Cir. 1980). Snake River fails to satisfy its burden.

To support its contract claim, Snake River must prove that ESSA substantially impairs its contract relationship. Snake River's argument fails for a number of reasons. First, neither the state of Idaho nor PacifiCorp is proposing to terminate the Enron contract. Indeed, Snake River asserts the contract has already been terminated by Enron. (See Response to Request for Admission No. 13, attached as Exhibit 2 to Rasich Aff.) Thus, there is no contract to interfere with. Legally, Snake River relies on PacifiCorp's conditional stipulation to perform Enron's obligations under the terms of the Enron contract. However, the application of ESSA could not impair the Enron contract, because there was a condition precedent in the contract that Snake River obtain transmission arrangements. (See Idaho Opp. at 9; Aug. 30, 1997; Affidavit of Del Ray Holm, ¶ 7, submitted with Plaintiff's Memo. in Support of Motion for Preliminary Injunction: "The condition precedent would be satisfied when Snake River would be able to acquire authorization to transmit power to Snake River's members from the point of receipt on PacifiCorp's transmission system where it is [s]old to Snake River by Enron.") A

change in the law that precludes the condition precedent from being satisfied cannot logically give rise to a contract-impairment claim, since the contractual rights and obligations do not arise until the condition precedent is satisfied. See Medical Serv. Group, Inc. v. Boise Lodge No. 310, Benevolent & Protective Order of Elks, 878 P.2d 789, 793 (Idaho Ct. App. 1994). Similarly, as discussed above, PacifiCorp's commitment to step into the shoes of Enron under the contract was conditioned on ultimately being required to provide the requested wheeling. Legislation that prevents that condition from being fulfilled likewise does not impair any contractual rights.

Moreover, ESSA does not constitute a change in law and therefore cannot constitute a new impairment of the Enron contract. ESSA, as amended, prohibits PacifiCorp from providing certain wheeling service for Snake River absent approval and authority from the IPUC. That restriction is no more severe than the restrictions set forth in ESSA before its amendment. The Enron contract was purportedly executed in February 1997. As the Court is aware, at that time, ESSA prohibited Snake River from serving customers already being served by PacifiCorp. Idaho Code § 61-332B. Although the Ninth Circuit has held that state-action immunity did not exist under that statute, at the time Snake River executed the Enron contract, ESSA contained in all material respects the same impairments that it contains now: Snake River generally is prohibited from serving PacifiCorp's existing customers. The amendments were simply steps taken by the state to increase its oversight of the ESSA restrictions in order to ensure a state-action-immunity defense to antitrust claims. Consequently, Snake River cannot maintain a claim under the Contract Clause. See Hudson Water Co. v. McCarter, 209

U.S. 349, 357 (1908) ("One whose rights, such as they are, are subject to state restriction, cannot remove them from the power of the State by making a contract about them.").[7]

> **5.** **The IPUC Has Jurisdiction To Address Whether PacifiCorp Should Be Required Under State Law To Provide Retail or Sham Transaction Wheeling in Order for Snake River To Take Over Service to PacifiCorp's Customers**

Snake River also claims that Idaho's authority to regulate retail wheeling and/or a sham wholesale transaction is preempted by federal law. To the contrary, Idaho has the authority to determine how electricity is to be delivered to end users.

Snake River first argues that "rulings" by the Court and the Ninth Circuit Court of Appeals, and an admission in PacifiCorp's Answer, establish that Snake River is proposing to make "wholesale" purchases of power for resale to its members. Snake River is mistaken. Recitations by the Court, the Ninth Circuit, and PacifiCorp regarding the purported purposes for which Snake River was organized (as reflected in its articles of incorporation) do not establish the nature of the wheeling service actually sought by the corporation.

Next, Snake River argues that "the State has no authority over wholesale-for-resale transactions, including what constitutes a 'sham wholesale transaction'." (Idaho Opp. at 14.) Again, Snake River is mistaken. PacifiCorp's Petition deals with the delivery of electricity to the ultimate consumers who presently receive electric service from PacifiCorp. Again, that activity clearly is a local matter subject to state regulation. See Ark. Elec. Coop. v. Ark. Pub.

---

[7]   Snake River's claim regarding the Contract Clause fails for numerous additional reasons. Those reasons have been set forth in detail by the State of Idaho in its Reply Memorandum. PacifiCorp incorporates those arguments by this reference.

Serv. Comm'n, 461 U.S. 375, 395 (1983); Panhandle E. Pipe Line Co. v. Mich. Publ. Serv.

Comm'n, 341 U.S. 329 (1951).[8]

FERC has found that such requests are subject to state regulation:

> The Federal Power Act recognizes that retail marketing areas are
> governed by state law. Moreover, we believe that states have
> authority over the service of delivering electricity to end users. . .
> . Nothing adopted by the Commission today, including its
> interpretation of its authority over retail transmission, . . . is
> inconsistent with traditional state regulatory authority in this area.

Order No. 888; FERC Stats. & Regs., Regulations Preambles ¶31,036, at 31,782. (Emphasis

added.)

FERC later clarified that "the service of delivering electricity to end users means":

> states have the authority to determine the retail marketing areas of
> electric utilities within their jurisdictions, and the end user
> services that those utilities must provide. . . . [O]ur statement
> regarding state authority over the 'service' of delivering electric
> energy is intended to recognize the historical and local nature of
> delivering power to end users and the states' legitimate concerns
> and responsibilities in regulating local matters.

