Robert C. Huntley, ISB No. 894
Christopher F. Huntley ISB No. 6056
Huntley, Park, Thomas Burkett,
 Olsen & Williams, L.L.P.
250 So. 5th Street, Suite 660
P.O. Box 2188
Boise, ID  83702
Telephone: (208) 388-1230
Fax : (208) 388-0234

Charles F. Wheatley, Jr.
Wheatley & Ranquist
34 Defense Street
Annapolis, MD 21401
Telephone: (410) 266-7524
Fax:  (301) 261-8699

Attorneys for Snake River Valley Electric Association

U.S. COURTS

02 MAR 18 AM 11: 02

CAMERON S. BURKE
CLERK                IDAHO

**ORIGINAL**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SNAKE RIVER VALLEY ELECTRIC ASSOCIATION, | ) ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case No. CV96-308-E-BLW ) |
| PACIFICORP (Including UTAH POWER & LIGHT COMPANY, a division) | ) ) ) ) |
| Defendant, | ) **SNAKE RIVER VALLEY** ) **ELECTRIC ASSOCIATION'S** ) **RESPONSE TO AND** ) **MOTION TO STRIKE OR** |
| STATE OF IDAHO by and through Allen G. Lance, | ) **DISREGARD PACIFICORP'S** ) **LETTER OF** |
| Attorney General | ) **MARCH 15, 2002 TO** ) **THIS COURT** |
| Defendant-Intervenor. | ) ) |

At the close of business on Friday, March 15, 2002, counsel for Snake River Valley Electric

SRVEA's MOTION TO STRIKE - 1

Association ("Snake River") received a copy of a letter to David Metcalf, United States District Court, Boise, Idaho 83724, from David J. Jordan, counsel for PacifiCorp, advising that PacifiCorp seeks to exclude evidence from the trial relating to the proper calculation of damage to Snake River based on PacifiCorp's violations of the antitrust laws since the early 1990s.

We respond to the letter and also hereby **move to strike** its consideration from the Court. The facts supplied by counsel in the letter are inaccurate, in some instances a misstatement, and could only properly be presented by a motion and brief with supporting affidavits.

## OVERVIEW

PacifiCorp (and this Court) have had a copy of the Enron Power Marketing Agreement with SRVEA since 1997. The contract included "Take or Pay" provisions – that is, that SRVEA had to pay for certain demand and energy levels regardless of what its customers would be able to consume. Accordingly, as is the standard throughout the industry, the contract also provided that SRVEA could take the power and ". . . resell the Minimum Monthly Contract Quantity or amounts of Scheduled Power. . . "

PacifiCorp contends that either it or its attorneys are surprised that Dr. Slaughter's calculation of damages includes that factor and falsely claims to the Court that it needs more discovery and/or a postponement of the trial date. PacifiCorp has been constantly seeking to avoid the trial date and Plaintiff resists because its claim arose more than five years ago and it is time to get its day in court.

The fact is that this aspect of Dr. Slaughter's testimony requires no discovery – it is a matter of simple mathematical calculation by taking the energy available and applying to it the spot market rates which have been published and which are more clearly in the knowledge of PacifiCorp (which was trading in that market) than Plaintiff.

SRVEA's MOTION TO STRIKE - 2

## ARGUMENT

PacifiCorp's claim is nothing but a thinly veiled attempt to deny Snake River its clear rights under its Power Contract with Enron, which PacifiCorp has stipulated to abide by, and is, in reality, an attempt to unfairly preclude Snake River from the savings that would have accrued to it had PacifiCorp not unlawfully refused to wheel Snake River's firm power entitlements, both from Idaho Power Company and from Enron. PacifiCorp, itself, has proposed interruptible rates for the irrigation pumpers for many years which enabled PacifiCorp to curtail deliveries of power and to resell that power in the open market at large profits. One of the key features of both the Idaho Power and the Enron contract was that they provided for firm power deliveries to Snake River.

PacifiCorp's motion in *limine* should be rejected for several reasons: (1) it improperly asserts that Dr. Slaughter's damage calculation completely alters the theory of damages in this case; (2) it incorrectly asserts that the damage study of Dr. Slaughter is late; and (3) it argues that future extensive discovery is required, in an improper attempt to delay the trial schedule set by the Court in this case.

