David J. Jordan (Utah Bar #1751)
John M. Eriksson (Utah Bar #4827)
Marc T. Rasich (Utah Bar #9279)
STOEL RIVES LLP
201 South Main Street, #1100
Salt Lake City, Utah 84111-4904
Telephone: (801) 328-3131
Facsimile: (801) 578-6999

Mary S. Hobson (ISB# 2142)
Erik F. Stidham (ISB# 5483)
STOEL RIVES LLP
101 S. Capitol Blvd., Suite 1900
Boise, Idaho 83702-5958
Telephone: (208) 389-9000
Facsimile: (208) 389-9040

Attorneys for Defendant PacifiCorp

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SNAKE RIVER VALLEY ELECTRIC ASSOCIATION,<br><br>Plaintiff,<br><br>vs.<br><br>PACIFICORP,<br><br>Defendant,<br><br>STATE OF IDAHO, by and through ALLEN G. LANCE, Attorney General,<br><br>Defendant-Intervenor. | Case No. CV 96-0308-E-BLW<br><br>**PACIFICORP'S REPLY MEMORANDUM IN SUPPORT OF PACIFICORP'S MOTION TO STRIKE PLAINTIFF'S EXPERT WITNESS DISCLOSURE OF DR. RICHARD SLAUGHTER AND PRECLUDE ANY TESTIMONY RELATING THERETO** |

## I. Introduction

The bottom line in this case is clear: The New Slaughter Report advances an entirely new theory of damages that was not disclosed (either in expert reports or discovery responses) by Snake River in accordance with Federal Rule of Civil Procedure 26[1], and therefore must be stricken under Rule 37(c). Snake River all but admits it failed to comply with the disclosure requirements in Rule 26(a)(2), but nevertheless tries to rationalize its failure by suggesting that: (1) a few select documents produced during litigation should have alerted PacifiCorp to the possibility that Snake River would add a spot market damages theory after the expert disclosure cutoff; (2) Snake River failed to disclose the theory because it could not do so in light of PacifiCorp's alleged late disclosure of billing data; and (3) Snake River was excused from providing proper expert disclosure of Dr. Slaughter because Dr. Wilson made a passing reference to the wholesale market in his expert disclosure on antitrust liability issues. These rationalizations not only lack merit, they fail to answer the only remaining question: Why didn't Dr. Slaughter disclose his intent to include lost spot market sales in his damage calculations? Snake River has not answered that question because there is no good answer: either Snake River never intended to include lost spot market sales or it has chosen to withhold that information. Consequently, the New Slaughter Report and any calculation of damages based on the spot market sales theory should be stricken.

---

[1] Unless noted otherwise, all references to Rule are to the Federal Rules of Civil Procedure.

PACIFICORP'S REPLY MEMORANDUM IN SUPPORT OF PACIFICORP'S
MOTION TO STRIKE PLAINTIFF'S EXPERT WITNESS DISCLOSURE OF DR. RICHARD SLAUGHTER
AND PRECLUDE ANY TESTIMONY RELATING THERETO - 2
Boise-138879.1 0019436-00149

## II. Undisputed Facts

Despite Snake River's obfuscation, the following facts remain undisputed:

- Nowhere in any of its sworn answers to PacifiCorp's interrogatories—including the interrogatories requesting that Snake River discuss <u>every</u> basis purportedly supporting its calculation of damages — did Snake River ever provide any information, formula or calculation suggesting that its damages consisted of lost profits Snake River supposedly would have realized had it sold electric power to non-Snake River members on the wholesale spot market. *See, e.g.*, Hobson Aff., Ex. C at Resp. to Inter. 13; Hobson Aff., Ex. D at Resp. to Inter. 9.

- The Original Slaughter Report made no reference to either Dr. Slaughter's intent to opine on spot market damages allegedly sustained by Snake River or Snake River's intent to have Dr. Slaughter calculate damages based on factors and theories that had been omitted from Snake River's previous answers and supplemental answers to PacifiCorp's interrogatories. *See* Hobson Aff., Ex. G.

- The Original Slaughter Report makes no reference to Snake River's purported intent to purchase electricity under the Enron Contract for resale on the wholesale market.

- The New Slaughter Report was disclosed by PacifiCorp <u>after</u> the court-imposed deadline for expert disclosures.

- The New Slaughter Report does not rely upon any of the billing data produced by PacifiCorp after the court-imposed deadline for expert disclosures in calculating the alleged lost profits sustained by Snake River as a result of lost sales on the spot market.

- Dr. Slaughter himself admitted that the information he relied upon in calculating Snake River's alleged damages was the billing information produced in November 2001 and the Enron Contract, both of which were available to Snake River before December 21, 2001. Hobson Aff., Ex. K.

