Robert C. Huntley, ISB No. 894
Christopher F. Huntley ISB No. 6056
Huntley, Park, Thomas Burkett,
 Olsen & Williams, L.L.P.
250 So. 5ᵗʰ Street, Suite 660
P.O. Box 2188
Boise, ID  83702
Telephone: (208) 388-1230
Fax : (208) 388-0234

Charles F. Wheatley, Jr.
Wheatley & Ranquist
34 Defense Street
Annapolis, MD 21401
Telephone: (410) 266-7524
Fax:  (301) 261-8699

Attorneys for Snake River Valley Electric Association

U.S. COURTS

02 APR 15  PM 3: 12

RC.  
 CAMERON S. BURKE  
 CLERK            IDAHO

ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SNAKE RIVER VALLEY ELECTRIC ASSOCIATION,<br><br>        Plaintiff,<br><br>v.<br><br>PACIFICORP, (Including UTAH POWER & LIGHT, a division),<br><br>        Defendant. | Case No. CIV 96-0308-E-BLW<br><br>**PLAINTIFF'S RESPONSE TO MOTION IN LIMINE TO STRIKE ALL OF DR. SLAUGHTER'S TESTIMONY** |

    This brief is to respond to PacifiCorp's Motion to Strike all of the remainder of Dr.

Slaughter's testimony above and beyond that which related to the spot market and which was the

subject of the Court's Memorandum Decision and Order of April 8ᵗʰ.

**PLAINTIFF'S RESPONSE TO MOTION IN LIMINE TO STRIKE ALL OF DR.
SLAUGHTER'S TESTIMONY - 1**

As we interpreted that order, it was limited to preventing Dr. Slaughter from including damages for profits that would have been realized had Snake River been allowed to market its excess power. That order was procured by PacifiCorp's success in getting the Court to ignore paragraph 4 of Dr. Slaughter's December 21st, 2001 disclosure which reads:

> "I will be providing testimony which calculates the losses which Plaintiff has suffered by virtue of it not having received wheeling service in accordance with its complaint filed in this action both with respect to a source of power in the period from May 1996 through April 1997 from Idaho Power, and from May 1997 through April 2002 from Enron."

The report contained **absolutely no calculation** and the reason was given in paragraph 5 that the data from PacifiCorp was still in the works. (During that time period, PacifiCorp counsel advised that PacifiCorp's computer information services would not delay any ongoing work to get this production request to Plaintiff.

Having succeeded in eliminating a very substantial part of Snake River's ability to achieve an economic benefit from the Enron contract, PacifiCorp now seeks to strike all damage testimony in what it falsely terms the "New Slaughter Report" – the March 8th report was not a "new report", but rather was a first and only report submitted timely under agreement of counsel and the time-lines of the Court.

None of the various issues raised by PacifiCorp go to the admissibility of Dr. Slaughter's remaining testimony – they are issues which can be the subject of cross-examination in an attempt by PacifiCorp to affect the weight of the testimony. PacifiCorp raises many issues, we will not address them all, because they all have the same affect and, therefore, we will address a few by way of illustration:

**PLAINTIFF'S RESPONSE TO MOTION IN LIMINE TO STRIKE ALL OF DR. SLAUGHTER'S TESTIMONY - 2**

1.      At page 1, the statement was made that Snakes River assumes that Enron would have

supplied power which could be resold to non-members. That is not an assumption – the contract so

provides in Section 3.3:

> "**Buyer Failure**" In the event Buyer fails to take delivery **or resell** the
> minimum monthly contract quantity or amounts of scheduled power, . . .
> Buyer shall pay Seller . . . the amount for each NWH of such deficiency equal
> to the positive difference, if any, between (a) the contract price and (b) the
> price at which Seller is able to sell (if at all) or otherwise dispose of
> comparable supplies of power in a commercially reasonable manner..."

PacifiCorp next states that Dr. Slaughter's testimony "supposes" that Snake River could have

made unidentified sales to unnamed entities at any point in time under the most favorable market

conditions. . ." Such a statement is an attempt to mislead the Court as to the nature of the spot

market. On the spot market, one is dealing with a commodity such as potatoes or pork bellies, or

wheat, and of course it is appropriate to assume that if there is a market on a given day there are

purchasers available at the market price.

The next statement is that Dr. Slaughter ignores "that Snake River took no steps whatsoever

to prepare to enter the wholesale spot market". Of course until PacifiCorp agreed to wheel, there

was no reason to engage a spot market broker and Dr. Slaughter testified that that contact can be

easily established.

At page 2 the PacifiCorp brief launches into a suggestion that since Snake River was set up

as a non-profit cooperative, it could not go into the market "to make a profit". There is no testimony

or evidence in the record that the savings from resale would result in anything more than necessary

to appropriately reduce rates to the irrigators and to purchase and repair equipment to maintain the

service.

**PLAINTIFF'S RESPONSE TO MOTION IN LIMINE TO STRIKE ALL OF DR.
SLAUGHTER'S TESTIMONY - 3**

At page 3, PacifiCorp asserts as it has done in several briefs, that Snake River never made a firm request for wheeling, and that therefore PacifiCorp never refused to provide wheeling. We will not lengthen this brief by going through all of the correspondence and oral conversations, but we are surprised that PacifiCorp can make such a representation to this Court in light of the posture it was taking when it was opposing the injunction. **Query**: At the time PacifiCorp stood before this Court to make an offer to avoid the injunction, was it not then and there declining a request to wheel?

