



David J. Jordan (1751)
John M. Eriksson (4827)
Marc T. Rasich  (9279)
STOEL RIVES LLP
201 South Main Street, Suite 1100
Salt Lake City, Utah 84111
Telephone: (801) 328-3131

Mary S. Hobson
Erik F. Stidham
STOEL RIVES LLP
101 S. Capitol Blvd., Suite 1900
Boise, Idaho  83702-5958
Telephone:  (208) 389-9000

Attorneys for Defendant
PacifiCorp

## UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| SNAKE RIVER VALLEY ELECTRIC ASSOCIATION,<br><br>Plaintiff,<br><br>v.<br><br>PACIFICORP (including UTAH POWER & LIGHT, a division),<br><br>Defendant,<br><br>STATE OF IDAHO, by and through ALAN G. LANCE, Attorney General,<br><br>Defendant-Intervenor. | Case No. 96-308-E-BLW<br><br>**AFFIDAVIT OF MARC T. RASICH IN SUPPORT OF PACIFICORP'S OPPOSITION TO (i) SNAKE RIVER'S MOTION TO STRIKE VARIOUS EXPERT WITNESS DISCLOSURES AND (ii) SNAKE RIVER'S MOTION TO EXCLUDE DEFENDANT'S EXHIBITS** |

I, Marc T. Rasich, being first duly sworn, state as follows:

1.    I am an associate with Stoel Rives LLP, attorneys of record for PacifiCorp dba Utah Power & Light Company in this action. I make this affidavit from my own personal knowledge.

2.    Throughout December 2001 and January 2002, I had a number of discussions (both orally and in writing) with Mr. Huntley and Mr. Wheatley, co-counsel for Snake River, related to the inadequacy of Snake River's expert reports and the deficiencies in Snake River's discovery responses and their impact on PacifiCorp's ability to prepare its defense and its expert's ability to prepare their reports. In response to those discussions, On or about January 20, 2002, Mr. Huntley called me to discuss the possibility of entering a stipulation amending the discovery schedule to permit Snake River the opportunity to revise its expert reports to bring them into compliance with the requirements of Rule 26 of the Federal Rules of Civil Procedure. During the course of that and a number of additional conversations, I made it clear that PacifiCorp would not agree to a requested extension without a commitment by Snake River to: (i) provide complete, non-evasive responses to discovery that PacifiCorp deemed essential to the preparation of its defense and the preparation of its experts' reports; and (ii) allow PacifiCorp the same 30-day window that PacifiCorp had under the original scheduling order to file its expert reports after receipt of compliant Snake River reports. I also expressly told Mr. Huntley that PacifiCorp would have an additional expert to assist in rebutting Snake River's damage claims.

3.    Ultimately, Mr. Huntley and I reached an agreement and entered a stipulation amending the discovery schedule. That stipulation subsequently was approved by the Court. A true copy of the stipulation and order are attached hereto as Exhibit A.

4.    After entering the stipulation, Dr. Slaughter required additional time to complete his report. Consequently, Mr. Huntley and I agreed that the deadlines in the stipulation would be extended by two weeks. This gave Dr. Slaughter until March 7, 2002, to serve his report and gave PacifiCorp's experts the same 30 days previously set by the court and agreed upon by the parties to rebut the content of that report. I confirmed our agreement — i.e., that PacifiCorp would have a month within which to provide its expert reports — in a letter sent to Mr. Huntley dated March 4, 2002, a true copy of which is attached hereto as Exhibit B. Mr. Huntley did not dispute my description of the agreement.

5.    Mr. Huntley confirmed the our agreement during the oral argument on PacifiCorp's motion to strike portions of Dr. Slaughter's expert report held on April 5, 2002. A true copy of relevant portions of the transcript of that hearing are attached hereto as Exhibit C.

6.    Snake River served the New Slaughter Report on PacifiCorp on March 8, 2002, then served a supplement to the New Report (partially correcting some calculation errors) on March 27, 2002. As it had agreed, PacifiCorp served Snake River with The Expert Report of Al Vondra, the Supplement to the Expert Report of Adam Jaffe and the Amended Report of Jack Stamper on April 8, 2002.

7.    A true copy of the Amended Report of Jack Stamper (without exhibits) is attached hereto as Exhibit D.

8.   PacifiCorp served its Exhibit List on Snake River on April 2, 2002.

PacifiCorp inadvertently failed to send Snake River one page of one exhibit that had not

been provided previously to Snake River.  When it discovered its inadvertence, PacifiCorp

immediately sent Snake River a copy of that entire document on April 8, 2002.

DATED this __16__ day of April, 2002.

STOEL RIVES LLP

_____

Marc T. Rasich

SUBSCRIBED AND SWORN TO before me this _16th_ day of April, 2002.

_____
Notary Public
Residing at _Salt Lake City_
My commission expires: _December 15, 2003_

NOTARY PUBLIC
Carolyn L. Hopkins
201 South Main St. #1100
Salt Lake City, Utah 84111
My Commission Expires
December 15, 2003
STATE OF UTAH

## CERTIFICATE OF SERVICE

I hereby certify that on the ____ day of April, 2002, I caused a true and correct copy of the foregoing AFFIDAVIT OF MARC T. RASICH IN SUPPORT OF PACIFICORP'S OPPOSITION TO (i) SNAKE RIVER'S MOTION TO STRIKE VARIOUS EXPERT WITNESS DISCLOSURES AND (ii) SNAKE RIVER'S MOTION TO EXCLUDE DEFENDANT'S EXHIBITS to be sent via facsimile and U.S. mail to the following:

Robert C. Huntley
Christopher F. Huntley
Huntley, Park, Thomas, Burkett,
 Olsen & Williams, L.L.P.
250 So. 5th Street, Suite 660
P.O. Box 2188
Boise, Idaho  83702

Brett DeLange
Deputy Attorney General
Consumer Protection Unit
Office of the Attorney General
700 W. Jefferson St., Rm. 210
P.O. Box 83720
Boise, ID 83720-0010

Charles F. Wheatley, Jr.
Wheatley & Ranquist
34 Defense Street
Annapolis, MD  21401

# STOEL RIVES LLP

**ATTORNEYS**

ONE UTAH CENTER
201 S. MAIN STREET, SUITE 1100
SALT LAKE CITY, UTAH 84111-4904
*Telephone (801) 328-3131 Fax (801) 578-6999*

| | Name: | Fax No. | Company/Firm: | Office No. |
|---|---|---|---|---|
| TO: | Robert C. Huntley | 208-388-0234 | Huntley, Park, Thomas Burkett, Olsen & Williams | 208-388-1230 |

| | Name: | Sender's Direct Dial: | Sender's Direct Email: |
|---|---|---|---|
| FROM: | Marc T. Rasich | (801) 578-6901 | mtrasich@stoel.com |

| Client: | Matter: |
|---|---|

**DATE:** March 4, 2002

No. of Pages (including this cover): 10

Originals Not Forwarded Unless Checked: ☐ First Class Mail   ☐ Overnight Delivery   ☐ Hand Delivery

In case of error call the fax operator at (801) 578-6995.

