David J. Jordan (Utah Bar #1751)
John M. Eriksson (Utah Bar #4827)
Marc T. Rasich (Utah Bar #9279)
STOEL RIVES LLP
201 South Main Street, Suite 1100
Salt Lake City, Utah 84111
Telephone: (801) 328-3131

Mary S. Hobson (ISB #2142)
Erik F. Stidham (ISB #5483)
STOEL RIVES LLP
101 S. Capitol Blvd., Suite 1900
Boise, Idaho 83702-5958
Telephone: (208) 389-9000

Attorneys for Defendant
PacifiCorp

# UNITED STATES DISTRICT COURT
# DISTRICT OF IDAHO

| | |
|---|---|
| SNAKE RIVER VALLEY ELECTRIC ASSOCIATION,<br><br>Plaintiff,<br><br>v.<br><br>PACIFICORP (including UTAH POWER & LIGHT, a division),<br><br>Defendant,<br><br>STATE OF IDAHO, by and through ALAN G. LANCE, Attorney General,<br><br>Defendant-Intervenor. | Case No. 96-308-E-BLW<br><br>**MEMORANDUM IN SUPPORT OF PACIFICORP'S MOTION TO STRIKE PLAINTIFF'S REBUTTAL EXPERT REPORT OF WHITFIELD A. RUSSELL** |

MEMORANDUM IN SUPPORT OF PACIFICORP'S MOTION TO STRIKE PLAINTIFF'S REBUTTAL EXPERT
REPORT OF WHITFIELD A. RUSSELL -- 1
SaltLake-1773581.1 0019436-00149

ORIGINAL

## I. INTRODUCTION

In April, after fact and expert discovery had closed, this Court continued the trial in this case until October 2002 to allow PacifiCorp time to investigate the facts and assumptions underlying Snake River's spot market damages theory and to obtain an expert to rebut it. Since then, Snake River has "supplemented," "revised," and "updated" the Slaughter report that disclosed the theory three times. Snake River also served the so-called "Rebuttal" Report of Whitfield Russell, attached hereto as Exhibit A (the "Russell Report"). These new reports have the net effect of changing many of the fundamental facts and assumptions that formed the basis of Dr. Slaughter's original report, and are an improper and belated attempt to (i) shore up the deficiencies in Dr. Slaughter's report that were brought to light in PacifiCorp's deposition of Dr. Slaughter; and (ii) increase from $800,000 to $23,000,000 the damages Snake River allegedly suffered even in the absence of the supposed foregone market sales. This Court should not permit Snake River to take advantage of the delay it caused and should strike the Russell Report.[1]

## II. STATEMENT OF FACTS

This Court's September 4, 2001 Scheduling Order and Referral to Magistrate Judge set PacifiCorp's expert disclosure deadline for January 22, 2002, the rebuttal expert disclosure

---

[1] The Slaughter Reports should also be stricken and PacifiCorp will ask the court to do so in a comprehensive motion to be filed soon.

deadline for February 5, 2002, and set the discovery cut-off in this matter for February 22, 2002. *See* Scheduling Order, filed Sept. 4, 2001, at 2-3.

On April 8, 2002, this Court struck the expert report of Dr. Slaughter to the extent it advanced a spot market damages theory. In that Order, the Court found that the first disclosure of the spot market damages theory by Snake River was on March 8, 2002 – well beyond the fact and expert discovery deadlines. Prior to that time, Snake River consistently had advanced a cost differential approach to damages. Memorandum Decision and Order, filed April 8, 2002 at 4. The Court recognized that any rebuttal by PacifiCorp to the spot market damage theory "will be substantial in scope and content, given that Dr. Slaughter is trying to tag PacifiCorp with $70 million in new damages," and that PacifiCorp's rebuttal expert would be entitled "to analyze all of the assumptions that Dr. Slaughter is making regarding the spot market." *Id.* at 7. Since there was insufficient time before the April 22, 2002 trial date for PacifiCorp to perform the required analysis, this Court struck any evidence of the spot market damages theory.

The Court's rationale for striking the damages report of Dr. Slaughter, however, was altered on April 19, 2002 when this Court continued the original trial date. In that Order, this Court recognized that "[i]f the Court moves the trial to October, the basis for the Court's decision for excluding Dr. Slaughter's testimony changes. That delay would give PacifiCorp enough time to hire an expert and rebut Dr. Slaughter's new testimony on the spot market theory." Memorandum Decision and Order, filed April 19, 2002, at 4. This Court therefore decided not to strike Dr. Slaughter's report on spot market damages because the postponement of the trial afforded PacifiCorp the opportunity to adequately prepare its defenses to that

theory. Importantly, however, the Court did not re-open fact and expert discovery for all purposes.

Nevertheless, since April 19, 2002, Snake River has served PacifiCorp with three "revised" and/or "updated" Slaughter Reports and served the "Rebuttal Expert Report of Whitfield Russell" – all without leave of the Court or PacifiCorp's agreement. Several of the "revised" and "updated" versions of the Slaughter Report change fundamental facts and assumptions that formed the foundation of Dr. Slaughter's opinions. The Russell Report, the stated purpose of which, is to "rebut the Amended Expert Report of Jack E. Stamper and the Answering Report of Albert A. Vondra," and is a transparent attempt to provide improper and belated support for those changes. (The Expert Report of Jack E. Stamper ("Stamper Report"), the Expert Report of Albert A. Vondra ("Vondra Report") and the Amended Expert Report of Jack E. Stamper ("Amended Stamper Report") are attached hereto as Exhibits B, C and D respectively. Voluminous exhibits to the Stamper Report and Amended Stamper Report not relevant to this motion (Exhibits 1, 4 and 5) are excluded from Exhibits B and D.)

