

David J. Jordan (Utah Bar #1751)
John M. Eriksson (Utah Bar #4827)
Marc T. Rasich (Utah Bar #9279)
STOEL RIVES LLP
201 South Main Street, Suite 1100
Salt Lake City, Utah 84111
Telephone: (801) 328-3131

Mary S. Hobson (ISB #2142)
Erik F. Stidham (ISB #5483)
STOEL RIVES LLP
101 S. Capitol Blvd., Suite 1900
Boise, Idaho 83702-5958
Telephone: (208) 389-9000

Attorneys for Defendant
PacifiCorp

## UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| SNAKE RIVER VALLEY ELECTRIC ASSOCIATION,<br><br>Plaintiff,<br><br>v.<br><br>PACIFICORP (including UTAH POWER & LIGHT, a division),<br><br>Defendant,<br><br>STATE OF IDAHO, by and through ALAN G. LANCE, Attorney General,<br><br>Defendant-Intervenor. | Case No. 96-308-E-BLW<br><br>**REPLY MEMORANDUM IN SUPPORT OF PACIFICORP'S MOTION TO STRIKE PLAINTIFF'S REBUTTAL EXPERT REPORT OF WHITFIELD A. RUSSELL** |

REPLY MEMORANDUM IN SUPPORT OF PACIFICORP'S MOTION TO STRIKE PLAINTIFF'S REBUTTAL
EXPERT REPORT OF WHITFIELD A. RUSSELL -- 1
SaltLake-181280.1 0058802.1109

ORIGINAL

In its Memorandum in Support of PacifiCorp's Motion to Strike Plaintiff's Rebuttal Expert Report of Whitfield A. Russell ("Initial Memorandum"), PacifiCorp set forth a number of reasons why the Rebuttal Expert Report of Whitfield A. Russell ("Russell Report") should be stricken. As set forth below, in its Memorandum in Opposition to PacifiCorp's Motion, Snake River fails to establish a basis for denying PacifiCorp's motion.

## I. The Russell Report Does Not Rebut New Matters.

In its opposition memorandum, Snake River argues that the Russell Report is proper rebuttal because it rebuts "new matters" presented in the Vondra Report and the Amended Stamper Report. Snake River is wrong.

Rather than addressing the specific arguments set forth in PacifiCorp's Initial Memorandum, Snake River simply makes the unsupported assertions that the Vondra Report and the Amended Stamper Report set forth a "new claim" regarding the amount PacifiCorp would have charged Snake River for point-to-point transmission service. The calculation of those charges was explicitly set out in the Stamper Report of January 2002. Further, the Vondra Report and the Amended Stamper Report accepted Dr. Slaughter's opinion that Snake River would have selected point-to-point transmission service. Accepting the opposing party's previously stated position cannot reasonably be considered to be an assertion of "new facts" which the opposing party can then rebut.

Snake River's assertion that PacifiCorp's position "that it was entitled to bill large distribution charges contrary to its rate filings at the FERC" was a "new matter" presented in the Vondra and Amended Stamper Reports is also wrong. PacifiCorp set forth the distribution

charges it believed would have been applicable to Snake River, and the basis for those charges, in the January 2002 Stamper Report. The Amended Stamper Report made a minor correction to the distribution rate, resulting in a reduction, without changing the methodology used to determine the rate.

## II. Snake River All But Admits That The Russell Report Is Not Just Rebuttal.

As established in PacifiCorp's Initial Memorandum, the last two sections of the Russell Report, addressing the supposed inability to duplicate PacifiCorp's system and the feasibility of the claimed spot market sales, are nothing more than new opinions in the guise of rebuttal. Snake River does not argue otherwise, and indeed, in his deposition, Mr. Russell could not identify which, if any, portions of the Vondra Report or the Amended Stamper Report address the issues supposedly "rebutted" in the last two sections of his report. (August 2, 2002 deposition of Whitfield A. Russell, Transcript at pages 28 & 55, attached hereto as Exhibit A.) Since such portions do not exist in the Vondra or Amended Stamper Reports, it is easy to understand why Mr. Russell could not recall them. Accordingly, those sections of the report should be stricken.

## III. Striking the Russell Report Would Not Conflict With the Federal Rules of Civil Procedure.

Snake River agues that the Russell Report was timely under Rule 26(a)(2)(C) of the Federal Rules of Civil Procedure, and therefore proper. Again, Snake River is wrong.

Snake River contends that the Russell Report is intended to rebut the Vondra Report and the Amended Stamper Report. Indeed, the Russell Report is titled "Rebuttal Expert Report of Whitfield A. Russell." With respect to rebuttal reports, Rule 26(a)(2)(C) provides that they are to be made within 30 days after the disclosure by the other party, in the absence

of other directions from the court or a stipulation. To the extent the Russell Report could be considered rebuttal, it would be rebuttal to matters contained in the January Stamper Report, and should have been submitted in accordance with the schedule set by the court. It wasn't, and accordingly should be stricken. On the other hand, to the extent the Russell Report is not rebuttal, it should have likewise been submitted in accordance with the court's scheduling order. It wasn't, and should be stricken.