---

[8] In arguing that FERC has exclusive jurisdiction as to what is a sham transaction
under section 61-332D, Snake River cites FERC's determination that it, not the states, will
serve as the primary forum for addressing the recovery of stranded costs caused by retail-
turned-wholesale customers. (Idaho Opp. at 14.) That determination, however, by FERC is
totally irrelevant to the Petition and whether the IPUC has jurisdiction to consider the Petition.
In that determination, FERC decided that it, rather than the states, should be the primary
forum for addressing stranded costs associated with a retail-turned-wholesale customer.
PacifiCorp's Petition makes no request or allegation regarding stranded costs. Thus the
determination is irrelevant. Furthermore, Snake River's argument that FERC is to be the
primary forum over sham wholesale transactions ignores the express prohibition against FERC
ordering transmission service that would result in retail wheeling or sham wholesale
transactions. 16 U.S.C. § 824k(h). In light of the express prohibition against FERC ordering
the type of wheeling that is the subject of the Petition, it is disingenuous for Snake River to
argue that FERC has exclusive jurisdiction over the question of whether that wheeling should
be required.

Order No. 888-A; order on reh'g.  FERC Stats. & Regs., Regulations Preambles ¶ 31,048, at 30,344-45.

In short, PacifiCorp's Petition pertains to "state laws governing retail marketing areas" (Order No. 888, at 31,036) and "delivering power to end users," which FERC recognizes is a local matter (Order 888-A, at 30,344).  Snake River argues that Idaho cannot prohibit it from invading PacifiCorp's retail market area, which Idaho has defined, because to do so would interfere with FERC's jurisdiction.[9]  As discussed above, the law simply does not support that argument.

Finally, Snake River seems to argue that FERC's holding in City of Palm Springs, 76 Fed. Energy Reg. Comm'n Rep. (CCH) ¶ 61,127 (July 31, 1996), establishes that the determination of what is retail wheeling and/or a sham wholesale transaction is subject exclusively to federal jurisdiction.  (Idaho Opp. at 16.)  But, as the IPUC recognized, "The Palm Springs decision contains no such ruling."  Order No. 28888, at 8.  In City of Palm Springs, FERC was addressing a request by the city for an order requiring a utility to provide wheeling that FERC determined would result in a sham wholesale transaction.  It was in that context that "FERC was making clear its own responsibility to analyze proposed transactions brought to it to detect subterfuge.  That is not the same as concluding as a matter of law that

---

[9]  Snake River cites cases addressing federal preemption over the regulation of rates for wholesale sales.  (Idaho Opp. at 14-15.)  Snake River's argument is a red herring.  This case does not involve a question of the IPUC's jurisdiction over wholesale sales.  Indeed, the only wholesale sale that Snake River asserts as being involved would be the one by Enron to Snake River, which would occur before there would be any wheeling by PacifiCorp.

FERC exclusively has jurisdiction to analyze the character of proposed transmission transactions in each state." Id. at 9.

## V.   CONCLUSION

For all the foregoing reasons, and for the reasons articulated in the State of Idaho's Reply Memorandum in Support of Its Motion for Partial Summary Judgment, PacifiCorp respectfully requests that the Court grant its Motion for Summary Judgment and conclude that:

- PacifiCorp did not refuse to sell wholesale power to Snake River, and even if it had, it cannot be liable under federal antitrust laws for such a refusal;

- Antitrust law does not impose on PacifiCorp, an electric power producer and supplier, the obligation to sell a portion of its electrical system to a competitor such as Snake River;

- PacifiCorp is not liable for refusing to wheel power to Snake River's members because Snake River has never submitted a request clearly articulating the type of wheeling it seeks;

- PacifiCorp cannot be held liable under federal antitrust laws for refusing to wheel power to Snake River when PacifiCorp reasonably acted in the public's interest; and

- State-action immunity attaches in this case, thus barring Snake River from obtaining damages or injunctive relief from and after December 8, 2000.

DATED:  January 11, 2002.

STOEL RIVES LLP

David J. Jordan
John M. Eriksson
Mary S. Hobson
Marc T. Rasich
Attorneys for Defendant PacifiCorp

## CERTIFICATE OF SERVICE

I hereby certify that on the _11ᵗʰ_ day of January, 2002, I caused a true and correct

copy of the foregoing **PACIFICORP'S REPLY MEMORANDUM IN SUPPORT OF**

**MOTION FOR SUMMARY JUDGMENT** to be hand-delivered to the following:

Robert C. Huntley
Christopher F. Huntley
Huntley, Park, Thomas, Birkett,
  Olsen & Williams, L.L.P.
250 S 5th Street, Suite 660
PO Box 2188
Boise, ID  83702

Brett DeLange
Deputy Attorney General
Consumer Protection Unit
Office of the Attorney General
700 W Jefferson Street, Room 210
PO Box 83720
Boise, ID  83720-0010

and mailed, postage prepaid to:

Charles F. Wheatley, Jr.
Wheatley & Ranquist
34 Defense Street
Annapolis, MD  21401

## CERTIFICATE OF SERVICE

I hereby certify that on the __11ᵗʰ__ day of January, 2002, I caused a true and correct copy of the foregoing [PROPOSED] ORDER ON MOTION TO FILE OVER LENGTH REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT to be sent to the following as instructed:

> Robert C. Huntley
> Christopher F. Huntley
> Huntley, Park, Thomas, Burkett,
>  Olsen & Williams, L.L.P.
> 250 So. 5ᵗʰ Street, Suite 660
> P.O. Box 2188
> Boise, Idaho 83702

> Charles F. Wheatley, Jr.
> Wheatley & Ranquist
> 34 Defense Street
> Annapolis, MD 21401

> Brett DeLange
> Deputy Attorney General
> Consumer Protection Unit
> Office of the Attorney General
> 700 W. Jefferson St., Rm. 210
> P.O. Box 83720
> Boise, ID 83720-0010

_Mary S Hobz_