### I. PACIFICORP'S CONTENTION THAT DR. SLAUGHTER'S EXPERT REPORT COMPLETELY ALTERS THE THEORY OF DAMAGES IN THIS CASE IS IN ERROR

PacifiCorp argues that "until this switch, plaintiff had always claimed damages based on the difference between the cost to SRVEA members of electricity purchased from PacifiCorp and the cost of electricity purchased from other wholesalers plus reasonable wheeling charges. That position has been repeatedly confirmed in pleadings, interrogatory responses, and earlier expert reports." This contention is patently erroneous.

SRVEA's MOTION TO STRIKE - 3

A.   **Allegations of the Complaint Refute PacifiCorp's Contention**

The complaint in this case filed by Snake River on July 17, 1996 alleged as follows:

> (4)   The plaintiff has been seeking, for over the past three (3) years, to supply the electric requirements for the area, but has been thwarted in its efforts by the defendant, which has refused to deal with the plaintiff in its efforts to purchase wholesale power . . . and thereafter refusing to wheel electric power to the plaintiff's over defendant's existing transmission facilities from alternate power suppliers from which the plaintiff has a right to purchase wholesale power.

Paragraph 8 of the complaint provides that "Plaintiff and Defendant compete . . . (b) to serve customers located in areas on or near the border between Plaintiff's service areas and the service area of Defendant; [and] (c) to attract potential new customers."

Paragraph 9 of the complaint states as follows:

> (9)   Defendant maintains interconnections with numerous utility systems (other than its municipal and rural electric cooperative customers) over which it interchanges power. These utilities are located in Utah, Oregon, California and Montana. Defendant is a member of an interstate power pool which consists of utilities located in Idaho, and which is interconnected with other utility companies in the Western United States.

Paragraph 11 of the complaint alleges violations by the Defendant of the Sherman Act by:

> (e)   refusing to deal or to wheel outside sources of power to plaintiff at wholesale, on the ground that plaintiff thereafter would compete with it for customers and a right to serve.

In Paragraph 12, the complaint alleged violations of Section 3 of the Clayton Act by:

> (b)   restricting the sale of electricity to plaintiff on the condition that plaintiff not purchase or use the electricity and generation and transmission facilities of other utilities, where such other utilities are in competition with defendant. . . .

In Paragraph 13 of the complaint, the adverse affects are stated as follows:

> (a)   competition in the sale of electric power at wholesale to plaintiff has been eliminated;

*   *   *

SRVEA's MOTION TO STRIKE - 4

(e) the plaintiff has been denied the benefits of lower-cost power and an expanded revenue base which, but for the defendant's activities, would have been available to it.

(f) plaintiff is being denied revenues and potential profits from the customers not served by reason of the acts of the defendants.

These provisions of the complaint clearly embrace damages to Snake River from PacifiCorp's attempt to preclude Snake River from the advantages of its Power Contracts enabling it to resell any power to other users.

### B. Snake River's Enron Contract Gives it a Right to Resell Power Which it is Committed to Purchase

The February 27, 1997 Power Contract entered into by Snake River with Enron Power Marketing, Inc. has long been available and known to PacifiCorp. A copy was provided to the Court on December 8, 1997 at the Court's request at the time of Snake River's motion for a preliminary injunction. That contract is crystal clear that Snake River is obligated to purchase the specified quantities of power thereunder from Enron, and has the right to resell any such power at any time. This was important, because Snake River was purchasing certain quantities of power which admittedly were much lower in the first year of start-up of the cooperative than in the remaining four years of the five-year contract.

Article 1.3(b) of the Power Purchase and Sale Agreement provided as follows:

(a) buyer covenants and agrees that it will not take, or cause to be taken, any acts or omissions that would preclude the purchase and sale of power as contemplated by this Agreement, it being the intent of the Parties that as soon

as the Condition Precedent has been satisfied that Seller would sell and Buyer would purchase power in accordance with this Agreement;...