### III. Analysis

#### A. Snake River's Spot Market Damages Theory Was Not Disclosed In Conformance With Rule 26

Rule 26(a)(2), in it simplest form, requires each party to disclose, "at the times and in the sequence directed by the court," a written expert report containing, *inter alia*, "a complete statement of all opinions to be expressed and the basis and reasons therefor; [and] the data or other information considered by the witness in forming the opinions." Fed. R. Civ. P. 26(a)(2)(B), (C). A party that fails to disclose the information required under Rule 26(a)(2) within the time frame established by the court "is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." Fed. R. Civ. P. 37(c)(1). This sanction was expressly intended to "provide[ ] an incentive for <u>full disclosure</u>." Fed. R. Civ. P. 37 advisory committee's note (1993) (emphasis added). Snake River has failed to comply with Rule 26(a)(2).

##### 1. The Original Slaughter Report Failed To Disclose Snake River's Intent To Rely Upon a Spot Market Damages Theory

The only expert disclosure of Dr. Slaughter made by Snake River prior to the court-imposed deadline was the expert report produced on December 22, 2001 (the "Original Slaughter Report"). *See* Hobson Aff., Ex. G. This report made absolutely no attempt to calculate the lost profits Snake River now claims it could have made by purchasing wholesale

power under the Enron Contract and then reselling such power on the spot market. Nor does the report notify PacifiCorp of Snake River's purported intent in December 2001 to rely upon a spot market damages theory. Instead, the Original Slaughter Report stated simply that the damages calculation would "take into consideration the cost differential between demand and energy supplied by PacifiCorp and that provided for in contracts with Idaho Power Company and Enron on a [sic] equivalent service basis." The failure of the Original Slaughter Report to adequately disclose — let alone even mention — Snake River's intent to have Dr. Slaughter opine on Snake River's alleged lost spot market opportunities precludes Snake River from introducing such evidence at trial.

2. **The Addition of Alleged Spot Market Losses in the Revised Slaughter Report Cannot be Justified**

PacifiCorp first learned of Snake River's intent to rely upon a spot market damages on March 8, 2002 — just over a month before trial — when Snake River disclosed the New Slaughter Report. It is undisputed that this report was issued by Snake River nearly three months after the original disclosure deadline and, consequently, was in violation of Rule 26. Recognizing as much, Snake River has attempted to rationalize its untimely assertion of a spot market damages theory by claiming that: (a) even though Snake River omitted any reference to spot market losses in both the Original Slaughter Report and its answers to PacifiCorp's interrogatories, the random documents produced by Snake River over the course of this litigation are somehow sufficient to relieve Snake River of its expert disclosure obligations under Rule 26; (b) PacifiCorp did not timely provide Snake River with billing data that Dr. Slaughter himself has admitted he did not use in calculating Snake River's alleged lost profits on the wholesale market; and (c) purported references to the wholesale market in the expert

disclosure of Dr. Wilson on antitrust liability issues satisfied Snake River's Rule 26 disclosure obligations with respect to Dr. Slaughter's damages calculations. All three claims lack merit.

    a.    Snake River's Purported Disclosure of Its Intent to Rely Upon a Spot Market Damages Theory In Documents Other Than the Expert Report of Dr. Slaughter Does Not Obviate Snake River's Obligation to Comply with Rule 26(a)(2)

Snake River contends that the language in the Enron Contract (which expressly states the intent of the parties that Snake River sell the power supplied by Enron to Snake River's members), the broad and vague claims in the Complaint, and statements in the 1995 meeting minutes between EGY and Snake River (before Snake River even began negotiations on the Enron Contract) were sufficient to notify PacifiCorp of Snake River's intent to add a spot market damages theory on the eve of trial, thereby eliminating the need for Snake River to comply with the detailed disclosure requirements in Rule 26. Taken to its logical conclusion, this rationalization would free litigants to spring new damages (or liability) theories on opposing parties at their leisure as long as some document, produced any time during the course of litigation, remotely supports the new theory. Obviously, if accepted, Snake River's rationalization would fatally undermine the core purpose of Rule 26(a): to avoid trial by ambush. *See* Fed. R. Civ. P. 26 (Advisory Committee Notes 1993) (West Supp. 2000) (noting that the purpose of the Rule is "to provide information on expert testimony sufficiently in advance of trial [so] that opposing parties have a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses.") (emphasis added).