Can anyone take the position with a straight face that during the years this case was on appeal to the Ninth Circuit, that Snake River was not seeking or PacifiCorp was agreeing to provide wheeling services? Is such a contention not rather bizarre?

At page 4, PacifiCorp takes issue with the fact that the Enron contract was canceled because of PacifiCorp's failure to wheel – that is the only reason the contract was canceled.

Again, at pages 11 through 13, PacifiCorp urges the argument that "Snake River was not allowed to make a profit", and therefore Dr. Slaughter's calculations must be stricken. There is no testimony by witnesses for either party that there will be illegal profits either with or without the spot market sales.

PacifiCorp at several places in its brief asserts that Enron never would have supplied power because there was a short period of time when Snake River had failed to file its annual license renewal with the Secretary of State. No law is cited for the proposition that such a lapse deprives a corporation or its owners its right to damages. Its members would have a right to sue even if the corporate charter had not been retroactively reinstated. Enron did not terminate the contract during

**PLAINTIFF'S RESPONSE TO MOTION IN LIMINE TO STRIKE ALL OF DR. SLAUGHTER'S TESTIMONY - 4**

that period and had the oversight been made known to the Executive Officers, the annual license application would have and could have and was filled out and filed in a matter of one or two days.

Again, at pages 17 and 18, PacifiCorp dwells upon the fact that in this commodities market type transaction, we have not identified who the specific buyers of the power would have been. That is, of course, an impossibility because it didn't happen and also it is a nonsense requirement. The only necessary fact is that there was a spot market, meaning there were purchasers and sellers establishing a price. Noone contends that the small amount of power in this contract available to Snake River would make even a ripple on the price of power on the spot market.

As we get to the conclusion of this brief, we are struck with the fact that PacifiCorp's brief is totally inconsistent with the relief it seeks. It apparently seeks to deny admission to **ALL** of Dr. Slaughter's testimony, but the arguments in the brief are only directed to the spot market issue. We apologize for the rehash of what has been in our original briefing on the spot market issue, but we have merely responded to that which PacifiCorp has written. However, what we have written is also relevant to our Motion to Reconsider.

Were the Court to consider granting PacifiCorp's motion to deny all of Dr. Slaughter's testimony, Plaintiff would suggest that the appropriate relief would be to vacate the trial date and reset it at a time when all witnesses are prepared on all theories. As one of our other briefs establishes, PacifiCorp did not designate its damage expert, Albert Vondra, by January 22nd, 2002, it did not designate him by March 21st, 2002 and PacifiCorp never served his disclosure until Monday, April 8th, after the close of business hours. Having stricken a major portion of Dr. Slaughter's testimony due to timeliness, the Court can hardly due otherwise with respect to Al

**PLAINTIFF'S RESPONSE TO MOTION IN LIMINE TO STRIKE ALL OF DR. SLAUGHTER'S TESTIMONY - 5**

Vondra and the several other PacifiCorp experts disclosed only on April 2nd. Likewise, PacifiCorp did not disclose its supplemental reports of the only two experts it originally disclosed timely, Jack Stamper and Adam Jaffe, after the close of business on April 8th. Surely, PacifiCorp should not be heard to take the position that "what's sauce for the goose is a horse of a different color."

Plaintiff has been totally deprived of an opportunity to depose PacifiCorp experts Stamper and Jaffe on their revised and updated disclosures, has not had time to properly prepare for Mr. Vondra's deposition, (although we are taking it under protest on Monday, April 15th) and we have not had opportunity to depose the other four experts designated only on April 2nd.

Respectfully submitted this 15TH day of April, 2002.

Wheatley & Ranquist

Charles F. Wheatley, Jr.

Huntley, Park, Thomas Burkett,
Olsen & Williams, L.L.P.

Robert C. Huntley

Counsel for SRVEA

**PLAINTIFF'S RESPONSE TO MOTION IN LIMINE TO STRIKE ALL OF DR. SLAUGHTER'S TESTIMONY - 6**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 15th day of April, 2002, a true and correct copy of the foregoing document was served on the below listed individuals by the method indicated below:

Mary S. Hobson, ISB#2142
STOEL RIVES
101 South Capitol Blvd., Suite 1900
Boise, ID 83702
**Fax: 389-9040**

_X_ Hand Delivered
___ U.S. Mail
___ Overnight Mail
_X_ Facsimile

John M. Eriksson, Esq.
STOEL RIVES
One Utah Center
201 S. Main St. Suite 1100
Salt Lake City, UT 84111
**Fax: 801-578-6999**

___ Hand Delivered
___ U.S. Mail
___ Overnight Mail
_X_ Facsimile

Brett T. DeLange
Deputy Attorney General
Consumer Protection Unit
Office of the Attorney General
Len B. Jordan Building, Lower Level
700 West Jefferson Street, Room 210
P. O. Box 83720
Boise, ID 83720-0010
**Fax: 334-2830**

_X_ Hand Delivered
___ U.S. Mail
___ Overnight Mail
_X_ Facsimile

Robert C. Huntley

**PLAINTIFF'S RESPONSE TO MOTION IN LIMINE TO STRIKE ALL OF DR. SLAUGHTER'S TESTIMONY - 7**