*This facsimile may contain confidential information that is protected by the attorney-client or work product privilege. If the reader of this message is not the intended recipient or an employee responsible for delivering the facsimile, please do not distribute this facsimile, notify us immediately by telephone, and return this facsimile by mail. Thank you.*

**COMMENTS:**

My secretary is out this morning, so I have printed this off the system for your review.



March 4, 2002

MARC T. RASICH
*Direct Dial*
(801) 578-6901

## VIA FACSIMILE AND U.S. MAIL

Robert C. Huntley
Huntley, Park, Thomas,
 Burkett, Olsen & Williams, LLP
250 So. 5th Street, Suite 660
P.O. Box 2188
Boise, ID 83702

Re:     Snake River Valley Electric Assn. v. PacifiCorp

Dear Mr. Huntley:

I write in response to your February 28, 2002, facsimile letter.

While I am encouraged that Mr. Wheatley intends to go through each of the interrogatories and request for admission that I itemized to determine if a "further or different response" is required, I am disappointed that Snake River apparently intends not to abide by the express representation you made to me over the telephone on January 24, 2002, and in writing in the stipulation filed with the Court. As I have repeatedly indicated, the information requested in those interrogatories and requests for admission is critical to PacifiCorp's ability to prepare its defense and Snake River has yet to provide responses that include all of the information sought. Without Snake River's promise to provide complete, nonevasive answers to that discovery, PacifiCorp would not have entered the stipulation that you proposed. Without the promised information, PacifiCorp and its experts cannot adequately prepare for trial. Accordingly, PacifiCorp will begin preparation of a motion to compel and motion to continue the trial date.

Regarding the database issues, contrary to your suggestion, the e-mail you received on February 26, 2002, contained the data Snake River specifically requested in an Excel spreadsheet (though it was in a compacted file due to its size), again as Snake River specifically requested. Indeed, the CD that Snake River received on February 27, 2002 (and

SaltLake-167390.1 0019436-00149

Robert C. Huntley
March 4, 2002
Page 2

which you claim Dr. Slaughter could use), was only a copy of the databases sent to you on the
26ᵗʰ. To the extent the information in or format of the spreadsheet has changed, it is the result
of (1) incomplete information Snake River provided, (2) the numerous "updates" Snake River
sent, and (3) PacifiCorp's efforts, above those required under the Federal Rules of Civil
Procedure, to provide Snake River's expert with information in a format that is easy for him to
work with. Moreover, to the extent Dr. Slaughter had been using only the limited Excel
spreadsheet from PacifiCorp's original production, he was viewing less than a third of the
responsive information provided by PacifiCorp. Regardless, we look forward to receiving his
report by March 7, 2002. PacifiCorp's damages expert will provide to Snake River his report
within a month after PacifiCorp's receipt of that report.

        With respect to deposition scheduling, please let me know as soon as possible when
Dr. Wilson will be available for deposition so that we can make appropriate arrangements to
take his deposition at Stoel Rives' Washington, D.C., office. We will schedule a date for
Dr. Slaughter's deposition after I have had the opportunity to review his report. Finally, we
would like to take the 30(b)(6) deposition of Snake River and the individual depositions of Carl
Palmer and Del Ray Holm on March 6ᵗʰ, 7ᵗʰ and 8ᵗʰ, in Stoel Rives' Boise, Idaho, offices.
Please let me know as soon as possible if these dates work with your and their schedules. I do
not anticipate that the individual deposition of Del Ray Holm or Carl Palmer will consume an
entire day's time but have set aside one day for each just in case they do.

        Please contact me if you have any questions regarding these matters.

                                        Sincerely,


                                        Marc T. Rasich


MTR:ljd
cc:    Charles F. Wheatley, Jr.

David J. Jordan (1751)
John M. Eriksson (4827)
Marc T. Rasich  (9279)
STOEL RIVES LLP
201 South Main Street, Suite 1100
Salt Lake City, Utah 84111
Telephone: (801) 328-3131

Mary S. Hobson
Erik F. Stidham
STOEL RIVES LLP
101 S. Capitol Blvd., Suite 1900
Boise, Idaho 83702-5958
Telephone: (208) 389-9000

Attorneys for Defendant
PacifiCorp

## UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| SNAKE RIVER VALLEY ELECTRIC ASSOCIATION,<br><br>Plaintiff,<br><br>v.<br><br>PACIFICORP (including UTAH POWER & LIGHT, a division),<br><br>Defendant.<br><br>STATE OF IDAHO, by and through ALAN G. LANCE, Attorney General,<br><br>Defendant-Intervenor. | Case No. 96-308-E-BLW<br><br>**NOTICE OF DEPOSITION OF SNAKE RIVER VALLEY ELECTRIC ASSOCIATION AND NOTICE OF INTENT TO VIDEOTAPE DEPOSITION**<br><br>Fed. R. Civ. Proc. 30(b)(6) |

TO ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:

PLEASE TAKE NOTICE that in accordance with Rule 30(b)(6) of the Federal Rules of Civil Procedure, counsel for defendant PacifiCorp ("PacifiCorp") will take the deposition of Snake River Valley Electric Association ("Snake River") at the law offices of Stoel Rives, LLP, 101 S. Capitol Blvd., Suite 1900, Boise, Idaho 83702-5958, commencing at 9:00 a.m., on February 13, 2002, and continuing each day thereafter, excluding Saturdays, Sundays and holidays, until concluded. The deposition will be taken before a notary public or such other persons authorized by law.

PLEASE TAKE FURTHER NOTICE that in accordance with Rule 30(b)(6) of the Federal Rules of Civil Procedure, deponent Snake River must designate and produce at said deposition one or more persons who are most qualified to testify on its behalf as to each of the matters described in Exhibit A attached to this deposition notice.

Identification of the matters included in Exhibit A is without prejudice to PacifiCorp's right to identify other matters upon which testimony will be sought, or to request documents, prior to commencement of the deposition.

PLEASE TAKE FURTHER NOTICE that PacifiCorp intends to record the deposition testimony by videotape in addition to stenographically, pursuant to Rule 30(b)(2) of the Federal Rules of Civil Procedure.

DATED:  January ___, 2002.          STOEL RIVES LLP

                                     _____
                                     Marc T. Rasich
                                     Attorneys for Defendant PacifiCorp

## EXHIBIT A

### DEFINITIONS

1. "SNAKE RIVER" shall mean and refer to plaintiff Snake River Valley Electric Association and/or any of its past or present officers, directors, shareholders, members, agents, employees, representatives, attorneys, accountants, and investigators, or anyone acting or purporting to act on its or their behalf.

2. "YOU," "YOUR," and "YOURS" shall mean SNAKE RIVER.

3. "COMMUNICATION(S)" shall mean any transfer or receipt of information whether orally or in writing and any evidence of such contact, including without limitation, any conversation or discussion by means of letter, e-mail, telephone, notes or logs of telephone conversations, daily calendars, diaries, note, memorandum, telegraph, telex, telecopy, cable or any other medium, including electronic audit or video device.

4. The words "and" and "or" shall be construed both conjunctively and disjunctively, and each shall include the other whenever such a dual construction will serve to bring within the scope of a category of this request any documents or information which would not otherwise be within its scope.

5. The singular form shall be construed to include the plural, and vice versa, whenever such a dual construction will serve to bring within the scope of a category of this request any documents or information which would otherwise not be within its scope.