### III. ARGUMENT

**The Court Should Strike the Rebuttal Report of Snake River's Additional Expert, Whitfield Russell.**

Although labeled "Rebuttal," Snake River's primary purpose in designating Mr. Russell as an expert is not to provide rebuttal testimony (indeed, in the latest update to Dr. Slaughter's Report, he ignores most of Russell's so-called rebuttal opinions) but to provide a vehicle for introducing expert testimony to support changes made in Plaintiff's claim. For the reasons discussed below, however, both Russell's so-called rebuttal opinions and his new-borne opinions should be stricken as untimely and improper.

The Court should not allow Snake River's attempt to cure its prior deficiencies by submitting the Russell Report. Rather, the Russell Report should be stricken for a number of reasons.

First, Snake River should not be allowed to submit a rebuttal expert report to the Vondra Report because that report is itself a rebuttal report served in response to the damages report prepared by Dr. Slaughter. PacifiCorp seeks no damages in this case, nor does it assert any affirmative claims against Snake River. Thus, there is nothing for Snake River to rebut. If the Federal Rules of Civil Procedure permitted parties to hire rebuttal experts to rebuttal experts, the result would be a never-ending chain of expert discovery and cases would never get to trial. That is neither the purpose, nor the effect of those Rules.

Second, inasmuch as the Russell Report offers rebuttal that could have and should have been submitted in response to the Stamper Report submitted in January 2002, it should be stricken because the deadline for designating any such rebuttal experts has expired. Snake River has known the nature and content of Mr. Stamper's report since January 2002, yet Snake River never indicated that it even intended to take Mr. Stamper's deposition, let alone designate a rebuttal expert to Mr. Stamper's testimony. The rebuttal designation deadline expired on February 5, 2002 and Snake River did not ask for nor was it given an extension of that deadline.

Indeed, the facts suggest that Snake River did not decide to obtain a rebuttal expert until after the trial in this case was continued. Snake River's own damages expert, Dr. Slaughter, testified on March 18, 2002, that he was told by Snake River's counsel that the issue of the appropriate distribution charge for the services Snake River allegedly sought from PacifiCorp

(an issue upon which Mr. Stamper opines and on which Russell provides "rebuttal" testimony) was a legal question for the court to decide. It is too late now for Snake River's apparent change of heart. Snake River's expert opinion regarding the appropriate distribution charge should have been offered in Snake River's initial expert disclosures. At the very least, it should have been disclosed in the response to Mr. Stamper's initial report.

Similarly, Mr. Russell goes on at great length about the appropriate method of calculating Network Transmission Service charges, Point-to-Point Transmission service charges, and distribution service charges. The methodology used by Mr. Stamper for the calculation of such charges is the same in his amended report as it was in his initial report. All that changed were some of the cost figures used as inputs to the calculation of the distribution charges (Exhibit 6 of initial and amended Stamper report). Snake River's rebuttal of Mr. Stamper's method of calculating such charges could have and should have been submitted in response to his initial report.

Third, Snake River should not be permitted to submit "new opinions" in the guise of rebuttal. Mr. Russell opines as to (i) "SRVEA's Inability to Duplicate PacifiCorp's System" (Russell Report at 13-14); whether (ii) "It Would Have Been Feasible To Resell All Or Part Of The Power SRVEA Purchased From ENRON." (Russell Report at 14); and (iii) that Snake River would have chosen network service rather than point-to-point service. But neither Dr. Stamper nor Mr. Vondra opined about Snake River's ability to build a duplicate system or the feasibility of resale. Thus, these opinions are not rebuttal at all. Further, both Dr. Stamper and Mr. Vondra accepted Dr. Slaughter's opinion that Snake River would have selected point-to-point service (as supported by various documents in the case). Neither came to an

independent conclusion on that topic. Thus, to the extent Russell's opinion can be considered rebuttal, it is rebutting the opinion of Snake River's expert, not PacifiCorp's, and it is included in the Russell Report because it has the net effect of dramatically increasing Snake River's damage claim even in the absence of sport market sales. The Court should not countenance such blatant attempts by Snake River to bolster its case by mischaracterizing these aspects of the Russell Report as "rebuttal."

## IV.  CONCLUSION

For the reasons stated above, the Court should strike the Russell Report.

DATED this 12th day of July, 2002.

STOEL RIVES LLP

_____
David J. Jordan
John M. Eriksson
Marc T. Rasich
G. Rey Reinhardt

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 12th day of July, 2002, I caused to be served the foregoing **MEMORANDUM IN SUPPORT OF PACIFICORP'S MOTION TO STRIKE PLAINTIFF'S REBUTTAL EXPERT REPORT OF WHITFIELD A. RUSSELL**, via U.S. Mail upon the following:

> Robert C. Huntley
> Christopher F. Huntley
> HUNTLEY, PARK, THOMAS BURKETT,
>   OLSEN & WILLIAMS, LLP
> 250 So. 5th Street, Suite 660
> P.O. Box 2188
> Boise, ID 83702
>
> Brett DeLange
> Deputy Attorney General
> 700 W. Jefferson St., Rm. 210
> P.O. Box 83720
> Boise, ID 83720-0010
>
> Charles F. Wheatley, Jr.
> Timothy P. Ingram
> WHEATLEY & RANQUIST
> 34 Defense Street
> Annapolis, MD 21401

By: _/s/ G. Rey Reinhardt_
G. Rey Reinhardt