## IV.   Equity Does Not Support Denying PacifiCorp's Motion.

Snake River argues that an "equity involved" supports its position that PacifiCorp's motion should not be granted. Snake River identifies that equity as the "loss of expert witness Anton Tone due to his refusal to present testimony after having become employed in other matters for PacifiCorp." Snake River Memo p. 9. It is surprising that Snake River would continue to advance an argument based on such an assertion, in light of Mr. Tone's affidavit previously filed with this court in which he stated: "I advised Mr. Palmer that Snake River should seek a different witness because I did not have sufficient memory about EGY's prior work for Snake River.. . . . I have not stated the position to Mr. Wheatley, Mr. Palmer, Mr. Marsing or anyone else, and I do not believe, that testifying for Snake River would involve a conflict of interest due to any work performed for PacifiCorp." (Affidavit of Anton Tone, filed with PacifiCorp's Response to Snake River's Notice of Possible Misrepresentation or Fraud Upon the Court.) Snake River's claim based on equity is factually unfounded and should be disregarded.

## V. Conclusion.

For the reasons set forth above and in PacifiCorp's Initial Memorandum, the Russell Report should be stricken.

DATED this 16th day of August, 2002.

STOEL RIVES LLP

_____
David J. Jordan
John M. Eriksson
Marc T. Rasich
G. Rey Reinhardt

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 16th day of August, 2002, I caused to be served the foregoing **REPLY MEMORANDUM IN SUPPORT OF PACIFICORP'S MOTION TO STRIKE PLAINTIFF'S REBUTTAL EXPERT REPORT OF WHITFIELD A. RUSSELL**, via U.S. Mail upon the following:

>Robert C. Huntley
>Christopher F. Huntley
>HUNTLEY, PARK, THOMAS BURKETT,
>   OLSEN & WILLIAMS, LLP
>250 So. 5th Street, Suite 660
>P.O. Box 2188
>Boise, ID  83702
>
>Brett DeLange
>Deputy Attorney General
>700 W. Jefferson St., Rm. 210
>P.O. Box 83720
>Boise, ID  83720-0010
>
>Charles F. Wheatley, Jr.
>Timothy P. Ingram
>WHEATLEY & RANQUIST
>34 Defense Street
>Annapolis, MD 21401

By: _____
G. Rey Reinhardt, IV

**EXHIBIT A**

The following is a dirty disk. Please be aware that you will find untranslated steno, notes in double parentheses, misspelled names, incorrect or missing Q and A symbols or punctuation, and or nonsensical English word combinations. All such entries will be corrected on the final, certified transcript.



Page 1

Today is Friday, August 2, 2002 at the offices of

Whitfield Russell Associates, 1225 Eye Street,

Northwest, Washington, D.C. 20005.

      BY MR. RASICH:

Q     Good morning, Mr. Russell.

A     Good morning.

Q     Is it all right if I call you Whit as we discussed before?

A     You're Marc I take it.

Q     Yep, I'm Marc. I'll probably go back and forth between Whit and Mr. Russell. It's that formalistic lawyer training that forces me to do that kind of stuff.

A     That's fine.

Q     So as you know I'm Marc Rasich, I represent PacifiCorp in this case. Have you had your deposition taken before, Whit?

A     Yes.

Q     I imagine quite a few times; is that correct?

A     Correct.

Q     About how many?

A     Probably 50 or a hundred times, somewhere in

that range.

Q    That's quite a bit.  How many of those times were in connection with state or federal court proceedings as opposed to PUC or FERC type proceedings?

A    Probably 15 or 20.  Now some antitrust cases I was deposed like 22 days in one case in a federal district court case but if you're talking about different proceedings, it's probably 15 to 20 proceedings involving jury trials or trials as opposed to administrative proceedings.

Q    Well, given that history I assume you kind of know the procedures but I'll just run through them again just so that we're all on the same page.

A    That's fine.

Q    You understand your testimony is given under oath today the same as if you were in court?

A    Correct.

Q    The court reporter is taking down my questions and your answers and to the extent he has any, Charles Wheatley's objection, to my questions, do you understand?

A    I understand that.

what you did to reach that conclusion.

A   Well, we make these sorts of arrangements on behalf of clients, both sellers and buyers, so all I'm stating here is pretty much axiomatic well known attributes of the bulk power marketplace.  And so this was, this paragraph was an attempt to synthesize what we know from our day-to-day work on behalf of retail and wholesale customers and also on behalf of utility and unregulated sellers.

Q   Is there a specific section in the Vondra or Stamper reports to which this this paragraph was inserted to rebut?

A   Not that I recall.  I think Mr. Vondra may have, I just don't recall.  I had understood this was an issue.

Q   Did you compare any of the contracts for your clients, the language in those contracts with the language in the Enron Snake River contract before reaching your conclusion?

A   Well, we had the Enron contract and we had, of course, many other contracs on which we worked so I would say implicitly, but as for putting them down side

A    Other Enron contracts, we have worked on other Enron contracts, I'm not sure I had those in mind and by Enron contracts I include Enron proposals.

Q    Okay.

A    But I'm not sure I had those in mind, I'll look.

Q    Let's let's move off page 14, let's move to page 13.

A    All right.

Q    Back on the record. Looking at page 13 of Exhibit 1, Mr. Russell, it's entitled SRVEA's inability to duplicate PacifiCorp's system. Was this section of your report prepared as a rebuttal to any particular provision in the Vondra or Stamper reports?

A    I don't recall.

Q    Are you an economist by training or education?

A    No.

Q    And do you have a CPA or are you a CPA I guess is the proper way to say it?

A    No.

Q    Have you in the past been qualified as an expert on the economic viability of constructing