The contract quantity specified by the Contract was set in Article 3.1 as follows:

SRVEA's MOTION TO STRIKE - 5

### 3.1 Contract Quantity

Subject to the other provisions of this Agreement, Seller shall sell and deliver and Buyer shall purchase and receive, each month during the Delivery Term an amount of power (the "Contract Quantity") equal to (a) 20 megawatts ("MW") per hour at not less than a 30% minimum monthly load factor and not more than a 100% hourly load factor during the period September 16 through April 30 ("the Winter Period") of each calendar year during the Delivery Term and (b) 150 MW per hour and not less than a 40% minimum monthly load factor and not more than a 100% hour load factor during the period May 1st through September 15th (the "Summer Period") of each calendar year during the Delivery Term; provided, however, that it is expressly agreed that during the first 12-month period of the Delivery Term, the Contract Quantity shall be equal to (i) 50 MW for the month in the Summer Period (at a 40% minimum monthly load factor) and (ii) 10 MW (at a 30% minimum monthly load factor) for the months in the Winter Period.

Section 3.3 of the Power Contract expressly authorized the Buyer, Snake River, to resell the power:

### 3.3 Buyer Failure

In the event Buyer fails to take delivery <u>or resell the Minimum Monthly Contract Quantity</u> or amounts of Scheduled Power, where such failure was not caused by *forced majeure* or by Seller, Buyer shall pay Seller an amount for each MWH of each deficiency equal to the positive difference, if any, between (a) the Contract Price and (b) the price at which Seller is able to sell (if at all) or otherwise dispose of comparable supplies of power in a commercially reasonably manner (adjusted to reflect differences in transmission costs, if any).

These provisions of Snake River's contract with Enron demonstrate the need for a right by Snake River to resell the firm power being purchased. First, there was to be an initial start-up period at much lower volumes, followed by certain required maximum and minimum demand and energy charges for the subsequent years of the operation of the contract. Since PacifiCorp has precluded Snake River from being in business and able to go through the start-up, it is now seeking to allege that Snake River had no right to resell that power to others to offset what would have been unused power for the later years at fixed prices, directly contrary to the rights of Snake River to resell such power under the contract. This is an improper effort by PacifiCorp to reduce its damages in this

case.

Secondly, PacifiCorp's attempt to negate this crucial part of the contract, which was essential to Snake River, conflicts with the Stipulation that PacifiCorp entered in this case, which has been confirmed by this Court, as well by the Ninth Circuit Court on appeal, as binding on PacifiCorp.

At the oral argument on the preliminary injunction, the Court presented the following question to Mr. Jordan relating to his stipulation:

> Mr Jordan, could you briefly clarify. Let me just – My understanding is that your proposal and what you are willing to bind your client to, would be, in essence, to step into Enron's shoes and fulfill their contract if, in fact, this Court ultimately determines that your client is in fact obligated to wheel the services, or wheel the power. . . .
>
> MR. JORDAN: I think you have represented it well, Your Honor.

Transcript of hearing of December 8, 1997 at p. 43. This Court's Memorandum, Decision and Order of December 9, 1997 provided as follows:

> Moreover, at oral argument, PacifiCorp's counsel committed PacifiCorp to match the terms of the Enron contract, should SRVEA prevail at trial and should Enron decide in the interim to disavow the contract. . . PacifiCorp is bound to fulfill Enron's obligations should the circumstances noted above arise. [5]

---

[5] . . . The Court considers PacifiCorp to be bound to step into the shoes of Enron in the event that SRVEA prevails on the merits at trial and Enron disavows the contract sometime between now and then, and will enforce PacifiCorp's obligations in this regard by Court order, if necessary.

This was affirmed by the Ninth Circuit, now the law of the case. *Snake River Valley Elec. Ass'n v. PacifiCorp*, 238 F.3d 1189, 1190 n.4 (9th Cir. 2001).

### C. Dr. Wilson's Expert Affidavit of September 12, 1997 Provided That Access to the Wholesale Power Market By Snake River was an Essential Part of the Case

Dr. Wilson's affidavit, at Paragraph 22, provided as follows:

>Any utility within PacifiCorp's control area that desires general access to neighboring utility control areas in order to buy or sell bulk power must use PacifiCorp's network. Thus, access to PacifiCorp's transmission network is essential to SRVEA's ability to compete with PacifiCorp and denial of such access effectively forecloses SRVEA from the market. Indeed, if SRVEA were to achieve such access, but only on a discriminatory basis compared with PacifiCorp's own use, SRVEA would suffer an obvious competitive disadvantage. . . .