Moreover, Snake River's assertion that the documents produced during discovery should have been sufficient to notify PacifiCorp of the types of damages that would be testified

about by Dr. Slaughter at trial, as well as the data Dr. Slaughter would rely upon in giving that testimony, contradicts the position taken in the advisory commentary notes to Rule 26, which state that: "[t]he lawyer even with the help of his own experts frequently cannot anticipate the particular approach his adversary's expert will take or the data on which he will base his judgment on the stand." Fed. R. Civ. P. 26, advisory committee notes. In short, Snake River's rationalization completely ignores Rule 26 and the objectives it seeks to fulfill and, therefore, is insufficient to justify its failure to disclose.

      b.    <u>Snake River's Untimely Disclosure of Its Spot Market Damages Theory Is Not Justified By the Allegedly Late Disclosure of Billing Data By PacifiCorp</u>

Snake River also attempts to rationalize its failure to comply with Rule 26 by claiming that PacifiCorp failed to produce "billing information relevant to [PacifiCorp's] customers who are members of [Snake River] who received electric service from [PacifiCorp] during the period from May 1, 1994 to the present." Snake River's Memorandum in Opposition to PacifiCorp's Motion to Strike Plaintiff's Expert Witness Disclosure of Richard Slaughter at 10-12. This argument fails for a number of reasons. First, the billing data about which Snake River complains, was not even <u>requested</u> until December 21, 2001 — the same day Snake River was required to serve its expert disclosures. Second, Snake River's December 21, 2001 request only sought additional data on a handful of "new members." Snake River already had been given all of the requested data in PacifiCorp's possession related to the overwhelming majority of Snake River's purported members long before the expert disclosure deadline. Third, Dr. Slaughter did not even rely upon the additional data ultimately provided when he made his final calculations.

Fourth and most importantly, even if Snake River could show that it actually needed this additional billing information to calculate a precise amount of damages under its spot market damages theory (which it has made no attempt to do), Snake River cannot explain why it needed that information to reveal in the Original Slaughter Report the intent, basis or methodology for calculating lost spot market sales. Significantly, for example, the New Slaughter Report relies on spot market prices allegedly published in the *Wall Street Journal* to calculate the alleged lost sales. There is no reason why Dr. Slaughter or Snake River could not have revealed his reliance on those prices (and the use he would make of them) in his Original Report. Yet Snake River failed to do so.

    c.    <u>Statements In Snake River's Expert Disclosure of Dr. Wilson Do Not Satisfy the Expert Disclosure Requirements For Dr. Slaughter</u>

Snake River contends that because the expert report of Dr. Wilson purportedly references Snake River's intent to sell electric power on the wholesale market, Snake River had no obligation under Rule 26 to disclose its intent to have Dr. Slaughter present testimony on spot market losses. This claim also is baseless for several reasons. First, the assumption by Snake River that it is not obligated to file an expert report in compliance with Rule 26 for each of its expert witnesses is belied by the clear language in Rule 26(a)(2). Further, Snake River's reliance on the Wilson Report is puzzling given that the report makes no attempt to calculate lost profits, does not provide an explanation of how such lost profits would be calculated, fails to specify the information one would rely upon in making such a calculation, and omits <u>any</u> discussion of lost profits at all. Further, Dr. Wilson is Snake River's antitrust liability expert, not its damages expert. Any passing mention of damages in his disclosure would itself fail to meet the requirements of Rule 26(a), even if Dr. Wilson rather than

Dr. Slaughter were going to testify about them. Regardless, the contents of the Wilson Report do not justify Snake River's last-minute attempt to add an entirely new theory of damages to the Slaughter Report.

### III. Conclusion

Snake River cannot avoid the inescapable conclusion that it failed to timely disclose the spot market damages theory contained in the New Slaughter Report and should not be permitted to cultivate after-the-fact rationalizations for its actions to the extreme prejudice of PacifiCorp. To do so would violate the fundamental purpose behind Rule 26. The New Slaughter Report therefore should be stricken.

DATED: April 3rd, 2002.

STOEL RIVES LLP

_____ FOR
David J. Jordan
John M. Eriksson
Marc T. Rasich
Mary S. Hobson
Attorneys for Defendant PacifiCorp

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 3rd day of April 2002, I caused the foregoing PACIFICORP'S REPLY MEMORANDUM IN SUPPORT OF PACIFICORP'S MOTION TO STRIKE PLAINTIFF'S EXPERT WITNESS DISCLOSURE OF DR. RICHARD SLAUGHTER AND PRECLUDE ANY TESTIMONY RELATING THERETO to be served:

via facsimile to the following:

Robert C. Huntley
Christopher F. Huntley
Huntley, Park, Thomas, Burkett,
 Olsen & Williams, L.L.P.
250 So. 5th Street, Suite 660
P.O. Box 2188
Boise, Idaho  83702

Brett DeLange
Deputy Attorney General
Consumer Protection Unit
Office of the Attorney General
700 W. Jefferson St., Rm. 210
P.O. Box 83720
Boise, ID 83720-0010

and via facsimile and U.S. mail, postage prepaid, to:

Charles F. Wheatley, Jr.
Wheatley & Ranquist
34 Defense Street
Annapolis, MD  21401

By [signature]