6. The past tense form shall be construed to include the present tense, and vice versa, whenever such a dual construction will serve to bring within the scope of a category of this request any documents or information which would otherwise not be within its scope.

## CATEGORIES OF TESTIMONY

1.     The wheeling services YOU have requested or are requesting from PacifiCorp from January 1, 1994 to the present.

2.     Any purported attempts to purchase transmission or distribution facilities from PacifiCorp including without limitation a detailed description of those facilities, and any COMMUNICATIONS relating thereto.

3.     The purported attempts to purchase wholesale power from PacifiCorp and any COMMUNICATIONS related thereto.

4.     The process for becoming a member of Snake River.

5.     The dates on which the membership application of each current member of SNAKE RIVER was approved by SNAKE RIVER's board of directors or its members.

6.     Your COMMUNICATIONS with members or prospective members that refer or relate to PacifiCorp or Utah Power and Light.

7.     YOUR current or former ownership of any distribution facilities, if any, including their location from January 1, 1994 to the present.

8.     YOUR current or former ownership of any transmission facilities, if any, including their location from January 1, 1994 to the present.

9.     The construction by YOU or anyone acting on YOUR behalf of any distribution facilities, if any, including their location, from January 1, 1994 to the present.

10.    The construction, by YOU or anyone acting on YOUR behalf, of any transmission facilities, if any, including their location, from January 1, 1994 to the present.

11. COMMUNICATIONS between YOU or anyone acting or purporting to act on YOUR behalf, with the Federal Energy Regulatory Commission or Idaho Public Utilities Commission.

12. COMMUNICATIONS between or among YOU or anyone acting or purporting to act on YOUR behalf and any third party related to financing for the construction of any transmission or distribution facilities.

13. COMMUNICATIONS between or among YOU or anyone acting or purporting to act on YOUR behalf and any third party related to feasibility of constructing any transmission or distribution facilities.

14. COMMUNICATIONS between YOU or anyone acting or purporting to act on YOUR behalf and any third party, including without limitation, Idaho Power, Bonneville Power Administration, and Enron Power Marketing, Inc. ("Enron"), regarding the purchase or sale of electric power for YOU or YOUR members.

15. The terms and conditions of any and all electric power supply contracts, including without limitation, offers or proposals for such contracts, including without limitation, any contracts or offers from, or proposals to, Idaho Power, Bonneville Power Administration, and Enron.

16. The costs associated with YOUR ownership and maintenance of any distribution and/or metering facilities, including without limitation, COMMUNICATIONS with any third parties regarding such costs.

17. The prices YOU contend YOU would have charged YOUR members for electric power from 1994 to the present, including each and every component of those prices, and the basis therefor, including COMMUNICATIONS with any third party related thereto.

18.   The facts alleged in YOUR complaint.

19.   YOUR responses to PacifiCorp's First, Second and Third Sets of Interrogatories;

PacifiCorp's First, Second and Third Sets of Requests for Production of Documents, and

PacificCorp's First Set of Requests for Admissions.

20.   The facts supporting YOUR claim for $60 million in damages.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this ____ day of January, 2002, I caused to be served

the foregoing NOTICE OF DEPOSITION OF SNAKE RIVER VALLEY COOPERATIVE

ASSOCIATION AND NOTICE OF INTENT TO VIDEOTAPE DEPOSITION via U.S.

Mail upon the following:

     Charles F. Wheatley, Jr.
     Timothy P. Ingram
     WHEATLEY & RANQUIST
     34 Defense Street
     Annapolis, MD 21401

     Robert C. Huntley
     Christopher F. Huntley
     HUNTLEY, PARK, THOMAS BURKETT,
      OLSEN & WILLIAMS, LLP
     250 So. 5th Street, Suite 660
     P.O. Box 2188
     Boise, ID  83702

     Brett DeLange
     Deputy Attorney General
     700 W. Jefferson St., Rm. 210
     P.O. Box 83720
     Boise, ID  83720-0010

                       By_____

04-16-02  14:46  From-STOELRIVES                  8015786999           T-422  P.23/28  F-748

```
*****************************
***   ACTIVITY REPORT    ***
*****************************
```

TRANSMISSION OK

| | |
|---|---|
| TX/RX NO. | 2764 |
| TTI | STOEL RIVES SLC |
| CONNECTION TEL | 512083880234 |
| CONNECTION ID | |
| START TIME | 03/04 11:27 |
| USAGE TIME | 05'46 |
| PAGES | 10 |
| RESULT | OK |

UNITED STATES DISTRICT COURT

DISTRICT OF IDAHO

SOUTHERN DIVISION

SNAKE RIVER VALLEY ELECTRIC ASSOCIATION,   .   Case No. CV96-308-E

    Plaintiff,   .

                 .   Boise, Idaho
    vs.   .   April 5, 2002
                 .   11:00 a.m.

PACIFICORP,   .

    Defendant.   .

.  .  .  .  .  .  .  .  .  .  .  .  .  .


VOLUME I OF I
MOTION HEARING
BEFORE THE HONORABLE B. LYNN WINMILL
UNITED STATES DISTRICT JUDGE


COURT RECORDER:

VERLENE NELSON
U.S. District Court

TRANSCRIPTION BY:

CANYON TRANSCRIPTION
P.O. Box 387
Caldwell, Idaho  83606


Proceedings recorded by electronic recording.  Transcript produced by transcription service.



1   a motion to amend our Complaint to get the damages more up to

2   line where they thought they were going to come in and in

3   January, this Court granted an order with the Amended Complaint

4   where he put the figure of $60 million in.

5       Now, what's more important here I think than what the

6   attorneys are saying about their situation here, they came and

7   took Dr. Slaughter's deposition a few weeks ago when he had his

8   final report and only report of the computation of damages

9   computed.  And we have a local rule here that says that a

10  witness can testify as to what is in his disclosure and as to

11  what is in his deposition.  And I've had attorneys take the

12  position where they thought they had you in a box.  They

13  wouldn't go forward with the deposition but they didn't want

14  more things in and therefore, you were in the box.  That rule

15  is still a rule of this district I believe.  I can't remember

16  the rule number.

17      Now, during Dr. Slaughter's deposition, they brought a

18  man out from Cleveland, Ohio, Al Vonda (phonetic) from Price,

19  Waterhouse, Cooper and he's supposed to be the man to oppose

20  Dr. Slaughter.  And there is no affidavit or representation by

21  Mr. Vonda that he can't be prepared.  There is no

22  representation or affidavit by anybody from the power company

23  that they didn't understand that everybody who's in this

24  business with take or pay contracts has to have a spot market

25  ability to resale protection and there's no affidavit from

1   anybody from the company rate department that they're in any

2   way surprised.

3        Now, due to working this out -- and I appreciate

4   counsel saying it's nice that we can rely on each other.

5   They've known since the beginning that Dr. Slaughter had to

6   have this data to finalize his report and we've agreed that Mr.

7   Vonda's report, which we don't have his computation yet, it's

8   due on Sunday and perhaps we'll get it on Monday and we haven't

9   deposed him.  We've been trying to get a date from them to

10  depose him.  They won't even give us dates when we possibly can

11  depose him.

12        COURT:  Mr. Huntley, why is the data provided by

13  Pacificorp necessary to provide -- or to state the spot market

14  theory?  What does that -- I mean my sense is that doesn't have

15  any relationship to the spot market theory.