PacifiCorp has long been involved in a process of seeking to curtail the usage by the irrigation farmers by providing lower rates only for interruptible power which could be then taken by PacifiCorp and resold in the market at much higher prices during peak summer times. For PacifiCorp to now contend that Snake River has no such right to sell its firm entitlements under its Enron Contract, contrary to Snake River's clear right to resell the power, and thereby be subject to damages to Enron, as specified therein, is clearly discriminatory and places Snake River at an obvious competitive disadvantage.

Paragraph 39 of Dr. Wilson's affidavit provided as follows:

>. . . PacifiCorp is here using its monopoly of essential transmission to deny SRVEA and its members access to the alternative power supply options that they seek to obtain. . . .

In Paragraph 31, Dr. Wilson stated as follows:

>31.     The Enron contract is very favorable competitive rates for a wholesale power supply to SRVEA . . .
>
>The loss of this extremely favorable low-cost power supply contract that Snake River has with Enron would cause irreparable injury to SRVEA . . . it would be difficult to quantify SRVEA's total economic losses until after such injury has been inflicted.

Also, Dr. Wilson, in his expert report, first filed September 22, 1997 and subsequently refiled by the new scheduled date by the Court after the remand, provides as follows:

>. . . It is expected that Dr. Wilson will testify that the damages will include . . . damages for lost opportunities . . . and cause the plaintiff to lose beneficial deals and generally undermine the Plaintiff's ability to compete effectively with the Defendant at both the wholesale and retail level.

SRVEA's MOTION TO STRIKE - 8

## II. PACIFICORP'S CONTENTION THAT PLAINTIFF'S EXPERT REPORT BY DR. SLAUGHTER ON DAMAGES IS LATE IS IN ERROR

For a number of reasons, PacifiCorp's objections to Dr. Slaughter's report should be denied. There is no requirement that there would be any computation of damages at an earlier time. Snake River's request to PacifiCorp for production of documents essential for the report were continually delayed and incomplete by PacifiCorp, which resulted in entering agreements with the plaintiff as to the date of the final report which was met by plaintiff. Dr. Slaughter is scheduled to be deposed on March 19, 2002 by agreement of the Parties. Finally, the issue involved does not need any further discovery but involves a mechanical calculation of the contract entitlements with the posted market data, to which PacifiCorp is involved on a day-to-day basis.

### A. Snake River Has Consistently Sought Billing Data From PacifiCorp From an Early Date

On September 12, 2001 Snake River sent interrogatories and document requests relating to billing information relative to the defendant's customers who were members of the plaintiff association who received electric service from defendant during the period from May 1, 1994 to the present. This was prior to the Court's Scheduling Order for these proceedings of September 25, 2001.

PacifiCorp's counsel advised us they would have difficulty providing the data within the 30 days provided under the rules and we agreed to a relaxed time frame.

On September 27, 2001, Snake River supplemented its original interrogatory and production request no. 1 by attaching an additional list of customers which it asked that be included.

PacifiCorp did **not** provide the data by the date required for expert witness disclosures and therefore when we timely filed Dr. Slaughter's initial report on December 21st, 2001, it specifically

stated:

> 5. The specific calculation of damages is dependent on the receipt of additional data which is the subject of current discovery requests by Plaintiff to PacifiCorp.
>
> 6. In general terms, the calculation will take into consideration the cost differential between demand and energy supplied by PacifiCorp and that provided for in contracts with Idaho Power Company and Enron on an equivalent basis.

These paragraphs cover the very issue which PacifiCorp is now objecting to as a "new issue."

A stipulation was entered on January 23, 2002 between the parties relating to the new discovery deadlines. That stipulation provided as follows:

> 2. PacifiCorp will provide its response to plaintiff's requests regarding billing history on or after February 14, 2002.
>
> \*   \*   \*
>
> 5. Plaintiff's expert, Dr. Slaughter, will provide their revised, updated and final reports by February 21, 2002.

This stipulation was approved by the Court.

PacifiCorp did not send the data out on the agreed date of February 14th, but rather shipped it out on a CD on Friday, February 15th. On Monday, February 18th, we were in receipt of a call send by voice-mail Saturday which told us to disregard the CD in that it was garbled and that a knew one would be sent, which we received early that week. The CD we then received was programmed differently than the original one which Dr. Slaughter was able to satisfactorily work with, it had over 600,000 entries of data (most of which were irrelevant and unnecessary) but which amount of data meant that it could not be contained on one spreadsheet, (but required three) and therefore the data could not be manipulated as an entity. In other words, it was totally unusable.