16        MR. HUNTLEY:  That's an excellent question.  You

17  cannot compute and know what you have available to sell on the

18  spot market until you know what the actual demands and energy

19  charges have been and usage by these farmers.  Now, there might

20  have been several ways to go about computing damages but we

21  thought the most accurate way would be to use actual data.  And

22  until you know -- and we couldn't -- the actual data was what

23  Utah Power agreed to provide to us.

24        And so I want to take the Court through a couple

25  things that show what was going on here, their understanding of

1   calculation.  No. 2 is a time line relative to their knowledge

2   of the spot market events here and no one in their right mind

3   in the utilities business does a take or pay contract without

4   the ability to resell on the spot market.  You'd go broke if

5   you didn't and everybody does it including Utah Power.

6           Now, document no. 3 they say on the second page, Mr.

7   Rasich, says, "Regardless, we look forward to receiving his

8   report by March 7 of 2002."  And I'm working backwards here

9   because I think it makes sense going backwards.

10          On February 25 -- on Monday, February 25 -- and I

11  don't have a document on this.  I'm inserting this one -- I had

12  a telephone call from Mr. --

13          COURT:  Just a minute.  What are you -- you're not

14  referring to a document?

15          MR. HUNTLEY:  No, I'm not referring to a document.

16          COURT:  Okay.

17          MR. HUNTLEY:  On February 25, I had a telephone call

18  from Mr. Eriksson and Mr. Rasich.  And Mr. Eriksson started the

19  call and he said, among other things, the Excel spread sheet

20  that we thought would be done today, they ran into a glitch and

21  are not able to send that out today so it won't arrive to Dr.

22  Slaughter until tomorrow.

23          Now it didn't arrive until tomorrow.  It arrived later

24  but when it arrived, within six working days -- I had it wrong

25  in my brief.  Within six working days of when we finally had

David J. Jordan (1751)
John M. Eriksson (4827)
Marc T. Rasich  (9279)
STOEL RIVES LLP
201 South Main Street, Suite 1100
Salt Lake City, Utah 84111
Telephone: (801) 328-3131

Mary S. Hobson (ISB # 2142)
STOEL RIVES LLP
101 S. Capitol Blvd., Suite 1900
Boise, Idaho  83702-5958
Telephone:  (208) 389-9000

Attorneys for Defendant
PacifiCorp

## UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| SNAKE RIVER VALLEY ELECTRIC ASSOCIATION,<br><br>Plaintiff,<br><br>v.<br><br>PACIFICORP (including UTAH POWER & LIGHT, a division),<br><br>Defendant,<br><br>STATE OF IDAHO, by and through ALAN G. LANCE, Attorney General,<br><br>Defendant-Intervenor. | Case No. 96-308-E-BLW<br><br>MOTION AND STIPULATION FOR AMENDMENT OF DISCOVERY AND DISCLOSURE DEADLINES |



COME NOW, the parties and move and stipulate for a revised discovery schedule, which the parties agree will not require vacating the April 22, 2002 trial date, as follows.

1.    Plaintiffs will provide complete, non-evasive responses and/or supplemental responses to PacifiCorp's First, Second and Third Sets of Interrogatories and First Set of Requests for Admission, and will produce *all* non-privileged documents responsive to PacifiCorp's First, Second, Third, and Fourth Set of Requests for Production, regardless of any claim by Snake River that such documents have been produced or made available previously, by February 14, 2002;

2.    PacifiCorp will provide its response to Plaintiffs' request regarding billing history on or before February 14, 2002;

3.    As to those expert disclosures which are ready at the present time, PacifiCorp will forward them to Plaintiffs, reserving the right to modify and/or supplement them in light of further information provided by Snake River pursuant to this stipulation and/or in light of Snake River's revised/supplemented expert opinions;

4.    PacifiCorp reserves the right to provide additional expert reports within the time frame set forth below;

5.    Plaintiffs' expert, Dr. Richard Slaughter, Dr. John W. Wilson and Anton Tons will provide their revised, updated, and final reports by February 21, 2002;

6.    PacifiCorp will serve its final expert reports on or before March 21, 2002;

7.    PacifiCorp will depose Plaintiffs' experts on or before March 9, 2002;

8.    Plaintiffs will depose PacifiCorp's experts on or before April 9, 2002; and

9.      PacifiCorp reserves the right to move (1) to strike any expert report not complying with the requirements of Rule 26(a)(2)(B) and to exclude any expert testimony related to that report; (2) to compel further responses to written discovery and further production of responsive documents; and (3) to continue the trial and related dates should Snake River fail to comply fully with its obligations and representations under the terms of this stipulation.

The parties respectfully request leave to utilize the above and foregoing schedule.

Respectfully submitted this 22nd day of January, 2002.

STOEL RIVES LLP

Marc T. Rasich
Attorneys for Defendant PacifiCorp

WHEATLEY & RANQUIST

Charles F. Wheatley, Jr.

HUNTLEY, PARK, THOMAS BURKETT,
OLSEN & WILLIAMS, LLP

Robert C. Huntley
Counsel for SRVEA

04-16-02  14:41   From-STOELRIVES                    8015788999           T-422  P.05/28  F-748

01/22/02   15:00   FAX                    STOEL RIVES ...

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 22nd day of January, 2002, I caused to be served

the foregoing Motion and Stipulation for Amendment of Discovery and Disclosure

Deadlines via ~~hand delivery~~ *facsimile* upon the following:

  Robert C. Huntley
  Christopher F. Huntley
  HUNTLEY, PARK, THOMAS BURKETT,
    OLSEN & WILLIAMS, LLP
  250 So. 5th Street, Suite 660
  P.O. Box 2188
  Boise, ID 83702

and via U.S. Mail upon the following:

  Charles F. Wheatley, Jr.
  Timothy P. Ingram
  WHEATLEY & RANQUIST
  34 Defense Street
  Annapolis, MD 21401

  Brett DeLange
  Deputy Attorney General
  700 W. Jefferson St., Rm. 210
  P.O. Box 83720
  Boise, ID 83720-0010

                              By   Robert C Huntley

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

SNAKE RIVER VALLEY ELECTRIC
ASSOCIATION,

      Plaintiff,

v.

PACIFICORP, (Including UTAH POWER &
LIGHT, a division),

      Defendant.

Case No. CIV 96-0308-E-BLW

**ORDER GRANTING MOTION
AND STIPULATION FOR
AMENDMENT OF DISCOVERY
AND DISCLOSURE DEADLINES**

      The Court having considered the parties Motion and Stipulation for Amendment of Discovery and Disclosure Deadlines and good cause appearing therefore,

      NOW, THEREFORE, it is hereby ordered that the discovery and disclosure deadlines are hereby amended in accordance with the stipulation of the parties attached hereto as Appendix A.

      DATED this ____ day of January, 2002.