We then got PacifiCorp on the phone, explained the problem, and finally a CD was sent in the proper and original format, but even that one had gross inconsistencies with the first CD. Nevertheless, Dr. Slaughter provided his detailed report with the full agreement of PacifiCorp on

SRVEA's MOTION TO STRIKE - 10

March 8, 2002, a copy of which is attached hereto as Appendix A (without attachments).

Plaintiff agreed to make Dr. Slaughter available for deposition during the week of March 11th, but it was PacifiCorp who requested that his deposition be scheduled tomorrow, Tuesday, March 19th, at which time it will commence at 9:00 a.m.

Based on the above events, PacifiCorp's claim in its letter to the Court that Snake River has been delinquent or unresponsive is simply unsupportable, and it is understandable why PacifiCorp would not wish to provide the Court with an affidavit to that effect.

### B.  PacifiCorp Has Opportunity For Discovery on This Issue Under its Agreed-Upon Schedule

The deposition of Dr. Slaughter which the parties agreed to undertake on March 19, 2002 provides PacifiCorp with an opportunity to conduct discovery on all aspects of Dr. Slaughter's report of damages.

### C.  There is no Need for Discovery on This Issue

Not only is Dr. Slaughter being made available on a discovery deposition, but the issue is one which does not require any document discovery. The value of the electric power which Snake River had a right to resell under its firm contract with Enron, involves only a mechanical calculation based on posted market prices for the area. Not only was PacifiCorp itself selling power in this market through its marketing agencies, but all of the utilities in the area, as well as cities such as the City of Idaho Falls and cooperatives, were engaged in undertaking sales of electric power in the market.

### CONCLUSION

For the above reasons, Plaintiff, Snake River Valley Electric Association respectfully submits that the letter complaint dated March 15, 2002 by PacifiCorp to the Court be denied and disregarded.

In addition, it is premature under the schedule set by the Court for this case, since a pretrial conference is scheduled for April 9, 2002 which includes the consideration of "evidentiary issues."

SRVEA's MOTION TO STRIKE - 11

DATED this 18 day of March, 2002.

                            Respectfully submitted,

Charles F. Wheatley, Jr.
Wheatley & Ranquist
34 Defense Street
Annapolis, MD 21401
Telephone: (410) 266-7524
Facsimile: (301) 261-8699

Robert C. Huntley
Huntley, Park, Thomas, Burkett.
  Olsen & Williams, L.L.P.
250 So. 5th Street, Suite 660
Boise, ID 83701
Telephone: (208) 388-1230
Facsimile: (208) 388-0234

March , 2002
Counsel for SRVEA

SRVEA's MOTION TO STRIKE - 12

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 18 day of March, 2002, a true and correct copy of the foregoing document was served on the below listed individuals by the method indicated below:

| | |
|---|---|
| Mary S. Hobson, ISB#2142<br>STOEL RIVES<br>101 South Capitol Blvd., Suite 1900<br>Boise, ID 83702<br>**Fax: 389-9040** | ___ Hand Delivered<br>___ U.S. Mail<br>___ Overnight Mail<br>_X_ Facsimile |
| John M. Eriksson, Esq.<br>STOEL RIVES<br>One Utah Center<br>201 S. Main St. Suite 1100<br>Salt Lake City, UT 84111<br>**Fax: 801-578-6999** | ___ Hand Delivered<br>___ U.S. Mail<br>___ Overnight Mail<br>_X_ Facsimile |
| Brett T. DeLange<br>Deputy Attorney General<br>Consumer Protection Unit<br>Office of the Attorney General<br>Len B. Jordan Building, Lower Level<br>700 West Jefferson Street, Room 210<br>P. O. Box 83720<br>Boise, ID  83720-0010<br>**Fax: 334-2830** | ___ Hand Delivered<br>___ U.S. Mail<br>_X_ Overnight Mail<br>_/_ Facsimile |

_____
Robert C. Huntley

SRVEA's MOTION TO STRIKE - 13