                            B. Lynn Winmill
                            Chief District Judge

**ORDER GRANTING MOTION AND STIPULATION FOR AMENDMENT OF
DISCOVERY AND DISCLOSURE DEADLINES - 1**

04-16-02  14:42  From-STOELRIVES                          8015786999           T-422  P.07/28  F-748
01/22/02  .14:55  FAX                                                         

David J. Jordan (1751)
John M. Eriksson (4827)
Marc T. Rasich  (9279)
STOEL RIVES LLP
201 South Main Street, Suite 1100
Salt Lake City, Utah 84111
Telephone: (801) 328-3131

Mary S. Hobson (ISB # 2142)
STOEL RIVES LLP
101 S. Capitol Blvd., Suite 1900
Boise, Idaho  83702-5958
Telephone:  (208) 389-9000

Attorneys for Defendant
PacifiCorp


## UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

|  |  |
|---|---|
| SNAKE RIVER VALLEY ELECTRIC ASSOCIATION,<br><br>Plaintiff,<br><br>v.<br><br>PACIFICORP (including UTAH POWER & LIGHT, a division),<br><br>Defendant,<br><br>STATE OF IDAHO, by and through ALAN G. LANCE, Attorney General,<br><br>Defendant-Intervenor. | Case No. 96-308-E-BLW<br><br>MOTION AND STIPULATION FOR AMENDMENT OF DISCOVERY AND DISCLOSURE DEADLINES |

MOTION AND STIPULATION FOR AMENDMENT
OF DISCOVERY AND DISCLOSURE DEADLINES - PAGE 1
SaltLake-164233.1 0019436-00149

Appendix: A

04-16-02   14:42   From-STOELRIVES                 8015786999              T-422   P.08/28   F-748
01/22/02   14:58   FAX                    STOEL RIVES

COME NOW, the parties and move and stipulate for a revised discovery schedule, which the parties agree will not require vacating the April 22, 2002 trial date, as follows.

1.    Plaintiffs will provide complete, non-evasive responses and/or supplemental responses to PacifiCorp's First, Second and Third Sets of Interrogatories and First Set of Requests for Admission, and will produce *all* non-privileged documents responsive to PacifiCorp's First, Second, Third, and Fourth Set of Requests for Production, regardless of any claim by Snake River that such documents have been produced or made available previously, by February 14, 2002;

2.    PacifiCorp will provide its response to Plaintiffs' request regarding billing history on or before February 14, 2002;

3.    As to those expert disclosures which are ready at the present time, PacifiCorp will forward them to Plaintiffs, reserving the right to modify and/or supplement them in light of further information provided by Snake River pursuant to this stipulation and/or in light of Snake River's revised/supplemented expert opinions;

4.    PacifiCorp reserves the right to provide additional expert reports within the time frame set forth below;

5.    Plaintiffs' expert, Dr. Richard Slaughter, Dr. John W. Wilson and Anton Tone will provide their revised, updated, and final reports by February 21, 2002;

6.    PacifiCorp will serve its final expert reports on or before March 21, 2002;

7.    PacifiCorp will depose Plaintiffs' experts on or before March 9, 2002;

8.    Plaintiffs will depose PacifiCorp's experts on or before April 9, 2002; and

9.      PacifiCorp reserves the right to move (1) to strike any expert report not complying with the requirements of Rule 26(a)(2)(B) and to exclude any expert testimony related to that report; (2) to compel further responses to written discovery and further production of responsive documents; and (3) to continue the trial and related dates should Snake River fail to comply fully with its obligations and representations under the terms of this stipulation.

The parties respectfully request leave to utilize the above and foregoing schedule.

Respectfully submitted this 22nd day of January, 2002.

STOEL RIVES LLP

Marc T. Rasich
Attorneys for Defendant PacifiCorp

WHEATLEY & RANQUIST

Charles F. Wheatley, Jr.

HUNTLEY, PARK, THOMAS BURKETT,
OLSEN & WILLIAMS, LLP

Robert C. Huntley
Counsel for SRVEA

04-16-02   14:43   From-STOELRIVES     8018786999     T-422   P.10/28   F-748
01/22/02   15:00   FAX           9599

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this __22nd__ day of January, 2002, I caused to be served

the foregoing Motion and Stipulation for Amendment of Discovery and Disclosure

Deadlines via ~~hand delivery~~ _facsimile_ upon the following:

> Robert C. Huntley
> Christopher F. Huntley
> HUNTLEY, PARK, THOMAS BURKETT,
>     OLSEN & WILLIAMS, LLP
> 250 So. 5th Street, Suite 660
> P.O. Box 2188
> Boise, ID  83702

and via U.S. Mail upon the following:

> Charles F. Wheatley, Jr.
> Timothy P. Ingram
> WHEATLEY & RANQUIST
> 34 Defense Street
> Annapolis, MD 21401

> Brett DeLange
> Deputy Attorney General
> 700 W. Jefferson St., Rm. 210
> P.O. Box 83720
> Boise, ID  83720-0010

By  _Robert C. Huntley_

04-16-02   14:43   From-STOELRIVES   8015786999   T-422   P.11/28   F-748




# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

SNAKE RIVER VALLEY ELECTRIC
ASSOCIATION,

    Plaintiff,

v.

PACIFICORP, (Including UTAH POWER &
LIGHT, a division),

    Defendant.

Case No. CIV 96-0308-E-BLW

**ORDER GRANTING MOTION
AND STIPULATION FOR
AMENDMENT OF DISCOVERY
AND DISCLOSURE DEADLINES**

The Court having considered the parties Motion and Stipulation for Amendment of

Discovery and Disclosure Deadlines and good cause appearing therefore,

NOW, THEREFORE, it is hereby ordered that the discovery and disclosure deadlines are

hereby amended in accordance with the stipulation of the parties .

DATED this 26th day of January, 2002.

LARRY M. BOYLE
Chief Magistrate Judge
United States District Court

**ORDER GRANTING MOTION AND STIPULATION FOR AMENDMENT OF
DISCOVERY AND DISCLOSURE DEADLINES - 1**

04-16-02  14:43   From-STOELRIVES                8015786999              T-422  P.12/28  F-748

lc

United States District Court
for the
District of Idaho
January 28, 2002


* * CLERK'S CERTIFICATE OF MAILING * *


Re:  4:96-cv-00308


I certify that a copy of the attached document was mailed or faxed to the
following named persons:

        Charles F Wheatley Jr, Esq.
        WHEATLEY & RANQUIST
        34 Defense St
        Annapolis, MD   21401

        Robert C Huntley, Esq.
        HUNTLEY PARK THOMAS BURKETT OLSEN & WILLIAMS
        PO Box 2188
        Boise, ID   83701

        David J Jordan, Esq.
        STOEL RIVES
        One Utah Center
        201 S Main St #1100
        Salt Lake City, UT   84111

        John M Eriksson, Esq.
        STOEL RIVES
        One Utah Center
        201 S Main St #1100
        Salt Lake City, UT   84111

        Jill M Pohlman, Esq.
        STOEL RIVES
        One Utah Center
        201 S Main St #1100
        Salt Lake City, UT   84111

        Marc T Rasich, Esq.
        STOEL RIVES
        One Utah Center
        201 S Main St #1100
        Salt Lake City, UT   84111

        Robert C Brown, Esq.
        STOEL RIVES
        101 S Capitol Blvd #1900
        Boise, ID   83702-5958

        Erik F Stidham, Esq.
        STOEL RIVES

04-16-02  14:43    From-STOELRIVES ⬤ -.         8015786999  ⬤        T-422  P.13/28  F-748
Boise, ID  83702   58

Mary S Hobson, Esq.
STOEL RIVES
101 S Capitol Blvd #1900
Boise, ID  83702-5958

Brett T DeLange, Esq.
OFFICE OF ATTORNEY GENERAL
PO Box 83720
Boise, ID  83720-0010


  ✓ Chief Judge B. Lynn Winmill
      Judge Edward J. Lodge
  ✓ Chief Magistrate Judge Larry M. Boyle
      Magistrate Judge Mikel H. Williams


                            Cameron S. Burke, Clerk

Date: _____ 1-28-02 _____          BY: _____
                                        (Deputy Clerk)

David J. Jordan (Utah Bar #1751)
John M. Eriksson (Utah Bar #4827)
Marc T. Rasich (Utah Bar #9279)
STOEL RIVES LLP
201 South Main Street, #1100
Salt Lake City, Utah 84111-4904
Telephone: (801) 328-3131
Facsimile: (801) 578-6999

Mary S. Hobson (ISB #2142)
Erik F. Stidham (ISB #5483)
STOEL RIVES LLP
101 S. Capitol Blvd., Suite 1900
Boise, Idaho 83702-5958
Telephone: (208) 389-9000
Facsimile: (208) 389-9040

Attorneys for Defendant PacifiCorp

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

---

| | |
|---|---|
| SNAKE RIVER VALLEY ELECTRIC ASSOCIATION, | Case No. CV 96-0308-E-BLW |
| Plaintiff, | **AMENDED EXPERT REPORT OF JACK E. STAMPER** |
| vs. | |
| PACIFICORP, | |
| Defendant, | |
| STATE OF IDAHO, by and through ALAN G. LANCE, Attorney General, | |
| Defendant-Intervenor. | |

---



## I.      QUALIFICATIONS

### A.      Employment History

I am currently employed by PacifiCorp in Portland, Oregon where I have worked since 1980. Between 1980 and 1985 I worked in the engineering organization of PacifiCorp functioning at different times as a cost estimating engineer, substation design engineer and distribution engineer. In 1985, I began working in the wholesale organization of PacifiCorp with the responsibility of negotiating and administering wholesale contracts for the purchase and sale of transmission service, bundled energy service, operation and maintenance service, and any other sale-for-resale services. It was also my responsibility to file these contracts with the Federal Energy Regulatory Commission ("FERC") and obtain an order from the FERC finding the prices, terms and conditions of the contracts just and reasonable. In 1991, PacifiCorp re-organized its wholesale organization and my responsibilities were narrowed to those functions necessary to obtain the FERC's authorization for PacifiCorp's electric wholesale contracts. I was also responsible for PacifiCorp's participation in FERC authored industry restructuring and had the lead role in PacifiCorp's implementation of Order 888. See Promoting Wholesale Competition Through Open Access Non-discriminatory Transmission Services by Public Utilities and Recovery of Stranded Costs by Public Utilities and Transmitting Utilities, Order No. 888, 61 FR 21,540 (May 10, 1996), FERC Stats. & Regs. 31,036. During that time I provided support to the regulatory requirements for PacifiCorp's merger with Utah Power & Light Company as well as four separate transmission cost of service filings before the FERC. In 1998, I went to work in the newly created transmission organization of PacifiCorp where I continued to be PacifiCorp's main point of contact with the FERC in regards to electric rate filings. In 1999, I was promoted to my current position, Regulatory Manager, within the

transmission organization of PacifiCorp. My current responsibilities include management of PacifiCorp's FERC filing process for all of its wholesale arrangements as a transmission provider including any cost of service filings at the FERC in support of its charges to wholesale customers for the delivery of electric energy in interstate commerce at both transmission and distribution levels of service. My work in this case is within the scope of my employment and I am not receiving any additional compensation for this work.

**B.      Education**

I graduated with a B.S. in Electrical Engineering from the University of Idaho in 1980.

**C.      Memberships and Associations**

I have been a Registered Professional Engineer in the state of Oregon since 1989.

**D.      Prior Testimony and Publications**

I have previously submitted direct testimony in support of FERC jurisdictional rates, terms and conditions in FERC Docket No. ER96-8-000. I have not previously testified in any antitrust cases. I have not published any articles regarding wheeling costs.

**II.     AMENDMENTS**

Since January 22, 2002, when I filed my first report, I have reviewed the RAS Report, discussed Mr. Slaughter's testimony with counsel and reviewed additional discovery responses provided by Snake River. Based on this additional information, I have assumed Snake River would have sought Point-to-Point Transmission Service from PacifiCorp. I also have assumed that Snake River owns or would have constructed secondary service drops from the low side of PacifiCorp's 12 kV transformers, rather than using PacifiCorp's secondary service drops. Finally, I have slightly revised my calculations of the distribution charges for use of the various components of PacifiCorp's Primary Distribution System. The net effect of each of these

3

changes is to decrease from $7.90 per kW per month to $6.84 per kW per month, the distribution

charges that would have been charged to Snake River under the December 18, 1995 request or

the Power Agreement.

## III.    DATA AND INFORMATION CONSIDERED IN FORMING OPINION

The following opinions are based on my understanding of the FERC rules and regulations

regarding transmission pricing and access. Specifically, these rules and regulations are those

provided for in Part II (Sections 201-214) of the Federal Power Act of June 10, 1920 as amended

as effectuated by and through the FERC in the Code of Federal Regulations, 18 CFR. In

addition, I base my opinions on my experience and knowledge of the Company's books and

records showing values of electric plant in service, operating expenses, cost of capital, and

transmission system utilization as well as the requirements to organize this information into a

cost of service model presentable to the FERC in support of wheeling rates. This information

from the Company's books and records that I refer to above is that contained in PacifiCorp's

most recent transmission cost of service filing with the FERC, FERC Docket No,. ER96-8-000.

In that docket, PacifiCorp presented cost of service information for all of PacifiCorp's

transmission, distribution, power supply and mining rate base to be used as justification for its

charges applicable to wholesale services. Finally, in attempting to determine the types of

transmission service Snake River Electric Association ("Snake River") would have purchased

from PacifiCorp if it had completed the FERC mandated process for acquiring open access

transmission service, I have read the Company's Open Access Transmission Tariff ("OATT");

Snake River's responses to discovery requests regarding facilities owned by Snake River and the

nature of the wheeling sought by Snake River; the purported "transmission service request"

submitted to PacifiCorp by Snake River's letter dated December 18, 1995; the September 14,

4

2001 Affidavit of Del Ray Holm; letters from Snake River dated March 23, 1999, February 10, 2000 and November 3, 2000 requesting point-to-point transmission service; the Power Purchase and Sale Agreement between Snake River and its energy service supplier Enron Power Marketing, Inc. dated February 27, 1997 ("Power Agreement"); the Memorandum Decision and Order dated February 7, 2002 by the Honorable B. Lynn Winmill, Chief Judge, United States District Court; Snake River's Supplement to Answers to PacifiCorp's First, Second and Third Sets of Interrogatories and Request for Production of Documents dated February 21, 2002; Snake River's Second Supplement to Answers to PacifiCorp's First and Third Sets of Interrogatories and First Set of Request for Admissions dated March 8, 2002; a letter from Charles F. Wheatley to Mr. Richard Slaughter dated February 22, 2002; and the report entitled *Calculation of Economic Damages* ("RAS Report") prepared by Richard A. Slaughter dated March 7, 2002.

I have included the following documents as Exhibits to this report for reference purposes:

Exhibit 1    PacifiCorp's OATT filed with FERC in July 1996;

Exhibit 2    Snake River Transmission Request dated December 18, 1995;

Exhibit 3    Power Purchase and Sale Agreement between Snake River and its energy service supplier Enron Power Marketing, Inc. dated February 27, 1997 ("Power Agreement");

Exhibit 4    Western Systems Coordinating Council ("WSCC") Reliability Criteria

Exhibit 5    Transmission service agreements with Flathead Electric Cooperative ("Flathead"), Western Area Power Administration Rocky Mt. Region ("WAPA RM") and the Bonneville Power Administration ("BPA");

Exhibit 6    Distribution Charges; and

Exhibit 7    Table comparing distribution service provided under FERC filed service
agreements to the distribution service required by Snake River.

## IV.    ISSUES

I provide herein my opinion with respect to the following issues in connection with Snake
River's claim against PacifiCorp:

A.    What would the charge be for Snake River's use of PacifiCorp's transmission
system?  What is the basis for this charge?

B.    What would the charge be for Snake River's use of PacifiCorp's distribution
system?  What is the basis for this charge?

C.    What would the charge be for Snake River's use of PacifiCorp's Control Area
Services?  What is the basis of such charges?

## V.    OPINIONS

### A.    Snake River Transmission Charges.

PacifiCorp provides several services that could be utilized in providing Snake River
delivery service.  PacifiCorp provides non-discriminatory Open Access Transmission Service
under its FERC jurisdictional Open Access Transmission Tariff ("OATT").  This service
provides for the use of PacifiCorp's transmission system which would include the use of
PacifiCorp's delivery system above 34.5 kilovolts up to and including 500 kilovolts (PacifiCorp's
transmission system in southern Utah includes some transmission built to 69 kV standards but
currently operated at 34.5 kV).  This delivery system consists of centrally dispatched facilities in
the states of Arizona, California, Colorado, Idaho, Montana, New Mexico, Oregon, Utah,
Washington, and Wyoming; with a combined circuit length of approximately 15,000 miles.
Services over these facilities are sold at FERC filed rates using a rate design methodology that is

6

often referred to as "average embedded," "rolled-in," or "postage stamp." Under this methodology, PacifiCorp's entire ten state transmission system is priced as a single unit and charges are based solely on the units of utilization. These units are kilowatts for firm transmission and kilowatt-hours for non-firm transmission. Location of the points of receipt or points of delivery have no bearing on the charge.

PacifiCorp sells two different types of firm transmission. The first is referred to as Point-to-Point Transmission Service. This service would provide a customer with a firm, year-round transmission reservation from specified points of receipt to specified points of delivery. The customer could use this reservation in support of its transactions on a firm basis and would have the opportunity to sell excess transmission rights to others. The charge for this service is $2.025 per kilowatt per month for the maximum annual reservation. Under Point-to-Point service provisions, a transmission customer acquires transmission with firm specified capacity rights at specified Points of Receipt ("POR") and Points of Delivery ("POD"). Payment is based on the higher of the reservation at the POR(s) or the reservation at the POD(s). The transmission customer can use alternate delivery points at no additional charge so long as transmission capability is available. The total amount wheeled during any hour between the firm POR/POD and the alternate POR/POD cannot exceed the transmission reservation quantity.

The other type of firm transmission service available is referred to as Network Service. Network Service provides a customer the right to the necessary amount of transmission to serve loads attached to PacifiCorp's system from specified generation. The charge for this service is based on the actual utilization of the transmission system occurring during any month relative to all other uses of the transmission system. The current monthly charge for all network services is

7

$20,049,059 applied to a total of 11,000,958 kilowatts of service for an average charge of $1.822 per kilowatt per month.

The charge to Snake River for transmission service would depend on the type of service ultimately purchased by Snake River. Assuming Snake River intended to acquire Point-to-Point Service the monthly charge would have been the product of 50,000 kilowatts during the first year of the Power Agreement and 150,000 kilowatts during the remaining years and $2.025 per kilowatt per month (from the OATT), or $101,250 per month during the first year and $303,750 per month thereafter. If Snake River's intent was to purchase Network Service, an estimate of its average monthly demand would be 26,667 kilowatts during the first year of the Power Agreement, and 74,167 in subsequent years. I calculated these numbers from Exhibit A of the Power Agreement (See Exhibit 3). Application of the average charge for Network Service described above of $1.822 per kilowatt to the average monthly demands of 26,667 kilowatts and 74,167 kilowatts would result in transmission charges to Snake River of $48,587 per month during the first year and $135,132 per month thereafter.

I understand that Snake River's expert Dr. Slaughter has testified that Snake River intended to acquire Point-to-Point Transmission Service. That testimony is consistent with correspondence to PacifiCorp from Snake River provided after Snake River's lawsuit was filed in which Snake River requested Point-to-Point Transmission Service. Accordingly, Point-to-Point Transmission Service Charges should apply.

**B.    Snake River Distribution Charges.**

PacifiCorp also provides distribution service as part of its retail rates and to a limited extent under its FERC filed rates for wholesale use of this system. This service provides for the use of PacifiCorp's distribution system which may include the use of PacifiCorp's Primary

8

Delivery System from 2.4 kilovolts up to and including 34.5 kilovolts and its Secondary Delivery System below 2.4 kilovolts. This delivery system consists of non-centrally dispatched facilities in the states of California, Idaho, Oregon, Utah, Washington, and Wyoming. Services over these facilities are sold at FERC filed rates using a rate design methodology that uses a separate "postage stamp" rate for each state with distribution facilities. The calculation of these rates is designed to allocate a pro-rata share of the cost responsibility to all of the uses (both retail and wholesale) of the distribution systems without regard to the entity using the system. Recovery of the capital associated with the distribution rate base reflects the capital structure in FERC Docket No. ER96-8-000. The distribution service currently provided to Flathead, WAPA RM, and BPA (see Exhibit 5) is analogous to that which might be provided to Snake River. The distribution services provided to Flathead, WAPA RM and BPA have all been negotiated since the inception of open access transmission service and are generally reflective of charges that would be applicable in the post-open access electric industry. The rates that these customers pay for such service are as follows:

<u>Flathead (Wyoming)</u>

| | |
|---|---|
| Distribution Substation Charge | $0.68 per kilowatt per month |
| <u>Primary Delivery Charge</u> | <u>$2.47 per kilowatt per month</u> |
| Total Distribution Charge | $3.15 per kilowatt per month |

<u>WAPA RM (Wyoming)</u>

| | |
|---|---|
| Distribution Substation Charge | $0.68 per kilowatt per month |
| <u>Primary Delivery Charge</u> | <u>$2.47 per kilowatt per month</u> |
| Total Distribution Charge | $3.15 per kilowatt per month |

### BPA (Oregon)

| | |
|---|---|
| Distribution Substation Charge | $0.85 per kilowatt per month |
| Primary Delivery Charge | $3.09 per kilowatt per month |
| Total Distribution Charge | $3.94 per kilowatt per month |

These charges are based on the costs functionalized to distribution (i.e., the costs attributed to the distribution function) in PacifiCorp's last transmission cost of service filing before the FERC (ER96-8-000).

The charge to Snake River for use of PacifiCorp's distribution system would be dependant on the facilities to be used. Exhibit 6 shows the calculation for these facilities in the state of Idaho. As with the Flathead, WAPA RM, and BPA contracts referenced above, these calculations are based on the costs functionalized to distribution in PacifiCorp last transmission cost of service filing before the FERC. Any use of the distribution system would entail the use of a transmission-to-distribution substation at a charge of $0.97 per kilowatt per month. Use of the Primary Delivery System would be necessary unless delivery was taken directly at the distribution substation. Snake River indicates that it or its members would be taking delivery using these facilities. The charge for use of the Idaho Primary Delivery System is $2.51 per kilowatt per month. If Snake River's delivery also required the use of Primary/Secondary Transformers, which is indicated in Snake River's interrogatory responses, there would be an additional charge of $3.36 per kilowatt per year. In addition, Snake River's use of secondary service drops would add an additional $1.05 per kilowatt per month. These charges are designed to be applied to the monthly use of the distribution system.

Based on Snake River's Second Supplement to Answers to PacifiCorp's First and Third Sets of Interrogatories and First Set of Request for Admissions dated March 8, 2002 ("Second

10

Supplement"), Snake River contends that it would have taken delivery at the outlet of the transformers on PacifiCorp's 12 kV lines. Assuming that was to be the case, the following charges would be applicable to distribution service provided to Snake River:

| | |
|---|---|
| Distribution Substation Charge | $0.97 per kilowatt per month |
| Primary Delivery Charge | $2.51 per kilowatt per month |
| Primary/Secondary Transformation | $3.36 per kilowatt per month |
| Total Distribution Charge | $6.84 per kilowatt per month |

Based on the assumptions above that Snake River would not need to use PacifiCorp's secondary service drops, and assuming monthly reservation amounts of 26,667 kilowatts during the first year and 74,167 kilowatts during subsequent years of the Power Agreement, as described above, my estimate of the total distribution charge to Snake River is $182,402 per month during the first year of the Power Agreement and $507,302 per month thereafter. Exhibit 7 shows a comparison of charges for distribution service provided to various PacifiCorp wholesale distribution customers and those that would have been chargeable to Snake River.

### C. Control Area Charges.

PacifiCorp also sells Control Area Service under its OATT. These services are: (1) Scheduling and Dispatch, (2) Reactive Supply and Voltage Control from Generation Sources, (3) Regulation and Frequency Response, (4) Energy Imbalance, (5) Spinning Reserves, and (6) Supplemental Reserves. Scheduling and Dispatch as well as Reactive Supply and Voltage Control from Generating Sources must be purchased from PacifiCorp in accordance with the OATT. Currently the explicit charges for these services are zero since the cost is included as part of the rate for transmission service. Energy Imbalance charges provide an incentive to transmission customer to engage in accurate scheduling of energy resources to loads served. The

11

charges applicable to this service would only be assessed where differences between scheduled generation and actual loads occurred. Regulation and Frequency Response provides for the real-time, moment-by-moment differences between scheduled load and actual load. This service is provided in accordance with the WSCC's Reliability Criteria, December 2000, Part III - Minimum Operating Reliability Criteria, Section (1)(A)(1)(a) - Regulating Reserve (See Exhibit 4). Spinning Reserves and Supplemental Reserves provide within-the-hour backup generation in the event of a loss of covered generation. Spinning Reserves would provide instantaneous coverage and Supplemental Reserves would replace the Spinning Reserves within ten minutes of a generation outage. This service is provided in accordance with the WSCC's Reliability Criteria, December 2000, Part III - Minimum Operating Reliability Criteria, Section (1)(A)(1)(b) - Contingency Reserve (See Exhibit 4). The price PacifiCorp charges for Regulation and Frequency Response, Spinning Reserves, and Supplemental Reserves is currently $1.19 per kilowatt per month for each service. Under the OATT, PacifiCorp can charge a rate up to $12.20 per kilowatt per month. The $1.19 rate represents the rate PacifiCorp has on file at the FERC with its other customers taking such services. The level of service to be taken is also provided for in the OATT. This level is as follows:

| Regulation and Frequency Response | 1.5% of load served |
| --- | --- |
| Spinning Reserves | 2.5% of Hydro Generation Resources |
| | 3.5% of Non-Hydro Generation Resources |
| Supplemental Reserves | 2.5% of Hydro Generation Resources |
| | 3.5% of Non-Hydro Generation Resources |

Pursuant to Article 7 of the Power Agreement, Snake River would be responsible for obtaining Control Area Services. Assuming that the resource from Enron is non-hydro, my estimate of the required amounts and charges applicable to Snake River are as follows:

Regulation and Frequency Response Service

| | |
|---|---|
| Load | 26,667 kW during first year; |
| | 74,167 kW thereafter |
| Service Level | 1.5 % of load |
| Amount of Service | 400 kW during first year (1.5% of 26,667); |
| | 1,112 kW thereafter (1.5% of 74,167) |
| Service Rate | $1.19 per kW per month |
| Total Charge | $476 per month during first year (400 kW times $1.19); |
| | $1,323 per month thereafter (1,112 kW times $1.19 per kW per month) |

Spinning Reserve Service

| | |
|---|---|
| Load | 26,667 kW during first year; |
| | 74,167 kW thereafter |
| Service Level | 3.5 % of load |
| Amount of Service | 933 kW during first year (3.5% of 50,000); |
| | 2,596 kW thereafter (3.5% of 74,167) |
| Service Rate | $1.19 per kW per month |
| Total Charge | $1,110 per month during first year (933 kW times $1.19); |
| | $3,089 per month thereafter (2,596 kW times $1.19 per kW per month) |

13

Supplemental Reserve Service

| | |
|---|---|
| Load | 26,667 kW during first year; |
| | 74,167 kW thereafter |
| Service Level | 3.5 % of load |
| Amount of Service | 933 kW during first year (3.5% of 26,667); |
| | 2,596 kW thereafter (3.5% of 74,167) |
| Service Rate | $1.19 per kW per month |
| Total Charge | $1,110 per month during first year (933 kW times $1.19); |
| | $3.089 per month thereafter (2.596 kW times $1.19 per kW |
| | per month) |

The above charges would result in combined charges for ancillary services on an average monthly basis for the term of the Power Agreement as follows:

For the first year of the Power Agreement:

| | |
|---|---|
| Regulation and Frequency Response | $ 476 per month |
| Spinning Reserves | $ 1,110 per month |
| Supplemental Reserves | $ 1,110 per month |
| Total Ancillary Services Charge | $ 2,696 per month |

Thereafter:

| | |
|---|---|
| Regulation and Frequency Response | $ 1,323 per month |
| Spinning Reserves | $ 3,089 per month |
| Supplemental Reserves | $ 3,089 per month |
| Total Ancillary Services Charge | $ 7,501 per month |

14

## VI.  CONCLUSION

I conclude that the total cost of Snake River for the use of PacifiCorp's transmission and distribution system would have been comprised of costs of transmission service, distribution service, and control area service described above.

DATED this 4th day of April, 2002.

Jack E. Stamper

15